IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, JENNIFER HILLMAN and P.H., a minor, | ) ) ) |
| Plaintiffs, | ) ) |
| Vs. | ) )  Case No. |
| THE TORO COMPANY, a Corporation, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

NOW COME the Plaintiffs, Rebekah Hillman, Jennifer Hillman and P.H., a minor and for their complaint of Defendant, The Toro Company, a Corporation, and in support thereof states the following:

### JURISDICTION AND FACTS APPLICABLE TO ALL COUNTS

1. Plaintiff, Rebekah Hillman was born in 1970. At the time of the events pled in support of her claim in this case and since, Rebekah Hillman was a citizen and resident of the State of Illinois, residing at her home in Colona, Illinois.

2. Jennifer Hillman was born in 1977, and at the time of the events pled in support of her claims in this case and since, Jennifer Hillman has been a citizen and resident of the State of Illinois, residing at her home in Colona, Illinois.

3. At all times material to this case, The Toro Company, a corporation, then a resident and citizen of a state or states other than the State of Illinois. The Toro Company, a corporation, was incorporated in Minnesota in 1935 and then reincorporated in Delaware in 1983. At all times material to this case, The Toro Company has been incorporated in the state of Delaware, with its principal place of business in Bloomington, Minnesota.

4. The amount in controversy in this action exceeds $75,000 based upon the nature and extent of the damages alleged in this matter, exclusive of interest and costs.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1332 in that complete diversity exists between the plaintiffs and the defendant and the amount in controversy exceeds $75,000 as previously pled.

6. Plaintiffs Rebekah Hillman and Jennifer Hillman were married on July 1, 2010, and they have one minor daughter, P.J.H. (born in 2013), who has always resided with them in Colona, Illinois.

7. At all times material hereto, The Toro Company (hereinafter simply referred to as Toro) has been engaged in the business of designing, manufacturing, and marketing a variety of turf maintenance equipment and various types of equipment including, but not limited to, turf irrigation systems, landscaping equipment and lighting products, snow and ice management products, agricultural micro irrigation systems, rental and specialty construction equipment, and residential and commercial mowers and snow thrower products. At all times material hereto, Toro has operated through three segments, professional, residential and distribution. The residential segment has provided products such as riding lawnmowers, snow blowers and related products and parts to customers such as the plaintiffs. Toro also owns other brands of related equipment such as Exmark, BOSS, Irritrol, Hayter, Pope and United Lighting Systems, and Lawnboy.

8. Before and since June 18, 2020, Toro was in the business of designing, testing, manufacturing, and marketing Toro lawnmowers for residential use throughout the United States and in other foreign countries. Toro lawnmowers included what are referred to as zero turn riding lawnmowers, a specialized design. Toro's zero turn mower designs employed two control arms rather than a steering wheel such as is normally used on a riding lawnmower or garden tractor.

The left and right steering arms control independent motors on the left and right rear wheels. The front wheels on the Toro zero turn mower are merely castors which respond to the direction created by the combination of forces imposed by the rear wheels which direct the vehicle. The term "zero turn" stems from the fact that such a mower can be turned within its own radius simply by pulling the left or the right lever back and pushing the opposite lever forward. Such a control input makes one rear wheel operate in rearward and the opposite wheel operates forward in the opposite direction so that the mower literally turns around within its own diameter.

9. On June 18, 2020, the plaintiffs were residents of Colona, Illinois 61241. The property where the plaintiffs lived was an acreage including large areas of grass and wooded areas including the plaintiffs' home and other buildings. The plaintiffs' acreage also included an area of grass and trees that was a higher elevation than the portion of the lot on which the plaintiffs' home was located. Between the elevated portion of the property and the lower portion of the property where the house was located, the plaintiffs had constructed a retaining wall and planter. The area above the retaining wall was lawn with a planter next to the retaining wall and below the retaining wall was a fire pit/seating area for outdoor entertaining during the summer months.

10. The retaining wall which separated the elevated section of the yard from the lower/flatter section of the yard varied in height from a few feet on the ends up to approximately 6 feet at its highest point.

