# EXHIBIT A

TELEPHONIC STATUS CONFERENCE                     March 16, 2023
REBEKAH HILLMAN vs TORO CO.                              1

1

2

3

4                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF ILLINOIS
5

6   REBEKAH HILLMAN,   *   Case No. 4:21-cv-04081-SLD-JEH
    ET AL.,            *
7                      *
         Plaintiffs,   *
8                      *
    v.                 *
9                      *
    THE TORO COMPANY,  *
10                     *
         Defendant.    *
11

12

13

14              TELEPHONIC STATUS CONFERENCE
       HEARD BEFORE THE HONORABLE JOHATHAN E. HAWLEY,
                    MAGISTRATE JUDGE
15
                   Thursday, March 16, 2023
16

17

18

19

20

21

22  Transcribed by:
    Christine Aiello
23
    J9611927
24

25



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                      APPEARANCES

 2

     On behalf of Plaintiffs:
 3
         STEVEN CROWLEY, ESQ.
 4       CROWLEY & PRILL
         3012 Division Street
 5       Burlington, Iowa 97212
         319.753.1330
 6
         JASON SCHIFFMAN, ESQ.
 7       SCHIFFMAN FIRM
         1300 Fifth Avenue
 8       Pittsburgh, Pennsylvania 15219
         412.288.9444
 9

10   On behalf of Defendant:

11       KIRK FLORENCE, ESQ.
         KILPATRICK TOWNSEND & STOCKTON LLP
12       2001 Ross Avenue
         Suite 4400
13       Dallas, Texas 75201
         214.922.7100
14
         THOMAS GRACE, ESQ.
15       MCVEY & PARSKEY
         30 North LaSalle Street
16       Suite 2100
         Chicago, Illinois 60602
17       312.551.2130

18

19

20

21

22

23

24

25
```



TELEPHONIC STATUS CONFERENCE
REBEKAH HILLMAN vs TORO CO.

March 16, 2023
3

```
 1                        INDEX

 2                                              PAGE

    Appearances                                  4
 3
    Conference Discussion
 4       Issue No. 1                             4
         Issue No. 2                            12
 5       Issue No. 3                            15
         Issue No. 4                            22
 6       Issue No. 5                            30

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                         PROCEEDINGS

 2        (On the record)

 3             THE CLERK:  This is the case of Hillman, et

 4   al., versus The Toro Company, civil case 21-4081.

 5             Counsel, please enter your appearance.

 6             MR. CROWLEY:  Steven Crowley for the

 7   Plaintiffs.

 8             MR. SCHIFFMAN:  Jason Schiffman on behalf of

 9   Plaintiffs.

10             MR. FLORENCE:  Kirk Florence on behalf of the

11   Defendant, The Toro Company.

12             MR. GRACE:  Tom Grace on behalf of the

13   Defendant, The Toro Company.

14             THE COURT:  Okay.  This is Magistrate Judge

15   Jonathan Hawley.  I note for the record everyone is

16   appearing by telephone.  This matter is set for a

17   hearing after a motion for hearing concerning a

18   discovery dispute, that's Docket No. 71, was filed by

19   plaintiff, granted that motion, set the matter for a

20   hearing now.

21             Plaintiffs' counsel, if you want to advise me

22   of the nature of the dispute.

23             MR. CROWLEY:  Thank you, Your Honor.  This is

24   Steve Crowley.  I will.  And if I start to talk too

25   low, let me know.  The first issue we have for the --
```



1    to discuss this afternoon is the privilege log that was

2    first presented on July 21st, 2022, after you issued

3    your order compelling discovery.  We had a skirmish

4    about that because there were 20 -- there were 55 new

5    privileged documents, because previously listed

6    documents were finally produced by Toro after they

7    waived the privilege that they claimed initially.  I

8    believe there were 55 new ones.  Then we -- we, like I

9    said, we had a discussion, a skirmish on those, and

10    they sent 30 of those documents that were redacted,

11    keeping 25 documents still unproduced under claims of

12    privilege.

13          And they appear very, very similar to the

14    other documents that were kept under a claim -- claim

15    of privilege, and they appear to have some very

16    significant information in them in the substance of

17    what Toro engineers and management discussed with

18    respect to the decision to exclude rollover protective

19    systems for the TimeCutter series.  And -- so in any

20    event, we have 25 documents that the Plaintiffs want

21    Toro to produce to the Court for review to rule on

22    whether or not they are entitled to the attorney-client

23    privilege.

24          We don't think they are.  I mean, we know

25    from -- from the description that they're relevant and



