UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, Individually and as Next Friend of P.M.., a minor, AND JENNIFER HILLMAN <br><br> Plaintiffs, <br><br> v. <br><br> THE TORO COMPANY, <br><br> Defendant. | NO. 4:21-cv-04081-SLD-JEH |

**DEFENDANT THE TORO COMPANY'S**
**MOTION TO EXCLUDE PLAINTIFFS' EXPERT THOMAS BERRY**

COMES NOW Defendant, The Toro Company ("Defendant" or "TTC"), by and through its attorneys, and hereby moves this Court to exclude Plaintiffs' expert witness Thomas Berry from testifying at trial and summary judgment pursuant to Federal Rule of Civil Procedure 37(c), Federal Rule of Evidence 702, and *Daubert*. In support of this Motion, TTC states as follows:

Mr. Berry's Report, opinions, and any related testimony should be excluded from consideration on summary judgment and trial because (1) Mr. Berry's methodology is unreliable and (2) will not assist the trier of fact, and (3) his Late Opinion was not timely disclosed.

### I.   FACTUAL BACKGROUND[1]

Plaintiff Rebekah Hillman ("Rebekah") sustained severe leg injuries when Plaintiffs' 2013 Toro TimeCutter zero radius turn mower (the "Subject Mower") plunged over a six-foot

---

[1] A full recitation of the facts in this case can be found at Paragraphs 7.1–7.57 of TTC's Motion for Summary Judgment. Dkt. 113 at 11–32.

retaining wall and landed on top of her left leg. The incident occurred because Plaintiffs had intentionally disabled the mower's service brakes and steering controls, towed the mower to a precarious spot above two drop-off hazards, forgot to return the mower to operating mode, and then mistakenly attempted to operate the mower. *See* TTC's Motion for Summary Judgment, Dkt. 113.

Contrary to Plaintiffs' contentions, this is *not* a lawnmower "rollover" case or a "crashworthiness" case. A *rollover* occurs in one of two ways: (1) a lateral rollover –  when a mower loses traction on a sloped surface, slides down the slope and encounters a tripping hazard (such as landscape border, culvert or pond), and rolls over its side or (2) a backward longitudinal rollover – when a mower is driven forward up a steep incline, causing the front of the mower to lift off the ground and roll over its back end.  By contrast, the incident in this case resulted from the mower falling head first directly over a drop-off (the retaining wall), landing on its front edge or nose, and the momentum carrying it forward in a somersault with the mower coming to rest upside down, on its control handles.  Here, the mower pitched over forward after Plaintiffs intentionally disabled its controls; the mower never lost traction or rolled over on its side (laterally) or backwards (longitudinally).  Likewise, Plaintiffs do not plead that the Mower was not crashworthy.

It is undisputed that the accident occurred on June 18, 2020. Dkt. 17. Amended Complaint ¶¶ 13, 26. On August 5, 2020, just a few weeks after the incident, Plaintiffs retained expert David Bilek to inspect the scene of the accident, allowing him the opportunity to see and measure the hill and surrounding area. *See* Bilek Memorandum dated August 5, 2020, Exhibit No. 5 to Bilek's Deposition, attached hereto as Exhibit A. Indeed, when Mr. Bilek performed his inspection, he knew that the Plaintiffs had plans to alter the landscape soon

thereafter and that he was there to preserve details regarding the site before its destruction. Bilek Dep., 72:25–76:20, relevant excerpts of Bilek's Deposition are attached hereto as Exhibit B. The Plaintiffs did not give TTC the same opportunity, although they had retained an attorney, hired an expert and knew that TTC would be a defendant in the case.

