# EXHIBIT B

**In the Matter Of:**

**HILLMAN vs THE TORO COMPANY**

NO:4:21-cv-04081-SLD-JEH

**DAVID JOHN BILEK**

*August 14, 2023*



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

```
                    UNITED STATES DISTRICT COURT
                 FOR THE CENTRAL DISTRICT OF ILLINOIS
                         ROCK ISLAND DIVISION

  REBEKAH HILLMAN, individually     )
  and as friend of P.J.H., a        )
  minor, AND JENNIFER HILLMAN,      )
                                    )
    Plaintiffs,                     )
                                    ) NO:4:21-cv-04081-SLD-JEH
                                    )
    vs.                             )
                                    )
                                    )
  THE TORO COMPANY, a               )
  corporation,                      )
                                    )
    Defendant.                      )

_____

           VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION OF

                         DAVID JOHN BILEK

                      APPEARING REMOTELY FROM

                     LITTLETON, COLORADO 80127
_____

           PURSUANT TO NOTICE, the above-entitled
videoconference deposition was taken via Zoom on behalf
of the Defendant The Toro Company at Littleton,
Colorado 80127, on Monday, August 14, 2023, at 1:04
p.m. before Dawn Gage, a Stenographic Shorthand
Reporter and Notary Public within and for the State of
Colorado.
```



```
 1  VIDEOCONFERENCE APPEARANCES OF COUNSEL

 2  On Behalf of the Plaintiff
    Rebekah Hill, et al.:
 3
       STEVEN J. CROWLEY, ESQ.
 4     ANDREW MAHONEY, ESQ.
       Crowley & Prill
 5     3012 Division Street
       Burlington, IA 52601
 6     (319) 753-1330
       scrowley@cbp-lawyers.com
 7     amahoney@cbp-lawyers.com

 8  On Behalf of the Defendant
    The Toro Company:
 9
       KIRK FLORENCE, ESQ.
10     Kilpatrick Townsend & Stockton LLP
       2001 Ross Avenue, Suite 4400
11     Dallas, Texas 75201
       (214) 922-7139
12     kflorence@kilpatricktownsend.com

13  Also Present:  Steven Henry, Videographer
                  (Via videoconference)
14
                    INDEX OF EXAMINATION
15
    DEPONENT: DAVID JOHN BILEK
16  EXAMINATION/FURTHER EXAMINATION                               PAGE
    BY MR. FLORENCE:                                              5/173
17  BY MR. CROWLEY:

18                    INDEX OF EXHIBITS

19  EXHIBIT              DESCRIPTION                              PAGE

20  Exhibit 1     Curriculum Vitae                                13
                  Bates: Exhibit A-1 - A-2
21
    Exhibit 2     Deposition Testimony of                         14
22                David J. Bilek
                  Bates: Exhibit C-1 - C-2
23
    Exhibit 3     Compilation of Billing                          29
24                For Services
                  Pages: 6
25
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1        Q.   So how do you know that your drone's photos
 2   result in an accurate 3D model?
 3        A.   Because I've compared drone photos with scanned
 4   information, with hand information, with survey information.
 5   I've done that on a number of different occasions and I have
 6   confidence in the drone photos.
 7        Q.   But you haven't done those types of
 8   comparisons in this case, correct?
 9        A.   Well, correct.  There's -- I -- you know, I
10   don't have any further information to use and I don't do that
11   on every case.
12             This was done earlier when we were first
13   experimenting with drones and the quality of the image from
14   the drones.  So I am confident that the information from the
15   drones is correct.
16        Q.   Do you still use your current drone in the
17   same way that you used it for this -- this survey?
18        A.   Yes, I do.
19        Q.   Do you use the same type of camera?
20        A.   Yes, I do.
21        Q.   And other than having some -- I don't mean
22   this pejoratively, but salvage parts, is it the same
23   type of drone?
24        A.   Yes, it is.  It is also a Phantom 3 Pro drone.
25        Q.   Did you know that the Hillmans were
```



```
 1   planning to bulldoze this area as --
 2          A.   Well, I didn't know exact -- I'm sorry.  I
 3   didn't know exactly what they were going to do, but the
 4   information I had is that the area was going to be changed,
 5   regraded, and that's one of the reasons I went out there.  I
 6   should say, that's the primary reason I went out there to
 7   document what that terrain looked like.
 8               And as I mentioned, when I went back, I made
 9   sure that the information looked good, that the model was --
10   was complete.  And I relayed that to Mr. Crowley.
11          Q.   To your knowledge, did anyone invite Toro
12   to come inspect that property and have an opportunity to
13   do that type of survey before it was modified by the --
14   by the Hillmans?
15          A.   Well, I -- I believe when I got involved, there
16   was no case filed.  I did not know Toro was going to be a
17   defendant.
18               So that would be something that Mr. Crowley
19   would have handled at some point.  So that's was totally out
20   of my hands.
21          Q.   You -- you didn't run any type of conflict
22   check as to Toro when you found out that a Toro mower
23   was involved in the accident?
24          A.   No, I know I had not worked on a -- a Toro --
25   Toro mower before.  I had no issues with that.  And that was
```



