UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, Individually and as Next Friend of P.M.., a minor, AND JENNIFER HILLMAN<br><br>Plaintiffs,<br><br>v.<br><br>THE TORO COMPANY,<br><br>Defendant. | NO. 4:21-cv-04081-SLD-JEH |

**DEFENDANT THE TORO COMPANY'S
MOTION TO EXCLUDE CERTAIN OPINIONS FROM PLAINTIFFS' EXPERTS
<u>SHELLEY KINNEY AND DALE BERRY</u>**

COMES NOW Defendant, The Toro Company ("Defendant" or "TTC"), by and through its attorneys, and hereby moves this Court to exclude certain opinions of Plaintiffs' expert witnesses Shelly Kinney and Dale Berry from testifying at trial and summary judgment pursuant to Federal Rule of Evidence 702, and *Daubert*. In support of this Motion, TTC states as follows:

### I.     <u>Introduction</u>

The Plaintiffs disclosed the Life Care Plan Report of Shelly Kinney and identified her as one of their experts. A copy of the Life Care Plan Report is attached hereto as **Exhibit A** (hereinafter " LC Plan"). In the LC Plan, Ms. Kinney notes that The Life Care Plan is a tool used to estimate the cost of lifetime medical and functional needs for a person who has experienced significant illness or injury." LC Plan, p. 2. Ms. Kinney includes a Lifetime Cost Estimate for Plaintiff Rebekah Hillman ("Rebekah") and estimated the total cost to be

$998,186.00.  LC Plan, p. 18.  Ms. Kinney included in her LC Plan an estimate for home modifications from Larry Thomas Construction, LLC for $120,000.  A copy of the estimate is attached to the LC Plan at p. 29 (hereinafter "Construction Estimate").  However, Plaintiffs did not identify anyone from Larry Thomas Construction, LLC as a witness under Fed.R.Civ.P. 26(a)(1) or as an expert under Fed.R.Civ.P. 26(a)(2) and are precluded from doing so now that discovery has closed.  Fed.R.Civ.P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")

Ms. Kinney also adopted the Prosthetic Life Cost Projection (hereinafter "PLC Projection") prepared by Dale Berry, also disclosed by the Plaintiffs as an expert, for $778,955.00 as part of the LC Plan.  A copy of Mr. Berry's PLC Projection is attached to the LC Plan at p. 21.

With this Motion, TTC asks the Court to exclude two of the line items – for the Construction Estimate and the PLC Projection - included in the LC Plan.  Neither of those items is the product of reliable principles and methods and should be excluded.

## II.    Legal Standard

Federal Rule of Evidence 702 permits expert witness testimony where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principals and methods to the facts of the case." Fed. R. Evid. 702. *Daubert* interpreted Rule 702 to charge district courts with ensuring that expert testimony is

reliable and relevant—that is, "whether the reasoning and methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology can be applied to the facts at issue." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589-93 (1993).

Rule 702 and *Daubert* mandate a three-part analysis before a district court admits expert testimony. The court must (i) determine whether the witness is qualified by knowledge, skill, experience, training, or education; (ii) whether the expert's methodology is scientifically reliable; and (iii) the testimony must assist the trier of fact in understanding the evidence or determining a factual issue. *See Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). *See also Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 373 (2023). Here, TTC moves to exclude Ms. Kinney's opinions that incorporate those of Dale Berry and the PLC Projection and the Construction Estimate. Those two cost estimates are not based on sufficient facts or data, are not the product of reliable principles and methods and Ms. Kinney did not reliably apply the principles and methods of life care planning to those facts.

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence under Federal Rule of Evidence 104(a). *See Daubert*, 509 U.S. at 592 n.10. The principles set forth in *Daubert* apply to all expert testimony, not just scientific. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Additionally, courts are admonished to keep Federal Rule of Evidence 403 in mind when considering expert testimony. *Daubert*, 509 U.S. at 595. Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**TTC'S MOTION TO EXCLUDE**                                       3

### III. Memorandum of Law

#### a. The Construction Estimate Should Be Excluded

In the LC Plan, Ms. Kinney writes that the Plaintiffs "are modifying a ranch style home previously the home of Jennifer's grandmother" and references the "home modification quote." LC Plan, p. 6. The LC Plan fails to provide critical information regarding the Construction Estimate that was not revealed until Ms. Kinney testified in her deposition.

In her deposition, Ms. Kinney testified about the manner and method she utilized to collect cost estimates and what occurred in this case regarding the Construction Estimate. In her deposition, she explained that Plaintiff Jennifer Hillman ("Jennifer") was performing the work to modify the home.

