# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; AND JENNIFER HILLMAN<br><br>Plaintiffs,<br>v.<br><br>THE TORO COMPANY, a Corporation,<br><br>Defendant. | No. 4:21-cv-04081-SLD-JEH |

## PLAINTIFFS' RESISTANCE TO DEFENDANT THE TORO COMPANY'S MOTION TO EXCLUDE CERTAIN OPINIONS FROM PLAINTIFFS' EXPERTS SHELLEY KINNEY AND DALE BERRY

COME NOW the plaintiffs, by and through their counsel of record, and, in support of their Resistance to Defendant's Motion to Exclude Certain Opinions from Plaintiffs' Experts Shelley Kinney and Dale Berry (Dkt. 157), state as follows:

### I.   ANATOMY OF THE DISPUTE

Defendant's *Daubert* Motion regarding Ms. Shelley Kinney and Mr. Dale Berry seeks to exclude two primary opinions: (1) Ms. Kinney's opinion regarding the cost of home modifications gathered from a local contractor; and (2) Mr. Berry's opinion regarding the future cost of prosthetics ("PLC Projection"), which is incorporated into Ms. Kinney's report.

Essentially, Defendant attacks Ms. Kinney's opinion regarding the cost of home modifications by stating they lack foundation. Strangely enough, contained within Defendant's own Motion, Defendant sets forth, in detail, adequate foundation for admission of the opinion.

As far as Mr. Berry's opinion is concerned, Defendant seeks exclusion based on the idea that Ms. Kinney should be faulted for not getting prosthetic cost estimates from the Dr. Bessner, who

candidly admitted he had no idea what the costs were. In other words, Defendant makes the incredible argument that, because Ms. Kinney failed to use *less reliable* methodology, her opinions should be excluded.

Plaintiffs resist the request to exclude both of these opinions.

## II. LEGAL STANDARDS GOVERNING EXCLUSION OF EXPERTS

This Court is familiar with the requirements of expert testimony under *Daubert*. Plaintiffs agree with Defendant's recitation to Fed. R. Evid. 702. This Court has continued, stating:

> Factors that may be considered in assessing the reliability of an expert's underlying technique or theory are: (1) whether it can be tested or is falsifiable; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether it has been generally accepted within the scientific community. *Daubert,* 509 U.S. at 593–94. Courts have looked to additional factors, including whether the expert extrapolates from an accepted premise to an unfounded conclusion. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). "The critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data only by the *ipse dixit* of the expert, that is properly excluded under Rule 702." *Manpower, Inc. v. Ins. Co. of Pa.,* 732 F.3d 796, 806 (7th Cir.2013) (internal quotation omitted). Regarding the relevance of expert testimony, an expert "must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Ancho v. Pentek Corp.,* 157 F.3d 512, 519 (7th Cir.1998) (citation omitted).

*Stokes v. John Deere Seeding Group*, 2014 WL 675820, at *2 (C.D.Ill., 2014). The Seventh Circuit has also stated:

> The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Once the district court has adequately applied the *Daubert*

> framework, our review of the determination to admit or exclude the evidence is deferential. *E.g., United States v. Lupton,* 620 F.3d 790, 798–99 (7th Cir.2010) (affirming exclusion of expert testimony); *see also Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167 (reversing court of appeals decision that failed to accord sufficient discretion to district court that admitted expert testimony).

*Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (C.A.7 (Ind.), 2012)

### III.   ARGUMENT

Defendant's *Daubert* Motion contains the same fatal error that plagues many of their pleadings by failing to provide any sort of legal basis for their requested relief. Defendant cites to some applicable law on *Daubert* but completely fails to provide exactly how that law supports their arguments.

Defendant's first argument, regarding Ms. Kinney's solicitation of bids from qualified contractors, arises from the notion that Ms. Kinney generally prefers to get more bids than she received in this case. Defendant argues that because Ms. Kinney only was able to get one bid from a qualified contractor with experience in home modifications for a disabled person in a rural Iowa town of roughly 2,500 people, her opinion should be excluded. Defendant then makes the baseless argument that Ms. Kinney, as an expert, is unable to rely upon what is generally inadmissible hearsay, despite Defendant undoubtedly being aware their argument runs contrary to the very case of *Daubert* itself.

