# Thomas A. Berry P.E.
1762 N. St. Francis
Wichita, Kansas 67214
(316) 685-8061 (316) 262-6834
FAX (316) 262-3903

March 17, 2023

Mr. Steve Crowley
Crowley & Prill Law Firm
3012 Division Street
Burlington, IA 52601

RE: Hillman v. Toro

Dear Mr. Crowley:

Summary of Opinions:

I have reviewed the information supplied to me in regard to the above referenced litigation in preparing this preliminary report. The items that have been supplied to me and/or reviewed by me include the following:

1. Deposition of Rebekah Hillman w/ Exhibits, November 16, 2022.
2. Deposition of Jennifer Hillman w/ Exhibits, November 16, 2022.
3. Deposition of Jennifer Hillman w/ Exhibits, November 17, 2022.
4. Deposition of Todd Porter w/ Exhibits, January 17, 2023.
5. Deposition of Carol Drutowski w/ Exhibits, January 18, 2023.
6. Plaintiff's 1st Amended & Substituted Complaint.
7. Joint Motion for Extension of Discovery Deadlines.
8. Initial Disclosures 26(a)(1) - Hillman v Toro Final.
9. Supplemental Plaintiff Initial Disclosures.
10. Plaintiffs' First Set of Requests for Production to Defendant.
11. Plaintiffs' Second Set of Requests for Production to Defendant.
12. Plaintiffs' First Set of Interrogatories for Production to Defendant.
13. Plaintiffs' Second Set of Interrogatories for Production to Defendant.
14. TTC's Objections to Plaintiffs 30(b)(6) Notice – Final.
15. Hydro-gear BLN-52622_ZT2100_ZT2200 Manual.
16. Operators Manual TTC 1-85.
17. Parts Catalog 75187.
18. Service Manual 78978.
19. Toro Model 74630 Parts Catalog 59837.
20. Toro Titan Operators Manual with ROPS and Friction Park Brake.
21. Kubota ZG200_300-Brochure.
22. Kubota ZG222 Brochure.
23. Hydro-Gear 310-0510 Integrated Hydrostatic Transaxle Manual.
24. Extracted Medical records.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 2

25. Photographs provided Exhibit A, Hillman photos taken by SJC20220419, Inspection Pictures of Toro Mower taken by SJC on 20220419 in Wichita, Hillman Terrain 3 side, RH00001 - RH00066 - 66 Photos Taken by SJC,.
26. B71.1 TTC 86-201.
27. US Patent 7,275,371 B1.
28. US Patent 8,919,224 B1.
29. US Patent 9,816,611 B1.
30. Hydrostatic Transmission Application Considerations For Commercial Turf Maintenance Vehicles 1991.
31. RH04143 - RH04157 Scene Photos fr. client, received by SJC 20221102.
32. RH04158 - RH04172 Toro Photos fr. client, received by SJC 20221102.
33. RH04173 - RH04177 Home modifications fr. client, received by SJC 20221102.
34. RH04178 - RH04257 Injury Photos fr. client, received by SJC 20221102.
35. RH04258 - RH04258 Test video fr. client, received by SJC 20221102.
36. RH04259 - RH04259 Test video fr. client, received by SJC 20221102.
37. RH00067 - RH00094 -Toro Parts Catalog.
38. RH00095 - RH00146 - Toro ss5000 Operators Manual.
39. RH04089 Interview Video - Taken by SJC on 20200713.
40. RH04090 - Video Taken by SJC on 20200713.
41. RH04091 - RH04092 - Photos of Planter Wall - Taken by SJC 20200713.
42. RH04093 - Photo of Lawmower in Hangar.
43. RH04094 - RH04095 - 20200908 Subro Correspondence.
44. Plaintiffs' Motion to Compel Production of Documents Withheld Under Claims of Priviledge for In Camera Inspection and Production.
45. Plaintiffs' Brief in Support of Motion to Compel Production of Documents.
46. Plaintiffs' Motion to Compel Toro to Serve Responsive Answers to Plaintiffs Interogatorries.
47. Defendants Answers to Plaintiffs First and Second Set of Interrogatories.
48. Plaintiffs' First Motion for Production of Documents and Material.
49. Plaintiffs' Comined Brief in Support of Plf Motion to Compel Answers to Interrogatories and Motion to Compel Production of Docs.
50. Documents produced by Toro.
51. Toro Zero Turn Operator Safety Training video- fr youtube

Based on my review of the above information and the information provided it is my understanding that the machine involved in the accident is as follows:

Toro Timecutter SS5500 Zero-Turn Mower
Model No. 74631
Serial Number: 313015934
Build Date: September 2013
Purchased new: 2014/5

Mr. Steve Crowley                                          March 17, 2023
Re: Hillman v Toro                                               Page 3

Based on my review of the above information, this accident occurred on June 18, 2020, as
follows:

> On the day of the accident the victim, Rebekah Hillman, was mowing the yard at
> her home. She indicates that as she was mowing the tires went over the edge of a
> landscaped area protecting the yard from the retaining wall and she could not get
> the mower out of the landscaped area. She obtained the assistance of Jennifer
> Hillman who got their JD tractor and used the loader to lift and move the mower
> from the planter landscaped area up into the yard well uphill from the landscape
> planter. To move the mower the two pins had been actuated at the rear of the
> mower that released the hydrostatic drive motors to the free roll position.

> Once the mower had been moved with the JD tractor well up the slope into the
> yard the tow straps were removed and Ms. Hillman got onto the mower and
> started the engine. She then moved the drive control levers to the center position
> and the mower began to move down the hill. She tried to use the control levers to
> control the mower but they did not work. The release pins at the rear of the
> mower were still in the position that allowed free roll. She tried to move the
> levers rearward and then out numerous times to stop the mower, but the mower
> would not stop. The mower continued to move down the hill until it again went
> into and across the landscaped planter area and over the retaining wall. The
> mower went front end first over the retaining wall while Ms. Hillman tried to
> jump off the mower. She landed on the ground below and the front of the mower
> landed on her legs crushing both. The mower landed on its front end and then
> tipped over onto its seat area. The control levers limit exit to the front of the
> mower. Ms. Hillman received severe injuries to both legs including crush injuries
> to her left leg that ended up requiring her leg to be amputated below the knee.

## Design Methodology

To evaluate the design of the Toro Timecutter SS500 zero turn lawn tractor I have utilized the
accepted methodology for engineers for analyzing the safety of a design. This methodology has
been called by various names such as Risk Analysis, Failure Mode and Effect Analysis, Hazard
Discovery Rating System, Safety Analysis, and Hazard Analysis has been recognized as being
appropriate methodology with respect to design safety by the National Safety Council, the
American Society of Mechanical Engineers and many others for over 50 years and well before
this zero-turn lawn tractor was designed or manufactured. This methodology has been
incorporated into ANSI standards such the ANSI Z10 and ANSI B11.0 standards. These are
methods that allow hazards to be discovered and anticipated before a design is completed and to
develop hazard control designs, methods, procedures and programs. Further this methodology
allows for the measure, auditing and evaluation of a hazard control program after a design is in
use to measure its effectiveness in reducing the risk associated with a hazard. See Appendix B –
Design Methodology.

This design safety hierarchy standard has been recognized for many years as a guiding principle
of proper design. It has been adopted by ANSI. It is a design principle implicit in the mandatory

Mr. Steve Crowley                                                March 17, 2023
Re: Hillman v Toro                                                       Page 4

duty to exercise reasonable care in the design of equipment to provide safety in the design of
equipment for foreseeable uses and misuses. Specifically, I have reviewed the design of the
Toro Timecutter SS5500 with respect to the safety related to the operator and identified the
hazard and risk involved in this accident which is that of loss of control due to the loss of braking
and control from the hydrostatic drive motors and the operator being crushed under the zero-turn
mower when it overturns. Once the hazards were identified I followed is a design standard
which is typically referred to as the safety design hierarchy, which states:

> a. Eliminate hazards, if possible, without unduly compromising function or
>    utility of machine.
> b. Provide some form of physical protection or guarding from remaining
>    hazards.
> c. Provide warnings and instructions, which can practically be followed, for
>    avoiding the hazards. However, warnings are not a substitute for positive
>    mechanical safeguards.

There are two hazards involve in this accident. The first is the loss of control which leads to the
rollover event and the rollover event itself. The zero-turn mower is manufactured with
hydrostatic motors which propel and entirely control the locomotion, steering and general
stopping of the mower. No other feature is provided for the operator to use to stop a moving
mower. It is also provided with two controls that allow the hydrostatic drives to be disengaged so
that the mower can be moved from a stuck position or rolled without using the drive. Once
disengaged there is no brake available to stop the mower. Another feature provided on the
mower engages park locking pawls on small steel gears attached to each hydrostatic drive. These
parking locks are able to lock the hydrostatic drives from allowing drift/creeping while the levers
are in the outward neutral positions. The park locking pawls also will hold the mower stationary
on slopes over 15 degrees as long as they are engaged. However, the park locks are not designed
to be able to stop a mower that is already moving and in fact attempts to engage the park locks
results in a chattering sound and fast wear of the non-steel teeth on the parking pawls against the
steel cog gear. There are many zero-turn mowers that are provided with mechanical brakes that
can be applied by a lever or foot pedal to allow the brake to be applied from the operator seat.
These brakes also serve to hold the mower stationary in a parked position. In fact, Toro provides
friction type park brakes on many of its zero-turn mowers but not on its cheaper zero-turn
residential mowers.

Included in the means utilized to guard against hazards and the risk of serious injury or death is a
responsibility to use reasonable care to minimize the risk of injury when a crash occurs. This
method of guarding is known as designing to make a machine crash-worthy such that protection
is offered to the operator or passengers in the event of a crash. One example of this with respect
to automobiles is to include seat belts, air bags, padded dashes, collapsible steering wheels,
safety glass and roof crush protection when the automobile crashes or rolls over. John Deere, a
competitor to Toro, indicated in 1972 in their John Deere Design Data Manual 16 with respect to
the hazards of instability and overturn to: Design machines for minimum possibility of overturn
or hazardous tipping. "When intended function or probable use of a machine is likely to subject
it to tipping or overturn, provide protection to minimize personal hazards." Deere in 1985 in
their Product Safety Design Manual with respect to the instability and rollover hazard that one

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 5

design measure is to: "Provide protective frames (roll-over protective structures) and seat belts to restrain and help protect from crushing injuries in the event of machine tip or overturn."

Another early example is related to passenger rail cars where it indicated in an article entitled "Roof Structure for Steel Cars" written in April 1913 it is stated "The strength of roofs of some cars that have been rolled over in accidents has been checked against the formula used and it has been found to afford ample support against serious roof distortion in such cases." This same application of making tractors and mowers crash-worthy, particularly with respect to rollover incidents was employed in the tractor industry beginning in the late 1950's and 1960's with respect to means to protect the operator from being crushed when the tractors rolled over. Stevenson and Gustin, engineers with International Harvester and John Deere, respectively, in a June 1968 article for the American Society of Agricultural Engineers dealing with the need for roll over protection on tractors indicated:

> Educational institutions and various other groups have diligently promoted work on personal safety for many years. Yet, in spite of all these efforts, accidents still occur at an alarming rate. (Fig. 1)  We, the industry, have accepted the challenge of providing safety features on tractors to protect the operator, since our experience has clearly indicated we cannot prevent the accidents from occurring. Information obtained from the United States Department of Agriculture (USDA), various state bulletins, National Safety Council (NSC) and other surveys indicate that approximately half the farm fatalities are a result of accidents involving tractor upsets, either side or rear. Therefore, to reduce this number of fatalities the first major program is to provide adequate protection in case of an accidental tractor upset.

Even 40 years ago it was recognized that off-road work machine rollovers were going to continue to occur, despite warnings, instruction and training efforts, such that protection to operators when rollover crashes occurred was needed.

## Hazard/Risk Due to Loss of Drive Control

The zero-turn mower is manufactured with hydrostatic motors which propel and entirely control the locomotion, steering and general stopping of the mower. No other feature is provided for the operator to use to stop a moving mower. It is also provided with two controls that allow the hydrostatic drives to be disengaged so that the mower can be moved from a stuck position or rolled without using the drive.  Once disengaged there is no brake available to stop the mower.

As indicated in the technical publication with respect to hydrostatic drives on turf equipment entitled Application Considerations for Commercial Turf Maintenance Vehicles by Michael Betz in December 18, 1991

> Dynamic Braking and Input Speed Requirements
> For descending slopes, the hydrostatic transmission will provide some braking torque to the wheels due to the retarding characteristic of the engine. This is a transmission characteristic called "dynamic braking". This braking capability does not eliminate the need for a service brake. Some type of service brake must be included in the vehicle design to aid dynamic braking or for use in case of

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                          Page 6

> transmission failure. Hydrostatic braking must not be considered as the primary
> braking device for vehicles at static conditions either with the engine running or
> the engine off...

Toro did not provide any way of braking or stopping the subject mower if the hydrostatic drives
were disengaged or some failure had occurred. They did provide mechanical brakes on many of
its other mowers including zero turn mowers. For example the Toro Titan, another residential
zero turn mower, had a brake that could be applied to stop the mower. The subject mower was
provided with park locks but these are not effective to stop the mower if it is already moving.

Hydro Gear also noted that the means to bypass the closed hydrostatic circuit that removes
hydraulic braking can lead to uncontrolled free wheeling of the mower and create significant
safety risks. This knowledge can be seen in US Patent 7,275,371 B1 which states:

> There is need to have a means to open, or bypass, this closed circuit in certain
> circumstances. For example, when the vehicle is stopped, the oil in the closed
> circuit provides hydraulic braking, making it impossible to manually move the
> vehicle. Mechanical bypass designs are known in the art...
> However, such prior art designs have drawbacks. For example, in addition to
> those identified above, a completely open hydraulic circuit can lead to
> uncontrolled free-wheeling of the vehicle and create significant safety risks.

The Hydro-Gear US Patent 8,919,224 B1 indicates:
> On sufficient inclines, however, gravity may overcome the vehicle's inherent
> braking effect permitting the vehicle to slowly move downhill when in neutral.
> Whether in neutral or not, failure of a drive train component can result in the
> vehicle freewheeling down an incline. There is a need for a compact braking
> mechanism associated with the output axle. When used in a hydrostatic transaxle,
> the brake of the present invention is effective even if there is a loss of drive force
> applied to the axle caused by, for example, breakage of gear teeth in the drive
> train, loss of fluid integrity of the hydraulic circuit or breakage of an input drive
> belt. The mechanical brake mechanism disclosed herein acts upon and within the
> final drive gear engaged to the output axle. The present invention has applications
> to vehicles such as lawn mowers and tractors, garden tractors, snow throwers and
> other applications where a compact drive is desired.

The Hydro-Gear manual for the ZT-2100/ZT-2200 (EZT) Integrated Zero-turn Transaxle Service
and Repair Manual, BLN-52622 indicates:

## WARNING

**Actuating the bypass will result in the loss of hydrostatic braking capacity. The
machine must be stationary on a level surface and in neutral when actuating the
bypass.**

Mr. Steve Crowley                                                        March 17, 2023
Re: Hillman v Toro                                                              Page 7

There is not a similar warning in the Toro manual for this Timecutter indicating that the mower does not have any braking if the hydrostatic drives are bypassed. Indeed, Toro calls their park lock feature a brake which is very misleading as it is nothing of the sort.

The Fluid Power Safety Institute has publications that state:

**Why can't this "inherent dynamic braking system" be used for brakes? -**
There are simply too many things that can go wrong:
**1.** Lose the oil in the reservoir due to a transmission line failure (even if the failure is in an unrelated circuit).
**2.** Shear a motor or pump shaft.
**3.** Shear a pump or motor drive coupling.
**4.** Lose a transmission line unexpectedly due to wear or neglect.
**5.** Barrel "lift-off" due to wear or over-speeding (in some designs).
**6.** Wear in the pump and/or motor.
**7.** Contaminated or defective valves: charge pressure relief valve; main pressure relief valve; shuttle valve; etc.
**5. The manufacturer's warnings are very clear! -**
Here is the warning extracted from Sundstrand's 90 series service manual (ref. SM-S90 • 06/96 • 300047F BLN-09947 • Rev. F • June 1996 – Page 2)
*"Loss of Hydrostatic Braking Capability*
*WARNING –*
*When Series 90 units are used in vehicular hydrostatic drive systems, the loss of hydrostatic drive line power in any mode of operation (e.g., acceleration, deceleration*
*or "neutral" mode) may cause a loss of hydrostatic braking capacity. A braking system which is independent of the hydrostatic transmission must, therefore, be provided which is adequate to stop and hold the system should the condition develop."*

As can be seen in the above literature even the manufacturers of the hydrostatic drives indicate that some form of braking needs to be included in the design to enable a vehicle such as this zero-turn mower to be stopped that is independent of the hydrostatic drives.

Toro could have provided a simple park brake similar to that provided by John Deere on the JD Z425 zero turn mower as shown below in addition to their park lock system. The JD park brake on the Z425 EZTrak uses a lever to rotate two steel pawls against the rear tires and provides braking and a park brake. It is operated by hand and would provide a simple means for the operator to use to stop the Toro zero turn mower on the slope it was on. Testing shows that the brake effectively holds the tire on slopes up to 30 degrees.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 8



Park Brake lever and park brake pawl force against the rear tire to provide braking.

A more sophisticated brake system could be provided such as that provided by Scag on its Patriot and Freedom Z mower. The Freedom Z mower is only slightly bigger than the Toro Timecutter.



Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 9

Hydro-gear also has friction type park brakes that could have been selected to use with the
Hydro-gear EZT hydrostatic transaxle.

1. Check the brake disc and pucks for exces-
   sive wear. Replace if necessary.



Figure 11. Disc Brake Assembly

Sauer Danfoss provides the following warning in its product literature:

Warning

**Unintended vehicle or machine movement hazard.** The loss of hydrostatic drive line power, in
any mode of operation (forward, neutral, or reverse) may cause the system to lose hydrostatic
braking capacity. You must provide a braking system, redundant to the hydrostatic transmission,
sufficient to stop and hold the vehicle or machine in the event of hydrostatic drive power loss.

## Hazard/Risk Due to Rollover

The hazard in this instance is the rollover of the riding mower laterally and longitudinally.
There is a risk of serious injury or death associated with the rollover of the riding lawn mower.
The hazard and risk has been recognized for over 40 years as can be seen in the information
contained in Appendix B – Stability and Accident Data and Statistics. Appendix A contains a
review of the Consumer Product Safety Commission (CPSC) studies over a large number of
years that indicate tipping/sliding hazards, bank/wall hazards, and scenarios where the operator
was found pinned under a tipped mower were identified in about half of the death incidents
reviewed.  The hazard and risk from the tip over and rollover of ride-on mowers represents the
hazard that is the number one cause of death and serious injuries from their use by a large margin
over other hazards that lead to deaths occurring.  A study of the certified CPSC incidents
reported, investigated and from death certificates indicate that there were more than 700 deaths
(averaging 31-32 deaths per year) reported from rollovers, tipping and flipovers from calendar
year 1980 until June 30, 2003.  In addition, an analysis of the NEISS data from the CPSC for this
same time period indicated that there were an estimated more than 45,000 injuries (averaging
over 1900 injuries per year) that occurred due to roll-over, tipping or flipping.  These incidents

occurred with riding mowers and garden tractors that would have met the stability test requirements of the ANSI/OPEI B71.1 and B71.4 standards.

