

**Mechanical Systems Analysis, Inc.**
12444 West Hoover Avenue
Littleton, Colorado 80127
(303) 798-1420

David J. Bilek, P.E., President
E-mail: djbilek@msai.us

---

July 3, 2023

Steven J. Crowley
Crowley and Prill
3012 Division St
Burlington, IA 52601

Re:     Hillman v. Toro

Mr. Crowley:

Per your request, I have reviewed the report of Enrique Bonugli of Biodynamic Research Corporation (BRC), prepared on behalf of the defendant Toro in the referenced case. There are certain opinions he has expressed which have prompted me to draft this report in rebuttal.

BRC states:
(The following are from the main body of the BRC report and are all interconnected)

"Theoretically, the acceleration due to gravity is a function of the slope and in the absence of any resistive forces the acceleration due to gravity can be as much as 0.165 g based on a 9.5-degree slope. However, this level of acceleration is not possible due to rolling resistance associated with the mechanical friction of the mower's internal components and its interaction with the external environment. Based on the velocity calculations, the Effective Acceleration was 0.013 g as it moved down the 9.5-degree slope shown in RH04259 Test video."

"The velocity of the mower was calculated at a point further down the hill in RH04258 Test video. The velocity of the mower increased to 6.2 ft/s or 4.3 mph. This demonstrated the effect of applying an external motive force to the mower. By pushing the mower, the velocity increased at a greater rate than the Effective Acceleration due to Earth's Gravity alone."

"Review of the "test" videos showed that the rolling resistance of the mower while stationary on a sloped terrain was sufficient to overcome the effect of Earth's Gravity. Initial movement required an external motive force to overcome the resistance of the tire-to-ground contact patch, mechanical resistance of the mower's components, compliance of the soil and grass, and normal force of the mower and operator."

"Analysis of the "test" videos indicated that the electric park brake was capable of stopping the mower operated by Rebekah Hillman had the initial movement of the mower been caused by acceleration due to Earth's Gravity alone."

Exhibit D-1

The following are bullet points from the BRC report and are all similarly interconnected with the previous:

- Mr. Bilek stated, "the park lock cannot stop the mower once it is moving." This statement lacks foundation and contradicts the findings from the "test" videos which demonstrated that the electric park brake can, in fact, stop the mower.

- Based on an accident reconstruction analysis of the subject incident, it was determined that a motive force was applied to the rear of the mower while stationary with the electric park brake disengaged, causing the mower to overcome rolling resistance and initiate forward movement. Application of a motive force accelerated the mower to a speed greater than its acceleration due to gravity alone.

- Acceleration of the mower due to the external motive force proportionately increased its velocity which in turn decreased the time available for Rebekah Hillman to respond as she moved toward the retaining wall.

- The "test" videos demonstrated the effectiveness of the electric park brake. In the absence of an external motive force, the mower was able to stop within a 1-foot distance once the electric park brake was engaged.

- Failure to disengage the bypass pins allowed the subject Toro TimeCutter mower to freeroll down a sloped terrain. This was further exacerbated by moving the mower near the top of a sloped terrain during the manual movement procedure. Additionally, application of an external motive force to the rear of the mower contributed to the decreased effectiveness of the electric park brake.

MSAI response:

These opinions and statements are interconnected based on Bonugli's interpretation and analysis of the two "test" videos, a short one (first test) and a longer one (second test), provided and conducted by the Plaintiffs in this case. According to his report, he determined the slope of the terrain at the area of testing to be 9.5 degrees, and stated "This slope was consistent with the slope measured along the path of the mower at the time of the subject Incident." His analysis is specifically based on this determination and use of a 9.5 degree slope at the test location.

Bonugli's opinion, "that the rolling resistance of the mower while stationary on a sloped terrain was sufficient to overcome the effect of Earth's Gravity", is incorrect. Further, as an engineer, Bonugli should have recognized that the rolling resistance based on his interpretation of the "testing" was wrong. Since acceleration due to gravity on a 9.5 degree slope, "can be as much as 0.165 g" as reported by Bonugli, the rolling resistance is therefore higher. For reference, routinely employed rolling resistances for passenger vehicles are in the range of 0.01 to 0.02 g's. Simply considering the ramifications of this conclusion indicates that the mower has what would be an unreasonably high rolling resistance, greater than 0.165 g's as designed by Toro, and thus the engine will have to continually work to overcome the high rolling resistance, even on level ground, just to keep the mower moving. This is comparable to trying to drive an automobile with

2

the brakes moderately applied all the time. As an engineer, this should have alerted Benugli that there was a fundamental problem with his analysis. Toro would not design and produce their mower to be so inefficient.

It becomes readily apparent that Bonugli has used an incorrect slope for his analysis of the testing. Jennifer Hillman selected the particular test location because it was relatively flat and wanted everyone to be safe given her experience with what happened in the accident. In fact, based on direct measurements of the area in which the testing was conducted; the first test has an initial downslope of between 2 and 3 degrees; the second test is nominally flat. (See Photos 1, 1a and 2, and 2a for general representation)



Photo 1                    Photo 2

Photo 1a                   Photo 2a

Since the very beginning of the first test was not recorded, it is my understanding from discussion with Jenifer Hillman that once the park lock was disengaged, the mower began rolling due to the small slope without any "external motive force", indicating that the rolling resistance of the mower is fairly low as would be expected.

Additionally, in the video of the second test, the white gravel bordering the driveway can be seen on the right side of the image (Video Image 1). The driveway is also relatively level.

