

**Mechanical Systems Analysis, Inc.**
12444 West Hoover Avenue
Littleton, Colorado 80127
(303) 798-1420

David J. Bilek, P.E., President
E-mail: djbilek@msai.us

# Accident Analysis/Reconstruction Report in the case of

# Hillman, et al. v. Toro

by David J. Bilek P.E.

Mechanical Systems Analysis, Inc.

March 17, 2023

## Overview

On June 18, 2020, sometime after 11:00 am, Rebekah Hillman (Rebekah) was mowing the yard at her residence with a Toro Timecutter ZTR (Toro) riding lawnmower. Jennifer Hillman (Jennifer) was also working in the yard. A front wheel of the Toro became stuck in a planting bed adjacent to the yard above a retaining wall. Jennifer used a John Deere tractor and tow strap to free and then move the Toro to a location away from the planting bed and retaining wall. Rebekah attempted to resume mowing, but now could not stop or control the Toro, which traveled down a slope, through the planting bed, and off the retaining wall. Rebekah jumped off the Toro but it landed on her legs causing traumatic injuries leading to amputation of her left leg below the knee.

I have been retained to reconstruct the accident and evaluate failure associated with the accident based on the information currently available, and per request, am reporting my findings and opinions at this time.

## Background

I am a Colorado licensed Professional Engineer (PE) in Mechanical Engineering. I am employed by Mechanical Systems Analysis, Inc. (MSAI), and am president of the company. MSAI was founded in 1978 as an engineering firm consulting primarily in the field of forensic engineering. I have investigated, evaluated, and analyzed failure associated with the use of machines and mechanical devices, such as motor vehicles, hydraulic and pneumatic valves, industrial guard rails and machine guards, as well as systems, processes, and procedural failures typically resulting in accidents and injury.

I have been involved with the reconstruction of single and multi-vehicle automotive accidents encompassing a large cross section of vehicles, including passenger cars, pick-up trucks, SUVs, and commercial vehicles. I have investigated, analyzed, and reconstructed accidents involving frontal, side, rear, and angled collisions between vehicles, fixed objects, and pedestrians. As such, I have, and continue to research, analyze and evaluate the various issues associated with failure, encompassing environmental, vehicle/machine, and operator factors.

In my work at MSAI since 1983, I have been involved in evaluating and researching the rollover of motor vehicles. The foundation of my background, knowledge, training and experience has been developed independent of the automobile manufacturers and is based in part, on over 30 years of on-track handling and stability testing of motor vehicles, analyzing the data and evaluating the vehicle dynamics from such testing, evaluating the adequacy of various design aspects exposed during testing, and evaluating design modifications to improve the rollover resistance performance of automobiles. The attached Curriculum Vita generally summarizes my experience and provides listings of cases in which I have provided expert testimony over the last four years.

## Investigation

The subject accident site was inspected and aerial photography was conducted on August 5, 2020. The subject accident Toro Timecutter ZTR, and exemplars were inspected on November 2, 2022. The following materials have been provided to me:

- Toro SS 4235, 4260, 5000, or 5060 Riding Mower, Operator's Manual.
- Toro Timecutter SS 5000 Riding Mower, Parts Catalog.
- 2010 Toro Titan Brochure
- 2012 Toro Timecutter Brochure
- ANSI B71.1 - 2003 – Walk-Behind Mowers and Ride-On Machines with Mowers - Safety Specifications.
- Safety Videos
  - Safety in the Safety Zone; Timecutter Z/ZX Safety - English – YouTube, Toro Zero Turn Operator Safety Training - English – YouTube
  - Professional Contractor Mowers; Toro Zero Turn Operator Safety Training - English - YouTube
  - Grandstand Mowers; Grandstand Operator Safety - English - You Tube
  - Toro Europe; ROPS and Seatbelts Toro Safety Spots - YouTube