11. Before 2015, Toro designed, tested, and manufactured a model of zero turn lawnmower for residential use known as the "Timecutter SS 5000" and marketed and sold the Timecutter SS 5000 series through a network of Toro dealers throughout the United States, including the State of Illinois. In 2014 or 2015, the plaintiffs purchased a brand-new Timecutter

SS 5000, model number 74631, serial number 313015934 from B&B Lawn Equipment, a Geneseo, Illinois Toro dealer.

12. Plaintiffs took the Toro Timecutter SS 5000 to their home and used it to mow their acreage.

## THE INCIDENT/INJURY

13. On or about 6/18/20, Plaintiff, Rebekah Hillman, was operating the Toro Timecutter SS 5000 (hereinafter referred to as the Toro Timecutter) and mowing the upper elevation on the plaintiffs' lot. Plaintiff, Rebekah Hillman, had substantial experience operating the Toro Timecutter on the date of the incident when she was injured. Rebekah Hillman was operating the Toro Timecutter across the slight hill as advised by the operator's manual on the elevated section of the property. She approached the edge of the planter, which was approximately 3 to 4 feet wide, near the retaining wall. One of the front castoring wheels dropped down into the softer soil of the planter and became stuck.

14. The Toro Timecutter had no foot activated brake, nor an emergency brake which could be activated by a hand operated handle. The Toro Timecutter incorporated only a parking type brake which was activated by a solenoid connected to the two steering handles. When the operator mounted the mower, the handles were pushed to the outboard position to engage the parking brake. Thus, when the operator stopped the mower by using the steering handles, the neutral position (fore and aft) of the handles stopped the rotation of each motor on the drive wheels. The operator then moved the steering handles to their outboard position, which activated electrical switches connected to a solenoid which engaged a brake. When both handles were in the outboard position, the solenoid was designed to activate a parking brake for the mower. With the handles in

the outboard position, the operator could step on or off the mower easier as the handles were moved outboard and out of the way of mounting or dismounting the seat.

15. The Toro Timecutter also incorporated two thin, wire pins on the rear of the mower which were designed to allow the mower to be towed when it was stuck or when it needed to be transported on a trailer. When the owner/operator wanted to tow the mower, the procedure recommended in the owner's manual, was to get off the mower, move around to the back of the mower, reach down and pull the two small wire-like pins rearward. Pulling the pins rearward allowed the rear wheels to turn freely, without damage or resistance from either drive motor. The owner/operator was then instructed to turn the ignition switch to the on position and move the two drive handles to the center position where they would normally be for driving the mower to disconnect the parking brake. With the pins in the rearward position, and the drive handles moved from the outboard position to the inboard position, the parking brake would release and the machine could be pulled/towed without damage to the drive motors.

16. On 6/18/20 when the plaintiffs' Toro Timecutter became stuck in the planter on the higher portion of the lot above the retaining wall, the plaintiff shut the mower off, moved the control handles to the outboard position, and went to get a tow chain or strap and a separate small tractor to tow the mower from its position back up onto the grass to resume mowing.

17. Plaintiffs retrieved a towing strap or chain and a small tractor to pull the Toro Timecutter up the hill. They fastened the tow straps/chains to the mower and pulled it approximately 40 to 50 feet up where it was on turf.

18. Plaintiff, Rebekah Hillman, then turned on the ignition and moved the control levers outboard to set what she understood was the brake for the mower. Plaintiffs then removed the tow chain/strap from the mower and attempted to resume mowing.

19. With the pins in the rearward position, Rebekah Hillman got back on the Toro Timecutter and started the motor. Plaintiff, Rebekah Hillman, then moved the two control handles from the outboard position inward to begin mowing. When the control handles were moved from the outboard to the inboard position, the parking brake disconnected and the mower began to roll down the incline toward the retaining wall. Plaintiff, Rebekah Hillman, attempted to stop the machine from rolling forward by pulling backward on the handles. However, with the towing pins in the rearward position, the rear drive motors were not effective at controlling either rear wheel. Rebekah Hillman immediately then moved the control handles to the outboard position to use the braking system to stop the machine from moving toward the top of the retaining wall and the 6-foot drop from the top of the retaining wall to the seating area below.