```
 1   certainly discoverable if they're not subject to the
 2   privilege, and the only privilege listed for any of
 3   these 25 documents is the attorney-client privilege.
 4   I'm concerned about the other 30 because they were
 5   selectively redacted, and it looks as though the most
 6   important information that may have been on them is
 7   redacted.
 8           So I understand the Court is busy, you've got
 9   a lot going on.  I mean, the most important thing is,
10   to me, is the first 25 documents that are completely
11   withheld under a claim of privilege.  And I've --
12           THE COURT:  Okay.
13           MR. CROWLEY:  -- got some more issues, judge,
14   but that's -- that's the gist of our first dispute.
15           THE COURT:  Okay.  Defense counsel.
16           MR. FLORENCE:  Your Honor, this is Kirk
17   Florence for The Toro Company.  This issue first came
18   up in late July or early August of last year shortly
19   after we made our production on July the 21st.  Since
20   it was, of course, discovery order, we submitted a
21   privilege log with the -- with the documents over which
22   we claimed privilege.  Some of them, we merely redacted
23   in a very surgical way, only the part that -- that was
24   privileged, and some of them we withheld.
25           Mr. -- Mr. Crowley raised an issue, I
```



```
 1   believe, in late July or early August, and we told him
 2   that we would again go back and look at them and see if
 3   there was any room for compromise.  And we did, and
 4   then following that, we changed the designations on
 5   five of those documents.  On, I believe it was, two or
 6   three of them, we changed it from withhold to just a
 7   redaction of a very small amount, we're talking there
 8   will be several pages and just maybe two or three lines
 9   for one area that contains legal advice from the
10   counsel for the company.  And then I think it was two
11   of them that we went ahead and withdrew the privilege
12   and went ahead and produced those.
13           So we -- we took a very surgical approach to
14   -- to the privilege claims.  We sent the revised
15   privilege log to Mr. Crowley, I believe it was, on
16   August the 26th and produced additional documents and
17   -- and -- and the redacted versions of the documents
18   that we had changed our designations on.  We sent a
19   letter explaining our process and that we had
20   re-reviewed them and offered to have a discussion with
21   Mr. Crowley if he wanted to go over anything further.
22   That was around the end of August.
23           And then we didn't hear anything for a period
24   of about six months or so, and then Mr. Crowley raised
25   this again recently and that led to two separate
```



1   meet-and-confer sessions with Mr. Crowley; but the

2   first one, we discovered that Mr. Crowley was -- had

3   not recalled that we had been through this process back

4   in August, so we reconvened the next day with all the

5   relevant information.  We discussed, again, you know,

6   we will take another fresh-eyes look at this and see if

7   there's something we can do to reach an accommodation.

8   We have done so, and we do believe that our privilege

9   claims are all valid and correct.

10          And it's -- it's obviously, you know,

11  important for a company like Toro to -- to be able to

12  get legal advice from its counsel without fear of

13  having it -- having it go through discovery.  So we are

14  -- we are perfectly comfortable if the Court wants to

15  review those in-camera, we can do that.  I -- I would

16  say, you know, that we were hoping that at this point

17  that we would be focusing on the -- the merits of the

18  case as opposed to discovery disputes that, you know,

19  that date back to issues that were done back in August,

20  with a mind towards the fact that we have a mediation

21  coming up with you next month.  So that's where we

22  would prefer to be spending our time going forward.

23          The other thing that -- the other point that

24  I would offer is I -- I -- I think what Mr. Crowley is

25  looking for is, you know, information about other



1  incidents, which we have already produced in a -- in a

2  form that doesn't invade our privilege, you know,

3  things like photographs -- photographs, demand letters,

4  complaints, all the information that came in on other

5  incidents that the Court ordered us to produce for all

6  the ZRT rollovers that were responsive to the -- their

7  discovery request.

8          So they -- if that's the information that

9  they -- they're looking for, they've -- they have that,

10  and they've had it since July.

11          THE COURT:  So I -- I don't -- if we're

12  talking about 25 documents, just out of an abundance of

13  caution, I don't have a problem reviewing those to

14  determine whether or not I agree or disagree with your

15  designation of them as being subject to attorney-client

16  privilege.  And it sounds like you don't have an

17  objection to that.  If I review it and agree with the

18  designation, I would just enter a text order saying,

19  you know, that I have reviewed it and I agree these are

20  privileged.  If I believe they are not privileged, I

21  would, you know, give you an opportunity to sort of

22  explain to me why you think I'm wrong.  So I -- I'm

23  happy to do that.

24          And as -- as I heard you, Defense counsel,

25  you -- you wouldn't object to that process; is that