After allowing only Mr. Bilek to visit the incident site, Plaintiffs substantially altered the hill upon which this accident occurred by re-grading the slope with a bulldozer and completely changing the landscape just a few weeks later. Jennifer's Answer to Defendant's Supplemental Interrogatory No. 10, attached hereto as Exhibit C, pgs. 5-6. Due to Plaintiffs' deliberate actions, TTC and its expert witnesses were never able to physically inspect, measure or digitally preserve the actual scene as it existed on the day of the incident. Further, Mr. Bilek, as more fully explained in TTC's Motion to Exclude his opinions, failed to preserve all the necessary data from the site, or even properly and completely photograph all relevant portions of the entire site, thereby prejudicing TTC and its experts by preventing their opportunity evaluate the conditions of the site and capture all needed data. Mr. Berry relies on such incomplete photos and videos of the accident site in his report.[2]

## II.   PLAINTIFFS' DESIGNATION OF THOMAS BERRY

Plaintiffs' deadline to disclose their expert witnesses and expert reports was March 17, 2023. *See* Text Order Granting Joint Motion to Extend Discovery Deadlines dated December 29, 2022. Plaintiffs' deadline to disclose their rebuttal expert witnesses was July 3, 2023. The deadline to complete expert depositions was August 1, 2023. *Id.*

On March 17, 2023, Plaintiffs designated Thomas A. Berry ("Mr. Berry") as a retained expert and produced Mr. Berry's expert report. Mr. Berry's expert report ("Report" or "Berry

---

[2] *See* Exhibit D, Berry Report, (item numbers 25, 31-33, 35-36, and 39-40).

Report") is attached hereto as <u>Exhibit D.</u> Mr. Berry is a licensed professional engineer whose report generally opined that the Subject Mower is defective in design and unreasonably dangerous. <u>Ex. D</u>, pg. 61. On July 10, 2023, Mr. Berry was deposed. Relevant excerpts from Mr. Berry's deposition are attached hereto as <u>Exhibit E</u>.

However, on August 10, 2023 (over a week after the discovery deadline, thirty-eight days after Plaintiffs' rebuttal expert deadline, and over 146 days after Plaintiffs' initial expert disclosure deadline) ***and even after TTC completed Mr. Berry's deposition***, Plaintiffs produced additional expert opinions and video tests by Mr. Berry. Mr. Berry's untimely memorandum dated August 10, 2023 is attached hereto as <u>Exhibit F</u> (the "Late Opinion").

Mr. Berry's initial Report and Late Opinion are based on unreliable methodology and should be excluded under *Daubert* and Fed. R. Evid. 702. Additionally, Mr. Berry's Late Opinion and corresponding late testing videos should be excluded as untimely under Fed. R. Civ. P. 37(c).[3]

### III.    GROUNDS FOR EXCLUSION

TTC moves to exclude from trial and summary judgment the opinions and testimony of Mr. Berry on the following grounds:

1) Mr. Berry's methodology underlying all of his opinions is unreliable;
2) Mr. Berry's opinions are not based on facts and data reasonably related to the evidence in this case or the mechanism and nature of this incident; and
3) Mr. Berry's Late Opinion was not timely disclosed.

Therefore, under Federal Rule of Evidence 702, 703 *Daubert*, and Fed. R. Civ. P. 37, Mr. Berry's opinions and testimony should be excluded from consideration of summary judgment or any trial in this case.

---

[3] Any reference to or reliance upon Mr. Berry's Late Opinion and corresponding late testing videos by any of Plaintiffs' other expert witnesses should likewise be excluded from trial and summary judgment in this case.

## IV.    LEGAL STANDARD

Federal Rule of Evidence 702 permits expert witness testimony where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principals and methods to the facts of the case." Fed. R. Evid. 702. *Daubert* interpreted Rule 702 to charge district courts with ensuring that expert testimony is reliable and relevant—that is, "whether the reasoning and methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology can be applied to the facts at issue." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589-93 (1993).

Rule 702 and *Daubert* mandate a three-part analysis before a district court admits expert testimony. The court must (i) determine whether the witness is qualified by knowledge, skill, experience, training, or education; (ii) whether the expert's methodology is scientifically reliable; and (iii) the testimony must assist the trier of fact in understanding the evidence or determining a factual issue. *See Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). Here, TTC moves to exclude Mr. Berry's opinions and testimony under steps (ii) and (iii) above (that Mr. Berry's methodology is unreliable and therefore his testimony does not assist the trier of fact in understanding the evidence).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence under Federal Rule of Evidence 104(a). *See Daubert*, 509 U.S. at 592 n.10. The principles set forth in *Daubert* apply to all expert testimony, not just scientific. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Additionally, courts are admonished to keep Federal Rule of Evidence 403 in mind when considering expert

testimony. *Daubert*, 509 U.S. at 595. Rule 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Thus, where a party does not timely file expert reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir. 2000). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005).