1  well after the fact, anyway.
2      Q.  I'm sorry.  What was "well after the fact"?
3      A.  The -- that Toro became involved with the case.
4  When I went out there originally, there -- I believe there
5  was no lawsuit filed.
6      Q.  And you haven't been back there again since
7  August 5th, 2020?
8      A.  Correct.
9      Q.  How long did you stay out there that day?
10     A.  I can -- I can guess, say, a couple of hours
11 tops from flying the drone and also making the hand
12 measurements, maybe a little more than a couple of hours, but
13 somewhere in there.
14     Q.  Did you see the -- the subject mower --
15     A.  I --
16     Q.  -- when you were out there?
17     A.  I did not.
18     Q.  Do you know where it was?
19     A.  I did not.
20     Q.  And you -- I mean, you -- you knew that you
21 were going out there to take this survey because a
22 lawsuit was, at least, contemplated, correct?
23     A.  Well, yeah, at the moment, I really don't know.
24 There may have been -- you know, again, that's Mr. Crowley's
25 decision.



1                 There was an accident.  I was asked to go
2   document that area because it was -- the potential for it
3   getting changed was -- was real.  So that's what I did.
4                 I beyond -- that, like you said, the mower, I
5   did not examine the mower.  I didn't know where it was,
6   didn't know what was involved, per se.  So that's -- that's
7   the only thing I can tell you.
8         Q.    Other than photographs with your -- with
9   your camera, either from the drone or while you were on
10  the ground, did you take any other measurements of the
11  accident-site area?
12        A.    Measurements that I did by hand will be
13  reflected in my notes.
14        Q.    You're talking about the -- the notes in
15  Exhibit 5?
16        A.    Yes.
17        Q.    So you took -- by hand, you took
18  measurements of the height of the retainer wall?
19        A.    Correct.
20        Q.    Was that the highest point that you
21  measured?
22        A.    Yes, that was.  The highest point in the area
23  where the mower went off.
24        Q.    There were a couple of cinder bricks that
25  were knocked off from the accident.  You -- you're aware



```
 1  of that, right?
 2        A.   Yes.
 3        Q.   Were they -- had they been put back in
 4  place by the time you got there?
 5        A.   I believe they were, yes.  And, again, I have
 6  photographs of that.
 7        Q.   Okay.  And then you -- so you -- you
 8  measured the height and width of the -- of the bricks
 9  themselves by hand, right?
10        A.   Yes.
11        Q.   And then you referenced a top layer of cap
12  bricks.  Are those different dimensions than the other
13  bricks?
14        A.   Yes, they are.  They're just a -- a thinner
15  brick.
16        Q.   And then you made some note entries about
17  bricks in the area where the right side of the Toro
18  TimeCutter Mower went off, correct --
19        A.   Yeah.
20        Q.   -- where -- and where the left side went
21  off?
22        A.   Correct.
23        Q.   I'm not following when you say, "it is one
24  full size brick less," what are you saying?
25        A.   If you look at the -- the nominal -- the brick
```



```
 1                    CERTIFICATION

 2
     STATE OF COLORADO)
 3                    )  ss.
     COUNTY OF DENVER )
 4

 5
                I, Dawn Gage, Professional Shorthand
 6   Reporter and Notary Public for the State of Colorado,
     do hereby certify that previous to the commencement of
 7   the examination, the said DAVID JOHN BILEK, was duly
     sworn by me to testify to the truth in relation to the
 8   matters in controversy between said parties.

 9              I further certify that said videotaped
     deposition was taken in shorthand by me and was reduced
10   to typewritten form by computer-aided transcription,
     that the foregoing is a true transcript of the
11   questions asked, testimony given, and proceedings had.

12              I further certify that I am not an
     attorney nor counsel nor in any way connected with any
13   attorney or counsel for any of the parties to said
     action or otherwise interested in its events.
14
                I further certify that, pursuant to Rule
15   30(f)(1), review was requested.

16              IN WITNESS WHEREOF, I hereunto affix my
     hand and notarial seal this 24th day of August, 2022.
17

18              My commission expires March 17, 2027

19
                        
20              _____
                              DAWN GAGE
21                  Stenographic Shorthand Reporter

22

23

24

25
```