> A. Yes. They were already in the process and working on it. Like I said, when I went to the house, the walls had already been taken down so the hallway could be wider and the doorways widened and the bathroom made so that Rebekah could access it.
>
> Q. When you were there at the new house, were you there with both Rebekah and Jennifer?
>
> A. Yes.
>
> Q. Did Jennifer talk to you about anything she had done or planned to do or the work in any way?
>
> A. Yes. I just told you what they -- what they had done so far and the things that they had planned. They were making it as open as possible and making it wheelchair accessible.
>
> Q. And Jennifer told you that she was doing that work?
>
> A. Yes.
>
> Q. Did Jennifer provide you any documentation relating to the work that she was doing at the new home?
>
> A. No, she did not. But I did ask her to keep track of what -- what work they were doing and the time so that she could provide it to Mr. Crowley and Mr. Prill.

Q. Do you know if she's done that?

A. I don't know.

Kinney Dep., 50:1 – 51:4 (a copy of the deposition transcript of Shelly Kinney is attached hereto as **Exhibit B**). Jennifer and her crew were already working on modifications to the new home but kept no receipts or other documentation regarding the associated costs.

Since Jennifer was already into construction and was not tracking her costs, Ms. Kinney looked for another way to estimate the construction costs. Ms. Kinney uncovered the names of three contractors in the area and contacted them to provide an estimate for the cost of construction. Kinney Dep., 63:18 – 65:9. Ms. Kinney testified that typically she makes the recommendation regarding what modifications are necessary and then receives an estimate for the work, but she could not follow her custom and practice because Jennifer had already decided what was to be done and begun the work herself. Kinney Dep., 65:10-19. As a life care planner, Ms. Kinney prefers to get 10 estimates or as many as she can get, but in this situation, she was able to contact only 3 contractors and received only one estimate, from Larry Thomas Construction, LLC. Kinney Dep., 75:23-25, 63:24 – 64:2.

Mr. Thomas, although undisclosed by Plaintiffs as a witness, visited the Hillmans' new home on December 6, 2022, to prepare the estimate. Ms. Kinney was not present at the time, but Jennifer was there. Because she was not present, Ms. Kinney did not know the condition of the home at the time or Jennifer's progress regarding the modifications. Mr. Thomas received a payment of $250 to prepare the estimate because he knew that he was not going to perform any of the work, as Jennifer had already begun to do it. Kinney Dep., 67:1- 69:10.

Ms. Kinney could not determine that the estimate was reasonable because she is not a contractor and "I wouldn't know what [was] reasonable" and her practice was to receive estimates from multiple contractors. Kinney Dep., 69:20-23. Indeed, Ms. Kinney stated that

**TTC'S MOTION TO EXCLUDE**                                5

construction was not her "expertise" and she "wished" she could get more than one estimate. Kinney Dep., 70:1-4.

Nothing about the Construction Estimate meets the requirements of Fed.R.Evid. 702. Ms. Kinney did not follow her usual practice and identify what needed to be done and then get multiple estimates from contractors for that work. Here, Jennifer had already unilaterally determined the scope of the work and started into it and Ms. Kinney only received one estimate. The work had already begun at the time the estimate was prepared, forcing Mr. Thomas to guess the condition of the home at the beginning of the work. Ms. Kinney was not present when Mr. Thomas visited the home and prepared the estimate, and she has no personal knowledge about what he did to formulate the estimate. Still further, Mr. Thomas knew that he would not be awarded the work so Mr. Thomas did not generate the estimate under anything that could be considered normal business circumstances or market value.

Despite failing to follow all her customs and practices as a life care planner, Ms. Kinney mistakenly included the $120,000 Construction Estimate in the LC Plan. The Construction Estimate is not the "product of reliable principles and methods" and Ms. Kinney admitted that much in her deposition. Ms. Kinney's reliance on the Construction Estimate, and any testimony from her, would violate Fed.R.Evid. 403 and 702 and also would constitute inadmissible hearsay from an undisclosed witness. Ms. Kinney was not present when the Construction Estimate was created, cannot authenticate the document, and did not receive the documents within her regular business practices. The Plaintiffs failed to disclose Larry Thomas, or anyone from his company, as a witness and cannot do so now. Accordingly, the Court should preclude the Construction Estimate from trial in this matter. Fed.R.Civ.P. 37(c)(1).

### b. The PLC Projection Should Be Excluded

Included in the LC Plan is a cost of $778,955.00 based entirely on the PLC Projection of Dale Berry. However, the use of Mr. Berry's estimate was not Ms. Kinney's first choice. Ms. Kinney testified in her deposition that she contacted Dr. Andy Besser, Rebekah's prosthetist. Kinney Dep., 83:2 – 84:5. Ms. Kinney explained that she contacts the treating prosthetist first because that is where she receives the cost information needed to prepare her life care plan. Id. However, Dr. Besser could not provide her with the cost information that she needed because American Prosthetics and Orthotics had been recently purchased by Hanger and he was not familiar with Hanger's costs and methods. Kinney Dep., 84:17. Ms. Kinney then contacted Hanger and learned that it does not provide cost information and Hanger directed her to Mr. Dale Berry for any cost estimates.