Defendant's second argument regarding the striking of Mr. Berry's PLC from Ms. Kinney's LCP is so legally and factually backwards that it may in fact be the first *Daubert* Motion in any Court to make such a unique argument. Defendant criticizes Ms. Kinney for not gathering the information regarding the cost of prosthetics from Dr. Besser, Rebekah Hillman's prosthetist. The reason Dr. Besser was not used, is because he was unable to provide the cost of prosthetics due to ownership of companies changing. Ms. Kinney then got these opinions from the person Dr. Besser

recommended, which was Mr. Berry, who admittedly provided information that was *more* accurate than what she would have received from Dr. Besser. When stripped to its core, Defendant's argument is clear. Defendant takes issue with the fact Ms. Kinney did not use prosthetic cost estimates from a person who had *no idea what they would be* and instead used figures that would be *more accurate* than had they come from the prosthetist itself. Plaintiffs' counsel has never before encountered a defendant who sought exclusion of an expert for failing to use a less reliable methodology. Perhaps Defendant should be credited for coming up with a such a novel argument; however, it stands in complete opposition to the requirements of Fed. R. Evid. 702 and the line of *Daubert* cases in federal courts around the nation.

**A. Ms. Kinney's Opinion Regarding the Construction Estimate Should Not Be Barred.**

Ms. Kinney's opinion incorporating the construction estimate as part of her life care plan should not be barred under the framework of *Daubert*. This exact situation has been dealt with before in the case of *Taylor v. Union Pacific R. Co.*, 2010 WL 3724287, at *3 (S.D.Ill.,2010). In *Taylor*, the defendant moved to exclude the opinions of the life care planner hired by the plaintiff. One of these opinions sought to be excluded was the fact the plaintiff would need modifications to the plaintiff's "car and house, such as a van with special lifts and installation of hardwood floors". *Id.* The defendant also objected "on the grounds that, although [the life care planner's] normal practice is to solicit three bids on each item contained in a life care plan, in some instances, she only solicited one." *Id.* In determining whether this opinion was admissible, the Court adopted the plaintiff's point of view that "these are matters that should be and doubtless will be aired before the jury on cross-examination" and denied the motion to exclude said opinions. *Id.*

As applied to the current case, the Southern District of Illinois found bids submitted for the purpose of a life care plan and the resulting opinion to satisfy the requirements of *Daubert*. This

case is exactly on point and no further analysis need be done. However, Defendant's exact complaints regarding supposed failure to provide "critical information" will be dealt with. First, Defendant complains that some of the work encompassed in the estimate was completed by Plaintiffs. Second, Defendant complains that Ms. Kinney was only able to come up with one contractor to provide an estimate rather than the preferable 10. Third, Defendant complains that Ms. Kinney relied upon the contractor to provide an estimate and, as the contractor was not proffered as a witness, there is no foundation for the report and it is hearsay.

The first complaint, that some of the work encompassed in the estimate was completed by the Plaintiffs, is completely without basis and provides no grounds for exclusion under *Daubert*. This is clearly and obviously a matter for cross examination. The thrust of the estimate is to provide a figure as to what the value of the work performed was. As Defendant so aptly points out from Ms. Kinney's testimony, the solicitation of bids for such work is something frequently done by life care planners such as Ms. Kinney. As the Court in *Taylor* noted, "life care plans frequently are amended to reflect changed circumstances". *Id.* The fact that some of the work had been completed does nothing to undermine the acceptable methodology of soliciting a bid in order to provide an estimate of damages. In fact, Ms. Kinney specifically sets forth that the reason she did not have Jennifer and Rebekah estimate the damages, is it would not be fair and impartial, such as the bid given by Larry Thomas Construction, LLC. (Dkt. 157-2, p. 65:23 – 66:12) Regardless, this complaint of Defendant is regarding "credibility and accuracy" and, as set forth in *Lapsley*, is a matter for cross-exanimation. 689 F.3d at 805. The jury is free to discount or disregard the estimate wholly based on the way the testimony develops.