In 1993, a report by the CPSC, Ride-on Mower Analysis (1987-1990), CPSC, Propit Adler, September 1993, revealed that stability related accidents resulted in some 2200 injuries per year and was the primary hazard with 20% of the victims being hospitalized. The study further indicated that approximately 76% of the operators fell or jumped off the mower. Note that the design of the Toro Timecutter SS5500 seat position and the lap bars over the operator's legs makes falling or jumping from the Toro Timecutter SS5500 very difficult. Ms. Hillman stayed in the seat area of the zero-turn mower until she knew the mower was going to go over the retaining wall, at which time she stood up and went off forward landing on the ground below and then the front of the mower landed on her legs. I am aware of no tests that would indicate that operators of zero-turn mowers are able to always or nearly always safely exit an overturning mower. The lack of the ability of the operator to fully separate from the mower during an overturn increases the risk of injury or death when a rollover occurs.
In my years of designing ROPS, reviewing industry literature and studying the problem of rollovers of sit-down ride-on lawn mowers I have seen no tests which indicate that it is possible for the operator to safely exit a zero-turn riding mower or lawn tractor that is tipping over. Also note that the CPSC determined that many individuals that tried to exit were struck and severely injured by mower or the spinning blades of the mower itself as it tipped over.

Further, the tractor/mower does not protect operators that may be able to get off the mower from the spinning blades or the weight of the falling tractor/mower. The design of the tractor/mower without roll protection is such that once tipping is initiated the tractor will likely roll at least 180 degrees or more. The weight of the riding lawn mower is more than a normal person could withstand in a dynamic rollover situation. The operator presence sensing system offered by Toro does not protect operators who get separated from the mower as it is rolling over. This system utilizes a seat switch activated by weight on the seat and can take 5 seconds or more to kill the engine and stop the rotation of the blade from a full throttle running condition. Five seconds is longer than most rollovers will take to occur since many will occur in 1 second or less once stability has been lost. The Appendix of ANSI B71.1-1990 reads:

> 13.2.1.5 Analysis of Consumer Product Safety Commission (NEISS) in-depth investigation reports indicates that an operator presence control is an effective means of addressing certain types of blade contact injuries. These are the injuries in which the operator deliberately leaves the operator's position without first disengaging power to the mower blades, or without stopping the engine in accordance with the safety instructions, or both. Operator presence controls are not intended to protect the operator from sudden access to the blades, as would occur because of jumping or falling from the machine.

The last sentence provides indication that the industry knew that an OPC that was not required to stop the blades in less than 5 or 7 seconds would not be effective to operators who became separated from the mower such as could occur in a tipover/rollover accident.

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                         Page 11

**Warnings and Instructions:**

A common response to the hazard and risk as demonstrated above with respect to rollovers is to provide further warnings and instructions. This is the final step in the design safety hierarchy standard and as can be seen has not been effective in eliminating or reducing the severity of the injuries being incurred by the public using riding lawn mowers and lawn tractors. This should be expected in that it is recognized that warnings and instructions are the least effective method of dealing with hazards and risks when more positive design steps can be taken. As indicated by the National Safety Council in their Accident Prevention Manual 11th edition published in 1997:

> For many design situations, a combination of these five priorities will apply. However, companies should not choose a lower level of priority until they have exhausted the practical applications of higher priority levels. First and second priorities are more effective in safeguarding workers and creating safe systems because they reduce the risk by design measures that eliminate or adequately control the potential of an incident occurring and the severity of its consequences. Third and fourth priorities rely on human intervention, which means the level of safety achieved tends to depend on the knowledge and skill of the personnel involved.

As stated in the "An Instructional Aid for Occupational Safety and Health in Mechanical Engineering Design" published in 1984 prepared by the ASME Safety Division

> At the outset, designers must realize that the equipment or products they are helping create will ultimately be used by human beings. These people vary considerably in both physical and mental abilities.

> General users have wide variations in abilities, and their minimum skill level overrated.

Warnings rely upon the user to read, understand, remember and always follow them every time. There can be no mistakes, errors in judgment or forgetfulness. This is not possible to happen and the continuing deaths and serious injuries from rollovers is indication that warnings and instructions are not sufficient in dealing with the hazard of rollover.

The manufacturer (TORO) provided no warnings or instructions alerting users of the complete loss of control of the Timecutter when the bypass pins are actuated to be able to move a stuck mower. There are no warnings that the machine can roll uncontrollably, cannot be stopped or steered on slopes and could even end up going off a retaining wall. The manufacturer that makes the transaxle does provide warnings in their service manual.

The manufacturer recognized the rollover hazard and risk as can be seen by the information contained in the Operator's Manual for the Toro Timecutter SS5500 zero turn riding mower. For example, there are numerous reasons listed on page 4, 5, 7 and 16 that can lead to rollovers yet even this list is incomplete. Excel Corporation, which manufactures the Hustler brand of zero-turn lawn tractors, recognizes in its operator's manuals for their mowers that the factors of man, machine and the environment of use that can lead to rollover are too numerous to name.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 12

The slope gauge in the manual for the Toro Timecutter has a line at 5, 10, 15 and 20 degrees. Studies of charts such as these have shown that some operators are poor at eye-balling the slope using the slope gauge and can be off 5-6 degrees. The CPSC performed studies with respect to slopes that consumers were willing to mow and these angles were greater than 15 degrees and some up to slopes of more than 20 degrees. A better method would be to provide an inclinometer on the mower to allow the operator to get an accurate measurement of a slope. A market study in 2004 by John Deere found that three out of four consumers reported having at least one of the following: Moderate/severe hills, ditches and rough ground.

Providing a mower such as the Toro Timecutter SS5500 that did not protect operators from rollovers is defective design when it was known that most owners of these residential mowers had environments of use that would present higher risks of rollover. The design of the machine should match the expected environment of use and the environment of use that is indicated by the prior accident history for ride-on mowers.

Note that the JD 510A residential zero turn mower provided a ROPS as standard equipment indicating:

> Standard ROPS. Safety is always first with us. A foldable Roll Over Protection Structure (ROPS) is standard on all of our Z-Trak Estate mowers; push up for mowing and fold down for storing.

Note that the set-up instructions for the JD 510A indicate:

> On slope angles of 10° or less the risk of rollover is low, but as the slope angle increases to the John Deere recommended maximum of 20° the risk increases to a moderate level.

## Stability Considerations:

The hazard of rollover cannot be completely eliminated by design. However, the design of the machine should match the expected environment of use and the environment of use that is indicated by the prior accident history for ride-on mowers. Still even increasing the stability of the Toro Timecutter SS5500 could not be expected to render the lawn tractor incapable of overturning. With the design of the Toro Timecutter SS5500 when stability is lost to the rear or laterally it is very unlikely that the lawn tractor would end up stopping on its side, rear or front. This would be like expecting a flipped coin to land and remain on its edge. Like a coin, the Toro Timecutter SS5500 is more likely to rotate on over and be upside down on top of the operator than to stay on its rear or side.

The stability tests included in the ANSI/OPEI B71.1 and B71.4 minimum voluntary standards utilize static tests, where the lawn tractors are not moving up and down or across the slopes they are on and provide a measure of comparison of stability but cannot assure that the stability limits of a moving lawn tractor will never be exceeded resulting in a rollover. The static stability tests are conducted on a flat platform that is tilted with the machine stationary. The tests do not take into account the movement of the mower over non-flat slopes that may have bumps and

undulations, nor does it take into account the power that can be applied to the rear wheels causing the lawn tractors to lift at the front. The CPSC recommended dynamic stability tests in 1974 on 20-degree slopes with respect to riding lawn tractors, along with a warning inclinometer to alert operators to the steepness of the slope and that the control station needed to be designed so as not to inhibit the escape of the operator when a rollover occurs. The lawn tractor industry has not changed the basic requirements for their stability tests since 1960. The CPSC stopped their efforts for changing the standard due to lack of funding in 1984 and relied upon the industry to develop their standards to meet user safety needs and still the stability tests have not changed particularly with respect to the ANSI B71.4 standards. The B71.1-2003 standard does have some dynamic stability tests added but only on level ground and the use of design means to prevent rollovers during the tests. However, these design means are not provided to users on the lawn tractors.

In addition, the stability tests utilize an operator weight of 200lb even though operators can be expected to weigh considerably more. The operator is located at nearly the highest point of the machine. Because of this the combined CG of the tractor/mowing deck/operator will raise with larger and taller operators than 200 lbs and would make a rollover correspondingly more likely while still not providing protection in the form of a ROPS. The smaller the zero-turn mower the more effect the operators weight has on the CG combination. Toro did not provide any warnings or instructions for heavier operators with respect to operating the Timecutter.

In 1984, the CPSC (McNamara and Folkes, "Riding Mower Project - Status Report") noted that a correlation between stability-related requirements in the industry's voluntary minimum Outdoor Power Equipment Institute (OPEI)/American National Standards Institute (ANSI) standard and actual mower stability during slope operations had not been demonstrated. It further recommended inclinometers for riding mowers. At the same time, in 1984 the CPSC specifically noted that it did not approve the ANSI B71.1 voluntary safety standards for riding mowers. It specifically found that these new measures were not adequate to reduce riding mower dynamic stability related deaths and serious injuries. It expressed "deep concern over deaths and injuries associated with dynamic (when moving) stability...."

There are many other examples of rollovers of lawn tractors occurring each year which demonstrate the hazard and risk associated with rollovers of this type of lawn tractor that nevertheless meet the stability requirements of the minimum voluntary industry standards.

## Operator Protection When a Rollover Occurs

The operator can be provided substantial protection in the event of a rollover through the provision of a protective structure known as a ROPS or roll bar and seatbelts. There are numerous industry performance standards that have and can be used to design, test and certify a ROPS on the subject lawn tractor. Many times, the OSHA regulations are used. More recently the ISO 21299 standard has been utilized. Deere, for example, began utilizing the ISO 21299 standard by 2007. The ISO 21299 standard was developed relying on previous ROPS performance standards from ASABE, SAE and OSHA along with the Corps of Engineers for a rigid ROPS. A ROPS significantly reduces the risk of injury to the operator in a rollover accident by limiting many accidents to a roll of less than 180 degrees and by providing a protective zone in the event the tractor/mower rolls 180 degrees or more.

Mr. Steve Crowley                                                     March 17, 2023
Re: Hillman v Toro                                                            Page 14

Seatbelts offer further protection by keeping the operator within the protective zone. Riding mowers and lawn tractors began to have ROPS installed on them in the mid-1970's by Hustler and even earlier by Yazoo. Jacobsen Manufacturing applied for U.S. Patent Number 3,826,530 for a riding lawn tractor on July 3, 1972, with the provision for a roll-bar to protect the operator in the event that the tractor tips over.

Engineers have long recognized that operators of ROPS equipped tractors will avoid injury in rollover incidents due to the presence of the ROPS. As indicated by L. Dale Baker of Case Corporation in his article in the Journal of Agricultural Safety and Health, Nov. 1998:

> There are very few fatalities in this country from overturns of tractors equipped with ROPS. As noted in the article (Myers, 1999), very few farmers are currently using seatbelts." He indicates that there were approximately 5000 tractor overturns in 1993 and estimates that 38% of the overturns involved ROPS equipped tractors since that is the percentage of tractors with ROPS in 1993. He indicates: "If we assume that 38% of these overturns occurred with ROPS-protected tractors, then there were approximately 1,900 of such overturns. We do not hear of the injuries from these overturns, either through the literature or through proprietary industry information. ROPS, without the use of seatbelts, can be an effective injury prevention response. ROPS is the primary protection, and the seatbelt is the secondary protection. Help eliminate the excuses for not installing a ROPS.

In 1975, OSHA indicated that "There is virtually no dispute that a ROPS with a seat belt meeting the performance requirements of the final standard will significantly reduce the hazards associated with roll-overs." Federal Register Vol. 40, No. 81 page 18254 April 25, 1975. OSHA also indicated:

> Finally, use of the required seat belt keeps the operator in the protective enclosure formed by the ROPS and prevents the operator from being thrown or jumping from the tractor, thus avoiding additional hazards such as the tractor rolling over the operator, or the operator being thrown into a stationary object.

In addition, Myers, Cole and Westneat found with respect to their published paper "Seatbelt Use During Tractor Overturns" that:

> Table 3 shows a comparison of injury by severity experienced during tractor overturns between ROPS-equipped and non-ROPS tractors as related to seatbelt use. No death was reported from an overturn of belted operators on ROPS-equipped tractors, whereas one death out 92 overturns was reported on a ROPS-equipped tractor but for a functional seatbelt was absent...... This death is in contrast with 24 deaths reported out of 445 overturns of non-ROPS tractors. Moreover, the seriousness of injuries was reduced on ROPS-equipped tractors regardless of seatbelt use.

A tractor or machine that is provided with a ROPS and operator restraints in the form of seat belts provides significant protection for the operator compartment. This was not new knowledge for 2005 or 2013 and has been evidenced for more than 50 years on various types of equipment.

Mr. Steve Crowley                                           March 17, 2023
Re: Hillman v Toro                                                Page 15

An operator of a ROPS equipped lawn tractor that stays in the operator seat area is much less likely to receive serious or fatal injuries during a tipover or rollover accident. It prevents the zero-turn mower from crushing the operator in the operator seat as the tractor/mower rolls over. The ROPS is not designed to prevent contact of the operator with the ground surfaces as can be seen by a review of the industry standards and the allowable deformation of the ROPS during rollover. This is also shown by the allowable leaning of the crush protective zone in many of the standards. Further, studies of this potential in the late 1950's and 1960's resulted in no recommendation for safety helmets and head protection for tractor operators with excellent protection during rollovers being realized from the crush protection provided by the ROPS structures itself. My research and experience have shown this to be true for any off-road machinery subject to tipovers or rollovers such as forklifts, front-end loaders, farm and industrial tractors, skid steer loaders, motor graders, scrapers, bull dozers and lawn and garden tractors See Appendix B - ROPS Effectiveness Information. In addition, I know this to be true as a result of my experience in designing, testing and certifying ROPS systems for manufacturers of front mount and zero-turn lawn tractors and for a company that manufactures ROPS for front mount and zero-turn lawn tractor manufacturers.

The accepted engineering practice in the design of off-road equipment is to provide a protective zone and restraints to provide protection from crushing injuries to the operator during a tip-over or rollover incident. Engineers and literature on the subject have long recognized that jumping from equipment as it overturns is a poor substitute for some means of positive mechanical protection. Engineers have recognized the operator's inability to jump clear of upsetting machines and that some operators are severely injured or killed attempting to jump (MacCollum 1984). This fact has been recognized and addressed by providing a protective zone for the operator and means and instructions to the operator to stay in the seated operator area. These means and instructions have been found to be very effective in preventing serious injury in the event of a rollover incident. The operator area on a lawn tractor such as the Toro Timecutter SS5500 ride-on mower is similar in size to that of many other tractors that are equipped with ROPS since similar size operators will operate this equipment.

Rollover protection on these larger tractors has proven itself to be very effective in preventing serious injuries and death even when seatbelts are not worn by limiting most rollovers to a side or rear tip-over and by providing crush protection when a rollover of more than 90 degrees occurs. Further, in the development of ROPS for tractors Deere found that "Injury inflicted on an operator during an upset of a tractor equipped with a protective canopy would probably result from some other cause than the force of impact." (See Bucher, ASAE Paper No 66-625, "The Design and Evaluation of a Protective Canopy for Agricultural Tractors".) It was technically and economically feasible to have installed roll over protection on the Toro Timecutter SS5500 as on other models available at the same time as the Timecutter. Such rollover protection limits most rollovers to a lateral or rear tip over and provides crush protection if the mower rolls over onto its top.

I am unaware of any manufacturer that has removed ROPS from their designs of the riding lawn mowers and tractors once they have been included in the design. I am unaware of any documented permanent injuries or deaths that have occurred in rollovers of a lawn mower with a deployed ROPS and utilizing the seatbelt. Toro and Exmark, when they decided that ROPS should be included on many of their zero turn mowers also decided to retrofit ROPS onto older

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 16

zero turn tractor models of the same models. Toro indicated on 1/1/2005 in their Product Safety Information document the following:

> Rollover Protective Systems (ROPS) in combination with seat belts, are shown to be effective in preventing serious injuries or death if equipment overturns. ROPS are standard equipment on Toro Z Master Mid Mount ZRT commercial mowers manufactured in 2004 and later. Owners of Z Masters manufactured before 2004 (click here for a list of model numbers) can obtain the same protection by selecting one of the following:
> 1. Free non-foldable ROPS, or
> 2. Two-post foldable ROPS at a discounted price of just $179.

This was not new knowledge as of January 1, 2005. The knowledge of the effectiveness of ROPS in preventing serious injuries or death when a tractor overturns had been known for 30 years prior to 2004.

Various excuses have been voiced by some manufacturers with respect to providing ROPS on their lawn tractors or ride-on mowers. These are stated and addressed below:

*1. The provision of a ROPS/rollbar on a mower below 880 lbs would lead to greater risk to the operator in the event of a rollover by leading to more rollovers and the possibility of trapping the operator under the ROPS.*
Comment: This Toro Timecutter SS5500 riding mower has a weight of over 598 lbs. which does not include various attachments. This weight is such that a person caught beneath the overturned Timecutter zero turn mower can be crushed and severely injured or killed. The weight of riding mowers and lawn tractors even below 500 lb without a ROPS is sufficient to seriously injure or kill the operator pinned beneath the machine or coming into contact with spinning blade during the roll. These weights and the 21.5-horsepower engine would all place the weight of the Toro Timecutter SS5500 at the upper range of ride-on mowers increasing the risk or injury or death when a rollover occurs as seen in the CPSC accident data with respect to the cause of deaths with respect to the use of ride-on mowers.

In fact, the CPSC data (Smith 1992) indicates that the average horsepower for the ride-on mowers reported in the accident databases have a mean horsepower of approximately 11 hp with rear engine riders averaging 8.5 hp and front engine riders averaging 12 hp. Further, Prowpit Adler of the CPSC indicated in 1993 that the same accident rate was found between rear engine riders and front engine riders. McConnell (1968 indicates the weight range of riding power lawn mowers as ranging from 150 lbs to 750 lbs. More recent articles indicate that the average advertised horsepower for lawn tractors has increased. I am aware of no tests or data that demonstrate that the risk of injury for lighter weight mowers is sufficiently less to base a decision for not providing rollover protection on ride-on mowers. It is the length, width, and height of the mowers that pins the operator and the weight that holds them in place and if the operator is separated the risk of contact the blade is substantial. The dimensions of these machines and position of the operator on them without ROPS are sufficient to pin the operator when they roll over, and without ROPS the machines are more likely roll over onto their top and/or allow the operator to come into contact with the spinning blades during the roll.

Mr. Steve Crowley                                                        March 17, 2023
Re: Hillman v Toro                                                              Page 17

The very presence of a ROPS implies that there will be structure above the height of the operator to keep the weight off of operator during a rollover. This is how ROPS protects the operator. Without a ROPS the operator has no choice but to try to separate from the mower since if they stay in the seat they will be crushed between the seat and ground. While the presence of a ROPS would generally cause the CG of the mower to be raised virtually all changes in stability can be corrected by providing wider rear wheels and repositioning the wheels in relation to the CG at the design stage. For example, the rear wheels of the Exmark Lazer Z (a competing brand of mower) have different wheel designs for different deck sizes that provide several inches wider outside to outside tire width for mowers with wider decks. My own testing with respect to static stability has indicated very small differences in lateral stability when a ROPS is installed. Rearward stability is decreased a small amount but, if necessary, those differences can be countered by the addition of front weights onto the mower as is commonly done when a rear bagging attachment is used on the mower such as those that were provided with the ROPS kit for the Timecutter SS4225. My testing and experience have indicated that even with the small changes in the height of the center of gravity the usefulness of the mower is not changed, and the mower operates in the same environments without change. This testing includes the operation of a smaller and similarly sized zero turn mowers with a ROPS installed. Below is an example of a zero-turn mower with a ROPS installed.



Toro Timecutter SS5000 with ROPS installed.

Exhibit A-17

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                          Page 18



Toro Timecutter 5225, SS5500, Z5035 and Snapper CZT with ROPS installed.



Toro Timecutter 5225, SS5500, Z5035 and Snapper CZT with ROPS installed.