Exhibit D-3



Video Image 1

For comparison, Photos 4 and 4a shows the area of testing with a 2 degree slope, and Photos 5 and 5a shows the level propped up on a brick resulting in a 9.1 degree slope. Clearly the slope of the test area is not the same as the accident location.



Photo 4



Photo 4a

4

Exhibit D-4



Photo 5



Photo 5a

Benugli's report outlines his basic methodology, however at this time it is unknown how he decided that a 9.5 degree slope best represents the test configuration.

As can be seen in the second test, the mower needed to be pushed to get it moving, or as Bonugli has stated, "applying an external motive force to the mower", however not because the mower has an unreasonably high rolling resistance, but rather because it was sitting on relatively level ground. As an engineer, Bonugli should have recognized this fact.

When reviewed with the correct terrain information, the test results now make engineering sense. The mower does not have an unreasonably high rolling resistance, and will begin rolling without "external motive force" on a slope as in the accident.

Based on the use of the incorrect slope, Bonugli implies that Rebekah Hillman could have stopped the mower with the "electric parking brake". The electric parking brake is not designed to be used to stop the mower.

Todd Porter, a 30(b) (6) witness for Toro, when asked if he expected the parking brake system to be able to stop the mower, he testified that "It's not intended to stop a moving machine." Further when asked if the parking brake was considered a service brake, he stated "No." In fact, the other 30(b) (6) witness for Toro, Carol Drutowski, testified that "The park brake is designed to hold the mower still, so it's designed for when it's parked," the "parking brake system, by definition, is to hold stationary on a hill." And further she agreed "it is not a deceleration system."

While it is true the mower in the test video has the capability to be stopped, a fundamental issue arises when considering the fact that the testing was performed on relatively level ground and therefore does not take into consideration the effect of a greater slope as in the accident. The park lock is not a brake and does not generate sufficient deceleration on the accident slope to stop the mower.

As heard and described in the test videos, "an audible mechanical grinding noise" results. It is more accurate to describe the system as a "park lock" since its function is to hold the mower in a stopped or parked position. The lock functions by engaging a set of toothed or cogged discs with toothed arms, one set on each rear drive wheel. Photo A below shows the toothed arm engaged on the toothed disc on the right rear in the engaged or parked position.

5

Exhibit D-5



Photo A

The grinding is a result of the teeth of the cogs abrading against each other as they fail to engage. The mechanism can be likened to attempting to engage a manual transmission without using a clutch; the gears grind together until they happen to catch. It is unpredictable when the gears may engage and too much of this abuse will destroy the transmission. As such, attempting to brake a moving mower using the park lock is at best unreliable and will result in an extended stopping distance compared to that achieved by the hydrostatic service brake. It obviously cannot be relied upon nor depended upon in an emergency, and as such, in the accident, the park brake did not slow down the mower compared to how the hydrostatic service brake would have.

BRC states:

> • Mr. Bilek calculated the theoretical velocity of the subject mower; however, this calculation has no relevance since it does not account for any resistive forces.

MSAI responds:

As was clearly stated in my report, speed was calculated "assuming no resisting force", and further stated that, "it is recognized that some level of deceleration did occur." The basic problem is that there are many unknowns that preclude a precise calculation. The calculation is simply the speed of an object rolling down a slope, since that best describes how the mower began moving once the park lock was disengaged, and serves as an estimated upper bound in that the mower was traveling no faster than this.

BRC states:

> • Mr. Bilek computed the Static Stability Factor for the subject Toro TimeCutter to quantify the mower's roll propensity. This comparison is inappropriate as it applies to roadworthy passenger vehicles not riding lawn mowers intended for off-road use.

6

Exhibit D-6

Passenger vehicles are significantly different than consumer grade riding lawn mowers. There is no data to support the use of the SSF as it relates to riding lawn mowers. Furthermore, the Toro TimeCutter did not roll during the subject incident but rather it pitched forward. The SSF has no use or intent for application in the pitch axis.

MSAI responds:

The Static Stability Factor is a fundamental geometric relationship between the base and center of gravity height of an object regardless of what object is being analyzed. It is a calculation of essentially the angle required to tip the object about, in this case, the roll axis in a statically loaded situation. It has direct correlation to tilt table testing that Toro employs and serves as a reference for rollover resistance, that is, how easily or difficult an object will tip up and/or rollover.

The video "Toro Zero Turn Operator Safety Training" video advises operators to always use the ROPS and shows graphic depictions of a Toro ZRT and operator with and without ROPS tipping over after a sideways slide on a hill. Corporate witness Carol Drutowski testified that "Toro doesn't describe any slope as a safe slope. Based on my experience, research, and testing, the SSF of the loaded TimeCutter is low enough to cause stability concern and that ROPS should be required.

In summary of the main issues:
- It appears that Bonugli has the implied opinion that the mower was pushed down the slope (motive force applied) and therefore the only person would have been Jennifer Hillman.
- It also appears that Bonugli has the implied opinion that if Rebekah Hillman had continued to apply the park lock down the slope, the mower could have been brought to a stop before going over the edge of the wall.
- Based on the testing and use of the correct terrain for the test area, it is obvious that Jenifer Hillman did not push the mower down the slope in the accident, and Rebekah Hillman could not have stopped the mower with the park lock acting as a brake in the accident.

The information presented is to a reasonable degree of engineering certainty based upon the material reviewed, the investigation information, the laws of physics, and my experience. I reserve the right to modify or expand my opinions, as other information may become available, and will certainly consider additional materials which may be provided.

David J. Bilek, P.E.

7

Exhibit D-7