Hillman Supplemental Production:
- RH04143 - RH04157 Scene photos from client, received by SJC 11/02/2022
- RH04158 - RH04172 Toro photos from client, received by SJC 11/02/2022
- RH04173 - RH04177 Home modifications from client, received by SJC 11/02/2022
- RH04178 - RH04257 Injury photos from client, received by SJC 11/02/2022
- RH04258 - RH04258 Test video from client, received by SJC 11/02/2022
- RH04259 - RH04259 Test video from client, received by SJC 11/02/2022
- RH04260 - RH04260 Stitch removal from client, received by SJC 11/02/2022
- RH04261 - RH04261 Post-op video from client, received by SJC 11/02/2022
- RH04262 - RH04262 Post-op from client, received by SJC 11/02/2022
- RH04263 - RH04263 Post-op from client, received by SJC 11/02/2022

Toro Discovery:

- Hillman Exhibit J Confidential
- Defendant's Answers To Plaintiffs' First And Second Set Of Interrogatories
- Defendant's Responses To Plaintiffs' First And Second Set Of Requests For Production
- Plaintiff's Exhibit 40, Toro Corporate ROPS Policy, 1/4/2011.
- TTCHillman00185436_R346 1.0 Concept Brief.pptx_Confidential
- Various materials produced by Toro too numerous to itemize.

Depositions:
- Jennifer Hillman, 11/16-17/2022.
- Rebekah Hillman, 11/17/2022.
- Todd Porter, 1/17/2023, and exhibits.
- Carol Drutowski, 1/18/2023, and exhibits.

## Accident Site

The accident site is the Hillman residence, 5319 E. High St, Colona, Illinois. The area was comprised of a sloping area with shrubs, trees and grass yard, down to a planting bed, above a retaining wall, with a drop down to a graveled ground level. Indistinct evidence of the approximate path of travel of the Toro was identified to me by Jennifer, and red survey flags were placed along it.




The Hillman accident site was inspected and aerial photography was conducted using a DJI Phantom 3 Pro drone. The aerial photographs were used to create a 3 dimensional textured mesh model of the Hillman accident location. The resulting model is "geolocated" and cannot be transformed or scaled due to the onboard GPS positioning system employed by the drone. The model is similar to a point cloud, and the "points" are connected forming a continuous mesh, much like a net overlaying a ball. Relevant measurements can be made directly on the computer.



As can be seen, the retaining wall is in shadow and the bench near the wall lacks detail. The locations of these objects is known and I have constructed the wall and bench to better illustrate the accident area.

Exhibit E-4



A section of terrain encompassing the approximate path of travel of the Toro mower was created using vertices of the polygons of the model (shown in blue).

 

As viewed from the side in elevation, the relative slope of the yard area is shown to be approximately 9.5°.



The photographs and files generated, along with a work flow outline describing the various files, were previously provided to attorneys for the defendants in this case through Drobox on February 10, 2022, and I was informally questioned about this material by them in a conference call.

5

Exhibit E-5

## Accident Machine

2013 Toro Timecutter ZTR –
Model number 74631, serial number 313015934, Kawasaki FR691V gasoline powered engine, Hydro-Gear ZT-2200 hydrostatic transaxle.

The Toro is a riding lawnmower. The left motion control lever or handle shows evidence of having been "re-bent" from a deformed position. There are abrasions across the top of the seat back and along the front of the mower that are likely associated with the accident. As the mower has been in use by the Hillmans, there are abrasions and scrapes around the mower most likely not associated with the accident. The weight range as measured is 595 to 598 lbs.

 

The subject Toro was scanned at the time of my inspection to construct a scaled 3 dimensional model in the computer.

 

An exemplar was also examined and scanned.
2012 Toro Timecutter ZTR –
Model number 74630, serial number 312007697, Kawasaki FR691V gasoline powered engine, Hydro-Gear ZT-2200 hydrostatic transaxle.

The unit had a Toro ROPS installed constructed of 2 inch round tubing and an attached lap belt.

6

 

A 3 dimensional scale model was also constructed on the computer.