20. When Rebekah Hillman moved the steer handles to the outboard position, the brake operated by the solenoid failed to significantly slow or stop the machine and it continued to roll toward the top of the retaining wall.

21. When Plaintiff, Rebekah Hillman, realized that the brake connected to the steering arms was not going to stop the mower, she realized that the mower was going to continue over the retaining wall and fall to the lower area below.

22. As the Toro Timecutter started to go over the retaining wall, Plaintiff, Rebekah Hillman, attempted to jump from the mower to get off the machine so that it would not fall on her. Both the plaintiff, Rebekah Hillman, and the Toro Timecutter continued forward and went over the top of the retaining wall, falling approximately 5 or 6 feet to the seating area below. Rebekah Hillman successfully got clear of the majority of the mower. However, a portion of the mower did land on the plaintiff's left leg, severely crushing the limb, which ultimately required the amputation of Rebekah Hillman's left leg.

23. Before and since it designed, tested, manufactured and marketed the Toro Timecutter, which injured the plaintiff, Defendant Toro had significant contacts with the State of Illinois including, but not limited to:

   a. Toro actively marketed its zero turn mowers and advertised them for sale throughout the United States, including the State of Illinois, and sold them through a network of Toro dealers such as the one who sold the accident mower to the plaintiffs;

   b. Toro sold a wide variety of its products in the State of Illinois and regularly shipped its products, including various models of lawnmowers, to the State of Illinois for resale by dealers and retail stores; and

   c. Toro regularly and systematically placed its products, and particularly residential lawn mowing equipment such as the Toro Timcutter in the State of Illinois to Illinois residents such as the plaintiffs.

24. Thus, this Court has personal jurisdiction over the Toro company based upon its regular, systematic and continuous contacts in the State of Illinois.

## COUNT I - STRICT PRODUCT LIABILITY

1-24. Plaintiffs hereby repeats and re-alleges paragraphs 1 through 24 and incorporates the same herein as if set forth fully.

25. Before and since the Toro Timcutter which injured the plaintiff (hereinafter referred to as the accident mower) was designed, manufactured, marketed and sold by Defendant Toro, Defendant Toro was in the business of designing, manufacturing, testing, marketing, and selling lawnmowers, including zero turn lawnmowers, to the public and persons such as the plaintiffs in the State of Illinois and throughout the United States.

26. When the plaintiff was injured on June 18, 2020, the accident mower was in substantially the same condition as it was when it left the custody and control of Defendant Toro.

27. When the accident mower left the possession and control of the Toro defendant, it was defective and in an unreasonably dangerous condition, including, but not limited to, the following defects which rendered it unreasonably dangerous:

    a. The accident mower was not equipped with an effective emergency brake or braking system that was open, obvious, and easily accessed by an operator in an emergency;

    b. The accident mower failed to have an emergency brake, parking brake or braking system with sufficient braking power to bring the mower to a stop in the event the drive wheel motors were disconnected or failed and the machine began to roll;

    c. The accident mower did not have an interlock system to prevent starting the mower or moving it if the drive/tow pins were in the rearward position; and

    d. The accident mower lacked safe and appropriate instructions and warnings concerning the lack of braking power and the hazards of operating the mower on even a slight incline with the drive/tow pins in the rearward position because the solenoid/parking brake would not bring the machine to a stop in an emergency.

28. At the time the plaintiff was injured by the accident mower, she was using the mower in a situation which was reasonably foreseeable to the manufacturer, Defendant Toro.

29. At the time the accident mower left the control of the manufacturer, a practical and technologically feasible alternative design or designs were available that would have prevented the harm suffered by the plaintiff, without significantly impairing the usefulness, desirability, or marketability of the equipment.

30. One or more of the unreasonably dangerous and defective conditions alleged above was a proximate cause of the loss of control, and plaintiff's fall over the retaining wall, and the consequent injuries to the plaintiff, Rebekah Hillman.