```
 1   fair?
 2          MR. FLORENCE:  Well, right, we are -- we are
 3   comfortable with our designation.  I -- I -- just one
 4   thing, Your Honor, I believe it's 52 documents, as
 5   opposed to 25.  There are 25 that I -- I -- I haven't
 6   done the math on this, but roughly 25 that the
 7   documents are withheld, and then there's roughly 30, I
 8   think, that have this minor amount of redaction that I
 9   -- that I mentioned earlier.
10          THE COURT:  I -- well, and I thought I heard
11   Mr. Crowley just say that his primary concern is the
12   25, and I guess what I would say is, what I would
13   prefer to do is take a look at the 25.  If I think --
14   you know, I look at the privilege -- look at it and
15   say, you know, the privilege, I think, applies to all
16   25 documents; I think then it's probably fair to assume
17   that whatever process you used to redact the other
18   documents, would be consistent with your conclusion
19   that those documents were privileged.  If I find
20   otherwise, then -- then, you know, maybe we'd explore
21   considering the redacted documents; but first look at
22   the privileged designation, focus on the 25.
23          Mr. Crowley, I thought I -- that's what I
24   heard you to say.  And are -- are you comfortable with
25   that sort of process?
```



```
 1              MR. CROWLEY:  I am, judge.  I think the 25
 2    that were completely withheld are the important focus
 3    of our -- our issues right now.
 4              THE COURT:  Okay.
 5              MR. CROWLEY:  And that would be okay.  That
 6    would be fine with us.
 7              THE COURT:  Okay.  So, Defense counsel, if you
 8    would submit to me, and I think out of an abundance of
 9    caution, if you would just -- if you wouldn't mind just
10    -- I guess I don't care in what manner you do it, I
11    don't know if you can in CMECF upload a document that's
12    not viewable by opposing counsel or not, but you're --
13    you're welcome to upload them electronically if you can
14    do so in such a way that they're only viewable by the
15    Court.  I think you can, and that would be my
16    preference.  You're also welcome to send a hardcopy to
17    me.  Really, whatever works better for you.
18              And -- and timeframe, is 14 days enough time
19    to get those to me?
20              MR. FLORENCE:  Yes, Your Honor.
21              THE COURT:  Okay.  And so I -- I --
22              MR. FLORENCE:  (Indiscernible).
23              THE COURT:  Yeah, go ahead.
24              MR. FLORENCE:  I'm sorry to interrupt.  I -- I
25    take it that you just want the documents, you don't
```



1   need context or, you know, other information, you're

2   just looking at the documents, themselves; is that an

3   accurate --

4           THE COURT:  Right.

5           MR. FLORENCE:  -- statement?

6           THE COURT:  I mean, the documents and the

7   privilege log that relates to those.  At -- at least

8   for now that's really all I need to start.  So yeah, no

9   briefing.  No nothing else.  Just give me the documents

10  and the privilege log and let me take a look.  And then

11  if I have -- if there are issues or questions, then I

12  will obviously give you and the parties, to the extent

13  that I can maintain the confidentiality of the

14  documents, an opportunity to be heard; but at least

15  I'll take an initial look and see where we're at and go

16  from there.

17          So -- so for -- for that issue, the minutes

18  will indicate that Defense counsel is going to submit

19  to the Court in-camera on 25 documents for review

20  regarding assertion of attorney-client privilege.

21          Okay.  Second issue, Mr. Crowley.

22          MR. CROWLEY:  Thank you, Your Honor.  In

23  January of 2023 -- we concluded, after trying to get

24  through the 160,000 documents which were produced by

25  Toro, by January of 2023, we convinced ourselves that



1   there were a relatively large number of Bates-numbered

2   pages that were blank, simply said native file, or

3   there was just nothing there or we didn't have any

4   document.  My staff then went through the huge list of

5   directory that they provided and color-coded all those

6   that we could not find in any of the downloads or were

7   just blank pages and submitted those and said, can you

8   explain this, please.  We have yet to get an

9   explanation on that.

10          Now, Mr. Grace offered, in our recent meet

11  and confer a couple weeks ago before we made the

12  motion, Mr. Grace indicated that he was working with

13  someone at Toro who was trying to pin down the

14  information for this and was going to provide it as

15  soon as possible, and we still don't have it.  And I

16  understand this may be voluminous for them, but that's

17  the pile of documents they gave us and the directory.

18          So I would ask that the Court enter some kind

19  of a deadline that's reasonable and say, you know,

20  please respond to this specifically by this date.

21  Because -- and -- and I understand counsel are probably

22  not doing this themselves by hand, but the point is we

23  have a lot of folks doing this (indiscernible).  We

24  need some kind of response to the January inquiry to

25  understand what has been provided and what has not



1  because there seems to be this huge gap.  Well, Bates
2  numbers were produced, but there was just nothing on
3  it.
4           THE COURT:  Okay.  Defense counsel.
5           MR. GRACE:  Good afternoon, Your Honor.  This
6  is Tom Grace, McVey & Parskey, for Toro.  I did discuss
7  this with Mr. Crowley when we had our meet and confer.
8  He raised -- he did raise the issue in a letter dated
9  January 11th, which was less than a week before we had
10  30(b)(6) depositions scheduled.  Once we got through
11  those 30(b)(6) depositions, I began working through the
12  production trying to identify the gaps in Bates
13  numbers.  And I'm a very short distance away from being
14  able to provide Mr. Crowley a complete explanation of
15  what occurred.
16           I'm trying to be, you know, obviously, do
17  this in one shot, be comprehensive, be transparent, and
18  be completely accurate.  Some of this predates my
19  involvement in the case, so I'm going backwards a
20  little bit, but I'm making tremendous headway.  I
21  believe that certainly by a week from Monday, I could
22  have a comprehensive letter, an explanation and -- and
23  -- and -- and hopefully resolve these issues
24  permanently with Mr. Crowley and will remain available
25  to work with him to answer any of his questions.