## V.    MEMORANDUM OF LAW

Mr. Berry's Report, opinions, and any related testimony should be excluded from consideration on summary judgment and trial because Mr. Berry's methodology is unreliable and because his Late Opinion was not timely disclosed.

### A.  Mr. Berry's Methodology is Unreliable and Will Not Assist the Trier of Fact.

"It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Where that link is missing, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion

proffered." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997). Here, an analytical gap exists between the data Mr. Berry relies on and his proffered opinion.

### 1. Mr. Berry's Opinions are Based on Unreliable and Incomplete Data.

Mr. Berry relies on several unrelated underlying "facts" in his report that render his opinion unreliable:

- Mr. Berry references John Deere documents from 1972 and 1985 (a time during which the Subject Mower was not in production by TTC);
- Figure 11 in Mr. Berry's report depicts the currently offered 48-inch John Deere Z325E, but there is no ROPS standard or option for this machine or any other John Deere zero-turn in the Z-300 series class, which is the Subject Mower's equivalent class;
- Mr. Berry references a John Deere Z425 mower, a larger Scag mower, the "Patriot" mower, and a "Freedom Z" mower; and
- Mr. Berry references a John Deere Z225 (Figure 12 of his report) that did not have an automatic engagement of a parking brake.

Ex. D, pgs. 4-9, 15; Expert Report of Daniel Toomey, Ph.D., P.E. dated May 8, 2023, attached hereto as Exhibit G at pgs. 20-24. Mr. Berry uses these unrelated mowers to "compare" and come to the conclusion that the Subject Mower is "defective and unreasonably dangerous." Ex. D, pg. 29. But Mr. Berry fails to connect these various other mowers and materials to the conclusion that the Subject Mower is defective or unreasonably dangerous.

Indeed, Mr. Berry's purported "tilt tests" and "slope tests" conducted on the Subject Mower have nothing to do with the John Deere and other unrelated materials. Mr. Berry failed to do any testing that would show that mowers with his suggested alternative parking brake systems could or should be used to stop the mower while it is dynamically moving down a slope. Ex. G, pgs. 22-23. Further, Mr. Berry's opinions in his Report regarding a proposed inclinometer should be excluded, as Mr. Berry admitted that such opinions are not relevant to causation in this case. Ex. E, Berry Dep. 130:3-14 ("Q. I know that in your report you made reference to an inclinometer, are you saying that that's not really relevant to this case? A. I

don't think, I don't see the causation part of that with respect to, it should have one, but I don't see how it would have prevented it… I don't know that an inclinometer would make a difference.").

Mr. Berry's opinions therefore lack the requisite analytical connection between the underlying facts and his opinions, rendering his opinions unhelpful to the trier of fact in understanding the evidence. Mr. Berry's report and testimony should be excluded from summary judgment and trial.

> **2. There is an Analytical Gap Between Mr. Berry's Conclusions and the Data Employed.**

"When a district court concludes that there is simply too great an analytical gap between the data and opinion proffered such that the opinion amounts to nothing more than the ipse dixit of the expert, it is not an abuse of discretion under *Daubert* to exclude that testimony." *Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 374 (7th Cir. 2023) (quoting *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015)).

Mr. Berry devotes much commentary in his Report to facts and circumstances ***not*** involved in this case. Much of Mr. Berry's experience admittedly relates to rollover accidents, but very little of Mr. Berry's efforts were directed to the facts and dynamics of the accident at issue – a front nosedive over a 6-foot retaining wall. Even if Mr. Berry is qualified to discuss and opine on rollover accidents, this case does not involve a rollover accident and Mr. Berry has not applied any scientific analysis to any relevant data to formulate his opinions that will help the jury understand any fact or issue in ***this case***.

Indeed, Mr. Berry simply recycled his "standard" report template as his Report for this case that included opinions that he admits have no application to this case. As he explained in his deposition:

Q.  I know that in your report you made reference to an inclinometer, are you saying that that's not really relevant to this case?