Ms. Kinney explained in her deposition that before preparing the LC Plan in this case, she was familiar with Dale Berry. Kinney Dep., 84:18 – 86:16. She described her knowledge of Mr. Berry's methodologies and circumstances of this case as follows:

> Q. But that -- but that's where you went first, right, is to contact Andy Besser?
>
> A. Yes, I did.
>
> Q. And then you pointed out that your costs that you use in your life care plan are specific to the geographic area of the individual; right? You pointed out that to me in the second sentence in the fourth paragraph of your introduction; right?
>
> A. Yes, as specific as I can get them. And I know, though, that Dale Berry does – he doesn't get that specific. He goes on a national basis, which is one area that we differ on our methodology, but his information, regardless, is going to be more accurate than probably I would get it from anywhere else, so sometimes you just got to suck it up and be happy with what you have.
>
> Q. And that's what you did here?

**TTC'S MOTION TO EXCLUDE**                    7

> A. That's what I did here. It was the only way I could get the costs, is how – he was recommended to me by the actual prosthetic company, so that's what we did.

Kinney Dep., 85:19-86:11. Rather than receiving the costs directly from the prosthetist, she had to "suck it up" and accept the cost information and projections from Dale Berry.

Ms. Kinney's LC Plan states that "[t]he costs in the care plan are based on current dollars and are obtained from resources typically relied upon by life care planners. Costs are specific to the geographic area of the individual." LC Plan, p. 2. That is not true for the PLC Projection from Dale Berry on either count. Ms. Kinney wanted to get cost information directly from the treating prosthetist, but she could not do that. And the information that she did receive was not "specific to the geographic area of the individual," here Rebekah and Colona, Illinois.

Although Ms. Kinney may have been forced to accept Dale Berry's calculations, this Court is not. The PLC Projection is not the product of reliable principles and methods, as Ms. Kinney so clearly explained in her deposition. Indeed, Ms. Kinney stated plainly that her methodology differed from Mr. Berry's and therefore it cannot be said to have "received general acceptance in the relevant scientific of expert community" if the life care planner retained by the Plaintiffs in this case does not accept it. *Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 373 (2023) (When analyzing whether an expert's methodology is valid, the court should consider factors including whether the technique has achieved general acceptance in the relevant expert community.)

Accordingly, the Court should exclude the PLC Projection and any testimony from Ms. Kinney or Mr. Berry regarding the projection contained therein.

IV.     **Conclusion**

For the foregoing reasons, TTC requests that the Court grant its motion to exclude the Construction Estimate and the PLC Projection and any testimony from Shelly Kinney or Dale Berry regarding the same under Federal Rule of Evidence 403, 702, 703 and *Daubert* and for such other and further relief to which it may show itself justly entitled.

                Respectfully submitted,

                **Parsky & Galloway, LLC**

                /s/ Thomas G. Grace
                Thomas G. Grace,
                *Attorney for Defendant, The Toro Company*

October 30, 2023

Thomas G. Grace, Esq.
Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL  60602
Tel. 312-551-2130
tgg@pg-lawoffice.com


Kirk T. Florence, Esq.
Kilpatrick Townsend & Stockton, LLP
2001 Ross Ave., Suite 4400
Dallas, TX  75201
Telephone:    214-922-7139
Email: KFlorence@kilpatricktownsend.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 30, 2023 I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for that counsel or parties who are not authorized to receive electronic Notice of Electronic Filing:

STEVEN J. CROWLEY
EDWARD J PRILL
ANDREW MAHONEY
CROWLEY & PRILL
3012 Division Street
Burlington, Iowa 52601
Phone:     (319) 753-1330
Email:      SCrowley@CrowleyPrillattorneys.com
              EPrill@CrowleyPrillAttorneys.com
              AMahoney@CrowleyPrillAttorneys.com

JASON M. SCHIFFMAN
SCHIFFMAN FIRM, LLC
1300 Fifth Avenue
Pittsburgh, PA  15219
Phone:  412-288-9444
Email:      Jason@SchiffmanFirm.com

                                **Parsky & Galloway, LLC**

                                /s/ Thomas G. Grace
                                Thomas G. Grace,
                                *Attorney for Defendant, The Toro Company*

Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL  60602
Tel. 312-551-2130
tgg@pg-lawoffice.com