The second complaint, which is that Ms. Kinney was only able to come up with one contractor, is completely baseless and without any sort of legal or factual support to justify exclusion.

Defendant is well aware of the fact, as their counsel questioned Ms. Kinney on this matter in detail, that Ms. Kinney attempted to contact more contractors in the area to provide estimates. Ms. Kinney set forth she attempted to gather the names of reputable contractors in the area, was only able to locate three names, attempted to contact all three, and was only able to get one to complete the process. (Dkt. 157-2, p. 70:20 – 71:21, 75:4 – 76:10) Ms. Kinney ensured the contractors had performed this type of work before, gathered as many names as she could through a reputable search process (Better Business Bureau), and solicited a bid. Ms. Kinney did testify she preferred to get 10 estimates. However, and this is a fact Defendant's counsel is well aware, Ms. Kinney explained this was a rural area and there simply weren't that many options. (Dkt. 157, p. 71:7-9) No matter how hard Defendant may want to conjure 50 reputable, qualified contractors with experience in installing modification for disabled individuals in Kalona, Iowa (a town of roughly 2,500 people), this is simply not something that exists by the scores. Once again, Defendant knows this, as Ms. Kinney testified to it, but it did not stop them from raising this baseless complaint. Regardless, there is no legal principle or principle in life care planning that sets forth the idea that unless 10 estimates are gathered, the opinion must be struck. Once again, this goes to credibility and accuracy and is a matter for cross examination.

Finally, Defendant complains that Mr. Thomas, the individual who provided the estimate through his company, was not disclosed as a witness and his estimate is without foundation and is hearsay. This claim is so wildly unsupported by the law that it flies in the very face of Fed. R. Evid. 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786, 2797, 509 U.S. 579, 595 (U.S.Cal., 1993). The United States Supreme Court in *Daubert* stated:

> "Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786, 2797–98, 509 U.S. 579, 595 (U.S.Cal., 1993) As Defendant points out, Ms. Kinney frequently relies on bids such as this in forming her opinions. It is a well-established area that life care planners, such as Ms. Kinney, offer opinions on and is even documented in *Taylor* as set forth above. Ms. Kinney provided all the foundation necessary in that she established she specifically sought out names of contractors qualified to perform modifications for accessibility such as the ones at issue. (Dkt. 157-2, p. 75:10-19) Sufficient foundation for this opinion has been provided. This is a matter for cross-examination and should be dealt with in that manner.

**B. Mr. Berry's Opinion Regarding the PLC Should Not Be Barred.**

Mr. Berry's opinion regarding the PLC should not be barred and Defendant's argument is completely devoid of any factual or legal support. First, Defendant complains that Mr. Berry was not Ms. Kinney's first choice and Mr. Berry had to receive the costs of the prosthetics from the company that makes and sells them, rather than the prosthetist who buys them. Second, Defendant complains that the costs used by Mr. Berry were not specific to the geographical area where Plaintiffs reside.

Defendant's complaint that Mr. Berry was not Ms. Kinney's first choice and the costs of the prosthetics came from Mr. Berry rather than Dr. Besser is puzzling to say the least. Defendant goes on to explain that Ms. Kinney's first choice candidly had no idea what the cost information was that Ms. Kinney required. As Defendant pointed out, the method chosen by Ms. Kinney was the "only way [she] could get the costs". (Dkt. 157, p. 8) This is the first *Daubert* Motion Plaintiffs' counsel has ever encountered where the basis for a motion to exclude an opinion is the fact the expert failed to use a *less reliable* methodology. This seems like an odd strategy at best and is wholly without any legal support.