Testing by Toro for "Z Slope Operation" indicated that the machines with ROPS performed similarly with and without ROPS and that the minor changes in the CG of the units was overshadowed by other factors such as operator input and turf condition. It was indicated that the machines with ROPS were capably operated on slopes of 20 degrees. I have operated various Toro Timecutter zero-turn mowers on slopes over 20 degrees in testing. My own experience with lighter weight zero-turn mowers with ROPS installed have easily passed the stability requirements of ANSI B71.1 or B71.4 for the machines tested and have noticed no differences in utility of the operation on slopes.

Exhibit A-18

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                        Page 19

The data and studies with respect to the provision of rollover accidents involving rollovers of all ROPS equipped tractors indicate that severe injuries and deaths have been significantly reduced over machines without roll-protection. This protection is provided by preventing the weight of the tractor or equipment from pinning and crushing the operator while being able to remain on the machine protected from having the rolling machine land on them. In addition, studies have shown that on tractors without ROPS protection that operators have only a slight chance of jumping clear. The paper "Development of a Protective Frame and Cab Recommended Practice for Agricultural and Light Industrial Tractors in the United States," by D.L. Stevenson and W.E. Gustin, American Society of Agricultural Engineers, Paper No. 68-110 presents the study and work done in the development of a protective frame and cab for tractors in the 1960's by an engineer for IHC and an engineer for John Deere. The paper clearly states: The protective frame ASAE R-305 and SAE J-333 recommends the seat belts conform to the SAE J4 Standard. Also, the seat mounting, and seat belt anchorage be tested according to the SAE Recommended Practice J-787 with the exception listed as the speed of a tractor during actual upsets usually considerably less than automotive speeds. It is not recommended seat belts be used unless a tractor is equipped with a protective frame. The seat belt would eliminate the slight possibility of an operator jumping or being thrown clear during tractor upsets (emphasis added). Performance industry standards, ASAE S478 Jun00 and ASAE S547 Dec02, provide ROPS performance requirements for similar equipment without a minimum weight limitation. Also, these standards utilize a reduced size for the operator clearance zone for these machines. See Appendix B -- ROPS Information packet.

2. *There is currently no data supporting the effectiveness of having ROPS on a riding mower.*

Comment: There has been a tremendous amount of data documenting the effectiveness of having rollover protection on many different tractors over the past 50 years. As Deere has noted in their literature, lawn tractors are tractors with similar hazards and risks. ROPS with seat belts have been unequivocally shown to be effective in minimizing the number of deaths and serious injuries to the public using the ROPS equipped machines. In 1975, OSHA indicated that "There is virtually no dispute that a ROPS with a seat belt meeting the performance requirements of the final standard will significantly reduce the hazards associated with roll-overs." Federal Register Vol. 40, No. 81 page 18254 April 25, 1975. OSHA also indicated: "Finally, use of the required seat belt keeps the operator in the protective enclosure formed by the ROPS and prevents the operator from being thrown or jumping from the tractor, thus avoiding additional hazards such as the tractor rolling over the operator, or the operator being thrown into a stationary object." Agricultural tractors vary greatly in size from small sub-compact utility tractors of approximately the same power as the Toro Timecutter SS5500 up to huge 4-wheel drive tractors weighing over 30 tons. There should be no question that ROPS technology would be effective in protecting operators of Toro Timecutter SS5500 mowers in 2013 as it was in protecting operators of other tractors.

Some manufacturers of zero turn mowers similar to the Toro Timecutter SS5500 have installed ROPS as standard equipment. For example Scag places a ROPS on the 2006 Freedom Z with a weight of 785 lb with the ROPS installed. Excel Hustler installs ROPS on the Hustler Sport at a weight of 594 lb with the ROPS installed. Clearly ROPS can be and has been installed on machines similar in size and weight to the Toro Timecutter.

Mr. Steve Crowley                                              March 17, 2023
Re: Hillman v Toro                                                  Page 20



Some claims are made that because of the smaller size of these machines that injury would be more likely due to having limbs pinned  between the ground and the ROPS.  Studies that I have conducted indicate that the potential of an operator to have a part of their body caught between the ROPS frame and the ground or other objects could occur with many ROPS designs including those provided by Toro and others on other tractors.  ROPS is provided to create a crush protective zone and that zone is allowed by most performance standards to bend and deflect at least partially into the operator zone not to prevent all contact with the ground. Again as indicated by John Deere in the development of ROPS for tractors which is the basis for ROPS on zero-turn mowers "Injury inflicted on an operator during an upset of a tractor equipped with a protective canopy would probably result from some other cause than the force of impact."  (See Bucher, ASAE Paper No 66-625, "The Design and Evaluation of a Protective Canopy for Agricultural Tractors".)  ROPS designed to these performance standards have provided needed and effective crush protection over and over.  Ride-on mowers such as the Toro Timecutter SS5500 would have a similarly sized operator areas to that of larger tractors since similarly sized users will operate them.



JD 717A with ROPS showing operator can lean outside of the periphery of the ROPS.

Exhibit A-20

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                        Page 21

One death or serious permanent injury due to the lack of a ROPS is too many. There is not a
quota of deaths or injuries that must be reached before a foreseeable hazard with respect to
the use of the machine is addressed by the application of the design safety hierarchy standard.
People are not to be used as guinea pigs to determine a set number of deaths that must occur
before corrective action is taken. Such an attitude is contrary to the design safety hierarchy
standard and the ethical standards of the engineering profession which require the safety of
the public to be held paramount. I am unaware of any publicly documented rollovers of
ROPS equipped and deployed lawn tractors and specifically ROPS equipped and deployed
ride-on mowers or lawn tractors including ZTR models where the operator was paralyzed or
received fatal injuries. See Appendix B - ROPS Effectiveness Information packet.

Toro in providing ROPS on its Z-Master mowers indicates "Roll-over Protection Systems
(ROPS) in combination with seat belts are shown to be effective in preventing serious
injuries and death if equipment overturns. ROPS are standard equipment on Toro Z-master
Mid-Mount ZRT commercial mowers manufactured in 2004 or later." The LSU Ag Center
in its 2008 publication "Preventing Overturns with Zero-Turning-Radius Mowers" indicates
All zero-turn mowers should have a ROPS....A ROPS is important to protect you in case an
overturn does occur." The National Safety Council in their "Commercial Equipment
Operator's Safety Training Program" states: "Rollover protection and a seatbelt or "ROPS" is
an important safety feature to protect you in the event of an unexpected rollover. Wear your
seatbelt at all times." and "The use of ROPS will reduce the chance you could be injured or
killed if your mower rolls over."

### 3. A ROPS can catch on overhead obstructions and lead to tipovers.
Comment: Every riding mower, whether equipped with a ROPS or not, can encounter low
clearance situations. There are many accidents reported to the CPSC of operator injuries and
fatalities from encounters with low hanging objects on machines without ROPS. A ROPS is
necessary to create the protected safety zone for the operator. Further, Toro has available an
overhead sunshade and steel structure that would present similar problems with overhead
objects. There is a hazard with a risk of serious injury or death that is introduced by allowing
operation in low overhead areas in that the operator safety zone can be encroached by the low
overhead objects and cause severe injury. There are many injuries and deaths that have
occurred from encountering this very hazard on non-ROPS equipped lawn tractors.

An operator should not have to crouch down to avoid overhead obstructions. Crouching
down can lead to not being able to see the direction of travel and loss of control. Further,
there are many areas already that cannot be mowed because the objects are lower than the
machine itself. Actual testing, by myself, of tractor mowers equipped with ROPS such that
the ROPS catches on low hanging objects indicates that rollover was not caused by this
occurrence. I am not aware of any documented rollovers where a low clearance object caught
on a deployed ROPS and caused a rollover of a tractor causing a permanent injury or death.
In any event a ROPS provides protection for an operator when a tip-over or rollover occurs
and a ROPS would add about 6-12 inches to the overall height of the Toro Timecutter
SS5500 with a seated operator. Finally, if this were a real problem that prevented ROPS
protection from being provided to operators, Toro would not have made ROPS standard
equipment on the other models made after 2003.

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                          Page 22

4. *The center of gravity is higher with a ROPS making the machine less stable.*

Comment: While a ROPS may slightly raise the center of gravity there is not any indication that
ROPS equipped machines cannot meet the stability recommendations of the industry's own
voluntary, minimum, consensus standards. Weights can be added to counter changes made with
the addition of a ROPS. Toro has weights available for the Toro Timecutter SS5500 that can
counteract any loss of rearward stability. (Toro Front Weight Kit for Timecutter Series Riding
Mowers).

 In addition, meeting the stability recommendations does not prevent rollovers that occur due to
slipping over embankments or retaining walls. With the Timecutter a ROPS was not considered
in the base design. A machine with a ROPS included in the design from the start can have the
wheels, tires, engine, operator and other components designed to provide the same stability
characteristics as the machine without a ROPS. When rollover protection is added to an existing
design, the added weight of the ROPS and its affect on the stability can be offset by the provision
of counterweights, if necessary. In addition, the mounting structure for the ROPS can be built
into the frame reducing the weight added by the ROPS itself.

Any machine including the subject machine will overturn when it exceeds its stability limits
which as stated in the Toro Timecutter SS5500 operator's manual can occur due to operation on
slopes, near drop-offs, ditches or banks, due to sharp turns and starts and stops on slopes.
Further, studies have shown that ROPS equipped equipment actually makes operators more
conscious that machines can roll over. See Appendix B - "Tractor Anti-Roll Bars Really Work"
Implement and Tractor, Aug 21, 1966 – ROPS Effectiveness Information. It has been shown
that with mowing equipment rollovers of ride-on machines are the leading cause of deaths on
machines not equipped with rollover protection. This information is not provided to operators.
See Appendix A and Appendix B– Mower Stability and Rollover Accident Information.
Stability is also significantly affected (raised) by the presence of an operator on a lawn tractor.
The weight of an operator can be a large part of the man-machine system. A 200lb operator
would represent 25% of the man/machine weight. A 250 lb. operator would represent 29% of
the combined weight. With a ROPS any potential loss of stability is offset by the protection
offered by the ROPS.

5. *Use of ROPS without a seat belt creates a potentially more hazardous condition.*
   Comment: ROPS have proven to be effective in preventing deaths and serious injuries without
   use of a seatbelt. The use of the seatbelt enhances the protection offered. See Appendix B -
   ROPS Effectiveness Information. ROPS are allowed to be a minimum of 24 inches wide by
   OSHA and ASAE standards and many ROPS have been provided that would permit an operator
   to lean from a seated position well outside the periphery of the ROPS. ROPS designed and
   constructed to the requirements of these standards have demonstrated their effectiveness in
   limiting injuries over and over again. ROPS are intended to limit many rollovers to a side
   layover and to provide a crush protective zone for the operator should the machine roll onto its
   top or further. Early in the development of ROPS it was recognized that the operator may
   contact the ground during the roll and there was thought to recommending a helmet to protect the
   operators head as can be seen in the test reports and papers by Professor Lamouria at the
   University of California – Davis in 1959. However, helmets have not been required and utilized
   and ROPS have been proven over and over again to provide lifesaving and injury preventing

protection to operators when their tractors have rolled over.  An operator of a Toro Timecutter
SS5500 zero turn mower would be subjected to a lower fall height and less energy than a
corresponding operator of a farm tractor that rolls over and ROPS would be even more effective
in preventing injury.  Again, if this were a real problem that prevented ROPS protection from
being provided to operators, Toro would not have made ROPS standard equipment on the other
ZTR models made after 2003.

6.  *Installation of a ROPS can give the operator a false sense of security which leads him to operate
on dangerously steep slopes.*
Comment: There is no indication in the literature that a false sense of security is created by
ROPS.  If anything, not providing a ROPS, provides a false sense of security that the Timecutter
is safe for use without such protection and that the stability is sufficient for the operator to rely
upon to never encounter a rollover.  Studies have shown that ROPS equipped equipment actually
makes operators more conscious that machines can roll over. (Appendix B - "Tractor Anti-Roll
Bars Really Work" Implement and Tractor, Aug 21, 1966 – Appendix B - ROPS Effectiveness
Information.  A ROPS provides protection when a rollover occurs.  Stevenson and Gustin in their
ASAE paper in 1968 also reported

> The established purpose of the Recommended Practice is clearly defined as to
> minimize the possibility of operator injury resulting from accidental upsets during
> normal operations.  A protective frame will not prevent such accidents from
> occurring.  In fact, both the highway maintenance departments of North Dakota
> and Illinois stated they originally felt the protective frame would have an adverse
> psychological effect on operators, making them overconfident and causing the
> operators to operate the tractors on slopes too steep.  In these two cases it was not
> true.  Apparently, the protective frames made the operators more conscious that it
> could roll-over as less accidental upsets have occurred with protective frames than
> without protective frames.

Operation on slopes of any height can lead to rollovers due to the loss of traction as can
operation in areas with drop-offs in elevation whether the tractors or mowers are equipped with
ROPS or not.  With a ROPS the operator is provided adequate protection when a rollover occurs.

7.  *If the machine rolls into water, the ROPS can prevent pinning the victim under water but can
also make it more difficult to get free from the machine if a seatbelt was used.*
Comment: As mentioned the ROPS keeps the machine off the operator making it likely that the
operator would not be trapped under the machine allowing him to get free.  Without a ROPS, the
operator is at substantial risk of being trapped under the machine.  I am not aware of any
publically documented incidents where an operator was trapped under water by a deployed
ROPS on a ROPS equipped tractor of any type including ZTR lawn tractors.

Accidents specific to waterways and drainage canals were specifically addressed by OSHA in
1975.  OSHA indicated:

> And since these deaths occurred because the operator was trapped between the
> tractor and the mud, we believe a ROPS with a seat belt may well have saved
> these operator's lives.  In weighing the known hazards of rollovers into canals

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                          Page 24

where a ROPS with a seat belt were not used, against the potential hazard of
drowning because a seat belt is used, we have concluded that where tractors are
used in the vicinity of drainage canals, the use of a ROPS with a seat belt is
necessary and appropriate to protect operators from the hazards associated with
roll-overs. Accordingly we decline to exempt drainage canal usage from the
requirements of the standard.

If rollovers at the banks of ponds and other bodies of water were a real reason not to provide
ROPS, Toro would not have made them standard on other zero turn models made after 2003.

8. *The accident was caused by operator error.*
   Comment: Accidents are the result of an interaction between the man, the machine and the
   environment of use. All operators can make mistakes and errors in judgment that lead to
   rollover incidents, the machine and its characteristics can lead to rollover incidents and the
   environment of use can lead to rollover incidents. A Deere engineer, Mike Lee, testified in the
   Ousley v Deere case that he had rolled a lawn tractor over. The designer of a machine such as
   the Toro Timecutter SS5500 riding mower and other lawn tractors cannot and should never
   assume that the operator will be perfect or control the environment of use. If that were a
   legitimate assumption, ROPS and many safety features on the mower would never be needed at
   all. The designer and manufacturer can provide adequate protection to the operator to prevent
   serious or fatal injuries and/or death should a rollover occur. E.W. Hodgson in his article
   entitled "The Engineer and Society – Safety is Our Responsibility" published in The Charted
   Mechanical Engineer in April 1966 states:

   There is a tendency of some engineers to think of safety as someone else's
   responsibility, something, perhaps to be considered later when all the other
   pressing problems of design and organization have been dealt with. The truth is
   that safety must be built into all machines, processes and organizations from their
   very inception. And it is not good enough to assume that a user or operator of
   equipment will never do anything careless or downright stupid: we all slip up at
   times and the designer or manager who ignores this possibility is as responsible
   for the ensuing accident as a motorist who allows no margin of error in others.

Providing a ROPS on the Toro Timecutter SS5500 zero turn mower provides such protection
when an upset occurs. As indicated by Stevenson and Gustin (engineers for IHC and Deere) in
1968 in their American Society of Agricultural Engineers paper entitled "Development of a
Protective Frame and Cab Recommended Practice for Agricultural and Light Industrial Tractors
in the United States"

   We, the industry, have accepted the challenge of providing safety features on
   tractors to protect the operator, since our experience has clearly indicated we
   cannot prevent the accidents from occurring.

Similarly, Ernest C. Carlson (Chief Engineer at IHC) indicated in an Oct. 1968 Excavating
Contractor article:

Mr. Steve Crowley                                                                    March 17, 2023
Re: Hillman v Toro                                                                          Page 25

> When an upset occurs it is a complete waste of time and energy to argue "who is
> to blame." Required is a complete and thorough study of all technical data and a
> consolidation into an effective preventative. This was the achievement
> attained......when it assumed the initiative for developing a practical and
> effective tractor protective frame.

Howard S. Latham, Chief Safety Engineer for the US Department of Interior in the 1968
National Safety Congress indicated:

> While the cause of rollovers is an important safety consideration, it was not and is
> not pertinent to the consideration or the need for rollover protection. Regardless
> of whether the rollovers were caused by operator error, mechanical failure, or
> poor haul roads, the indisputable fact was that they did occur. Consequently, we
> could only conclude that there was a need to protect the operator and the
> equipment in event of upset or rollover......Significantly, subsequent reports of
> lives saved and damage to equipment minimized due to the installation of rollover
> protective systems have proven the value of and necessity for the protection.

See Appendix B – General ROPS Information packet. A ROPS assumes that an accident will
occur and is provided to protect the operator during the rollover.

Finally at page 40 it stated - Consumers are probably not accurate in estimating either the degree
of slope or its associated risk.

As shown by the operator's manual, proper operation of ZTR machines is a complex task.
Inevitably mistakes can and will be made. This was well known by the mower and tractor
manufacturing industry. One of the purposes of ROPS is to protect operators when conditions
including mistakes occur that can lead to rollovers. In that respect ROPS are like seat belts,
airbags and many other safety devices in our cars.

9. *The* Toro Timecutter SS5500 *was reasonably safe because it complied with a minimum
   consensus voluntary standard such as ANSI/OPEI B71.1 or B71.4.*
   Comment: The ANSI/OPEI B71.4 standard and other similar industry standards are voluntary
   standards. Toro chose to put ROPS on some models after 2005 despite not being required by the
   B71.1 standard in effect at that time. A manufacturer can choose to meet or exceed the
   requirements or not. In addition, manufacturers such as Toro write and control what is in the
   standard that is built on consensus between manufacturers. The standard is a consensus standard
   that is controlled by the industry (OPEI) and only includes the safety requirements that have
   developed a consensus within the committee of industry representatives. The standard is a
   minimum standard and does not include all of the requirements for designing a safe machine.
   The ANSI/OPEI standard does not indicate that a ROPS or similar protection should not be
   placed upon the Toro Timecutter SS5500. As indicated in 1984 in the ASME "An Instructional
   Aid for Occupational Safety and Health in Mechanical Engineering Design" ".... courts have
   interpreted such standards as minimal standards for product acceptability." See Appendix B -
   Design Methodology Packet. The Code of Ethics for Engineers indicates that "engineers shall
   hold safety paramount in the performance of their professional duties." See Appendix B –
   Standards packet. Standards are not just what the industry can agree to adopt in its various

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 26

organizations. They are also set forth in textbooks, treatises, and ethical standards. The design safety hierarchy is a standard. The law is a standard. To provide a tractor/mower such as a zero-turn mower that is safe for its reasonably foreseeable use and misuse such that safety is held paramount, protection for the operator from being crushed or injured during rollovers is necessary.

OSHA is a standard that addresses the employer/employee relationship.  (OSH Act of 1970 Section 5 Duties) It is a standard that could have been chosen to be followed by manufacturers of lawn tractors the same as other voluntary standards. OSHA 1926.1002 is a regulation that requires that ROPS be placed on equipment where there is a risk of rollover occurring including grounds keeping equipment. Specifically, OSHA 1926.1002 (j)2 describes an industrial tractor as "that class of wheeled type tractor of more than 20 engine horsepower used in operations such as landscaping, construction services, loading, digging, grounds keeping, and highway maintenance" and 1926.1000 (a) and (b) indicates that ROPS shall be equipped on industrial tractors. The 2005 Toro Timecutter SS5500 indicated it was tested to the requirements of ANSI/OPEI B71.1. During the dynamic stability testing that standard expected that operators would be provided with protection from rollovers by placing anti roll over outriggers on the mower as shown below:

**19.2.3.1  Test equipment**

The machine shall be equipped with lateral outriggers to indicate lift-off of the wheels on the portion of the frame that supports the operator's seat to prevent overturn during the test and to determine test acceptance.