Thomas A. Berry, P.E. conducted testing to determine the center of gravity (CG) heights of different configurations of the Toro ZTR. Each unit was weighed on nominally level ground, then the front ends were lifted to nominally 30 degrees and wheel weights were recorded. The procedure has been used for years including automobile manufacturers, consulting engineers, and other independent researchers. I have conducted such testing on a variety of motor vehicles including SUV's, pick-up trucks, passenger vehicles, and ATV's. The results using this methodology are generally reliable, and if anything, tend to under predict CG heights[a].

| Name | Model No. | Serial No. | Weight (lbs.) | CG Height (y) (in.) | CG from rear axle (x) (in.) |
|---|---|---|---|---|---|
| Subject Toro Timecutter ZTR SS 5000 (park lock engaged) | 74631 | 313015934 | 595 | 14.4 | 11.7 |
| Exemplar Toro Timecutter ZTR SS 5000 (Toro ROPS) | 74360 | 312007697 | 670 | 16.5 | 10.2 |
| Exemplar Toro Timecutter ZTR SS 5000 (Toro ROPS, front weights) | 74360 | 312007697 | 697 | 16.3 | 11.6 |
| Subject Toro Timecutter ZTR SS 5000 (free rolling) | 74631 | 313015934 | 598 | 14.4 | 11.6 |

---

[a] "Center of Gravity Height: A Round-Robin Measurement Program", The University of Michigan Transportation Research Institute (UMTRI), January 1991.

Exhibit E-7

A seated driver with a weight range of 150 to 200 lbs. was added to the subject Toro. The resulting CG heights in this operational configuration are in the range of 18.4 to 19.3 inches, and 11.8 inches forward of the rear axle.

A seated driver with the same weight range was added to the exemplar Toro with the Toro ROPS installed. The resulting CG heights in this operational configuration is in the range of 20.0 to 21.0 inches, and 10.3 inches forward of the rear axle.

The CG height is of importance when evaluating potential failure and the need for including a Roll Over Protective Structure, commonly referred to as ROPS. Design issues regarding rollover stability are well known to mechanical engineers, including those in government and industry, as well as independent safety researchers. Principally, they involve the geometry of the vehicle, i.e. center of gravity height, and track width. The ratio between the center of gravity (CG) height above the ground (h) and half the track width (t) is defined as the Static Stability Factor (SSF). This ratio is also referred to as "t over 2h" (t/2h). The SSF is an indicator of the relative stability of a motor vehicle. Very generally, the higher the CG of a vehicle with a given track width, the lower the SSF; the lower the SSF, the less stable the vehicle. For reference, modern passenger cars typically have unloaded or curb SSFs in the range of 1.25 to 1.5 and are therefore likely to slide out and not rollover.

As the National Highway Traffic Safety Administration (NHTSA) reported, a National Academy of Sciences (NAS) study found that:
> "...SSF is a scientifically valid measure of rollover resistance for which the underlying physics and real-world crash data are consistent with the conclusion that an increase in SSF reduces the likelihood of rollover."[b]

Based on the CG height measurements, the nominal SSF for the unloaded subject Toro is approximately 1.28. However, including the driver reduces the SSF to a range of 0.96 to 1.01. The unloaded Toro with a Toro ROPS installed has a nominal SSF of 1.12, and with a driver reduces the range to 0.88 to 0.92. Considering the operational configuration with a driver indicates that there is a significant risk of rollover and ROPS should be standard on these machines.

### Accident Discussion

On June 18, 2020, sometime after 11:00 am, Rebekah Hillman was mowing the yard with a Toro Timecutter ZTR. Jennifer Hillman was also working in the yard. Rebekah was mowing across the slope, or parallel to the planting bed area in what the Toro Owner's manual identifies as the "Safe Zone"[c],[d], when a front wheel of the Toro became stuck in the planting bed adjacent to the yard above the retaining wall. No damage to the Toro or injury to Rebekah occurred at this time.