31. As a direct and proximate result of the loss of control accident which injured Plaintiff, Rebekah Hillman, Rebekah Hillman suffered injuries including, but not limited to, severe

and permanent injury to wit, the amputation of her leg, as well as other injuries, and that as a direct and proximate result of the injuries, the plaintiff has suffered damages including, but not limited to:

    a. She has suffered and will continue to suffer from extreme pain, suffering, disability and disfigurement;

    b. She has been and will continue to be permanently disabled, denying her the full enjoyment of her life and full function of her body;

    c. She has been and will continue to be deprived of income that she would have otherwise derived from her employment due to her injuries;

    d. She has and will continue in the future to incur substantial expense for doctor, hospital, surgical, prosthetic and related services, medications and rehabilitative services and devices; and

    e. She has been otherwise injured, impaired and damaged.

32. One or more of the unreasonably dangerous and defective conditions alleged above was a proximate cause of the loss of control collision and the injury not only to the plaintiff, Rebekah Hillman, but to her spouse, Jennifer Hillman, and her minor daughter, PH., including, but not limited to:

    a. Jennifer Hillman has suffered a partial loss of the love, companionship, support and assistance of her spouse; and

    b. P.H., a minor, has suffered a partial loss of parental consortium, including the love, companionship, support and assistance of her parent, Rebekah Hillman.

WHEREFORE, for the foregoing reasons, the plaintiffs pray for independent judgements against Defendant Toro, and for such other relief as the Court may deem appropriate in the circumstances.

## **COUNT II - NEGLIGENCE – THE TORO COMPANY**

1-32.   Plaintiffs hereby repeats and re-alleges paragraphs 1 through 32 and incorporates the same herein as if set forth fully.

33.   On and before 06/18/2020, Defendant Toro designed, manufactured, tested, distributed and sold the accident mower as described above.

34.   Defendant Toro owed purchasers and users of their zero turn mowers such as the Timecutter described above, the duty to design, manufacture, test, distribute and sell such mowers with due care under all circumstances reasonably foreseeable in use by consumers such as the plaintiffs.

35.   Defendant Toro breached its duty of care to the plaintiffs by negligently:

  a.   Failing to properly design the accident mower with appropriate safeguards, instructions and warnings before it was sold to the plaintiffs;

  b.   By designing and/or manufacturing the mower in such a way as to make it likely to suddenly go out of control without an adequate braking system to bring the mower to a stop in an emergency when the rear wheel motors were disconnected or when they became ineffective;

  c.   By designing and/or manufacturing the mower with insufficient protective devices to prevent loss of control injuries such as that described above; and

  d.   Failing to provide warnings to the ultimate purchasers of the mower regarding the safety related problems alleged immediately above.

36.   At the time the accident mower left the control of The Toro Company, a practical and technologically feasible alternative design or designs were available that would have prevented the harm suffered by the plaintiff without significantly impairing the usefulness, desirability or marketability of the mower.

37. The defendant's negligent conduct was a proximate cause of Rebekah Hillman's leg being crushed by the mower when it went out of control and over the retaining wall as previously described herein.

38. As a direct and proximate result of the loss of control and the consequent injuries suffered by Plaintiff, Rebekah Hillman, Plaintiff, Rebekah Hillman, has suffered damages, losses and harms including but not limited to:

   a. She has suffered and will continue to suffer from extreme pain, suffering, disability and disfigurement;

   b. She has been and will continue to be permanently disabled, denying her the full enjoyment of her life and full function of her body;

   c. She has been and will continue to be deprived of income that she would have otherwise derived from her employment due to her injuries;

   d. She has and will continue in the future to incur substantial expense for doctor, hospital, surgical, prosthetic and related services, medications and rehabilitative services and devices; and

   e. She has been otherwise injured, impaired and damaged.

39. As a direct and proximate result of the loss of control and the consequent injuries suffered by Plaintiff, Rebekah Hillman, her spouse, Jennifer Hillman, and her minor daughter, P.H., have suffered damages, losses and harms including, but not limited to:

   a. Jennifer Hillman has suffered a partial loss of the love, companionship, support and assistance of her spouse; and

   b. P.H., a minor, has suffered a partial loss of parental consortium, including the love, companionship, support and assistance of her parent, Rebekah Hillman.

WHEREFORE, for the foregoing reasons, Plaintiffs pray for independent and separate judgements of compensatory damages against Defendant Toro for all harms and losses caused by the defendant's and for such other relief as the Court may deem appropriate in the circumstances.