```
 1          THE COURT:  Well, if I were to set a deadline
 2  for responding to Mr. Crowley's inquiries regarding
 3  gaps in, or perceived gaps, in production of discovery
 4  by March 30th, to give you, you know, I think a
 5  reasonable period of time, that's basically two weeks,
 6  you -- you think that would be sufficient?
 7          MR. GRACE:  That is, Your Honor.  We have been
 8  working very diligently.  I had -- we worked hard to
 9  try to get it done before today --
10          THE COURT:  Uh-huh.
11          MR. GRACE:  -- and -- and didn't -- wasn't
12  able to make it, but I believe that by the 30th would
13  be very comfortable for us to respond.
14          THE COURT:  Okay.  So, Mr. Crowley, if I set a
15  deadline for Defendants to respond to the inquiry
16  regarding perceived gaps in the production for
17  March 30th, 2023; would that satisfy you?
18          MR. CROWLEY:  Yes, judge.
19          THE COURT:  Okay.  So the docket -- so the
20  minutes will indicate that that deadline is set as it
21  relates to that issue.
22          Next issue, Mr. Crowley.
23          MR. CROWLEY:  The next issue, judge, is one
24  regarding the protective order.  As the Court -- as the
25  file shows, Mr. Schiffman, who is counsel for the
```



1   Plaintiffs in the case of Callahan versus Toro and

2   Exmark, and I -- or appeared -- appeared in Hillman and

3   was admitted pro hac vice, and then he appeared in, I

4   believe it was, January if I remember correctly, but I

5   -- I had that here.  Anyway, then I appeared in the

6   Callahan case in (indiscernible) pro hac vice over

7   TTC's objection.

8           And after I was admitted, Toro, moved for

9   modification of the protective order they got in

10  Callahan to prohibit me from being able to see any of

11  the documents that were produced by Toro in Callahan.

12  And Judge, I can't pronounce it, I think it's Egnese

13  (phonetic) -- Egnese --

14          THE COURT:  Judge Egnese.

15          MR. CROWLEY:  -- denied that with prejudice on

16  January 3rd, 2023.  So, thereafter, we didn't hear

17  anything more about it.  Then it was January of 2023, I

18  went up to Minneapolis and took two 30(b)(6)

19  depositions, one of a person named porter, Mr. Porter,

20  and the primary TTC designee was Carol Drutowski -- Dru

21  -- I'm sorry -- Drutowski.  I always want put the K

22  before the T.  Drutowski.  And during that deposition,

23  I marked five documents that I had found in the

24  Callahan case concerning most -- mostly rollover

25  protective systems (indiscernible) issue that could

1  have been produced by Toro in the Hillman case, but I

2  could not find in the Hillman documents, so I marked

3  them with the original Callahan numbers on them, and I

4  discussed them with Mr. Drutowski -- Drutowski, I'm

5  sorry.

6           There were no objections about that during

7  the, I believe, during the deposition.  Then after the

8  deposition, counsel for Toro from Pennsylvania wrote me

9  a letter and basically accusing me of misusing the

10  documents.  And I can assure the Court that I complied

11  with both protective orders, and so has Mr. Schiffman,

12  religiously.  Nobody but the court reporter and the

13  videographer in that deposition room saw those

14  documents and everybody else in the room were inhouse

15  lawyers and Mr. Florence from Toro or Toro employees or

16  myself.

17           So I represent to the Court, nobody outside

18  of either the Hillman case or the Callahan case has

19  seen any confidential documents.  We have been very

20  careful to comply with not just your order, obviously,

21  but both orders quite to (indiscernible) read the

22  ruling rejecting the request to modify in Pennsylvania.

23  So having been accused of that, I wanted to make it

24  clear that, especially given the provisions of Federal

25  Rule of Civil Procedure No. 1, that as long as we



1   comply with both your order in this case and the

2   judge's order, protective order, in Pennsylvania, that

3   we could use documents produced by Toro in either case

4   protecting them all the while according to both orders.

5          And had I proposed some language to Toro.

6   There were a few small changes to the order in your

7   case, just to make sure it included, when it says,

8   other litigation, it would include litigation directly

9   against Toro for a ZRT mower.  For the Court's quick

10  background, the Callahan case and Mr. (Indiscernible)

11  Exmark ZRT zero-turn mower.  Exmark is just a company

12  owned by Toro that makes almost very, very similar

13  zero-turn mowers.  And Exmark and Toro does engineering

14  design work together, they use some of the same

15  engineers and so forth.  It's a very (indiscernible)

16  situation because one owns the other completely.

17         And in that case an Exmark slid down a grassy

18  wet slope and flipped over a small retaining wall and

19  pinned Mr. Callahan underneath and he died from

20  asphyxiation.  (Indiscernible) on the mower, it pinned

21  him underneath on the concrete below, and he -- he

22  couldn't breathe, so he -- he died.  I believe that

23  mower was a 2004 Exmark.  (Indiscernible).