A.  I don't think, I don't see the causation part of that with respect to, it should have one, but I don't see how it would have prevented it.

Q.  Why did you include it in your report?

A.  It's opinions that I have developed over the years and this involved a slope, but it wouldn't be a slope of what Toro expected, I don't know that an inclinometer would make a difference.

Q.  So it is in your standard report, but it doesn't really apply to the facts of this case, is that what you are saying?

A.  Correct.  It's an opinion that I have developed with respect to mowers.  I put it in there because of that.

Q.  I am just trying to make sure I understand.  I think we are agreeing it's not really relevant to the facts of this case, is that an accurate statement?

A.  Yes.  I don't plan on talking about it, if this goes to trial.

Ex. E, Berry Dep., 130:3 -131:1.  An inclinometer, an instrument used to measure a slope, is not relevant to this case because this case does not involve a rollover accident.

Much of Mr. Berry's Report falls into the same category – an opinion that he developed regarding accidents and mowers that do not apply to this case.  When asked in his deposition about his experience with this type of accident, he explained that it was limited to two incidents:[4]

Q.  Of the cases that you have looked at in the past, how many of them have been a frontward roll off of a drop off?

A.  That Woods mower, that's the way it went off.  I don't recall, there was a Scag, older Scag mower that went off into a lake.  I think it landed on the front and then over on to its side, but it pinned the operator underneath the water and he ended up with a really bad brain injury.  So there are two that went that way.

Ex. E, Berry Dep., 52:22 -53:6.  And Mr. Berry has never investigated an incident where a TimeCutter, like the Subject Mower, was involved in a nosedive over an embankment or a retaining

---

[4] Put in context, Mr. Berry has served as an expert in over 40 cases involving zero radius turn lawnmowers. Ex. E, Berry Dep., 27:9-14.

wall.  Ex. E, Berry Dep., 67:5-13.  Mr. Berry could only identify two prior accidents that he

investigated that were even remotely similar to this one, and his Report does not include a detailed

analysis or comparison of them.  Accordingly, the Court should preclude Mr. Berry's Report,

related opinions, and testimony from consideration as to Summary Judgment or presentation at

any trial because it will not assist, but rather confuse, the facts, issues, and ultimately the jury *in

this case*.

The Seventh Circuit Court of Appeals recently stated the requirements of Fed. R. Evid. 702

this way:

> Rule 702 provides that a qualified expert witness may offer an opinion only
> if: (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is the product of
> reliable principles and methods; and (d) **the expert has reliably applied the
> principles and methods *to the facts of the case*.** *Anderson v. Raymond Corp.*, 61
> F.4th 505, 508 (7th Cir. 2023). When analyzing whether an expert's reasoning or
> methodology is scientifically valid, some factors we consider are: "(1) whether the
> particular scientific theory can be (and has been) tested; (2) whether the theory has
> been subjected to peer review and publication; (3) the known or potential rate of
> error; (4) the existence and maintenance of standards controlling the technique's
> operation; and (5) whether the technique has achieved general acceptance in the
> relevant scientific or expert community." *Id.* at 509 (cleaned up).

*Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 373 (2023). (**Bold and *italics*** emphasis added.)  As

applied to Tom Berry's Report and opinions, he fails to meet several of the requirements but most

obviously the last requirement – "the expert has reliably applied the principles and methods to the

facts of the case" (subparagraph (d) above).

Much of Mr. Berry's Report is devoted to "rollover" incidents and the protection that ROPS

provides in a "rollover."  **But this is not a rollover case**.  As Mr. Berry readily acknowledged in

his Report, "[t]he mower went front end first over the retaining wall while Ms. Hillman tried to

jump off the mower."  Ex. D, p. 3.  Despite recognizing the nature of the incident at issue, Mr.

Berry writes "[t]he hazard in this instance is the rollover of the riding mower laterally and longitudinally." Ex. D, p. 9. But that did not occur here – the mower did a nosedive directly over a drop-off. In that same paragraph in his Report, Mr. Berry references incidents that occurred as much as 30 years before the Subject Mower was manufactured and included garden tractors. *Id*.