The next complaint is that Mr. Berry's opinions used a national database for prosthetic costs rather than a specific geographic region. Defendant states from Ms. Kinney's report that "[c]osts are specific to the geographic area of the individual." (Dkt. 157-2, p. 8) This citation from Ms. Kinney's report provides the sole basis for Defendant's argument that Mr. Berry's opinions should be excluded on the basis of geography. Unfortunately for Defendant, once again, their own statements promptly unravel their arguments. Attached to their Motion to Exclude (Dkt. 157) is Ms. Kinney's report, and the full context of the paragraph from which the excerpt is pulled is set forth below:

> The costs in the care plan are based on current dollars and are obtained from resources typically relied upon by life care planners. Costs are specific to the geographic area of the individual. The retail price for over the counter medication was obtained from her CVS Pharmacy using GoodRx for the cash price. The costs for supplies and equipment are from the source where they are obtained or are expected to be obtained. Shipping is included when necessary. The prosthetic supplier could not address the cost of future items, so Dale Berry, CP, FAAOP, CP(C), RTP, LP was consulted to determine the cost of future prostheses. The cost of home modifications to address wheelchair and walker accessibility for the ranch style home already purchased was provided by the entities listed in the tables. The costs for medical procedures, tests and appointments were obtained from usual, customary, and reasonable (UCR) charges from Find-A-Code.

(Dkt. 157-1, p. 2) Contained within this paragraph is the specific rationale for obtaining Mr. Berry, as the prosthetist could not address the cost of future items and Ms. Kinney testified that Dr. Bessner *himself* recommended Mr. Berry be contacted. (Dkt. 157-2, p. 84:5-17) Ms. Kinney then testified regarding Mr. Berry's extensive qualifications and that the information was "probably even better and more accurate than I would have gotten from [] a treating prosthetist anyway." (Dkt. 157-2, p. 84:18 – 86:11) Defendant even includes, line and verse, within their Motion, that Ms. Kinney testified the information obtained from Mr. Berry was *more accurate* than she would get from "anywhere else". (Dkt. 157, p. 7) In this way, Defendant continues to make the new, yet puzzling, argument that Ms. Kinney's (and Mr. Berry's) opinions should be excluded, as Plaintiffs' experts failed to be less accurate than they were.

Truly, Defendant's bizarre argument should not require any further consideration. However, to preserve the record, Plaintiffs have attached relevant portions of the deposition transcript of Mr. Berry, where he discusses the exact "geographical" concerns Defendant raises. Mr. Berry testifies, in painstaking detail, regarding the different price lists with Medicare and how he takes the average of those. (**Exhibit A-2 through A-3**, p.41:7 – 42:3) Mr. Berry specifically addresses why he uses the average as someone living in one state might cross state lines for treatment and the place of treatment might change the pricing. (**Exhibit A-4**, p. 43:12-20) Mr. Berry specifically addresses that if there is a difference in price in the eventual prosthetic Rebekah Hillman might receive, it would only be off by a couple of percentage points at most. (**Exhibit A-4**, p. 43:1-7) This will undoubtedly come out on cross-examination and should be left as such.

## IV.    CONCLUSION

As set forth above, Defendant's Motion to Exclude the opinions of the home modifications and the PLC plan stands in stark opposition to the law and common sense. As there is no basis to exclude such opinions, Plaintiffs request the Court DENY Defendant's Motion to Exclude the opinions of Ms. Kinney and Mr. Berry on all grounds.

Respectfully submitted,

By: /s/ Steven J Crowley
Lead Counsel

REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; and JENNIFER HILLMAN Plaintiffs
Steven J Crowley Lead Counsel ARDC#6314756
Edward J. Prill ARDC#6271392
CROWLEY & PRILL
3012 Division Street
Burlington, IA 52601
T: (319) 753-1330
F: (319) 752-3934
E: scrowley@crowleyprillattorneys.com
E: eprill@crowleyprillattorneys.com
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on *Monday, November 27, 2023*, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing:

Michael Giacopelli
Thomas Grace
Jonathan R. Sichtermann
McVey & Parsky, LLC
30 North LaSalle Street, Suite 210
Chicago, Illinois 60602
Email: mng@mcveyparsky-law.com
Email: tgg@mcveyparsky-law.com
Email: jrs@mcveyparskylaw.com

Jason Schiffman
Schiffman Firm, LLC
1300 Fifth Avenue
Pittsburgh, PA 15219
P: (412) 288-9444
F: (412) 288-9455
E: jason@SchiffmanFirm.com
ATTORNEY FOR PLAINTIFFS

Kirk T. Florence
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
P: (214) 922-7100
F: (214) 279-9194
kflorence@kilpatricktownsend.com
ATTORNEYS FOR THE TORO COMPANY