That same protection was not offered to regular operators of the Timecutter. It would not be reasonable to expect employees to design, test and certify their own ROPS. Yet, Toro chose not to offer ROPS on the Timecutter SS5500 in 2013 or any other time to protect employees that operate the lawn tractor. They did provide ROPS as standard equipment on other models holding "safety of the operators first" on those models but not on this Timecutter. Toro developed a ROPS for later Timecutters beginning in 2020. If the OSHA and agricultural standards did not provide an adequate ROPS to protect operators of zero turn, sit-down, ride-on mowers those standards would not be appropriate to design and certify ROPS and protect operators. Yet those standards are commonly used by many ride-on mower manufacturers when certifying ROPS.

The SAE J1042Jun93 standard indicates in the Scope that it applies to "General Purpose industrial Machines described in Category 2 of SAE J1116. SAE J1116 lists in Category 2 the following machines: Tractors, Loaders, Backhoe Loaders, Mowers and Trenchers. Additionally, the Scope of 2. Self-propelled General Purpose Industrial Machines in SAE J1116Jun86 states:

"This recommended practice applies to machines that are in regular commercial production and are over 20 hp. They are used for landscaping, construction site services, public and commercial grounds keeping, and highway right-of-way maintenance."

SAE J1041Jun93 indicates

Mr. Steve Crowley                                                        March 17, 2023
Re: Hillman v Toro                                                              Page 27

3. Rollover Protection - In order to fulfill the intended purpose of this standard,
subject machines shall be equipped as specified in paragraphs 3.1 and 3.2.
3.1 A rollover protective structure (ROPS) per SAE J1040. Wheeled machines
similar in configuration to agricultural tractors may, as an alternative, be equipped
with a ROPS per SAE J1194. 3.2 Seat belts conforming to SAE J386. The seat
mounting and seat belt anchorage(s) shall meet the requirements of SAE J386
(Part III, Industrial Machines Test Procedure).

Toro did not provide any kind of ROPS and seat belts as standard equipment or optional
equipment in 2013 for the Timecutter SS5500. By not providing ROPS as standard
equipment it is indicated to the purchaser that ROPS is not a necessary feature required by
OSHA or for the protection of operators. As reported by the University of Saskatchewan in
the article "Tractor ROPS (Rollover Protection Structures): Barriers and Motivators" ROPS
was not installed on tractors in high percentages in the US until manufacturers began to
provide ROPS as standard equipment in 1985. The article states:

     For locations without supportive legislation (for ROPS installation before 1985,
     in the US) the prevalence of ROPS-retrofitted tractors was low. In a study of
     cash-grain farms in Ohio, only 28.8% of tractors manufactured before 1985
     were ROPS-equipped in contrast to 92% of those manufactured after 1985 (6).
     In Iowa, only 39% of tractors had ROPS (7). Tractors manufactured after 1984
     were 84% ROPS equipped while only 3% of tractors manufactured before 1960
     were retrofitted (7).

*10. The manufacturer has few or no reported rollover accidents with this model mower.*
Comment: When a new model is designed and produced there would be no reported
accidents with the design. A market study for Deere in 2004 indicated that 75% of
residential owners of zero turn mowers had moderate/severe slopes, ditches and drop-offs.
These are the conditions that were found to be involved in rollovers of ride-on mowers by the
CPSC for many years, not the design of a particular mower model. Few designs are so new
and different that accident history of other predecessor and competitor models would not be
applicable. All of the riding lawn mowers and lawn tractors whether front mount, ZTR lawn
tractors or more conventional lawn tractors are covered by the same stability requirements of
ANSI B71.1 or B71.4. They all have a similarly sized operator areas since similarly sized
users will operate them. They all will be operated by users with similar abilities and faults.
With respect to this lawn tractor there is nothing unique about its size, shape or design that
would lead a knowledgeable engineer to believe that rollovers would not occur as they had
with other mowers in the past with devastating results to operators.

## The Design Chosen by Toro

Toro chose to provide an unprotected operator station on the Timecutter SS5500 by not
providing ROPS or a roll bar as the base part of each and every machine. This design without
the ROPS exhibited failure during this accident in that the design failed to protect Rebekah
Hillman from a well-known and recognized hazard that presented a substantial risk of serious
injury or death. Toro should have known that the operator needed to be protected against that
hazard on this model of ride-on mower. This is especially true of the ZTR models which by their

Mr. Steve Crowley                                            March 17, 2023
Re: Hillman v Toro                                                  Page 28

control bar controls over the lap of the operator coupled with the speed of rollovers tends to eliminate the possibility of the operator falling free should that occur during the rollover.

Toro chose not to provide any type of brake that could be used by the operator to stop the travel of the mower in the event of the bypass pins being activated or some failure of the hydrostatic transaxles or drive belt as noted by Hydro-gear in their patents. They have designed such a feature on other hydrostatic drive zero turn mowers and lawn tractors but chose not to provide this protection on the subject Timecutter.

I have reviewed accident reports and investigated many rollover accidents involving tractors and riding mowers similar in design to the one Ms. Hillman was operating. These investigations are merely recent indications of the long-term problem of deaths and serious injuries as a result of rollovers of riding mowers documented as early as 1969 by Professor McConnell and later by the CPSC. See Appendix A and Appendix B – Mower Stability and Rollover Accident Information. Further, there is a substantial amount of information that demonstrates the life saving protection offered on machines that incorporate ROPS or similar protection.

Many manufacturers of zero turn mowing tractors, including Toro, were offering ROPS, some as standard equipment prior to the date of sale of the subject Timecutter in 2013. The technology to design, test and provide a ROPS was available for the Toro Timecutter SS5500 well before 2013. I have designed, built and tested a ROPS for similar residential zero turn lawn tractors that meets the requirements of OSHA regulations. No new technology was necessary, and the ROPS was very effective in preventing a full rear overturn on steep slopes. (Appendix B - ROPS Information Packet.)

Advance Technology, Inc., including myself, have been designing, testing and certifying ROPS for tractors in the 10 to 20 horsepower range for more than 25 years and for zero-turn lawn tractors for more than 20 years. See ASAE Paper MCR-81-402 "The Design of ROPS for Small Tractors in the Ten to Twenty Horsepower Range" and ASAE Paper MCR 87-124 "Roll Over Protective Structures (ROPS) For Front Mount Mowers" in the ROPS Information packet. The technology and materials were available well prior to 2013 to design and install ROPS or a roll bar on the Toro Timecutter SS5500 ride-on mowers as standard equipment. (See Appendix B - ROPS Information, Standards Information.) Toro should have been aware that ROPS had been proven nearly 100% effective in preventing deaths and serious injuries during rollovers of tractors of every size and type that they have been employed upon. ROPS on these riding mowers and lawn tractors minimize the unnecessary risk to the public using these machines if and when they rollover. There is substantial reason to expect that employing ROPS on the Toro Timecutter SS5500 would provide similar protective results as I indicated earlier and to date I have not seen any documented data that indicates operator has been paralyzed or killed on a lawn tractor with a deployed ROPS that was wearing their seatbelt. Specifically, for Ms. Hillman there is clear evidence that she was severely injured under the weight of the overturned mower because he was not provided with a crush protective zone that a ROPS would offer.

Toro did not advise users that the number one cause of deaths with ride-on mowers were rollovers and stability related accidents or of the need for rollover protection to protect users when a rollover occurs.

Mr. Steve Crowley                                      March 17, 2023
Re: Hillman v Toro                                            Page 29

## Opinions

Based upon my knowledge of the outdoor power and mowing equipment industries; my experience in designing, testing and certifying ROPS on ride-on mowers, lawn tractors and zero turn lawn tractors; previous injury/accident investigations; knowledge of rollover accidents and design history; knowledge of the industry safety standards for this machine; knowledge of what other industries were utilizing in their designs to protect workers from recognized hazards; knowledge of machine design and human factors as it relates to the design of the machine and specific references that describe a number of accidents on similar equipment and design alternatives that would prevent severe injuries such as suffered by Rebekah Hillman; my understanding of this accident and designing and testing of ROPS on substantially similar zero turn mowers, I also have the following additional opinions based upon a reasonable degree of engineering certainty:

1. The Toro Timecutter SS5500 zero turn mower is defective in design and unreasonably dangerous. The riding mower lacked crashworthiness protection for the operator when it rolls over. The mower also lacked a means the operator could be used to stop the mower if control from the hydrostatic transaxles was not available. The riding mower has associated with its foreseeable use a recognized hazards with a foreseeable high risk of serious injury or death. The manufacturer knew or should have known of technically and economically feasible design alternatives that would have significantly reduced the risk without adversely affecting the utility of the machine. The hazard in this instance is that of loss of control and the rollover of the riding mower and the risk is that of serious injury or death which exceeds by far any benefit from not installing protection in the event of a rollover for the operator on the mower.

2. Toro failed to properly follow the well-recognized design safety hierarchy standard in the design of the Toro Timecutter SS5500 zero turn mower by not installing rollover protection or a means for the operator to stop the mower in the event of loss of control from the hydrostatic transaxles.

3. The Toro Timecutter SS5500 zero turn mower became uncontrollable on the slope and went forward over a retaining wall. Ms. Hillman was then severely injured under the falling zero-turn mower after she tried to jump as the mower went over the retaining wall, landed on its front and then overturned onto its top.

4. The design of the operator compartment which neglected protection of the operator from rollovers was present in the machine when it left the control of the Toro.

5. The defects in the design of the Toro Timecutter SS5500 zero turn mower were causative of the severe injuries received by Rebekah Hillman.

6. The design of the Toro Timecutter SS5500 zero turn mower failed to meet a risk/benefit test considering the availability of alternative designs, their cost and the magnitude of the risk of the existing design. The benefits of not providing a ROPS on the mower are outweighed by the risks of not providing a ROPS. The benefit for operation in its foreseeable environment of use of not providing a brake that could be applied by the operator to stop the mower in an emergency do not outweigh the risk of not providing such a brake. The benefits of providing a feature that bypasses Toro's intended means of maintaining control of the mower i.e., the hydrostatic drive motors, without providing interlocks and warnings and instructions does not outweigh the risk of providing the feature.

Mr. Steve Crowley                                               March 17, 2023
Re: Hillman v Toro                                                     Page 30

7. The Toro Timecutter SS5500 zero turn mower was being used in a foreseeable manner and in a foreseeable environment of use by Ms. Hillman at the time of the accident which was to mow lawns that would contain moderate to severe slopes, ditches, drop-offs and/or embankments.

8. Owners, operators and users of the Toro Timecutter SS5500 zero turn lawn tractor would not expect the machine to be as dangerous as it was. Persons that would typically operate this type of equipment would not be expected to appreciate the extent of the hazard and the extent or the risk associated with rollover of the machine. They would not have an appreciation of how irreversible the accident would be and how often accidents had occurred and the numerous ways that rollovers can occur. They would expect it to be reasonably safe for foreseeable uses as it was designed and provided by the manufacturer without ROPS.

9. A ROPS and seat would have provided Ms. Hillman a crush protected seated area. ROPS including seatbelts have proven 99% effective on all models of tractors and ride-on mowers in preventing and/or minimizing deaths and serious injuries due to rollovers.

10. The Toro Timecutter ZTR 5500 was inadequately tested for loss of control due to the loss of hydrostatic braking and rollovers.

The design alternatives that were available for the Toro Timecutter SS5500 zero turn mower would have included but should not be limited to the following:

1. The Toro Timecutter SS5500 zero turn mower should have had installed a rollover protective structure or rollbar and seat belts that would create an operator protective zone in the event of a tipover and/or rollover accident. The cost of providing a ROPS and seatbelt for the Toro Timecutter SS5500 zero turn mower is estimated to be in the range of $100-$250 if the mounting structure is designed into the frame as standard equipment.

2. The Toro Timecutter SS5500 should have had a mechanical brake that could be applied by the operator to stop the mower when the hydrostatic drive motors were not functionally able to stop the mower. Hydrogear who manufactured the hydrostatic motors had available a disc brake design that could have been utilized. The mechanical brake could also be provided on each rear wheel independent of the hydrostatic drives such as those provided by Toro on other mowers, by JD on its zero turn mowers and Scag on its Freedom Z mowers.

3. Interlocks could have been provided to prevent the engine from starting and or the park locks from disengaging if the hydrostatic bypass pins were actuated.

I base these opinions to a reasonable degree of engineering certainty and on reasonable recognized design engineering, manufacturing, safety and human factors principles, as well as on my education, training and experience. While holding the disclosed opinions, I reserve the right to amend or revise said opinions based upon expanded information obtained through discovery. In closing, should you have any questions or require further information, please contact my office.

Documents that I will rely on in support of my opinions include, but should not be limited to, those contained in Appendix B and the documents you provided.  I also may refer to photographs that demonstrate the operator can extend beyond the ROPS on larger mowers and tractors.  Appendix A is a summary of my review of CPSC studies and documents.  Appendix B

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 31

is a list of recognized and reliable authorities and information with respect to the hazard and risk associated with respect to rollovers and the protection of operators from serious injuries and deaths in the event of a rollover incident.  Appendix C contains my current resume that provides a list of publications that I have authored over the past ten years and describes my qualifications. Appendix D contains a list of litigation that I have testified in trial or by deposition in the last four (4) years.

As previously agreed, I will charge for my time spent working on this case at the rate of $150 per hour. In closing, should you have any questions or require further information, please contact my office.

Sincerely,

Thomas A Berry

Thomas A. Berry, P.E.

Encl.: Appendix A - Review of CPSC studies and documents
　　　Appendix B - See Following List.
　　　Appendix C - Resume
　　　Appendix D - List of trial and deposition testimony over the last four years.

Mr. Steve Crowley                                               March 17, 2023
Re: Hillman v Toro                                                    Page 32

## Appendix A - Review of CPSC studies and documents

In 1973 the CPSC, in its report "Major Hazards Associated with Power Lawn Mowers and
Garden Tractors" indicated that there were an estimated 8992 emergency room treated injuries
from riding mowers and garden tractors. Hazards often associated with power mowers were
blade contact, a thrown object, overturning and run over. The report indicated that overturning
or slipping of the machine is a hazard associated with riding mowers. Typically, the accident
occurs on uneven terrain. Injuries are caused by resultant contact with blades, entanglement of
body parts with the machine, being pinned under the machine, from the act of falling, etc. It was
noted that one operator died as a result of jumping just before a rollover and striking his head on
a rock.

As far back as April 25, 1977, the CPSC published a Proposed Safety Standard for Power Lawn
Mowers that was published in the May 5, 1977 Federal Register, Vol. 42, No. 87. In the
"Background" section it was indicated "After consideration of the available information
concerning injuries and injury potential associated with power mowers, the Commission
preliminarily determined that the following hazards were associated with power lawn mowers
and presented unreasonable risks of death or injury to consumers:  3) Lacerations, contusion,
abrasions, and other injuries resulting from the rolling, slipping, or overturning of power lawn
mowers..."

In 1979 the CPSC released its base line study of accidents from 1977. They found that accidents
associated with power lawn mowers resulted in approximately 60,400 injuries treated in United
States emergency room during 1977 with 13,400 occurring from ride-on mowers. They found
that body part entrapment in a mower mechanism and tip-over of riding mowers resulted in the
most severe injuries and that in 57% of the tip-over accidents of ride-on mowers that
hospitalization was required. It was also found that with respect to the death certificates received
that the overturning of riding mowers caused more deaths than any other accident sequence. It
was found that an estimated 1500 injuries occurred with the tip-over hazard pattern which
occurred when the riding mower or garden tractor was operated on an incline or ran into a ditch
or hole. The injury in most situations was caused by the weight of the mower as it came to rest
on top of the victim. The injuries from the tip-over hazard were found to be often more serious
because of the weight of mower resting on top of the victim and 57% required hospitalization.
Of the 43 death certificates received in 1977, 17 were attributed to the overturning hazard, the
most of any hazard group.

In 1983, the CPSC staff determined that 80% of riding mower fatalities resulted from situations
where "the mower tipped over, the victim fell under, or was run over by the mower, or the victim
fell or was thrown from the mower...." In 1984, the CPSC (McNamara and Folkes, "Riding
Mower Project - Status Report") noted that a correlation between stability-related requirements
in the industry's voluntary minimum Outdoor Power Equipment Institute (OPEI)/American
National Standards Institute (ANSI) standard and actual mower stability during slope operations
had not been demonstrated. It further recommended inclinometers for riding mowers. At the
same time, in 1984 the CPSC specifically noted that it did not approve the ANSI B71.1 voluntary
safety standards for riding mowers. It specifically found that these new measures were not
adequate to reduce riding mower dynamic stability related deaths and serious injuries. It
expressed "deep concern over deaths and injuries associated with dynamic (when moving)

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 33

stability...." At no time since then has the CPSC ever seen fit to endorse any of the subsequent voluntary OPEI/ANSI riding mower standards which were proposed by the industry itself.