The bypass levers were pushed in and down placing the Toro in a free-wheel neutral mode and Jennifer used a John Deere tractor and tow strap to move the Toro to a reasonably accessible location by a tree up the slope well away from the planting bed and retaining wall. After moving

---

[b] "A Comprehensive Experimental Evaluation of Test Maneuvers That May Induce On-Road, Untripped, Light Vehicle Rollover - Phase IV of NHTSA's Light Vehicle Rollover Research Program"; Garrott, et al., October 2002, DOT HS 809 513.
[c] Toro SS 4235, 4260, 5000, or 5060 Riding Mower, Operator's Manual, p.17
[d] The planting bed area is nominally 12 feet from the retaining wall which has a 5 to 6 foot drop off.

8

and disconnecting the Toro from the tractor, the bypass levers were inadvertently not pulled back out to engage the hydrostatic motor. Rebekah attempted to resume mowing by moving the motion control levers to the center position which released the mechanical parking lock. The Toro began rolling down the slope and Rebekah now could not stop or control the Toro by moving the control levers rearward or outward because the bypass levers had not engaged the hydrostatic motor. Due to the design of the Toro, no braking or directional control was possible. The Toro traveled down the slope, through the planting bed, and off the retaining wall.



Rebekah jumped off the Toro in the vicinity of the retaining wall, landed on the gravel area below the wall, with the Toro landing on her as well. Assuming the Toro lands in a generally vertical, or nose down orientation, and calculating the impact velocity with the ground based on the free fall distance of approximately 43 inches of the CG from on top of the wall to initial landing, is estimated at 10.4 mph. After the initial landing, the Toro rotates about its nose landing on the seat back and motion control handles bending the left one inward and down with Rebekah's left leg pinned under the nose of the Toro.

Very few photographs were taken at the time of the accident, however there are three which document evidence after rescue operations had occurred.

  

I have worked with both Jennifer Hillman, and Kelly B. Kennet, M.S., to locate the position of Rebekah Hillman at the POR generally under the Toro, consistent with Jennifer's best recollection and consistent with biomechanical physical evidence. Image 1 is an overall view, and Image 2 is looking up from below the ground.

9




Image 1                                         Image 2

The front to back CG position is well rearward, a few inches in front of the rear tires, in addition to engagement with the bottom of the Toro and ground/top of wall as it proceeds over it. As such there is a significant resisting moment as the front wheels clear the wall. The front end does not rotate down until the Toro is further out from the wall, consistent with the approximate POR generally away from the base of the wall and relatively low velocity.

The general slope of the yard is approximately 9.5° degrees, and acceleration due to gravity along the slope is approximately 0.17 g's. Over the approximate distance traveled along the slope of 21 ½ feet, from a stopped position at the beginning, and assuming no resisting force, yields a speed of 10.4 mph at the edge of the planting bed. The planting bed is nominally 12 feet wide, with the edge between the grass and bed not uniform, has basically two slopes; initially from the grass at 31° for 4 feet, then 4° for 8 feet. Considering the entire path of travel, assuming no change in acceleration through braking, rolling drag, engine drag, or any terrain friction, results in a maximum speed of 14.0 mph leaving the top of the wall. However, it is recognized that some level of deceleration did occur, given the physical evidence of ground disturbance along the path of travel, interaction with the wall, and some level of deceleration from Rebekah trying to engage the parking locks. As shown in the accident sequence, the park lock cannot stop the mower once it is moving and is not a brake. The combined deceleration, or negative acceleration, is unknown, however given the relative location of both Rebekah and the Toro on the ground just away from the base of the wall indicates that there was likely little forward speed by the time the Toro dropped off the wall.

It is not my task to address or specify alternative feasible designs but to evaluate failure in the accident from an overall perspective. As a forensic mechanical engineer, and a licensed professional engineer, evaluating safety is an integral part of my consulting. The interaction between the environment, machines, and people leads to identifying the potential for failure to occur. The basic trifecta of machine guarding, in order of importance and effectiveness; design out the hazard, guard against the hazard, and warn about the hazard, is clearly applicable from an analysis standpoint. It is recognized that the Hillmans failed to reengage the bypass levers leaving the Toro in a free-wheeling mode and uncontrollable with the motion control levers. There was no effective brake with the bypass levers not in the engaged position. Continuing with the analysis indicates that failure began well before the accident by Toro producing the ZTR SS 5000 with the hydrostatic drive as the only braking system. Had an actual service brake been incorporated in the base design, the accident does not occur regardless of the bypass levers position.