## COUNT III - BREACH OF EXPRESS OR IMPLIED WARRANTY – THE TORO COMPANY

1-39.    Plaintiffs hereby repeats and re-alleges paragraphs 1 through 39 and incorporates the same herein as if set forth fully.

40.    The Defendant Toro both impliedly and expressly through their advertisements and other means that the Toro Timecutter was of merchantable quality, fit for the manner and purpose for which it was sold.

41.    The Plaintiff was a foreseeable user of the Toro Timecutter and the Toro Timecutter was being used in a reasonably anticipated manner and purpose at the time of the incident.

42.    The Plaintiff relied on the Defendant Toro to provide a merchantable and suitable lawnmower fit for the purpose for which it was intended.

43.    Because of the defect and unreasonably dangerous design and/or manufacture of the Toro Timecutter more fully described above, it could be involved in a foreseeable loss of control accident, and fail to adequately restrain the forward momentum of the Toro Timecutter in a foreseeable and reasonably anticipated loss of control sequence. Additionally, because the brake operated by the solenoid was ineffective, faulty and inadequate in restraining the Toro Timecutter and preventing forward momentum, the Toro Timecutter was neither merchantable nor fit for ordinary purposes.

44.    As a direct, proximate foreseeable result of the defect of unreasonably dangerous design and/or manufacture, the Toro Timecutter failed to adequately stop and protect the Plaintiff from falling over the retaining wall, failed to prevent her injuries, and failed to prevent the ensuing injuries to Plaintiffs Jennifer Hillman and minor daughter, P.J.H.

45. The Toro Timecutter was neither of merchantable quality or reasonably fit to be used for the purpose for which it was intended including the foreseeable incident alleged herein and was unmerchantable.

46. The defect and/or unreasonably dangerous conditions constitute a breach of the Defendant Toro's expression of implied warranties.

47. The Defendant Toro is liable for breaching the expression of implied warranties in the suing interest of the Plaintiff and the damages interest of the Plaintiff in an amount to determine at trial.

48. As a direct and proximate result of the loss of control, brake failure, and the consequent injuries suffered by Plaintiff, Rebekah Hillman, Plaintiff, Rebekah Hillman, has suffered damages, losses and harms including but not limited to:

    a. She has suffered and will continue to suffer from extreme pain, suffering, disability and disfigurement;

    b. She has been and will continue to be permanently disabled, denying her the full enjoyment of her life and full function of her body;

    c. She has been and will continue to be deprived of income that she would have otherwise derived from her employment due to her injuries;

    d. She has and will continue in the future to incur substantial expense for doctor, hospital, surgical, prosthetic and related services, medications and rehabilitative services and devices; and

    e. She has been otherwise injured, impaired and damaged.

49. As a direct and proximate result of the Toro Timecutter's loss of control and brake failure, and the consequent injuries suffered by Plaintiff, Rebekah Hillman, her spouse, Jennifer Hillman, and her minor daughter, P.J.H, have suffered damages, losses and harms including, but not limited to:

      a.      Jennifer Hillman has suffered a partial loss of the love, companionship, support and assistance of her spouse; and

      b.      P.J.H., a minor, has suffered a partial loss of parental consortium, including the love, companionship, support and assistance of her parent, Rebekah Hillman.

WHEREFORE, for the foregoing reasons, Plaintiffs pray for independent and separate judgements of compensatory damages against Defendant Toro for all harms and losses caused by the defendant's and for such other relief as the Court may deem appropriate in the circumstances.

## JURY DEMAND

Plaintiffs, Rebekah Hillman, Jennifer Hillman and P.H., a minor, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 28(b) on all issues so triable.

REBEKAH HILLMAN, JENNIFER HILLMAN and P.H., a minor, Plaintiffs

By:   /s/ Edward J. Prill
         Edward J. Prill

Edward J. Prill    AT0012435
CROWLEY & PRILL
3012 Division Street
Burlington, IA 52601
T: (319) 753-1330
F: (319) 752-3934
E: eprill@cbp-lawyers.com
ATTORNEY FOR PLAINTIFFS