24         THE COURT:  So, Mr. Crowley, I guess I'm --

25  I'm a little confused about what you're asking, because



1  my -- my protective order in section -- section 2A

2  says, discovery within the scope of this order shall

3  not be used or disclosed by the parties, counsel for

4  the parties, or any other persons identified in

5  subparagraph E for any purpose whatsoever other than in

6  this litigation, including any appeal thereof.  So are

7  you asking to do something that is contrary to that

8  paragraph?

9        MR. CROWLEY:  No, Your Honor, I -- I don't

10 think I am.  I'm just asking, if -- if I get a document

11 in -- in Hillman that impeaches or is different from a

12 document from Toro that was used in Callahan, I -- I

13 guess what I'm saying is I can't un-know something that

14 I've learned from being the Callahan's lawyer.  And I

15 -- I guess what I'm trying to do is -- is make sure I

16 understand what the Court intends in that, because I

17 am --

18        THE COURT:  Well --

19        MR. CROWLEY:  -- counsel of record --

20        THE COURT:  -- so --

21        MR. CROWLEY:  -- in --

22        THE COURT:  -- I --

23        MR. CROWLEY:  -- Callahan.

24        THE COURT:  I understand the dilemma you're

25 in, and but -- and -- and look, I guess the judge in



1  the Callahan case has, you know, whatever he has to do

2  to enforce his order.  My order here basically says

3  that -- so if you get something in the other case and

4  you want to use it in this case, as long as you

5  disclose it to the other side, that doesn't violate my

6  order.  It might violate his, but it doesn't violate

7  mine.  But if you get something in this case and you

8  want to use it in the other case, that clearly violates

9  paragraph 2A.

10          MR. CROWLEY:  I -- I understand, Your Honor.

11  And I wanted to understand completely what you -- you

12  meant in your order, because like I said, the only --

13  what I did was I found documents in the Callahan

14  documents that were not produced in Hillman, I don't

15  believe, and I've asked Defense counsel to tell me if

16  they think they were produced, and as of today I

17  haven't heard back from them on that.  So I -- I want

18  to be very clear about that.

19          And I assume, based on -- on what you're

20  saying is, is that if Mr. Schiffman finds documents in

21  Hillman, as part of the attorneys for the Plaintiffs in

22  the Hillman case, he is not allowed to use it in the

23  Callahan case without the Court's permission; is that

24  -- that's -- that's what I'm trying to understand.

25          THE COURT:  That's correct.



1           MR. CROWLEY:  (Indiscernible).

2           THE COURT:  I mean, that's -- the -- the plain

3    language of the order says, anything in -- produced in

4    this case as part of the discover -- discovery process

5    can only be used in this case.  Now, I don't know what

6    the order says in the Callahan case, and it's not for

7    me to enforce that order.  So if you get something in

8    that case and you want to use it in this case, I mean,

9    it doesn't preclude the Defendants from making some

10   kind of argument about it, but, it's, you know, it's --

11   it's not a violation of my order; it might be the other

12   one.

13          But -- but yes, my concern is, is that just

14   to be clear, and I appreciate you wanting to know

15   exactly what the contours are because you're in kind of

16   a precarious situation here, is that anything you get

17   in this case in discovery, you -- you can only use it

18   in this case, period, okay?

19          MR. CROWLEY:  I understand, judge.

20          THE COURT:  Okay.  Defense counsel, any

21   questions about that?

22          MR. FLORENCE:  No, Your Honor.  That's --

23   that's consistent with -- with our understanding, as

24   well.

25          THE COURT:  Okay.  Mr. Crowley, do you have



1  another issue?

2          MR. CROWLEY:  Yes, Your Honor.  We took the

3  deposition of Carol Drutowski in January and under

4  30(b)(6) with a notice well in advance, and it's our

5  position that Ms. Drutowski was not responsive to many

6  of the most fundamental questions we asked her, did not

7  -- wasn't prepared to answer some of them, but in

8  others she just flat out didn't answer or didn't --

9  claimed she didn't know or hadn't been properly

10  prepared.

11          And so I proposed to Toro, since these were

12  taken at some expense to go out to Minneapolis, I would

13  accept a second chance with a different, or at least a

14  better prepared 30(b)(6) designee, and I would expect

15  Toro to pay the out-of-pocket expense, (indiscernible)

16  my attorney fees, but it's up to the federal rules,

17  they could be required to do that, too; but I'd be

18  satisfied with just hotel, travel, and -- and -- and

19  meals and the -- and the court reporter's fee.

20          I think we need -- we're entitled to take

21  another one because that was just a lot of pages that

22  were just -- and I know you don't have the transcript

23  -- transcript of the specific arguments in front of

24  you, but I have raised that issue, and I haven't heard

25  back from Toro.