The next page of Mr. Berry's Report provides confusing comments regarding "stability related accidents" that occurred between 1987 and 1990 and the ability of an operator to "exit an overturning mower." Ex. D, p. 10. He observes that an inability of the operator to separate from the mower (which did not occur in this incident) increases the "risk of injury or death." *Id*. However, the Report does not include any data, analysis of any data, or testing. And Mr. Berry does not relate the references to any fact or evidence in this case, such as the speed of the Subject Mower as it rolled down the hill, the distance it rolled, or the amount of time that it rolled. Nor did he consider how the physical characteristics of the accident site may have impacted any such analysis, such as the length of the grass, the condition – softness, hardness or soil type - of the ground, condition and air pressure of the tires on the Subject Mower, or any physical evidence ***in this case*** that would indicate any scientific analysis or applied methodology.[5] Instead, Mr. Berry simply offers his *ipse dixit* conclusion. *Burns*, 78 F.4th at 364 (7th Cir. 2023) ("Ferrone also opined that Sherwin-Williams failed to maintain the braking system on the walkie and failed to inspect the equipment. But he provides no support or foundation for these opinions. He only recites facts of the case without providing an analysis. Accordingly, this testimony is inadmissible as well.") *citing Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

---

[5] No such data from the accident site or the Subject Mower from the time of the incident exists because the Plaintiffs bulldozed the site of the incident before TTC had an opportunity to inspect it and their expert, Mr. Bilek, hired to preserve the incident site, failed to collect the data as part of his inspection.

Mr. Berry then devotes pages 13-27 of his Report – nearly half - to a discussion of ROPS and *rollover* incidents.  Nowhere in those many pages does Mr. Berry discuss any testing that he performed regarding an incident like this one – where the mower nosedived over a 6-foot retaining wall landing on its front and then tipping over onto its control arms.  Even the occasional reference to a tip over is not clear as to whether it refers to a tip over the back end of the mower (from driving up a steep slope at too great a speed, for example) as opposed to a nosedive of the front end going down a slope and over a drop-off, like what occurred in this case.  Given that Mr. Berry is aware of only two other incidents like this one, it is likely that a nosedive over a retaining wall was not involved.

Finally, on pages 29 and 30 of the Report, Mr. Berry articulates the information upon which he based his opinions, lists 10 opinions – some of which contain multiple concepts and overlap each other, and 3 design alternatives.  Ex. D, p. 29-30.  The following addresses each in turn.  None of those opinions result from any testing that Mr. Berry performed in this case, his application of any engineering or other scientific evaluation of the incident site or the action of the Subject Mower at the incident site, or how his experience with rollover incidents applies to this scenario that does not involve a rollover.  When reviewed carefully, Mr. Berry's opinions meet neither the standards of Fed. R. Evid. 702 or 703, nor the requirements set forth in *Daubert* and more recently *Burns*.

    a.   Opinion #1: A Hodgepodge of Conclusory Claims

This first opinion begins with a conclusory statement regarding the design of the Subject Mower and then claims that it "lacked crashworthiness" for the operator when it "rolls over." Again, this is not a rollover or crashworthiness case.  For any of his commentary to be relevant and helpful to either the Court on Summary Judgment or the jury, if a trial occurs, Mr. Berry must show that the presence of ROPS on the Subject Mower would have prevented Rebekah's injuries.

*Young v. Bryco Arms*, 213 Ill2d 433, 821 N.E.2d 1078, 1085 (2004) (For cause-in-fact, the Court must ask "whether the injury would have occurred absent the defendant's conduct.")

Mr. Berry asserts this opinion without any scientific basis or as the result of any scientific methodology.  Indeed, Mr. Berry admitted in his deposition that he conducted no tests and made no calculations as to whether ROPS would have prevented Rebekah's injuries or what would have happened if the Subject Mower had ROPS. Ex. E, Berry Dep., 94:17 – 99:22. Mr. Berry has offered nothing more than his subjective personal opinions and conclusions regarding the absence of ROPS on the Subject Mower, unsupported by any analysis of data in this case or the application of any scientific method and therefore his opinion on ROPS amounts to nothing more than the *ipse dixit* of an expert and is inadmissible.  *Burns*, 78 F.4th at 374, *citing C.W. ex. rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015).