On September 3, 1985 Final Report on "Analysis of Warning Devices for Riding Type Lawn Mowers" to the CPSC Commission by Jacqueline Elder of the CPSC it was indicated the following:

page 1 - "This report addresses two prevalent scenarios within this group (a) loss of vehicle control on slopes; ... Operator warnings cannot "solve" these problems in the sense of precluding any such accidents;..."

page 2 - "The distinction riding mowers and garden tractors is based on the force of a drawbar pull (ANSI B71.1, 1980). All of these vehicles are generally designed for cutting grass, but generally the garden tractors are heavier machines, with more horsepower, and provision for attachments separate from the tractor itself. However, the safely problems of concern here are similar for both and they are discussed together. The term "riding mower" is understood here to refer to " riding mower," "lawn tractors," and "lawn and garden tractors."

page 3 - "Slope-Related Accidents PROBLEM OVERVIEW: Newman and Miles (198]) found tipover accidents to be the major hazard pattern in riding mower fatalities, accounting for 50% of the fatalities. This accident type also accounted for 13% of the emergency room injuries. Tipover accidents are certainly not a problem unique to riding mowers. Overturn accidents account for about half of all farm tractor fatalities (Murphy and Johnson, 1982.

page 3-4 - Piercy and Turner (1983) reported that 4-H youth generally had basic knowledge of common mower hazards, but not understanding of riding mower stability on slopes. Accident experience, and general industry opinion, seems to confirm this general result: consumers likely do not have a good appreciation of the hazards related to slope, the degree of slope that may be dangerous, the dynamics of loss of control on slopes, or the proper methods for mowing on slopes.

page 6 - Some manuals provide a specific degree of slope (15 degrees) over which the mower should not be operated. Some are accompanied by a diagram to permit an estimation of slope (see Figure 1 for an example); however. these templates only permit comparing the general slope of an area with a single reference (15 degree) slope. Also typical are cautions not to operate on slopes that are "too steep" without specifying a specific slope. Some manuals recommend backing up steep slopes, rather than driving uphill in forward gear. Others indicate using a lower gear on slopes, and not changing gears while on a slope. Not specifying a specific maximum slope is a very deliberate decision on the part of some companies, since they feel that the many contributing factors to stability, in addition to the degree of slope itself, make any such number highly arbitrary, and possibly misleading.

page 12 - This also refers to "steep slopes," without referring to any specific levels or examples. It further indicates that slopes should be mowed up and down, never crosswise.

page 18 - It may be of interest that four of the ten non-transition cases where slope was known involved slopes of less than 15 degrees (13- 14 degrees), ... These generally moderate slopes actually involved in accidents provide an interesting contrast with the ANSI B71.1 specified tilt-table static stability values (30 degrees for longitudinal slope, 20 degrees from lateral slope). The ANSI standard addresses only static stability criteria, not dynamic stability criteria. Perhaps this helps account for the cases with more moderate slopes.

page 20 - In addition to the findings from riding mower accident cases, another important accident feature may be assumed based on the literature on heavier equipment stability. That is

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                            Page 34

that loss of vehicle stability occurs in a quite sudden manner. For instance, Spencer (1978), in a study of tractors on slopes, actually had drivers drive down progressively steeper slopes until sliding occurred. He reported: "The suddenness of the loss of control was a feature of these failures. The driver reported no warning signs were available, such a noticeable wheel slip. This was confirmed from films taken during the trials." Assuming this to be true of consumer mower accidents as well, there are some important implications. First, the operator likely lacks any feedback that he is in an unstable situation, even when it is quite severe.

page 21 - Factors in Slope Stability: The degree of slope is only one of the many factors that determine the stability of a riding mower operating on a hill. Because these other factors interact in complex ways, and may be very important determinants, there is no simple relationship between a given riding mower and a "safe" slope. This becomes a critical concern in providing operator warnings, since user belief and acceptance can be compromised if a too moderate slope is warned against due to a margin of safety under worst case conditions.

page 22 Important determinants of stability on slopes were identified through review of technical literature and industry contacts. Some of this information comes from work on farm tractors or construction equipment, but the dynamics are similar.

page 23-24 - One manufacturer claims to have tested the ability of untrained people to use the device, with positive results. However, both the contact at this manufacturer, and other manufacturer, were skeptical of whether it would be used; there are not data on this. A further problem is that the device provides only a gross measure of terrain slope, and not local measures; often a grade is uneven. Even an operator using the device according to instructions may be unaware of where the maximum hazard area is and how severe it is ...

page 27 - Our review of. . . . it was sufficient to indicate that it is feasible to provide relatively inexpensive slope indicators capable of providing measurement in both fore-aft and lateral directions; and further, that some existing, relatively inexpensive devices may be adaptable for use on mowers.

page 31-32 - Most accidents appear to involve operators who are familiar with the mower and have used it without incident a number of times before. People are less likely to read warnings or instructions if they are familiar with the product (Godfrey, Allender, Laughery, Lind Smith, 1983) or have used it frequently (Wright, Creighton and Threlfall, 1982) If an event is perceived as rare, the warning is less likely to be attended to (McCarthy. Robinson, Finnegan, and Taylor, 1982, and riding mower users may well perceive tipovers to be rare events. If warnings occur without an incident occurring, people are less likely to respond to the warning (Dorris and Purswell, 1978, Finally, the effectiveness of a warning is related to the perceived hazard involved (Godfrey et al., 1981). Consumers are likely to underestimate the hazard not only because of some of the factors above but also because of a tendency, identified in several lines of research, for individuals to consider themselves as more skillful or accident immune, than other people (e.g., Slovic, Fischhoff, and Lichtenstein, 1980). The task of mowing has those features. believed to accentuate this tendency: the risk is seen as being under the users control; personal experience leads to familiarity without incident, so that the "personal experience is overwhelmingly benign." Therefore, in providing warning to consumers regarding tipover hazards tor riding mowers there is a priori reason to question (as a number of industry people did in our conversations) whether the operator will make use of the warning. This tendency, along with the other problems cited above, must be taken into account in developing a warning system which will be effective in alerting the operator and producing desired behaviors.

page 40 - Consumers are probably not accurate in estimating either the degree of slope or its associated risk.

Mr. Steve Crowley                                         March 17, 2023
Re: Hillman v Toro                                                Page 35

In 1987, the CPSC indicated in its FY 1987 Priority Project for Riding Mowers, Status as of December 31, 1986, that the review of the death certificates for 1983, 1984 and 1985 resulted in an estimate of 100 deaths occurring each of those years and in 1985 ride-on mowers were involved in an estimated 20,300 emergency room treated injuries and 50,000 medically treated injuries. The major hazards associated with riding mowers and garden tractors were blade contact and mower instability. It further noted the rate of hospitalization for riding mower injuries was almost twice the average rate for all other injuries reported on the CPSC National Electronic Injury Surveillance System (NEISS). The NEISS system is based on actual injuries repeated at certain hospitals across the country from which the CPSC calculates injuries on a national basis.

In 1988 the CPSC released another study of riding mower accidents. This study "Hazard Analysis on Ride-On Mowers" indicated the highest percentage (14%) of persons (estimated at 1800 people) treated in the ERs were from stability accidents. In 80% of those cases the operator fell off, or were thrown off, or jumped off. Half of those were hit by the mower or pinned by the mower on some parts of their bodies as they fell with it. Tipping occurred on level ground as well as slopes. Numerous common roll-over scenarios were described including flat ground roll-over, obstructions hidden in grass; operators hit in face by tree limbs. It was found that the tipping and sliding accidents occurred on slopes from 5 to 25 degrees with more than 2/3 on slopes ranging from 12 to 19 degrees. Slope was found not to be the only factor. Other factors were turns, damp or wet grass, depressions, bumps, terrain transitions and edges of roads and driveways inability to stop on slopes and sudden traction. Three (3) % of accidents were from the runover/backover hazard.

It was indicated that in 85% of the stability accidents that the machine tipped over and in the remainder the mower slid. However, it was also found that 25% of the riding mowers slipped and then tipped. It was found in about 1/2 of the death reports reviewed the operators were pinned under the tipped mower after tipping/sliding and bank/wall accidents. The average annual estimate of deaths related to ride-on mowers was 75. Over 1/2 of the victims died from injuries to the head or chest.

In 1992, the CPSC staff noted in that at least 42% of riding mowers owned by consumers were used to mow slopes of 15° or more, and 19% were used to mow slopes of 20° or more. Additionally, 43% of such consumer–owned riding mowers were being used to mow areas of grass bordered by steep drop offs.

In 1993, a ride on mower hazard analysis, "Deaths Related to Ride-on Mowers 1987-1990", U.S. Consumer Product Safety Commission, J. Annette David, Sept. 1993, showed that the primary hazard associated with these riding mowers was the loss of stability. It was indicated that between January 1987 and December 1990 that there were 362 deaths associated with power ride-on mowers. Of the 362 deaths, 213 (59%) were identified as involving tip-over. Using a capture/recapture method they estimated that an average of 150 deaths occurred each year from 1987 to 1990. They indicated that 60 of these deaths resulted from ride-on mowers (riding mowers, lawn tractors and lawn and garden tractors.) The remaining 90 deaths were on tractors that were not specified but which were not farm or industrial tractors. The report indicates that

4:21-cv-04081-SLD-JEH  # 168-1  Filed: 11/27/23  Page 36 of 60

Mr. Steve Crowley                                                March 17, 2023
Re: Hillman v Toro                                                       Page 36

the percentage of deaths from tipovers and rollovers had increased from 50% of the total to 68% of the total.

Also in 1993, a report by the CPSC, Ride-on Mower Analysis (1987-1990), CPSC, Propit Adler, September 1993, revealed that stability related accidents resulted in some 2200 injuries per year and was the primary hazard with 20% of the victims being hospitalized. The study further indicated that approximately 76% of the operators fell or jumped off the mower. Note that the design of the Toro Timecutter SS5500 seat position and the lap bars over the operator's legs makes falling or jumping from the Toro Timecutter SS5500 very difficult. The CPSC went on to note that approximately three out of every four victims were hit and/or trapped when the mower turned over and landed on top of them. It was indicated that between January 1987 and December 1990 that there were 362 deaths associated with power ride-on mowers. Of the 362 deaths, 213 (59%) were identified as involving tip-over. They also estimated using a capture/recapture method that an average of 150 deaths occurred each year from 1987 to 1990. They indicated that 60 of these deaths resulted from ride-on mowers (riding mowers, lawn tractors and lawn and garden tractors.) The remaining 90 deaths were on tractors that were not specified but which were not farm or industrial tractors.

This study indicated that the operation of a ride-on mower is a complex task. There are many factors involved. Operators of different sizes, ages and experience operate the ride-on mowers over areas with different terrains such as wet and dry grassy slopes, uneven surfaces, around trees and other stationary structures, near banks, walls, and ditches. In addition, debris can be hidden in tall grass along with holes, ruts and washouts. It was indicated that the lawn tractors involved in the accidents had an average horsepower of 12 hp for front engine mounted machines and 8 hp for rear engine machines. At that time 72% of the ride-on mowers were front engine riders and 25% were rear engine riders and that there was no significant difference in the accident rates between front engine, rear engine and specialty type ride-on mowers. It was indicated that 96% of the accidents involved ride-on mowers with mid-mount mower decks rather than front or rear mounted decks.

In 1994, another CPSC staff study, Power Mower Injury and Hazard Trend Analysis 1983-1993, Propit Adler, CPSC, May 1994, found that the annual injury rate for ride-on mowers was more than three times higher than the annual injury rate for walk-behind mowers. The study noted that the injury trend related to ride-on mowers (which had not been regulated by the CPSC) showed no significant change in the injury rate over the prior 11-year period. However, for walk-behind mowers, which were mandatorily regulated by the CPSC starting June 30,1982, there was a significant decrease of 3,100 injuries per year.

In 1996, the CPSC indicated in its News Bulletin #96-127 of May 20, 1996 that each year, about 25,300 people are injured and 75 people are killed on or near riding lawnmowers and garden tractors.

In 2005, the CPSC indicated in its Document #588 on Riding Mowers that:
    The U.S. Consumer Product Safety Commission estimates that 37,000
    consumer injuries related to riding mower incidents were treated annually in
    hospital emergency rooms during 2003-2005. Based on incidents reported to the
    Commission, an annual average of 95 deaths was attributed to riding mowers

Exhibit A-36

Mr. Steve Crowley                                            March 17, 2023
Re: Hillman v Toro                                                 Page 37

during 2001-2003. Fatal incidents were noted to have several common patterns:
the machine tips over, the victim falls under or is run over by the machine
(incidents involving young children are in this category), or the victim is thrown
from or falls off the machine.

In 2012, the CPSC indicated in its Publication #588 indicated:

Hazards most often associated with riding equipment are blade contact and loss of
stability. The U.S. Consumer Product Safety Commission estimates that 34,000
consumer injuries related to riding mower incidents were treated annually in
hospital emergency rooms during 2010-2012. Based on incidents reported to the
Commission, an annual average of about 90 deaths was attributed to riding
mowers during 2007-2009. Fatal incidents have several common patterns: the
machine tips over, the victim falls under or is run over by the machine (incidents
involving young children are in this category), or the victim is thrown from or
falls off the machine.

Also in 2003 the CPSC indicated in the "Special Report - Emergency Room Injuries - adults 65
and Older" that the CPSC had received reports of 51 yard and garden equipment deaths among
persons 65 and older including 23 deaths involving riding lawn mowers or garden tractors. The
riding mower-related deaths were mostly the result of mower rollovers, falls off mowers and
riding mowers going off raised terrain features such as retaining walls or creek banks.

The CPSC indicated in February 2004 in the report titled "Hazard Analysis of Power Lawn
Mower Studies, Calendar Years 2003 and 1993 by Propit Adler and Thomas Schroeder (page 19)
that "About 11% of the injuries were associated with loading or unloading the mowers onto or
from a vehicle using ramps. The ramps slipped/tilted, or the wheels spun off the ramps causing
the mowers to tip over either sideways or backwards." The number of injuries reported was
3300 for the rolling/tipping over hazard which would provide approximately 363 injuries from
loading/unloading onto vehicles using ramps for the 1993 calendar year. There were 8000
injuries from this hazard indicated for 2003.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 38

## Attachment B – List

### Standards

1. ASAE STANDARD: ASAE S209 - Agricultural Wheel-Type Tractor Test Code. (January 1957 to 1991)
2. ASAE RECOMMENDATION: ASAE R305.1 - Operator Protection for Agricultural and Light Industrial Tractors. (Dec. 1967 - 1972).
3. ASAE RECOMMENDATION: ASAE R306.1 - Protective Frame Performance Requirements. (12-67).
4. Interoffice Memo of Farm and Industrial Equipment Institute by Edward F. Brasky to Members, FIEI Industrial Safety Committee, (June 6, 1967) regarding Revised Proposed SAE Recommended Practice, "Protection for Agricultural and Light Industrial Tractors."
5. ASAE STANDARD: ASAE S383 - Roll-Over Protective Structures (ROPS) for Wheeled Agricultural Tractors (1977-1989).
6. ASAE STANDARD: ASAE S390 - Terminology for Agricultural Equipment.
7. ASAE STANDARD: ASAE *S519 (ANSI/SAE J2194) (Dec. 87) - Roll-Over Protective Structures (ROPS) for Wheeled Agricultural Tractors (ISO Compatible).
8. Code of Ethics for Engineers for the National Society of Professional Engineers, no date.
9. Engineers' Creed adopted by National Society of Professional Engineers, June 1954.
10. Code of Ethics of Engineers of The American Society of Mechanical Engineers, March 16, 1975.
11. ANSI/ASAE S547 (Dec. 02) Tip-Over Protective Structure (TOPS) for Front Wheel Drive Turf and Landscape Equipment, ASAE Standard 2004.
12. Code of Ethics of Engineers, Agricultural Engineers Yearbook of Standards, 1983.
13. SAE Standard – SAE J1040, Performance Criteria for Rollover Protective Structures (ROPS) for Construction, Earthmoving, Forestry, and Mining Machines, Approved April 1974, Reaffirmed in May 1994.
14. SAE Standard– SAE J1042, Operator Protection for General-Purpose Industrial Machines, Approved June 1974, revised in February 1986, Reaffirmed in June 1993.
15. SAE Standard – SAE J1194, Rollover Protective Structures (ROPS) for Wheeled Agricultural Tractors, Approved June 1977, Reaffirmed in July 1983, Revised in May 1989, Reaffirmed in September 1994.
16. SAE Standard – SAE J2194, Roll-over Protective Structure (ROPS) for Wheeled Agricultural Tractors, June 1993.
17. ANSI/ASAE S323.2, Definitions of Powered Lawn and Garden Equipment, ANSI Standard May 1989, Reaffirmed by ANSI December 1995.
18. ASAE Standard: ASAE S383.1 (SAE J1194 May 89), Roll-Over Protective Structures (ROPS) for Wheeled Agricultural Tractors, Reaffirmed December 1993.
19. ASAE Standard: ASAE S440.2, Safety for Powered Lawn and Garden Equipment, Adopted February 1984, Reaffirmed December 1996.
20. ASAE Draft Standard: X547 Tip-Over Protective Structure (TOPS) for Front Wheel Drive Turf and Landscape Equipment – Draft 6, December 1995.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 39

21. Agricultural Tractors Roll-Over Protective Structures, Department of Labor, Occupational Safety and Health Administration, Federal Register, April 25, 1975.

22. OSHA Standards 1926.1000(a)(1), 1926.1000(c)(1), and 1926.1000(c)(2), per Internet cite www.osha.gov on 7/28/06.

23. OSHA ROPS Standards for Tractors Used in Agricultural Operations, 1928.51(a), 1928.51(b)(1) per Internet cite www.osha.gov on 7/28/06.

24. ASAE Standard: ASAE S336, "Protective Enclosures – Test Procedures and Performance Requirements," 1971.

25. ANSI/ASAE S318.10 - "Safety for Agricultural Equipment," reconfirmed December 1982, revised March 1984, March 1985, March 1987, April 1988, revisions approved by ANSI June 1989.

26. ASAE Standard: ASAE S390.1 (SAEJ1150 June 83) - "Classifications and Definitions of Agricultural Equipment," adopted by ASAE March 1978, reconfirmed December 1982, revised February 1984, reconfirmed December 1988.

27. Barclays California Code of Regulations, Register 93, No. 30, 7/23/93.

28. SAE Standard: SAEJ232 - "Industrial Rotary Mowers," Approved July 1971, completely revised, December 1984.

29. ASAE STANDARD: ASAE S318.12 - "Safety for Agricultural Field Equipment," SAE Construction, Agricultural, and Off-Road Machinery Standards Manual, 1996 Edition, March 1997.

30. ASAE STANDARD: ASAE S383.1 (SAE J1194 JUL83), Roll-Over Protective Structures (ROPS) for Wheeled Agricultural Tractors, Revised December 1983.

31. ASAE STANDARD: ASAE S310.3 (SAE J167 JUN 81), Overhead Protection for Agricultural Tractors – Test Procedures and Performance Requirements, Reconfirmed December 1987.

32. ANSI/ASAE S478 June 00, Roll-Over Protective Structures (ROPS) for Compact Utility Tractors, Approved March 1996; reaffirmed June 2000 by American National Standards Institute, ASAE Standards 2004.

33. SAE STANDARD: SAE J2194 Aug. 02, Roll-Over Protective Structures (ROPS) for Wheeled Agricultural Tractors, Reaffirmed by SAE June 1993, September 1997, and August 2002, ASAE Standards 2004.

34. ASAE STANDARD: ASAE S383.1 Feb. 04, Roll-Over Protective Structures (ROPS) for Wheeled Agricultural Tractors, reaffirmed February 2004, ASAE Standards 2004.

35. The European Standard EN 836: 1997 has the status of a British Standard, BS EN 436: 1997.

36. Proposed Petition Decision of the Occupational Safety and Health Standards Board, Petition File No. 494, 2007.

37. OSHA Standards 1926.1001, per Internet cite www.osha.gov on 3/21/08.

38. OSHA Standards 1926.1002, per Internet cite www.osha.gov on3/21/08.

39. OSHA Standards 1926.1000, per Internet cite www.osha.gov on 4/15/08.

40. OSHA Standards 1926.1003, per Internet cite www.osha.gov on 4/15/08.

Mr. Steve Crowley                                                         March 17, 2023
Re: Hillman v Toro                                                              Page 40

## Mower Standards

1. American National Standard - ANSI B71.4-2004 re Commercial Turf Care Equipment – Safety Specifications, Secretariat Outdoor Power Equipment Institute, Inc., 2004.
2. ANSI B71.4-2004 – Annex A (Informative) Rationale.
3. ANSI B71.1-2003 American National Standard for Consumer Turf Care Equipment – Walk-Behind Mowers and Ride-On Machines with Mowers – Safety Specification re "Roll Over Protective Systems," approved September 23, 2003.
4. ANSI/OPEI Voluntary Standard for Consumer Turf Care Equipment (B71.1-2003) "Roll Over Protective Systems." (copyright 2004)
5. American National Standard - ANSI B71.4-1999 re Commercial Turf Care Equipment – Safety Specifications, 1999.
6. ANSI/OPEI B71.1-1998 American National Standard for Consumer Turf Care Equipment – Walk-Behind Mowers and Ride-On Machines with Mowers – Safety Specifications, 1998.
7. Proposed ISO/DIS Draft 21299 Standard, Powered Ride-on Turf Care Equipment – Roll-over Protective Structure (ROPS) – Test Procedures and Acceptance Criteria, International Organization for Standardization, 2006.
8. ASAE STANDARD: ASAE S440.2 Feb. 03, Safety for Powered Lawn and Garden Equipment, reaffirmed for two years February 2003, ASAE Standards 2004.
9. Consumer Product Safety Commission (CPSC) Proposed Safety Standard: Power Lawn Mowers, 16 CFR Part 1205, Federal Register, Vol. 42, No. 87, May 5, 1977.
10. "Lawn Mower Makers Shortcut Safety," by Gene E. Schroer and Dan L. Wulz, Trial, November 1980.
11. Minutes of ASABE PM-52 Turf and Landscape Equipment Systems (PM-23/13) Louisville, Kentucky, dated February 14, 2006.
12. Summary of International Standards Activity for Operator Protective Systems for Zero Turn Machines, November 21, 2003.
13. E-mail from Kristen Renick on behalf of Steve Points to the ROPS Working Group, dated May 15m 2006.
14. Agenda for 11/20/03 Meeting with CPSC.
15. Draft of proposed changes to ASAE S383.1 to include Turf Care Equipment, no date.
16. Interoffice Memo to . . . Jimmy Eavenson re: Controllability, Mid Mount Zero Turn Mowers, 14 Mar 01 Call, dated March 15, 2001 (Revised 01 May 2001).
17. Test Description - R292.10 - Z Slope Operation, of 10/10/2003.
18. Meeting Summary of PM-52 AUTO ROPS "X599" Working Group Meeting, July 10, 2006.
19. Agenda PM-52 Turf and Landscape Equipment Systems (PM-23/13) South West Board Room, Exposition Center, Louisville, Kentucky, October 6, 2006.
20. E-Mail correspondence between Kristen Renick and Homer Gattis re ISO DIS 21299 Information and Conference Call Notice to ROPS Working Group Members, dated October 11, 2006.
21. ISO DIS 21299 Powered ride-on turf care equipment – Roll-over protective structures (ROPS) – Test procedure and acceptance criteria, 5/12/06.