10

Exhibit E-10

In the Fluid Power Safety Institute – Safety Alert #30[e], it is recognized and warned against using a hydrostatic drive as the sole braking system.
> "A braking system which is independent of the hydrostatic transmission must, therefore, be provided which is adequate to stop and hold the system..."

Because of the reliance on Toro for the hydrostatic drive to be the only braking system, it should have been of critical safety importance to insure that the unit could only be operated with the hydrostatic drive engaged. The Toro Owner's Manual does not warn that disengaging the bypass levers for "pushing the machine by hand", or for towing, eliminates directional control and the only functional braking system of the machine. Had there been a safety interlock, like there was for the parking lock, to insure that the hydrostatic drive was engaged, the accident does not occur. It is reasonably foreseeable that a consumer will forget to reengage the bypass levers. The lack of a functional independent service brake renders the machine defective and unreasonably dangerous.

Over one hundred years ago, published in the Universal Safety Standards, by Carl M. Hansen, M.E., it is stated that:
> "The obviousness of a hazard capable of producing an accident under given circumstances has been our guide and rule of elimination of that hazard, irrespective of any statistical data of whether or not an accident ever occurred from that cause."

> "Criticism may be made that too much stress is laid upon the mechanical hazard and too little attention given to the human element. The author desires to state emphatically that he least of all underestimates the human equation in accident prevention, but he wishes also to emphasize the fundamental fact that so far as the mechanical equipment constitutes the immediate cause of a given accident, such accident would not happen even though the exciting cause in the form of a careless workman were introduced if the particular mechanical equipment were safeguarded." [f]

In summary:

- The accident reconstruction as described and illustrated is supported by eyewitness testimony, forensic evidence at the accident site and subject Toro Timecutter ZTR, and forensic evidence of the injuries sustained by Rebekah Hillman.
- Rebekah Hillman was mowing the yard generally across a nominal slope that was less than the maximum 15° warned against in the Toro Owner's Manual.
- Rebekah Hillman was operating the mower in what Toro describes as the "Safe Zone".
- The Toro became stuck and was extricated by placing the machine in a free-wheel mode and towing it to a reasonably accessible location up the slope well away from the planting bed and retaining wall.
- After moving and disconnecting the Toro from the tractor, the bypass levers were inadvertently not pulled back out to engage the hydrostatic motor. Rebekah Hillman attempted to resume mowing by positioning the motion control levers to the center location, which released the mechanical parking lock.
- The Toro began rolling down the slope with no control available to Rebekah Hillman.

---

[e] Plaintiff's Exhibit 55, Fluid Power Safety Institute – Safety Alert #30
[f] Universal Safety Standards, Hansen, Carl M., M.E.,1913-1914

- Toro did not warn that with the hydrostatic motor disengaged, there was no directional control or braking of the machine possible.
- The Toro traveled down the slope, through the planting bed, and off the retaining wall.
- Rebekah Hillman jumped off the Toro in the vicinity of the retaining wall, landing on the gravel area below the wall, with the Toro landing on her at an approximate speed of 10 mph.
- The lack of a functional independent service brake renders the machine defective and unreasonably dangerous. Had there been a functional brake, the accident does not occur.
- Had there been a safety interlock, as there is for the parking lock, which insures the hydrostatic motor is engaged, the accident does not occur.
- Given the low SSF, the risk of rollover is significant and ROPS should be standard. Without this driver protection, the machine is defective and unreasonably dangerous.

This information presented is to a reasonable degree of engineering certainty based upon the material reviewed, the investigation information, the laws of physics, and my experience. I reserve the right to modify or expand my opinions, as other information may become available, and will certainly consider additional materials which may be provided.

Current Mechanical Systems Analysis, Inc. (MSAI) charges for services are as follows:

David J. Bilek, P.E.    $225/hr.

Billings are for time and expenses incurred on a case-by-case basis.