```
 1                THE COURT:  Okay.
 2                MR. CROWLEY:  If they're --
 3                THE COURT:  Toro.
 4                MR. FLORENCE:  Your Honor, I -- I -- I -- we
 5      disagree with that characterization of Ms. Drutowski's
 6      testimony.  I -- I -- I don't know specifically the
 7      testimony that Mr. Crowley is -- is unhappy with, but
 8      the witness was prepared on multiple, multiple topics
 9      that were in about a 13-page list of topics for these
10      depositions.  And -- and if he's -- and if Mr. Crowley
11      is referring to other incident information, what
12      actually happened was, and I -- and I believe we said
13      this earlier, we produced a lot of documents and
14      information in -- in conformity with the Court's order
15      on prior incidents.
16                And the witness was prepared to testify about
17      those, but Plaintiffs' counsel when he came to the
18      deposition, apparently didn't bring that information
19      with him and didn't ask questions about the -- the
20      specific information that we had produced back in July.
21                THE COURT:  So --
22                MR. FLORENCE:  But I -- I --
23                THE COURT:  -- I guess here's what I'd say --
24                MR. FLORENCE:  So --
25                THE COURT:  -- to this issue --
```



```
 1              MR. FLORENCE:  I'm sorry, go ahead.
 2              THE COURT:  Yeah, and I don't mean to cut you
 3    off, but look, these issues related to the 30(b)(6)
 4    depositions are pretty fact specific.  I mean, I know
 5    what these notices of deposition look like.  There's,
 6    you know, a million topics on a million things, and
 7    you've got to get one person prepared.  No one person
 8    is going to be able to answer every possible question
 9    on every possible topic, so there's sort of a
10    reasonableness about, like, you know, did -- was the
11    person reasonably prepared under the circumstances
12    given the number of topics, scope, and the breadth.
13              And -- and really, the only way for me, if --
14    if there's a dispute about this, to make a decision on
15    that would be to allow Mr. Crowley to get the
16    transcript, file a motion where he sort of zones in on
17    -- on some clear examples, and then for me to review --
18    give you an opportunity to respond, and for me to, you
19    know, take a look.  So obviously, I can't resolve that
20    issue over the phone.
21              So, Mr. Crowley, if you -- you know, I'll give
22    you until -- I -- I guess we don't -- do you even have
23    the transcript yet?  Probably not; do you?
24              MR. CROWLEY:  Yeah, yeah, we do.  And it's
25    all --
```