As part of Opinion #1, Mr. Berry opines that the Subject Mower lacked the means for an operator to stop the mower if the "hydrostatic transaxles was not available."  But those are not the facts of this case. The hydrostatic motors were available to the Plaintiffs. Indeed, they had intentionally disabled them and had the means and knowledge to easily reactivate them. The Plaintiffs admittedly forgot to do so. The Subject Mower was equipped with the exact device needed to engage the hydrostatic motors and the Plaintiffs knew how to use the device as they had used it moments before the incident occurred. The Plaintiffs needed only to return the bypass pins to the correct position for operation of the mower and Rebekah would have been able to steer and stop the mower. Mr. Berry's claim that the mower lacked the means to stop is misleading and not based on the facts of the case or supported by any scientific data. Even further, Mr. Berry did no testing to determine whether his proposed emergency brake on the TimeCutter would have stopped

the Subject Mower. Ex. E, Berry Dep., 126:5-20. Once again, Mr. Berry seeks to force his opinions into this case simply because he claims to be an expert.

The remainder of Opinion #1 includes only conclusory statements about foreseeability and the risk of injury presumably based upon his deficient claims of design defects due to a lack of ROPS and an additional emergency brake. Opinion #1 does not result from any scientific method or analysis of any related data, does not meet the requirements of Fed. R. Evid. 702, and should be excluded from consideration on summary judgment or at trial, if necessary.

b. Opinion #2: Claimed Failure Regarding the "Design Safety Hierarchy."

In Opinion #2, Mr. Berry claims that TTC violated the "design safety hierarchy" "by not installing rollover protection or a means for the operator to stop the mower in the event of loss of control from the hydrostatic transaxles." The substance of this opinion is discussed above. Regarding the design safety hierarchy, Mr. Berry cannot know what TTC did or did not consider during development and design of the TimeCutter – and his suggestion that he does know is pure speculation.  Nor does Mr. Berry cite a law, statute, or regulation that required TTC to follow Mr. Berry's understanding of the hierarchy.  His suggestion otherwise would do nothing more than mislead and confuse the jury to believe that some requirement regarding his claimed hierarchy exists.  Since this opinion would not aid the jury, or the Court on summary judgment, it should be excluded from consideration.

c. Opinion #3: A Statement Regarding What Happened

This opinion is not really an opinion at all, but is simply Mr. Berry's statement as to what he believes the facts to be.  Nevertheless, the Subject Mower did not become "uncontrollable on the slope."  Instead, the Plaintiffs intentionally disabled the Subject Mower's steering and braking systems and then towed the Subject Mower up a slope.  Mr. Berry's statement is misleading and

suggests that some unexpected loss of control occurred when nothing of the sort happened.  This statement will only confuse the jury and should be excluded.  Fed. R. Evid. 403.

     d.   <u>Opinion #4:  Irrelevant Claim Regarding Rollover Protection</u>

This "opinion" is also not really an opinion, but Mr. Berry's observation that the Subject Mower was designed without ROPS.  While true, the absence of ROPS did not make the Subject Mower defective, as discussed herein.  Again, this "opinion" fails to assist the jury under Fed. R. Evid. 702.

     e.   <u>Opinion #5:  Unsupported Statement Regarding Causation</u>

In this opinion, Mr. Berry claims that purported design defects caused Rebekah's injuries.  This opinion is not based on any scientific methodology, testing or analysis but is nothing more than Mr. Berry's conclusory statement. <u>Ex. E</u>, Berry Dep., 126:5-20.  This statement also overlooks the important evidence in this case that the Plaintiffs forgot to return the bypass pins to the proper position for operation and their failure to do so caused Rebekah's injuries.  The purported opinion is not based on the case facts or any scientific testing or analysis, and falls far short of the *Daubert* requirements.