Mr. Steve Crowley                                                                      March 17, 2023
Re: Hillman v Toro                                                                            Page 41

22. Consumer Product Safety Commission Withdrawal of Proposed Rule re: Riding Lawn
    Mowers of August 9, 1984.
23. Consumer Product Safety Commission Withdrawal of Proposed Rule re: Riding Lawn
    Mowers of February 11, 1983.
24. National Commission on Product Safety, Final Report Presented to the President and
    Congress, June 1970.
25. Manual on Outdoor Power Equipment Standards published by OPEI, August 1978.
26. ASA B71.1 – 1960, ASA B71.1-1964, USAS B71.1 – 1968, ANSI B71.1-1972, ANSI
    B71.1-1980, ANSI B71.4-1980, Stability Test Requirements.

## Hydrostatic Drives and Brake Information
1. US Patent 7,275,371 B1
2. US Patent 8,919,224 B1
3. US Patent 9,816,611 B1
4. Hydro-Gear BLN-52622_ZT2100_ZT2200 Service Manual
5. Kubota ZG200_300-Brochure
6. Kubota ZG222
7. Toro Titan Operators Manual 140450
8. Hydro-gear BLN-51260 Manual
9. Sauer Danfoss Series 40 Motors Tech Info RevF Sept.-2006.
10. Hydro Gear - ZT Series – 2005
11. Hydro Gear - ZT Series Hydrostatic Transaxles
12. FLUID POWER SAFETY INSTITUTE™ - Safety Alert #30
13. Hydrostatic Transmission Application Considerations for Commercial Turf
    Manintenance Vehicles 1991.
14. Sauer Danfoss BD Series Hydrostatic TransmissionTechnical Information
15. Sauer Danfoss Warning **Unintended vehicle or machine movement hazard.**The loss of hydrostatic
    drive line power, in any mode of operation (forward, neutral, or reverse) may cause the system to lose
    hydrostatic braking capacity. You must provide a braking system, redundant to the hydrostatic
    transmission, sufficient to stop and hold the vehicle or machine in the event of hydrostatic drive power loss.
16. Hydro Gear - Designs that move in the right direction  - 9-03

## General ROPS Information
1. "Farm Accidents and Injuries: A Review and Ideas for Prevention," by Carleen H.
   Stoskopf and Jonathan Venn, Ph.D., Journal of Environmental Health, Vol. 47, No. 5,
   250-252, March/April 1985.
2. "Tractor Rollovers Are Most Common Farm Fatality," printed off of the Internet.
   (August 11, 1998).  It is noted that, "This page is maintained by Carla Johnson
   (cj@aes.purdue.edu), Secretary, Agricultural Communication Service, Purdue University.
3. "Summary: Farm Injury Facts," by Mark A. Purschwitz, Ph.D., University of Wisconsin-
   Madison/Extension, 1997.  Summary off the Internet from the University of Wisconsin
   Center for Agricultural Safety and Health.
4. "Majority of Accidents on Farms Involve Tractors," CA, Inc., Highlights,
   October/November 1998.

5. "NIOSH Reports on the Preventability of Tractor Rollovers," NIOSH Update, DHHS (NIOSH) Publication No. 93-119.

6. TRAC-SAFE Facilitator's Manual. U.S. Department of Health and Human Services, Public Health Service, Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health, 1996.

7. "Keep Your Guard Up!" U.S. Dept. of Agriculture in Cooperation with the National Safety Council, 1968.

8. "The Tractor Safety Cabs and Frames Controversy," Agricultural Safety Bulletin, by Arthur Friend, Vol. 4, No. 6 Summer 1970.

9. Letter from J.C. Eckhold, Ford's Automotive Safety Director to George Guenther, Assistant Secretary of Labor Office of Safety and Health Standards Occupational Safety and Health Administration, re Proposed Regulations for Rollover Protective Structures and Overhead Protection, dated 11/24/71.

10. Letter from John H. Zich, Ford's Governmental Compliance Manager Product Development Office to Charles E. Wilson, U.S. Dept. of Labor, re: The Effect of Protective Frames or Cabs in Reducing Injuries from Overturns, dated 12/6/72.

11. "Some Facts About Tractor Frames," Extension Bulletin E/2 of the New Zealand Agricultural Engineering Institute, 1969.

12. "Roll-Over Protective Structures for Farm and Construction Tractors – A 50 Year Review," by James F. Arndt, Deere & Co., SAE, April 5-7, 1971.

13. "The Price of A ROPS Has Been Reduced.  The Price of a Rollover Has Not." John Deere Advertisement, no date.

14. "Tractor Risk Abatement and Control: A Community-Based Intervention for Reducing Agricultural Tractor-Related Fatalities and Injuries," by C.J. Lehtola, K.J. Donham and S.J. Marley, 1995 by CRC Press Inc.

15. "Farm Tractor – Related Fatalities – Kentucky, 1994," Morbidity and Mortality Weekly Report, (MMWR), Vol. 44, No. 26, July 7, 1995.

16. "Tractor-Related Injuries in Ontario," by William Pickett, Ph.D., and Robert J. Brison, MD, MPH, FRCPC, Canadian Journal of Public Health, July-August 1995.

17. "Agricultural Safety, Design First, Then Educate!" by Wesley Buchele - ASAE Paper 938001, 6/20/93.

18. The First Annual U.S. Farm Accident Report – 1986 by Arnold B. Skromme, 1/6/88.

19. Rollover Protective Systems for Heavy-Duty Off-Highway Earthmoving Equipment by Howard S. Latham, National Safety Congress Transactions, Vol. 16, 1968.

20. Farm Tractor Safety by National Safety Council, 8/78.

21. The Consumer's Perspective - Surgeon General's Conference on Ag Safety and Health - April 30, May 3, 1991.  (Craig Merrilees)

22. "Dealer and the Safety Selling Mission," Implement and Tractor magazine by Bill Fogarty, January 21, 1969.

23. "Tractor Overturns. . . Take Many Lives," Idaho Health Bulletin, Spring 1969 - *Lincoln vs. Deere.*

24. "The 1970s: The Decade of the Guard," by Wesley F. Buchele – Engineering a Safer Food Machine, 1980 ASAE Winter Meeting.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 43

25. Tractor Risk Abatement and Control, Melvin L. Myers, M.P.A., Consultant.

26. Tractor Companies Unite to Promote ROPS and Seat Belts on Older Machines, The Fleming Farmer, p. 7, Sept.18, 1997.

27. Small Agricultural Tractor ROPS - New Operator Protective Zone, Triodyne Inc., Safety Brief, SAE Technical Paper Series 911782, August 1992.

28. Anti-Roll Bars on Wheel Tractors and Mowers the North Dakota Picture, By Warren I. Hanson, American Society of Agricultural Engineers, ASAE Paper No. 62-658, 1962.

29. Tractor Operation and Anti-Roll Bars, National Safety News, National Safety Council Data Sheet, 1966.

30. Reducing Tractor Fatalities, Agricultural Engineering, September, 1966.

31. An Abstract of A Study Entitled Frequency and Type of Tractor Overturns on Nebraska Highway and Farms, 1970.

32. Ford Tractor Operations, U.S. Department of Labor, Safety and Health Administration, 1971.

33. Tractor Overturn Protection, Farm Safety Review, January -February 1972.

34. A Survey of Progress Toward ASAE Safety Goals, by P. L. Bellinger, American Society of Agricultural Engineers, Paper No. 75-5519, December 15-18, 1975.

35. Motor Graders, Bulldozers, and Scrapers, National Safety Council, 1961.

36. Tractor Canopies, National Safety Council Technical Release, January 28, 1965.

37. Survey Shows Open Tractors Are Unsafe, Machine Design, January 5, 1967.

38. Roll Guards for Tractors, by Merlin Hansen, John Deere Waterloo Tractor Works, Society of Automotive Engineers, September 12-15, 1966.

39. John Deere Introduces a New Optional Safety Frame, The Furrow, 1966.

40. Don't Toy Around With Farm Safety, John Deere Roll Guard, December 1967.

41. Frame the Operator for Safety's Sake, by Ernest C. Carlson, Excavating Contractor, October 1968.

42. Road Roller Overturns, Killing Operator, Safety Digest, AMC Pamphlet, May 1969.

43. Engineering Basics of Roll Over Protective Structures, by G. L. Klose, Caterpillar Tractor Co., Date unknown.

44. Development of ROPS Criteria for Construction and Industrial Vehicles, J.E. Staab, Caterpillar Tractor Co., Society of Automotive Engineers, September 13-16, 1971.

45. Roll Over Protective Structures, National Safety Council, Safety Newsletter, May 1976.

46. Parts Book - Operating & Service Instructions-Shop Repair Manual, for Model SP 912, Serial No. 1209, Ferguson Manufacturing and Equipment Co., Inc.

47. Farm Tractor Fatalities: The Failure of Voluntary Safety Standards, by Trudy Karlson, MS, and Jay Noren, MD, MPH, AJPH, February 1979, Vol. 69, No.2.

48. Media Reports of Rural Health and Safety: A Review of Articles Published in The Land Newspaper, by Robyn Shea and Simon Chapman, Aust. J. Rural Health (2001).

49. "Tractor Roll-Over Protection Frames," National Safety News, by E.C. Carlson, 3/68.

50. "Breakthrough in Tractor Safety," by R.W. King, Director of Product Services Massey-Ferguson, Inc., Farm Profit, Fall, 1978.

Mr. Steve Crowley                                                       March 17, 2023
Re: Hillman v Toro                                                             Page 44

51. "Roll-Over Protective Structures: A Guide to the ROPS Regulations," Ontario Ministry of Labour, Occupational Health and Safety Division, August 1988.

52. OSHA 1976 Standard for ROPS, "OSHA ROPS and Operator Instruction Requirements," Penn State College of Agricultural Sciences, Agricultural and Biological Engineering Fact Sheet, by Dennis J. Murphy, 1991.

53. "A Summary of Laws Relating to Agricultural Machinery Safety," Penn State College of Agricultural Sciences, Agricultural and Biological Engineering Fact Sheet, by Dennis J. Murphy, no date.

54. "Tractor Overturn Hazards," Penn State College of Agricultural Sciences, Agricultural and Biological Engineering Fact Sheet, by Dennis J. Murphy, no date.

55. NIOSH Agricultural Safety and Health Center, June 2004, National Agricultural Tractor Safety Initiative, National Ag Safety Database (NASD), printed from Website 3/16/07.

56. Hercules ROPS for Agricultural Tractors AD entitled "Would You Let Your Loved Ones Use a Tractor Without a ROPS?" no date on publication, printed from Website 3/16/07.

57. Building Safety Into Mobile Mine Equipment, by R.S. Frank, National Safety Congress, 1971.

58. Agricultural Mower Safety, National Ag Safety Database (NASD), copyright 2002, printed from Website on 4/25/07.

59. "Development of a Protective Frame and Cab Recommended Practice for Agricultural and Light Industrial Tractors in the United States," by D.L. Stevenson and W.E. Gustin, American Society of Agricultural Engineers, Paper No. 68-110. (6/18 - 21/68)

60. Farm Tractors 1950 - 1975, by Lester Larsen.

61. Farm Tractors 1975-1995, by Larry Gay, published by American Society of Agricultural Engineers.

62. DVD entitled "A Tractor Accident Can Happen to Anyone," from The Ohio State University website, Jan/Feb. 2005. (Previously provided DVD on 5/30/08)

63. Deere Personal Injury Accident Reporting System - May 1, 1979 (Letter from J. L. Anderson and R.J. Doherty of Deere & Co.)

64. Ford General Sales Letter re: Safety, 7/29/82.

65. ROPS Retrofit Internet Search, 6/12/01.

66. Allis-Chalmers Inter Office Correspondence of June 21, 1982 ROPS Warning Materials Mandatory Rollover Protective Structure (ROPS Equipment on Tractors.

67. Massey-Ferguson memo 7/27/76 re: DOANES Survey.

68. Massey-Ferguson memo re: labels for first series of fold down ROPS, 1/21/86.

69. Ford General Sales Letter, 5/7/85 - Re: ROPS.

70. Ford ROPS Brochure, "A Tractor Without a ROPS Could Cost You and Arm and a Leg. Or a Life." September 1988.

71. Massey-Ferguson memo re: Replacement of decals for used tractors sold - 12/21/89.

72. Yanmar ROPS Warning Materials.

73. A Guide to Tractor Roll Bars and Other Rollover Protective Structures published by the Wisconsin Rural Health Research Center - 1/93.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 45

74. A Guide to Tractor Roll Bars and Other Rollover Protective Structures published by the Wisconsin Rural Health Research Center, October 1990.

75. Ford General Sales letter re: ROPS as standard without delete option, 12/17/84.

76. Ford Dealer Sales Letter re: Rollover Protective Structures (ROPS), January 6, 1988.

77. Report of Winter Meeting - National Safety Council, 1/23/76.

78. Report of Winter Meeting - National Safety Council, 2/1/79.

79. Engineer's Report from Agricultural Extension Service, University of California by R.W. Brazelton - 7/23/73.

80. Case IH Tractor Operator Manual, 1991.

81. Case IH Tractor Brochure - date unknown.

82. Agricultural Engineering Magazine - Saf-T-Cab, Inc. 6/86.

83. Duetz-Allis Tractor Brochure – 1987.

84. Patent # 3,402,941 - Adjusting Roll Bar for Tractors – W.W. Martinmass-Telescoping ROPS patent - 9/24/-68.

85. Saf-T-Cab Brochure - Date Unknown.

86. Saf-T-Cab Brochure, Date Unknown.

87. Saf-T-Cab Brochure, Date Unknown.

88. Roll Bar Mock-Up – Memo from J.H. Rose, 8/26/66.

89. Agricultural Manufacturing Journal – Removable Rollbar – MF – 11/75.

90. DVD - John Deere Protective Frame Testing- Beginning 1959 followed by later testing.

91. DVD – International Harvester "Tractor Upset Tests".

92. ROPS article from "Harvesting'" Section 1 from website www.cdc.gov/niosh/section1.html printed 6/19/2008.

93. Lessons from 25 Years of ROPS, by David V. MacCollum, Professional Safety, January 1984 (MacCollum Article).

94. Tractor Operation and Roll-Over Protective Structures, National Safety Council, Revised 1978.

## ROPS Effectiveness Information

1. The Second Annual U.S. Farm Accident Report by Arnold B. Skromme, P.E., 1987.

2. "Have ROPS Been Effective in Saving Lives," by Rollin D. Schnieder, ASAE, March 19-20, 1976.

3. "ROPS and Seatbelts: Keeping the Order Straight," by L. Dale Baker, Journal of Agricultural Safety and Health, November 1998.

4. "Seatbelt Use During Tractor Overturns," M.L. Myers, H.P. Cole, and S.C. Westneat, Journal of Agricultural Safety and Health 12(1): 43-49, ASABE ISSN 1074-7583 2006.

5. A Survey of Progress Toward ASAE Safety Goals, by P. L. Bellinger, American Society of Agricultural Engineers, Paper No. 75-5519, December 15-18, 1975.

6. Roll Over Protections Cut Construction Workers Deaths, NSC, December 29, 1976.

7. ROPS Field Performance - A Status Report, By Jack L. Woodward and Stephen Swan, Society of Automotive Engineers, Inc. SAE Technical Paper Series 800679, April 14-16, 1980.

8. Farm Work Injury Rates by Region, National Safety Council, 1969-1982.

9. The Nebraska Farm Accident Example 1970-1982, by Rollin D. Schnieder, American Society of Agricultural Engineers, June 26-29, 1983.

10. Data Gathering Techniques to Accurately Direct a Farm Safety Program, by Paul D. Ayers, American Society of Agricultural Engineers, March-April 1989.

11. Tractor Anti-Roll Bars Really Work, Implement and Tractor, 1966.

12. Effectiveness of Rollover Protective Structures for Preventing Injuries, Agricultural Tractors, Journal of American Medical Association, 1993.

13. Survey of Rollover Protective Structures (ROPS) Field Performance, Bureau of Mines, U.S. Department of the Interior, November 1980 – (Woodard Report).

14. Rollover Protection for Farm Tractor Operators, National Ag Safety Database (NASD), by Dennis J. Murphy and Dennis R. Buckmaster from Website dated 4/25/06.

15. "Report of Tractor Roll-Over Experience," Illinois Department of Transportation Report, 1975.

16. Rollover Protective Structure (ROPS), National Ag Safety Database (NASD), From Ohio State University Extension, 7/2004, printed from Internet 2/22/07.

17. "Skid Steer Loader Safety," National Ag Safety Database (NASD), 2002, printed from Website on 6/20/07.

18. News Articles re ROPS by Kentucky Community Partners for Healthy Farming (KY CPHF), September 2000.

## Mower ROPS Information

1. Test Report for the JD Z425-54C Zero Turn Tractor ROPS, Report #120901, August 2012.

2. Testing and Analysis of the Static Tip Angles of a JD Z425-54C with and without ROPS, Report #120801, August 2012.

3. "The Design of ROPS for Small Tractors in the Ten to Twenty Horsepower Range," by Larry Schmitt, E.I.T. and J.B. Sevart, P.E., Paper No. MCR-81-402, American Society of Agricultural Engineers, March 20 & 21, 1981.

4. "Repeatability of Results from Performance Requirements of ROPS for Tractors in the Ten to Twenty Horsepower Range," by Larry D. Schmitt, P.E., and J.B. Sevart, P.E., Paper No. MCR-84-193, American Society of Agricultural Engineers, March 8 - 10, 1984.

5. "Roll Over Protective Structures (ROPS) for Front Mount Mowers," by Larry D. Schmitt, P.E., Paper No. MCR 870124, American Society of Agricultural Engineers, March 6 & 7, 1987.

6. Certification letter of ROPS done by Tom Berry, 11/4/99.

7. Tilt table test of ZTR, 10/17/06.

8. Certification letter of ROPS for Excel Hustler Z Model done by Tom Berry, 8/28/01.

Mr. Steve Crowley                                                     March 17, 2023
Re: Hillman v Toro                                                         Page 47

9.  Certification letter of ROPS for Excel Hustler Z and ATZ Series Models done by Tom Berry, 11/17/03.

10. DVD of Cub Cadet RZT42 ROPS Underride Testing 6-27-08.

11. Purdue University Tractor Safety Tape from 1976.  (Previously provided on DVD 1/29/08)

12. E-mail from MarkAustrian@colliershannon.com to HGattis@WcelHustler.com re: ZTR Incident Survey, dated October 24, 2003.

13. E-mail from Mark Austrian to Hgattis@ExcelHustler.com re: ZTR Incident Survey, dated October 24, 2003.

14. OPEI Incident Summary Over Last Five Years, Total Units Sold: 341,792, no date.

15. Collier Shannon Scott Memorandum to ZTM Coalition Members, From Mark L. Austrian and Christies L. Grymes, re: Meeting with CPSC Staff, dated November 24, 2003.

16. "Outdoor Power Equipment," White Outdoor Power Products, January 1987.

17. "A Rollover Protection Structure for a Garden Tractor," by Rob Johannsen, Tom Fox, Willard Robertson.  Submitted to: Dr. Wesley F. Buchele, May 20, 1978.

18. "Hitting the Slopes," by Tracy Powell of Ground Maintenance Magazine, May 1, 2004.

19. "Making Mowers that Meet User Mandates," by Loren Snyder of Maintenance Solutions, July 2002.

20. Can ASAE Standards be Improved?  By Wesley F. Buchele, Professor of Agricultural Engineering, Iowa State University, 1985.