```
 1              THE COURT:  Oh.
 2              MR. CROWLEY:  -- designated as confidential.
 3              THE COURT:  Okay.  So if you would, then --
 4  I'll give you until that March 30th date, as well, two
 5  weeks, if you want to file a motion related to the
 6  30(b)(6) deposition and just include, as a seal
 7  attachment, the, at least for the time being, the
 8  transcript of the deposition and I'll give Defense
 9  counsel 14 days to respond and then I'll go from there,
10  okay?
11              MR. CROWLEY:  That's fine, judge.  Thank you.
12              THE COURT:  Okay.  Any other issues?
13              MR. CROWLEY:  Yeah, judge.
14              MR. GRACE:  Your Honor, this --
15              THE COURT:  Yeah.
16              MR. CROWLEY:  Steven Crowley.
17              THE COURT:  Go ahead.
18              MR. CROWLEY:  This is --
19              MR. GRACE:  Your Honor, this is --
20              MR. CROWLEY:  -- Steven Crowley.  I'm sorry.
21              MR. GRACE:  This is Tom Grace.  I wanted to
22  comment on, if I could, on the last issue if I may.
23              THE COURT:  Sure.
24              MR. GRACE:  So the -- the -- as Mr. Florence
25  indicated, the only issue that we're really aware of is
```



1  this issue regarding the prior incidents, and we

2  discussed that and we had a meet and confer and we

3  identified and -- and explained that we believe we have

4  provided extensive information on that.  So to the

5  extent that we get a brief that goes beyond that issue,

6  we really haven't had an opportunity to meet and confer

7  and discuss that with Mr. Crowley.  So if I may, I'd

8  like to suggest that perhaps, rather than go right to

9  briefing, because again, what Mr. Florence had

10  indicated, we're all trying to prepare and get ready

11  for, you know, a settlement conference, if we could

12  perhaps just get, you know, a letter from him

13  identifying it, we could try to resolve it before we go

14  to full briefing.

15          That would be my only comment and -- and

16  perhaps suggestion to the Court.

17          THE COURT:  I mean, I'm all for trying to

18  resolve it short of briefing, and I -- I think that

19  Mr. Crowley, I -- knowing Mr. Crowley, I don't think he

20  would object to it.  You know, if -- if you -- even if

21  you can narrow the issue down or something, I -- I

22  mean, I assume that would -- that that's true, correct,

23  Mr. Crowley?

24          MR. CROWLEY:  Yes, Your Honor, but the -- the

25  issues actually are -- they go beyond that, and they're



 1    more important than just the other incidents.  One of
 2    the most important questions is, I've asked Toro in 15
 3    different -- well, not 15 -- exaggeration -- three
 4    different discovery devices who made the decision to
 5    exclude rollover protection of the TimeCutter, of the
 6    250,000 TimeCutter mowers they sold to Americans, and
 7    nobody has answered the question, including
 8    Ms. Drutowski, and that was on the notice.
 9              (Indiscernible) and also on the notice is be
10    prepared to discuss the evolution and changes to your
11    (indiscernible) corporate (indiscernible) property.
12    Toro has what's called a (indiscernible) corporate
13    policy.  And the one that applies to our mower, and I
14    believe it was a 2011 or 2012 document, but in any
15    event, they changed, definitely changed the
16    (indiscernible) policy from one type of document to a
17    particular procedure that's ten categories.
18              And I said, so then afterwards, somebody went
19    through these ten categories and decided they weren't
20    going to put it on the mower that injured Mrs. Hillman?
21    That's correct.  Who were those people?  Well, I
22    couldn't answer that.  I said, well, who was the most
23    authoritative person on the committee?  Couldn't answer
24    that.  Who made the final decision?  All I got was a
25    lot of people talked about it and thought about it.



1   I've asked it through interrogatories.  Didn't get an

2   answer.  I've asked it a in request for production.

3   I've got 160,000 documents that do not tell me who made

4   that decision, at least not yet.

5           So those were the issues that I was most

6   concerned about.  I'm also --

7           THE COURT:  Well, let --

8           MR. CROWLEY:  -- I --

9           THE COURT:  -- let me, because we're running

10  short on time, Mr. Crowley, I -- I guess, look, I think

11  what I'm hearing, and -- and -- and maybe this would be

12  helpful, and -- and again, I'm not precluding you from

13  filing a brief, but if you could sort of confer with

14  Mr. Grace with specificity about sort of, you know, the

15  information, you know, unless -- unless it's like

16  90 percent of what she said, but if there are certain

17  areas of critical information for which you've sought

18  discovery that you were looking for the 30(b)(6) and --

19  and you don't believe the 30(b)(6) witness was

20  adequately prepared, identify -- identify specifically

21  just what you did right here, you -- you know, confer

22  with opposing counsel, and -- and -- and see if there's

23  a way for them to either get you the information you're

24  looking for, if they think it's possible, or what have

25  you, in some vehicle or -- or respond to previously



1   outstanding written discovery, therefore, obviating the

2   need for another deposition of a 30(b)(6) witness if I

3   were to grant your motion to just see if -- if you can

4   narrow these topics down at least or -- or figure out

5   if there's other means, or maybe they'll say, look, we

6   have previously produced this, here it is or -- or --

7   but I -- I think that -- I think some -- something more

8   specific to confer with Defense counsel other than,

9   well, we don't think the 30(b)(6) witness was prepared

10  on a whole bunch of topics might at least narrow the

11  issues down.

12          And I'll -- I'll still leave the deadline for

13  filing the brief within 14 days, but if you want to

14  move that deadline based on, you know, preparing

15  something to confer on, et cetera, once you're -- once

16  you're conferring, you can always ask to move that

17  deadline.  But so I guess what I -- I would say on this

18  topic is that the Court is asking the parties to confer

19  more specifically regarding the 30(b)(6) deposition,

20  set the deadline for filing a motion related to that

21  for the Plaintiff for March 30th, 2023.

22          If the parties are still conferring and wish

23  additional time, Plaintiff can file a motion to extend

24  that deadline.  So let -- I think it's -- it's worth,

25  from what I'm hearing, it may be worth attempting to at