     f.   <u>Opinion #6: A Second Hodgepodge of Conclusory Claims</u>

This opinion is another mix of different theories from Mr. Berry regarding ROPS, an additional emergency brake and an interlock.  His claims regarding ROPS and an emergency brake are addressed above.  Regarding an interlock, Mr. Berry promoted an interlock that would prevent the operator from attempting to operate the TimeCutter with the bypass pins engaged.  However, Mr. Berry could not point to any other mowers that utilize such an interlock and has done no scientific testing or analyzed any relevant data regarding whether such an interlock would work or be effective. <u>Ex. E</u>, Berry Dep., 88:7-15.   Once again, this opinion is nothing more than a

conclusory statement not based on any scientific methodology or data relevant to the facts of this case.

g.   Opinion #7:  An Inaccurate Statement Regarding Foreseeability

This opinion is nothing more than Mr. Berry's personal belief regarding the foreseeable use of the mower.  Mr. Berry's own deposition testimony belies this opinion in that he testified that he was aware of only two other incidents involving a nosedive over a retaining wall and neither of those incidents involved a TimeCutter, like the Subject Mower, or a situation in which the hydrostatic braking system was intentionally disabled. This is also confirmed in the Affidavit of Todd Porter. Porter Affidavit, attached hereto as Exhibit H. In his affidavit, Mr. Porter states that "The Toro Company has no record or notice since 2005 of any incident similar to the Incident involving the Plaintiffs …" Ex. H, Porter Affidavit, ¶ 23.  Any claim by Mr. Berry that this incident was foreseeable is his personal opinion and not the result of any scientific or data-based analysis.

h.   Opinion #8:  A Second Incorrect Statement Regarding Foreseeability

This second opinion regarding foreseeability presumes that the Subject Mower was dangerous.  Indeed, the Plaintiffs operated the Subject Mower for many years without incident. Ex. C, pg. 8.  This opinion is pure speculation by Mr. Berry regarding what "owners, operators and users" of the TimeCutter would expect. Once again, this opinion is not based on any scientific analysis or data.

i.   Opinion #9:  A Speculative Statement Regarding ROPS and Rollovers

This opinion relates to Mr. Berry's beliefs regarding ROPS, already addressed herein.  And Mr. Berry's claim regarding ROPS preventing injuries "due to rollovers" is irrelevant to this case that involves a disabled mower rolling directly down a slope and then nosediving over a retaining wall.

j.   Opinion #10:  An Unsupported Statement Regarding TTC's Testing

This opinion makes a claim about inadequate testing due to "the loss of hydrostatic braking and rollovers." Presumably Mr. Berry referred to events involving both the loss of hydrostatic braking and then a rollover. Once again, this case does not involve a rollover but a nosedive over a retaining wall.  The test results or the amount of testing of the loss of hydrostatic braking leading to a rollover is irrelevant and did not occur here. In this case, no "loss" of hydrostatic braking occurred nor did the Subject Mower roll over. This final opinion is wholly irrelevant to the facts of this case and will not aid the jury (or the Court on summary judgment) with any issue in the case.  Fed. R. Evid. 702.

### 3.   Mr. Berry's Methodology Cannot be Tested, Has not been Subject to Peer Review, and Provides no Potential Error Rate.

Factors that may be considered in assessing the reliability of an expert's underlying technique or theory are: (1) whether it can be tested or is falsifiable; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether it has been generally accepted within the scientific community. *Daubert*, 509 U.S. at 593-94. First, Mr. Berry does not provide any known or potential rate of error in his report. Second, Mr. Berry's methodology cannot be tested and is not falsifiable, because TTC's experts never got the opportunity to inspect and visit the scene of the accident after Plaintiffs intentionally destroyed it. *See Burns*, 78 F.4th at 374 (affirming district court's exclusion of expert witness stating proffered expert's opinion "cannot be tested and is not subject to peer review, we cannot determine an error rate for the tests…").

Plaintiffs and their expert witnesses had a duty to preserve the scene of the accident. *Cohn v. Guaranteed Rate, Inc.*, 318 FRD 350, 354 (N.D. Ill. 2016) (the duty to preserve is

broad and encompasses any evidence that the party knew or reasonably could foresee would be relevant to the action). Plaintiffs certainly had knowledge that the scene of the accident would be relevant to this lawsuit, as they hired an expert witness to inspect the site. Plaintiffs should not be permitted to offer expert "opinions" and conclusions as to how the accident occurred, when they spoliated the evidence after allowing only their expert witness to visit the scene. Mr. Berry's methodology cannot be tested and is not falsifiable and should be excluded.