21. ROPS Engineering Test Report No. 936, FMC-OPED Bolens Model HT 23, by Charles Patterson, Approved by Michael J. Jakus and Donald Houlberg, 4/30/79 - 5/1/79.

22. Mowers Sport New Feature Brochure by Keith Roberts, October 2004, Article from Landscaping Website, 3/30/06.

23. Ride-On Mower Hazard Analysis 1991-1993, by Prowpit Adler, Division of Hazard Analysis Directorate for Epidemiology of CPSC.

24. Ride-On Mower Hazard Analysis (1987-1990), by Prowpit Adler, U.S. Consumer Product Safety Commission, Division of Hazard Analysis, Directorate for Epidemiology, September 1993.

25. "Big Fat Zero," Internet document from www.igin.com/Landscaping/bigfat.html of 9/19/2006.

26. Louisiana Workers' Compensation Corporation Bulletin, 11/15/2006.

27. Maintenance Solutions – "Making Mowers that Meet User Mandates," from Maintenance Solutions July 2004 Issues.

28. "Safety First" by John Brown, Hustler Manufacturing, Website from Grounds Maintenance, July 1, 2005.

29. "Mower Safety," from Oklahoma State University Website.

30. Outdoor Equipment Manufacturers Standardize ROPS on New Zero-Turn Models, Grounds Maintenance Magazine, dated Dec. 6, 2005, printed from Website on 11/7/06.

31. Exmark Press Release, "Leading Outdoor Equipment Manufacturers Standard Rollover Protection System on Zero-Turn Model, by Mark Derowitsch, Beatrice, Nebraska, November 1, 2005, printed from Website on 11/7/06.

Mr. Steve Crowley                                                       March 17, 2023
Re: Hillman v Toro                                                            Page 48

32. Toro Press Release, "Leading Outdoor Equipment Manufacturers Standardize Rollover Protection System on New Zero-Turn Models, November 1, 2005, printed from Website on 11/7/06.

33. Scag Press Release – Scag Offers ROPS at Reduced Price, Scag 2007 Internet.

34. "Think Safety This Spring," by Wes Freeman, John Deere Worldwide Commercial & Consumer Equipment Division, *Grounds Maintenance*, February 1, 2004, printed from Website 5/2/07.

35. "Exmark Donates Second Lazer Z to Teach Students Mower Safety," *Ground Maintenance,* April 25, 2006, printed from Website 5/2/07.

36. "Standing Tall," by Gary Burchfield, *Ground Maintenance*, May 1, 2002, printed from Website on 5/2/07.

37. Special Report: Emergency Room Injuries Adults 65 and Older, Neighborhood Safety Network (NSN) a project of the U.S. Consumer Product Safety Commission, 1991 thru 2002.

38. Anti-Roll Device for Lawn Tractors, The Tractor Collector's Magazine, *Antique Power*, May/ June 2007.

39. Mid-Mount and Front-Mount Decks on ZTR Mowers, LSU AgCenter, printed from Website on 5/3/2007.

40. Slippage with ZTR Mowers, LSU AgCenter Article, printed from Website on 2/17/2008.

41. Preventing Overturns with ZTR Mowers, LSU AgCenter Article, printed from Website on 2/17/2008.

42. ZTR Mowers for Home Lawns, LSU AgCenter, printed from Website on 5/3/2007.

43. Safety Standards for Commercial-size Riding Mowers, LSU AgCenter, printed from Website on 2/17/2008.

44. Pamphlet of National Safety Council re Recommendations of ROPS Use for ZTRs backed by Toro and ExMark from NSC Training Program for Commercial Equipment Operators.

45. National Safety Council ZTR Safety Training Program for Commercial Equipment Operators, no date listed.

46. "Say No to Zero-Turn Mower Mishaps," by Barbara Mulhern of Landscape Management, June 1, 2004, printed from Website on 5/15/07.

47. "Zero-Turn," provided by the University of Minnesota, no date.

48. GIE 2005: Toro, Exmark, National Safety Council Launch Mower Safety Training Program, by Nicole Wisniewski, Lawn & Landscape, 11/11/2005, printed from Website on 5/17/07.

49. "Zero-Turn Guide: Zero's still a hero," by Heather Gooch, Landscape Management, March 1, 2006, printed from Website on 5/16/07.

50. LSU Ag Center Article re New Features on ZTR Mowers, printed from Website on 1/28/08.

51. Practice Zero-Turn Mower Safety, Lawn & Landscape Magazine, 4/23/08.

52. "Mowers: The Big Picture," *Maintenance Solutions,* March 2008.

53. "Making Mowers That Meet Users Mandates," *Maintenance Solution,* July 2004.

Mr. Steve Crowley                                                                      March 17, 2023
Re: Hillman v Toro                                                                              Page 49

54. "Safer Mowing on Slopes!" *Landscape Safety Pro*, Supplement to PRO, Volume 1, April 2008.

55. "Zero Turning Radius Mowers Selection, Use, Maintenance, Safety," by Dick Parish, Publication 2911, Online only at www.lsuagcenter.com, Rev. 05/08. LSU AgCenter.

56. Ford Commercial Front Mowers Brochures, 1992.

57. Brochure for John Deere Compact Utility Tractors of 14.5 to 40 hp.

58. John Deere Hydrostatic Diesel Tractors Brochure, 1987.

59. Ford General Sales Letter No. 494, 1/8/82.

60. Hesston ROPS Waiver Form.

61. M & W New Product Announcement for LC2297K Lawn Clipper, Alamo Group Co., 1997.

62. John Deere Brochure and Specifications for F911, F925, F932, F935, no date.

63. Yanmar YM180 Brochure, no date.

64. Toro Free ROPS Retrofit Kit Available for Z-Master Mowers Manufactured before 2004, Product Information.

65. Kubota 2005 Internet Ad showing ZD Series – Zero Turning Commercial Turf Mowers.

66. John Deere Internet Ad of Zero-Turning Radius Mowers, 2005.

67. John Deere 1400 Series Front Mowers and Mower Decks, May 2003.

68. 2005 Internet Ad for John Deere Commercial Zero Turn Mowers.

69. Kubota Advertisement Brochure, USA Weekend, August 12-14, 2005.

70. Yazoo Front-Cutting Industrial Tractors Brochure, date unknown.

71. Jacobsen Manufacturing Company- Instruction Sheet - Roll-Over Protection Structure Product No. 78031 for G-10 Tractor, date unknown.

72. Yanmar Tractor Rollbars, Outdoor Power Equipment Advertisement, January 1987.

73. Kubota The Complete Commercial Mowing System from "A" to "Z", PRO Magazine Advertisement, February 1993.

74. John Deere A 4-Wheel Drive That's Built, PRO Magazine Advertisement, February 1993.

75. Riding Mowers Showcase '96 PRO Magazine Advertisement, February 1996.

76. Ride-On Mowers Showcase PRO Magazine Advertisement, February 1998.

77. Kubota Tractor Expanding to New Markets, Farm Equipment, September 1986.

78. Yazoo Tractor Attachments Brochure, date unknown.

79. John Deere F Series Front Mower Brochure, 1994.

80. Jacobsen Textron 4WD Hydraulic Rotary Mower Brochure, 1995.

81. Ford Commercial Front Mower Brochure, 1993.

82. Ford Commercial Front Mower Brochure, 1992.

83. John Deere Golf & Turf Purchasing Guide, 1996.

84. John Deere Equipment Purchasing Guide for Grounds Care, 1994.

85. John Deere Product Safety Manual, Deere & Company, April 1997.

86. John Deere Brochure, 8/92.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 50

87. Kubota Tractor Corporation Letter to Dealers, May 31, 1985.
88. John Deere Ad from The Courier Journal Shown with ROPS, June 29, 2006.
89. John Deere Brochure Re Orchard/Vineyard Tractors with Narrow ROPS, no date.
90. Kubota Gets an A+ on Campus from Kubota Country, Kubota Tractor Corporation, no date.
91. Kubota's 10 Commandments of Tractor Safety, Kubota Tractor Corporation, no date.
92. Put Safety First in the New Year, Kubota Country, Volume 5, Number 1, no date.
93. Toro Product Safety Information printed from Website on 5/2/07.
94. Toro Ad re: 2-Post Foldable Roll-Over-Protection System Now Standard on All 2004 Z Master Riders.
95. Scag Z Cat Compact Size Brochure, no date.
96. Scag Freedom Z Brochure, no date.
97. Excel Industries, Inc. Advertisement re "Meeting the Need for Speed," Diesel & Gas Turbine Publications, 2001.
98. Kut Kwick Corporation Super Slope Master Brochure, printed from Website on 2/28/08.
99. Hustler Turf Website regarding Product News of foldable ROPS printed from Website on 5/29/08.
100. State of Kansas Contract Award for Tractors, Lawn, Garden & Compact Utility, date of award January 13, 2005.
101. State of Kansas Contract Award for Zero-Turning Radius Riding Mowers, date of award February 13, 2004, Period of Contract: Date of Award through January 31, 2004.
102. OSHA's Region IV Seeks to Reduce Fatalities in the Landscaping and Horticultural Services Industries, March 2006.
103. Consumer Search Article from website re: Lawn Tractor Reviews, printed 5/1/07.
104. Consumer Search Article from website re: Lawn Tractor Reviews, Updated May 2007, printed 5/16/07.
105. New Lower ROPS Height Model on STR's at OPEI Equipment Show, 2007.
106. Poster for Lower Height ROPS from OPEI Equipment Show, 2007.
107. "Operator Roll-Over Protection on Small Vehicles," prepared by Silsoe Research Institute for Health and Safety Executive (HSE), Research Report 432, 2006.
108. "How Should I Mow on Slopes?" from cubcadet.custhelp.com, printed 7/31/06.
109. "How Close Should I Mow to a Drop Off or Embankment?" from cubcadet.custhelp.com, printed 5/1/2008.
110. John Deere Certificate of Use & Refusal of Rollover Protective Structure and Dealer Application for Settlement Credit, CG 526, 11/87.
111. Deere Letter to Dealers and Advertisements/ Promotions to Urge Public to Purchase Optional ROPS on Tractors, 1984.
112. Deere Advertisement, "Get Your Roll-Gard Up. . . Now at a Specially Reduced Price," The Furrow, Sun Belt Edition, March-April 1985.
113. John Deere Promotional Brochure for F910 and F930 Front Mowers, E-3077-26-84-12, 1984.

Mr. Steve Crowley                                        March 17, 2023
Re: Hillman v Toro                                           Page 51

114. John Deere Promotional Brochure for Front Mowers, C-149-84-02, 1984.

115.  John Deere Front Mowers Ad for F910 and F930 Mowers, B-214-84-9, 1984.

116.  John Deere Product Safety Guidelines – Hazard Discovery & Rating System, Deere & Company.

117.  Brochure for John Deere Compact Utility Tractors of 14.5 to 40 hp.

118.  John Deere Hydrostatic Diesel Tractors Brochure, 1987.

119.  John Deere Brochure and Specifications for F911, F925, F932, F935, no date.

120.  John Deere F Series (F1145/F900) Front Mowers Brochure, DKA75 (94-01), 1994.

121.  John Deere Equipment Purchasing Guide for Grounds Care, DKD656 (94-01), 1994.

122.  John Deere Product Safety Manual, Deere & Company, April 1997.

123.  Deere ROPS Price List for 4020 Tractor as of May, 31, 1999.

124.  John Deere Compliance Guide - ROPS - Roll-Over Protective Structures - 8/15/72 - Second Edition (John Deere Dubuque Tractor Works)

125.  John Deere, Gold Medalist, Winners in 9 Official Test Categories brochure - 1985.

126.  John Deere Sales Bulletin No. 919 - Roll-Gard, Roll-Gard with Canopy and Seat Belts - 6/14/66 (L.L. Cherry of John Deere Waterloo Tractor Works and C.D. Coylan of John Deere Dubuque Tractor Works)

127.  "This is Roll-Gard --- The New Frame of Safety," John Deere Ad, Agricultural Engineering, 7/66 .

128.   "Deere Safety Program Encourages Roll Bar Use," Midwest Daily News - 10/68.

129.  John Deere Advertisement,  "Why Roll a Perfectly Good Tractor,"  4/69

130.   "Get Your Roll Gard Up," - John Deere Advertisement, 1984.

131.  "I've Been Farming for Years Without a ROPS.  Why do I Need One Now?" John Deere Advertisement, 10/94.

132.  John Deere Design Data - Manual 16 - Design for Safety, compiled by the Safety Subcommittee of the Implement and Tractor Committee, 6/62.

133.  John Deere ROPS Ad from 1992.

134.  John Deere Advertisement, "To Survive, Some Farm Families Actually Need More Over Head," The Furrow - Corn Belt Edition,  2/93

135.  Deere Program For Retrofitting Equipment in the Field or *Dealer Inventory With Safety Equipment*. (Approximately 1988).

136.  John Deere Design Data, Product Safety Manual 16- December 1969 version.

137.  John Deere Product Safety Manual, Deere & Company, October 1977.

138.  Deere DVD entitled "Responsible Front Mower Operation M131542, 1991.

139.  John Deere Operator's Manual for F910 and F930 Front Mower, John Deere Horicon Works OM-M79594, June 1988.

140.  John Deere Brochure for 1400/1500/1600 Series Mowers 2003, DKA74 (03-02), 2003.

141.  John Deere Front Mowers F910 and F930 Brochure, A-75-85-11, 1985.

142.  John Deere Front Mowers Brochure, A-75-84-6, 1984.

143.  John Deere Front Mowers Brochures, A-75-87-1, 1987.

144. John Deere Commercial Front Mowers Brochure, DKA75, January 1996.

## Deere Information

1.  John Deere Product Safety Guidelines – Hazard Discovery & Rating System, Deere & Company - Ex. 240.

2.  Deere & Company, "Reporting Personal Injury Product Incidents," no date provided -Ex. 241.

3.  Interoffice Memo of John Deere Lawn & Grounds Care Engineering re Response to HDRS of Safety Item No. 9404-08 regarding Machine E.O. 146-STX w/ 46-inch deck, dated April 18, 1994, Ex. 242.

4.  John Deere HDRS Worksheet re E.O. 146-STX w/46-Inch Deck and Power Flow, Safety Item 9404-08, Review Date of April 8, 1994 - Ex 243.

5.  John Deere Horicon Works, Interoffice Memo to Guy Midtbo from Ken Herren, re Response to HDRS Review of Safety Item 8708-30 regarding Machine E.O. 110 Lawn Tractor, dated November 16, 1987 - Ex. 244.

6.  Deere HDRS Worksheet of Safety Item: 8708-30 regarding Lawn Tractor E.O. 110-X110T00000005 dated July 15, 1987 - Ex. 245.

7.  John Deere Lawn & Garden Tractor Brochure, 1983 - Ex. 246.

8.  John Deere Lawn & Garden Tractor Brochure, 1987 - Ex. 247.

9.  Deere Personal Injury Accident Reporting System - May 1, 1979 (Letter from J. L. Anderson and R.J. Doherty of Deere & Co.) - Ex. 265.

10. ROPS Canopy price list for John Deere Tractors, 11/1/66 - Ex. 269.

11. John Deere Compliance Guide - ROPS - Roll-Over Protective Structures - 8/15/72 - Second Edition (John Deere Dubuque Tractor Works) - Ex. 274.

12. John Deere, Gold Medalist, Winners in 9 Official Test Categories brochure - 1985 -Ex. 275.

13. John Deere Sales Bulletin No. 919 - Roll-Gard, Roll-Gard with Canopy and Seat Belts - 6/14/66 (L.L. Cherry of John Deere Waterloo Tractor Works and C.D. Coylan of John Deere Dubuque Tractor Works) - Ex. 276.

14. "This is Roll-Gard --- The New Frame of Safety," John Deere Ad, Agricultural Engineering, 7/66 - Ex. 277.

15. Deere Product Engineering Procedures of John Deere Des Moines Works for Product Safety, 8/1/86 Ex. 278.

16. Minutes of Meeting of JDWTW Product Safety Committee - 2/3/67 - (K.F. Kemp) - Ex. 279.

17. "In the Search for Safety," Farm & Power Equipment - 3/67 - Ex. 280.

18. Minutes of Meeting of JDWTW Product Safety Committee - 4/24/67 (K.F. Kemp) - Ex. 281.

19. Minutes of Meeting of JDWTW Product Safety Committee - 6/23/67 (K.F. Kemp) - Ex. 282.

20. Minutes of Meeting of JDWTW Product Safety Committee - 12/1/67 (K.F. Kemp) - Ex. 283.

21. "Preview Tomorrow's Agricultural Techniques Today at Farming Frontiers '68," The Furrow - 1968 - Ex. 284..

22. "Deere Plans $500,000 Promotion in Safety," Moline Dispatch - 12/19/67 - Ex. 285.

23. "Deere Safety Program Encourages Roll Bar Use," Midwest Daily News - 10/68. - Ex. 286.

24. Memo from H.A. Myers of Deere Product Development Department regarding Experimental Cab for 3010 and 4010 Row Crop Tractors, 11-9-60 - Ex. 287..

25. John Deere Advertisement, "Why Roll a Perfectly Good Tractor," 4/69 - Ex. 288.

26. Letter regarding Roll-Gard - 5/25/70 (Letter from John Deere Limited) - Ex. 289..

Mr. Steve Crowley                                              March 17, 2023
Re: Hillman v Toro                                                    Page 53

27. John Deere Product Safety Committee Minutes - John Deere Waterloo Tractor Works - 4/22/77 - Ex. 290.
28. John Deere Product Safety Committee Minutes - John Deere Waterloo Operations - 1/5/78 - Ex. 291.
29. John Deere Product Safety Committee Minutes - John Deere Waterloo Operations - 2/9/78 - Ex. 292.
30. John Deere Product Safety Committee Minutes - John Deere Waterloo Operations - 4/11/80 - Ex. 293.
31. "Get Your Roll Gard Up," - John Deere Advertisement, 1984 - Ex. 294.
32. Letter  to Sales Branch Managers, re ROPS Program, from D.O. Carl, W.L. Stowell and N.O. Christenson of Deere & Co., dated September 21, 1984 - Ex. 295.
33. John Deere Advertisement for Retrofitting ROPS, The Furrow - May-June 1985 - Ex. 296.
34. Letter to All U.S. Canadian Sales Branch Mangers regarding ROPS Installation Policy Revision, From N.O. Christenson and R.W. Porter of Deere & Co., dated June 28, 1985 - Ex. 297.
35. John Deere Certificate of Use & Refusal of Rollover Protective Structure, 1987 - Ex. 298.
36. Letter to All U.S. and Canadian Sales Branch Mangers regarding ROPS Installation/Return Goods Policy Revision, from J.W. McCallister, Law Department of Deere & Co.,  12/2/87 - Ex. 299.
37. Marketing Information - New 2 Post Foldable ROPS for John Deere 45-85 h.p. tractors - 10/9/90  (John Deere Waterloo Works) - Ex. 299.1.
38. John Deere Roll-Over Accident Data  for W.G. Cockrell of John Deere Co., November 11, 1965 - Ex. 299.2.
39. J.D. Waterloo Works Product Safety Committee Minutes - closed - 8/20/82 - Ex. 299.3.
40. "I've Been Farming for Years Without a ROPS.  Why do I Need One Now?" John Deere Advertisement, 10/94 - Ex. 299.4.
41. John Deere Design Data - Manual 16 - Design for Safety, compiled by the Safety Subcommittee of the Implement and Tractor Committee, 6/62 - Ex. 299.5.
42. John Deere ROPS Ad from 1992 - Ex. 299.6.
43. John Deere Advertisement, "To Survive, Some Farm Families Actually Need More Over Head," The Furrow - Corn Belt Edition,  2/93 - Ex. 299.7.
44. Deere Product Safety Guideline Hazard Discovery and Rating System, Deere & Company, September 1979 - Ex. 299.8.
45. Deere Program For Retrofitting Equipment in the Field or *Dealer Inventory With Safety Equipment*. (Approximately 1988) - Ex. 299.9.
46. John Deere Design Data, Product Safety Manual 16- December 1969 version - Ex. 299.10.
47. John Deere Product Safety Manual, Deere & Company, October 1977 - Ex. 299.11.
48. John Deere Operator's Manual for 717A and 727A Mini-Frame Z-Trak Mowers, #020001, Copyright © 1996-2006-Deere & Company, 2006- Ex. 299.12.
49. John Deere Product Safety Manual, Deere & Company, and letter to John Deere Product Design and Development Personnel, from Robert A. Hanson, dated November 1, 1985,  - Ex. 299.13.
50. John Deere Tractors 100 Series Operator's Manual, John Deere Worldwide Commercial & Consumer Equipment Division, 2006 - Ex. 299.14.
51. 2005 Internet Ad for John Deere Commercial Zero Turn Mowers - Ex. 299.15.