```
 1  least narrow the issues down.
 2              MR. CROWLEY:  Okay, judge.  We'll do that.
 3              THE COURT:  Okay.  Anything else, Mr. Crowley?
 4              MR. CROWLEY:  I have two questions, judge, and
 5  they're pretty straightforward.
 6              THE COURT:  Okay.
 7              MR. CROWLEY:  One is, am I allowed to file a
 8  motion to modify your protective order with my
 9  requested changes and -- and a brief brief?  I --
10              THE COURT:  Sure.
11              MR. CROWLEY:  -- don't want to upset the
12  Court, because I --
13              THE COURT:  Yeah, no, no.
14              MR. CROWLEY:  -- I do want to --
15              THE COURT:  I mean, if you want to -- if you
16  want to ask to modify it, I mean, I -- I -- it's -- you
17  -- you can file a motion to modify my protective order
18  and, you know, Defendants can respond, and I'll
19  consider it.  I mean, I'm unlikely to change it, but I
20  mean, I -- I -- it is an unusual circumstance, and if
21  you want to make an argument, I'm happy to consider it
22  and consider the Defendant's response.
23              MR. CROWLEY:  Thank you, judge.  And the
24  second thing, my -- my last question, I promise, is
25  with -- if -- if we believe that Toro has violated your
```



1  June 21st order compelling discovery, are we required

2  to continue to meet and confer on those issues?  And

3  the only reason I ask is according to Rule 37, my

4  understanding is once the Court has issued an order, if

5  -- if a party is aggrieved and believes it's not been

6  followed, I thought the meet and confer was over, but I

7  don't want to assume anything in your court, judge.

8       THE COURT:  Fair enough.  So what I would say

9  is if it relates -- if it relates to discovery, that --

10  that the process, even if it's a previously entered

11  order that relates to discovery that I entered that you

12  believe has not been complied with, that my expectation

13  is that you'd still follow the standing order, meet and

14  confer, and then file a motion for hearing concerning a

15  discovery dispute.  And then we go from there, okay?

16       MR. CROWLEY:  Thank you, Your Honor.  I

17  appreciate the clarification.  And I didn't mean to

18  lengthen the hearing any longer than it needed to be.

19       THE COURT:  No, no.  I -- I -- I don't -- I

20  just, you know, I have a hearing at 3:00, but I -- I

21  appreciate the concise nature of everybody's arguments

22  here.  I will say one thing, I know we have the

23  settlement conference that is set on the 23rd.  I know

24  that I set it initially by video, both sides asked for

25  it to be in-person, and I'm happy to do it in-person



1   and I -- I reset it in-person; but I -- I do want to,

2   you know, tell you that I know that you're all coming

3   from all over and I know it's inconvenient and it -- it

4   is -- can be expensive, but I -- if I'm going to do it

5   in-person, I want everybody in-person because I don't

6   like doing it by hybrid.

7          But I -- I will say, and I know -- and I know

8   that it was sort of gospel truth that in order to do a

9   settlement conference you needed everyone here

10  in-person.  And I believed that, as well, as did my

11  colleagues around the country.  When the pandemic hit,

12  that was not an option, we switched to video.  And I

13  would say that we almost universally agree that our

14  settlement conferences are as effective by video, if

15  not more so, than they are in-person.

16         And I only say that because, you know, I

17  don't want you all to think that, well, we -- we don't

18  want to get short-shrifted by doing it by video or if

19  -- you know, it's likely to be less effective.  You

20  know, I give those the same attention.  And in my

21  experience, they're very effective by video.  So I just

22  want you all to consider that.  I'm going to leave it

23  set in-person, but I think for both sides, there --

24  there would be benefits to avoid the -- the travel with

25  time and expense.



```
 1              I mean, look, if you have a settlement
 2   conference here in-person, you've got to come into
 3   town, you've got to stay overnight, and who knows, you
 4   may have to stay two nights, you've got flights, you've
 5   got -- so it's just something to consider.  I don't
 6   care because I'm here, so it's no skin off my back to
 7   do it in-person; but as you're concurring about these
 8   other things, I -- I think that, you know, you might
 9   want to talk about that.  And I'm open to doing it
10   either way, but if we are going to do it in-person, I
11   -- you've got to make sure that whoever is going to be
12   able to make the decision is going to be here.
13              So okay?  Any questions about that?
14              MR. CROWLEY:  None from the Plaintiff, Your
15   Honor.
16              THE COURT:  Okay.
17              MR. FLORENCE:  Thank you, Your Honor.  No
18   further questions here.
19              THE COURT:  Okay.  Well --
20              MR. SCHIFFMAN:  Thank you, Your Honor.
21              MR. GRACE:  Thank you, Your Honor.
22              THE COURT:  -- I'll see you all in about a
23   month.
24                            *  *  *
25
```



```
1    STATE OF WASHINGTON)
                        ) SS
2    COUNTY OF WHATCOM  )

3

4

5            I, CHRISTINE AIELLO, do hereby certify

6    that I transcribed the audio, and that the foregoing is

7    a true and complete transcription of the audio

8    transcribed under my personal direction.

9            IN WITNESS WHEREOF, I do hereunto set my

10   hand at Blaine, Washington, this 26th day of April,

11   2023.

12

13

14

15

16           _____

17                   Christine Aiello

18

19

20

21

22

23

24

25
```