**B.  Mr. Berry's Late Opinion Was Not Timely Disclosed and Should be Excluded.**

Federal Rule of Civil Procedure 37(c) provides:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Here, Plaintiffs failed to timely provide their expert disclosures by producing Mr. Berry's Late Opinion well past the deadline. Ex. F. Plaintiffs have the burden to show that this failure was substantially justified or is harmless. *Keach*, 419 F.3d at 639. No justification exists here, as Plaintiffs timely provided the expert disclosures for *five* separate expert witnesses. Further, the Late Opinion prejudices TTC because TTC could not and cannot properly designate a rebuttal expert on the Late Opinion within the discovery period. *See Finwall v. City of Chicago*, 239 F.R.D. 494 (N.D. Ill. 2006) (excluding plaintiff's expert report under Rule 37(c) where late disclosure prohibited the defendants from engaging a rebuttal expert within discovery period). Mr. Berry's Late Opinion and purported supporting videos should be excluded from summary judgment and trial and Mr. Berry should not be permitted to testify regarding the matters within the Late Opinion.

### C.  Mr. Berry is Not a Warnings Expert and Should be Precluded from Testifying Regarding Warnings.

Mr. Berry should be excluded from testifying regarding any warnings opinions or proposed alternative warnings. In his report, Mr. Berry included a reference to the "Hydrogear" warnings. <u>Ex. D</u>, pgs. 6-7. However, Mr. Berry testified that he is not a "specialist in warnings" and did not design any warnings in this case. <u>Ex. E</u>, Berry Dep. 7:24-8:4, 132:12-23. Therefore, the Court should exclude Mr. Berry from offering any opinions or testimony about warnings, failure to warn, or proposed alternative warnings.

## VI.    CONCLUSION

For the foregoing reasons, TTC requests that the Court grant its motion to exclude Mr. Berry's opinions and testimony under Federal Rule of Evidence 702, 703 and *Daubert*, grant its motion to exclude Mr. Berry's Late Opinion under Federal Rule of Civil Procedure 37(c), and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**Parsky & Galloway, LLC**

<u>/s/ Thomas G. Grace</u>
Thomas G. Grace,
*Attorney for Defendant, The Toro Company*

October 30, 2023

Thomas G. Grace, Esq.
Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL  60602
Tel. 312-551-2130
tgg@pg-lawoffice.com

Kirk T. Florence, Esq.
Kilpatrick Townsend & Stockton, LLP
2001 Ross Ave., Suite 4400
Dallas, TX  75201
Telephone:     214-922-7139
Email: KFlorence@kilpatricktownsend.com

### CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

In accordance with Local Rule 7.1(B)(4), I, Thomas Grace, hereby certify that **Section V Memorandum of Law** of TTC's Motion to Exclude Expert Witness Thomas Berry complies with the type volume limitation, as it does not exceed 15 pages in length.

/s/ Thomas G. Grace
Thomas G. Grace

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2023 I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for that counsel or parties who are not authorized to receive electronic Notice of Electronic Filing:

STEVEN J. CROWLEY
EDWARD J PRILL
ANDREW MAHONEY
CROWLEY & PRILL
3012 Division Street
Burlington, Iowa 52601
Phone:      (319) 753-1330
Email:       SCrowley@CrowleyPrillattorneys.com
               EPrill@CrowleyPrillAttorneys.com
               AMahoney@CrowleyPrillAttorneys.com

JASON M. SCHIFFMAN
SCHIFFMAN FIRM, LLC
1300 Fifth Avenue
Pittsburgh, PA  15219
Phone:  412-288-9444
Email:       Jason@SchiffmanFirm.com

**Parsky & Galloway, LLC**

/s/ Thomas G. Grace
Thomas G. Grace,
*Attorney for Defendant, The Toro Company*

Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL  60602
Tel. 312-551-2130
tgg@pg-lawoffice.com