Mr. Steve Crowley                                                            March 17, 2023
Re: Hillman v Toro                                                                Page 54

52. John Deere A 4-Wheel Drive That's Built, PRO Magazine Advertisement, February 1993 - Ex. 299.16.
53. John Deere 2000 Series Compact Utility Tractors, 2305, 2320, 2520, and 2720, Ref. # 95465, 09/04 - Ex. 299.17.
54. John Deere 650 Brochure production years 1981-1989, Copyright 2009, printed from www.TractorData.com, 12/02/09 - Ex. 299.18.
55. John Deere 750 Brochure production years 1981-1989, Copyright 2009, printed from www.TractorData.com, 12/02/09 - Ex. 299.19.
56. John Deere 850 Brochure production years 1978-1989, Copyright 2009, printed from www.TractorData.com, 12/02/09 - Ex. 299.20.
57. John Deere Compact Tractor Brochure, "Compact Without Compromise," YY0534436E, 8/05 - Ex. 299.21.
58. Photo of John Deere 650 Tractor sent by Tom Berry, 12/01/09 - Ex. 299.22.
59. Deere DVD entitled "Responsible Front Mower Operation M131542, 1991 - Ex. 299.23.
60. John Deere Consumer Products History, 1963 - 2006 - Ex. 299.25.
61. John Deere Operator's Manual for 650 and 750 Tractors, OMRW15455 L4, 1984 - Ex. 299.28.
62. John Deere Operator's Manual for F910 and F930 Front Mower, John Deere Horicon Works OM-M79594, June 1988 - Ex. 299.29.
63. John Deere Brochure for 1400/1500/1600 Series Mowers 2003, DKA74 (03-02), 2003 - Ex. 299.30.
64. John Deere Front Mowers F910 and F930 Brochure, A-75-85-11, 1985 - Ex. 299.31.
65. John Deere 7-Iron Commercial Mowing Equipment Brochure, DKA51 (04-04), 2004 - Ex. 299.32.
66. John Deere F500 Series Front Mowers Brochures, DKA89 (99-01) - Ex. 299.33.
67. John Deere Front Mowers Brochure, A-75-84-6, 1984 - Ex. 299.34.
68. John Deere Front Mowers Brochures, A-75-87-1, 1987 - Ex. 299.35.
69. John Deere Marketing Information, M-88-270, September 30, 1988 - Ex. 299.36.
70. John Deere Grounds Care Equipment Purchasing Guide, DKD656 (92-12), 1992 - Ex. 299.37.
71. John Deere Grounds Care Equipment Purchasing Guide, DKD656 (97-01), 1997 - Ex. 299.38.
72. John Deere Grounds Care Equipment Purchasing Guide, DKD656 (91-01), 1991 - Ex. 299.39.
73. John Deere Worldwide Commercial & Consumer Division Product Report and Recommendation (P2R), Stability Tests for X475, ANSI B71.4-99 Lateral Stability Test (Section 6.6) on X Series Models, Approved June 19, 2002 - Ex. 299.40.
74. John Deere Worldwide Commercial & Consumer Equipment Division Product Report and Recommendation (P2R), Stability Tests for X475, Stability of "Concept Build" Engineering Units per ANSI B71.1 of New 400 Redesign, August 4 - August 10, 2000 - Ex. 299.41.
75. John Deere Horicon Works, Memo from Ken Herrin, re Response to HDRS Review of Safety Item 8708-30 for E.O. 110 Lawn Tractor, November 16, 1987 and HDRS Worksheet of July 15, 1987 - Ex. 299.42.
76. John Deere Commercial Front Mowers Brochure, DKA75, January 1996 - Ex. 299.49.

Mr. Steve Crowley                                               March 17, 2023
Re: Hillman v Toro                                                     Page 55

77. CozyCab Mounting Instructions for John Deere X465, X475, X485, X495, X575, X585 and X595 and X700 Select Series, # 05-10408, Manufactured by Custom Products of Litchfield, Inc., November 21, 2006 - Ex. 299.50.
78. John Deere Diesel Tractors, 14.5 to 60 PTO hp, 1980's, no specific date listed - Ex. 299.51.
79. Shows Operator Extended Beyond Standard ROPS on a 2210 Deere Lawn Tractor - Ex. 299.52.
80. Shows Operator Extended Beyond Standard ROPS on Deere Z Trak - Ex. 299.53.
81. Letter from John R. Vece, Senior Compliance Officer, Central Regional Center of U.S - Ex. 299.54. Consumer Product Safety Commission to Deborah J. Morrison, Senior Counsel of Law Department of Deere & Company, re CPSC P1030123, Deere & Company Zero Turning Radius Riding Lawn Mowers, dated September 15, 2003 - Ex. 299.55.
82. John Deere Diesel Tractors 14.5 hp to 60 PTO hp, 1984 - Ex. 254.
83. John Deere Riding Mowers brochure, DKA83, 88-12 - Ex 299.59.
84. John Deere Horicon Works, Production Schedule No.5 for SX-75, November 1986 to October 1990 Ex 299.62.
85. Certifications for ANSI Standards of B71.1 for 1984 and also 1986 for Manufacturer John Deere Horicon Works Ex 299.68.
86. John Deere Design Data - Manual 16 - Product Safety, Supersedes Issue of December 1969, March 1972 Ex 299.69.
87. Deere Product Incident Report Worksheet Ex. 299.70.
88. John Deere Horicon Works - Test Request - P2R, Writer Rudy Petersen, re Deadman Switch and Time Interval of Seat Switch for Rough Tel1'ain, June 18, 1981 Ex. 1801.

## Stability and Accident Data and Statistics

1. "Analysis of 102 Riding Lawn Mower Injury Cases," by William H. McConnell, American Society of Agricultural Engineers. (December 8-11, 1970).
2. "Small Tractor Operator Position and Safety Behavior," by L.W. Knapp, Jr., J.T. Parks, American Society of Agricultural Engineers, December 9-12, 1969.
3. Summary Analysis of Riding Lawn Mower Injury Cases (Excerpts from), Bureau of Epidemiology, Consumer Product Safety Commission, January 1976.
4. "Garden Tractor Injuries," Bureau of Epidemiology, Consumer Product Safety Commission, for period of July 1972 to June 1973.
5. FY 1987 Priority Project – Riding Mowers, Consumer Product Safety Commission, December 31, 1986.
6. Power Lawn Mower, Consumers' Research Bulletin, August 1950.
7. Tips for Carefree Mowing, by Gordon T. O'Neill, Home Safety Review, Spring 1959.
8. Riding Rotary Mowers, Consumer Bulletin, August 1959.
9. Lawn and Garden Tractors and Outdoor Power Equipment, by Robert H. Witt and Benson J. Lamp, Agricultural Engineering, August 1965.
10. Cutting the Lawn with a Riding Rotary Lawn Mower, Consumer Bulletin, July 1966.
11. Injury Associated with the Use of Riding Rotary Power Lawn Mowing Equipment, by W.H. McConnell, American Society of Agricultural Engineers, December 12-15, 1967.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 56

12. The Engineer's Responsibility in Riding Mower Design, by William H. McConnell, American Society of Agricultural Engineers, August 1968.

13. There's Danger in Power Mowers, Gleanings in Bee Culture, June 1969.

14. Some Aspects of Lawn Mower Safety, Status Report Project 414, by L.G. Porter, Clarke Jones, and J.J. Persenky, Bureau of Engineering Sciences, Consumer Product Safety Commission, December 1974.

15. "Factors Influencing Judgments of the Likelihood of Tipovers of Machines on Slopes, by S. David Leonard and Edward W. Karnes, Advances in Occupational Ergonomics and Safety I (2 Vol.) 1996.

16. "Lawn Mowers & Other Killers," by Stanley Klein, reprinted from The Nation on March 29, 1971.

17. OSHA Accident Report – Accident: 200120384, Employee Killed When Riding Mower Overturns, 7/30/1999.

18. OSHA Accident Report – Accident 200260446 - Employee Killed When Tractor Mower Overturns on Embankment, 9/14/98.

19. OSHA Accident Report – Accident 200200491 - Employee Killed When Lawn Mover Overturns, 6/25/98.

20. OSHA Accident Report - Accident 200670271 - Employee Drowns When Mower Overturn in Canal, 11/13/96.

21. OSHA Accident Report – Accident 200670263, Employee Drowns When Mower Slipped into an Approximately 14 Ft. Deep Pond That Was About 7 Ft. from the Edge of the Bank, 7/22/96.

22. OSHA Accident Report – Accident 605238, Employee Run Over and Killed by Riding Lawn Mower, 8/2/93.

23. OSHA Accident Report – Accident 14379713, Employee Killed When Crushed by Overturned Mower, 8/23/93.

24. OSHA Accident Report – Accident 170582175, Employee Dies When Pinned In Water by Riding Lawn Mower, 8/27/94.

25. OSHA Accident Report – Accident 170732838, Employee Injured When Mower Overturns, 11/02/94.

26. OSHA Accident Report – Accident 14333256, Employee Killed When Mower Lands on Top of Him, 7/17/91.

27. OSHA Accident Report – Accident 978098, Employee Killed When Lawn Mower Overturns, 4/3/91.

28. OSHA Report on Scag Rollover 5/22/90.

29. OSHA Accident Report – Accident 829796, Employee Dies of Asphyxia When Crushed by Lawn Mower, 5/2/90.

30. OSHA Accident Report – Accident 170105621, Employee Killed by Overturned Lawn Mower, 7/13/89.

31. OSHA Accident Report – Accident 888552, Employee Injured When Riding Mower Overturns in Pond, 9/14/88.

32. OSHA Accident Report – Accident 686618, Employee Injured When Pinned by Riding Mower, 10/13/86.

Mr. Steve Crowley                                          March 17, 2023
Re: Hillman v Toro                                                Page 57

33. OSHA Accident Report – Accident 694687, Employee Drowns When Pinned In Golf
    Course River by Mower, 5/30/88.

95. OSHA Accident Report – Accident 813592, Employee Drowned When Pinned by
    Overturned Lawnmower at Legacy Golf Course, 6/1/98.

34. OSHA Accident Report – Accident 813154, Employee Killed by Overturned Lawn
    Tractor at Glencoe Park Department, 5/8/92.

35. Rollovers on File with U.S. Consumer Product Safety Commission (CPSC) from 1980
    through June 30, 2003 of reported incidents, incidents investigated and death
    certificates.

36. Consumer Product Safety Commission National Electronic Injury Surveillance System
    (NEISS) listing of lawn tractor rollover accidents from 1980 to June 30, 2003.

37. Summary Composite of Database #1, #2, #3, Prepared November 21, 2003, CPSC
    reported incidents, incidents investigated and death certificates.

38. Revised Summary of Reported Incidents Data Chart – Database #1, printed August 12,
    2003

39. Revised Summary of Incidents Investigated Data Chart – Database #2, printed August 12,
    2003.

40. Revised Summary of Death Certificate File Data Chart – Database #3, printed August 12,
    2003.

41. Summary if NEISS Data Chart – Database #4 from CPSC from 1980 to June 30, 2003.

42. "What the Safety Commission Found: 'Unreasonable' Dangerous Products," by Stanley
    Klein, Machine Design, October 15, 1970.

43. National Safety Council and Farm Bureau Recommend ROPS on All Lawn Tractors,
    "Council Urges Law Tractor Safety," Glasgow Daily Times.Com, 9/6/07.

44. OPEI Brochure entitled "Think Safety And Environment With Power in Your Hands,
    OPEI, 2006.

45. Memo dated December 31, 1985 from U.S. Consumer Product Safety Commission re
    attachment of Final Report on Task 1 of Human Factors Riding Mower Contract,
    "Perception of Slope and Risk on Hills, prepared by Neil D. Lerner, COMSIS
    Corporation, November 1985.

46. CPSC Website for Mower Rollover Statistics for 2000, printed 4/30/08.

47. "Hazard Analysis – Ride-On-Mowers," Directorate for Epidemiology by Elaine Van Ty
    Smith, published by Consumer Product Safety Commission, 1988.

48. Summary Analysis of Riding Power Mowers, Bureau of Epidemiology, Consumer
    Product Safety Commission, March 16, 1973.

49. Summarization of 142 In-Depth Investigation of Product Related Injuries: Power
    Mowers, Bureau of Epidemiology, U.S. Consumer Product Safety Commission, Draft
    9/5/74.

50. Consumer Product Safety Commission In-Depth Injury Data, Product Code #1437
    (Riding Mower), 1964-1974.

51. OSHA Accident Reports of 12 Lawn Tractor Rollovers of 2000 -2006, from OSHA
    Website on 5/31/07.

52. Five (5) Photos From Autopsy of John Rich Accident, no date.

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                         Page 58

53. OSHA Report re: Accident of Walter Maier at Maier Lumber Company, Inc. 6/27/02.
54. Press Release from The Kansan.Com in Kansas City, Kansas re: Samuel Cousin, Man Killed in Mower Rollover, 9/5/07.
55. Riding Lawn Mower Rollover Accidents Known to CPSC for year 2000 (Death Certificate File).
56. Riding Lawn Mower Rollover Accidents Known to CPSC for year 2000 (Incident Investigations).

## Safety Sign Information

1. Warning Sign -  Danger – "This Mower May Tip Over Unexpectedly and Quicker Than an Operator Can Jump Free." Date unknown.
2. Safety Signs - They Warn and Teach, National Safety News, March 1945.
3. Signs of Safety – Silent but Effective Reminders, National Safety News, March 1944.
4. Industry Believes in Signs, by Allan W. Herdman, National Safety News, July 1939.
5. Safety Signs – Do's, Don't's and Directions, National Safety News, March 1942.
6. Signs – To Carry Warning, Advise on Safety, Mark Directions, by Mark Bulot, Industrial Standardization, May 1938.
7. Signs of Safety – Or Just Safety Signs?  National Safety News, October 1929.
8. Warning Signs – Their Use and Maintenance, January 1928.
9. "Why Some Warnings Don't Work," by David S. Leonard and Edward W. Karnes, Department of Psychology of University of Georgia, June 2005.
10. ASAE Standard: ASAE S441.2, Safety Signs, ASAE Standards, Adopted December 1983, Revised June 1993 and March 1995.
11. ANSI Z35.1, Specifications for Accident Prevention Signs, American National Standard, 1972.
12. Three (3) Photographs re: Bad Boy Warning Decals Re Slope Angles.
13. Advertisement for Lev-o-Gauge.

## Manufacturers Responsibility Towards Guarding

1. Memo: To File, Manufacturers Responsibility Towards Guarding, October 14, 1983.
2. "Safety Subjects," U.S. Dept. of Labor Division of Labor Standards, 1944.
3. "Guarding Machine Tools," by Albert A. Hopkins, Department of Labor of the State of New York, 1925.
4. "The Engineering of Accident Prevention," Machinery, June 1913, Author Unknown.
5. The Modern Factory, by George M. Price, M.D., 1914.
6. *Accidental Prevention Manual for Industrial Operations*, National Safety Council, 5th Edition, 1964.
7. Hodgson, E.W., "Safety is our Responsibility", The Chartered Mechanical Engineer, April 1966.

Mr. Steve Crowley
Re: Hillman v Toro

March 17, 2023
Page 59

## Patents

1. Riding Tractor, United States Patent, #3,826,530, by Hoffmeyer et al., July 30, 1974.
2. Patent # 2,783,056 - Operator Protecting Frame for Tractors, K.A. Belk, ROPS Patent - 2/26/57.
3. Patent # 2,805,887 - Tractor Canopy Guard and Combination, E.E. Selby, ROPS Patent - 9/10/57.
4. Patent # 3,912,297 - Collapsible Canopy Assembly, Mitsuishi Collapsible Canopy Patent - 10/14/75.
5. Patent # 4,158,460 - Roll Bar Safety Frame for a Tractor - White Patent for Foldable ROPS with Lynch Pins - 6/19/79.
6. Patent # 4,666,183 - Joseph A. Azzarello, Patent for Moveable ROPS - 5/19/87.

## Design Methodology

1. Enhancing the Safety of the Agricultural Workplace by Machine Design, by Kevin B. Sevart, P.E. and Thomas A. Berry, P.E., ASAE Meeting of April 4-5, 2003.
2. Accident Prevention Manual for Industrial Operations, Seventh Edition, National Safety Council, 1974.
3. An Instructional Aid for Occupational Safety and Health in Mechanical Engineering Design, American Society of Mechanical Engineers Safety Division, 1984.
4. Military Standard System Safety Program Requirements, Mil-Std-882C, January 19, 1993.
5. *Accident Prevention Manual for Business & Industry, Engineering & Technology*, Eleventh Edition, by Gary R. Krieger, MD, MPH, DABT and John F. Montgomery, Ph.D., National Safety Council, Itasca, Illinois, 1997.
6. *Engineering Design*, 3rd Edition, by George E. Dieter, 2000.
7. *An Introduction to Human Factors Engineering,* Second Edition, by Christopher D. Wickens, John D. Lee, Yiliu Liu, and Sallie E. Gordon Becker, 2004.
8. *Engineering by Design*, Second Edition, by Gerard Voland, 2004.
9. *Safety and Health for Engineers*, Second Edition, by Roger L. Brauer, 2006.
10. *The Mechanical Design Process*, 3rd Edition, by David G. Ullman, 2003.
11. *"Human Factors in Engineering and Design"* by Mark S. Sanders and Ernest J. McCormick, sEventh Ed., 1976.
12. Health & Safety in the Agricultural Engineering Design Process prepared by R. J. Crabb, ADAS Consulting Ltd.-Ergonomics Unit, HSE Health & Safety Executive, Contract Research Report: 306/2000, 2000.
13. Raymond Design Guide, 8/3/70.
14. "The Design Engineer and the Dependency Hypothesis," by J. B. Sevart, for American Society of Agricultural Engineers, Paper No. 87-5001, June 28 - July 1, 1987.

## Value of Life

Mr. Steve Crowley                                                    March 17, 2023
Re: Hillman v Toro                                                           Page 60

1. Revision of Departmental Guidance on Treatment of the Value of Life and Injuries, http://ostpxweb.dot.gov/VSL_background.htm, No date other than date printed 4/10/06.
2. NRC Says Life Worth $10 Million, The Wichita Eagle-Beacon, May 7, 1982.
3. "EPA Decision puts focus on value of life.", posted Sunday, Jul, 2008, http://www.star-telegram.com/national_news/v-print/story/770365.html.

## Seat Belt Interlock Information

1. Patent # 4,480,713 – Operator Restraint/Control Lockout System, November 6, 1984.
2. Patent # 3,886,516 – Seat Belt Operation Detector, May 27, 1975.
3. New Holland Skid-Steer Loaders L-464, L-465, LX-465, L565, LX-565, and LX-665 Brochure, Ford New Holland, Inc., 1993.
4. "New Safety System for Mitsubishi Forklifts," Mitsubishi Forklift Brochure, printed from Website on 12/30/05.
5. John Deere 575 Skid-Steer Loader Operator's Manual, John Deere Lawn & Grounds Care Division, September 1990.
6. John Deere Skid-Steer Loader Brochure, 01/91.
7. Toyota Skid-Steer Product Brochure, 1989.