## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

|  |  |
|---|---|
| REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; AND JENNIFER HILLMAN<br><br>                    Plaintiffs,<br><br>v.<br><br>THE TORO COMPANY, a Corporation,<br><br>                    Defendant. | No. 4:21-cv-04081-SLD-JEH |

---

## PLAINTIFFS' RESPONSES AND RESISTANCE TO DEFENDANT THE TORO COMPANY'S MOTIONS IN *LIMINE* (Issues 1-39 inclusive) (DKT. 152)

### (ORAL ARGUMENT REQUESTED)

---

COME NOW the plaintiffs, by and through their counsel of record, and hereby submit their Responses and Resistance to Defendant The Toro Company's Motion in *Limine* (Dkt. 152), as follows:

### I.        LAW GOVERNING MOTIONS IN *LIMINE*

**1.  Preliminary Questions of Admissibility**

Rule 104 of the Federal Rules of Evidence provides that "[p]reliminary questions concerning…the admissibility of evidence shall be determined by the court…." Fed. R. Evid. 104.

**2.  Relevance and Prejudice Standards**

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a)…has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence to the determination of the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.

Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Judge Myerscough of the Central District has explained the concept of "unfair prejudice" under

Rule 403 as follows:

"[M]ost relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial to be excluded." United States v. Neeley, 189 F.3d 670, 682 (7th Cir. 1999). "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." United States v. Pulido, 69 F.3d 192, 201 (7th Cir. 1995). When determining admissibility under Rule 403, courts use a "sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012).

*United States v. Sheffler*, 2021 WL 5085342, at *3 (C.D.Ill., 2021)

## 3.  Purposes of Motions in *Limine*

The Central District of Illinois has long addressed the function and purpose of Motions in

*Limine*:

The "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine.*" *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). A motion *in limine* "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they **clearly would be inadmissible for <u>any</u> purpose.**" *Jonasson*, 115 F.3d at 440. Therefore, "the party moving to exclude evidence *in limine* has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Unless this high standard is met, rulings on evidentiary matters should be deferred until trial so that issues of foundation, relevance and prejudice may be resolved in the proper context. *Mason*, 631 F. Supp. 2d at 1055–56; *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003); *see*

*also        Jonasson*,        115        F.3d        at        440.
*Saathoff v. City of Champaign, Illinois*, 2015 WL 13309437, at *1 (C.D.Ill., 2015)

It is also important to note the preliminary matter of motions in *limine* suggests deferment, as such rulings "are made before the district court has had a chance to hear all of the evidence or see the trial develop." *Currie v. Cundiff,* No. 09–cv–866–MJR, 2012 WL 2254356, at *1 (S.D.Ill. June 15, 2012). "Some evidentiary submissions cannot be evaluated accurately or sufficiently prior to trial. In these instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury." *In re Depakote*, 87 F.Supp.3d 916, 920 (S.D.Ill., 2015) (internal citations and quotations omitted)

*Limine* orders should not be broad, sweeping orders. "Trial judges should attempt to enter **<u>narrow</u>** *in limine* orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. <u>An unclear order *in limine* is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion *in limine* before trial.</u>" (Emphasis mine) *Compton v. Ubilluz*, 819 N.E.2d 767, 776, 289 Ill.Dec. 271, 280, 353 Ill.App.3d 863, 871 (Ill.App. 2 Dist.,2004)

These overriding principles are particularly relevant to TTC's motion in *limine*. Rather than identifying specific issues, evidence, or testimony which would fairly put the parties and the court on notice of what was being excluded, Toro launches into a series of vague, conclusory and overbroad attempts to micromanage the trial record before it is made. TTC's motion in *limine* issues/topics are largely vague statements seeking to exclude anything Toro knows will hurt its case (regardless of relevance), speculative arguments, or entire categories of evidence, and there is virtually no law supporting such impractical and overbroad use of an order in limine. Over 20

of Toro's 39 *limine* issues have absolutely no support cited for them and there is scant reference to specific, narrow evidentiary matters. A *limine* order is not there to prohibit evidence one party simply doesn't like or that one party believes is prejudicial (because it is unfavorable to that party), it is to prohibit mention of evidence that would likely be inadmissible for any purpose.

## II.     PLAINTIFFS' RESPONSES TO MOTION IN *LIMINE* ISSUES 1-39

1. **REFERENCE TO RECALL NOTICES:** That TTC has ever sent any recall notices for the lawnmower model at issue. This mower model has not been recalled, and the implication made by any reference to recall notices would be misleading and prejudicial. Regardless, such information is inadmissible under Federal Rule of Evidence 407.

Plaintiffs resist Issue #1 to the extent it attempts to restrict Plaintiffs from pressing their obvious failure to warn of after acquired knowledge and/or criticizing TTC for failing to institute a retrofit campaign for consumer mowers (such as it did for commercial mowers) in order to fit them with ROPS to mitigate or prevent serious injury in case of a tip over, roll over, or tip backwards. Such evidence is extremely relevant to TTC's knowledge of the hazard and refusal to send out a warning to owners of the Timecutter ZRT's and offer a safer alternative, like a ROPS, for just the kind of accident (fall and tip over), which crushed Rebekah Hillman's legs, and Toro's abject failure to recognize injury data and make the mower safer. Toro intentionally conflates subsequent, remedial measures with the duty to warn and take measures to prevent injury to owners of mowers which are unreasonably dangerous after acquiring actual knowledge of their dangerous propensities. It is undisputed that Toro knew ROPS were effective (on all size ZRT's) at preventing or mitigating risk when any ZRT tipped over or fell in any direction. (See Dkt. 161, p.3, para.71 – Exhibit 45 Quote)

### Failure to Warn-ROPS Campaign vs. Remedial Measures

The mower which injured Rebekah Hillman and her family, was manufactured in 2013 and sold new to the plaintiffs in 2014.

In February of 2010, a Toro Corporate Safety PowerPoint Presentation (See Dkt. 161, p.3, para.72 - Exhibit 46) listed the following "Potential Future Product Liability Cases" and "Ongoing "Safer Alternative Designs"":

> Slide # 2. **Potential Future Product Liability Cases**
> -Tens of thousands of ZRTs without ROPS are still in the field.
> **-Consumer ZTRs**
> -Foldable ROPS (Plaintiffs' expert criticized foldable ROPS as "an easily bypassable safety feature".)
> **-Lack of Braking**
> **-Lack of Steering Control** (Emphasis mine, via bold)
>
> Slide #3. **Ongoing "Safer Alternative Design" Considerations.**
> Standard ROPS on all ZTRs.
> Steerable caster wheels.
> Ted brakes/Caster brakes.
> Emergency brakes.

(These recommendations support Plaintiffs' experts Berry and Bilek.)

By April of 2015, James Fear, of Toro's Product Safety and Product Liability defense team, said:

> *"For homeowners, Timecutter has surpassed the Lazer Z as the most frequent accident machine. 38 rollover incidents have occurred on ZRT's prior to October 9, 2014. 33 of the 38 incidents involved homeowner operators. 14 were slope/slide related, 7 drop offs, 5 trailer/ramp incidents, 9 tip backwards and 3 we do not have enough information to draw a conclusion. 16 customers sustained minor injuries such as cuts or bruises or no injury, 10 customers required hospitalization-stitches or broken bones, 9 customers sustained serious-broken back, neck injury, paralysis and 3 were fatal incidents."*

(See Dkt. 161, p.5, para.77 – Exhibit 51)

It would then be five years between the time Toro's product safety people heard, spoke and read these words; and Rebekah Hillman lost her leg; yet, in those five years, Toro refused to:

a. Mail any kind of notice, warning, amended Owner's Manual or any cautionary warning to the Hillmans who had paid $3,000 for their Toro ZRT 50-inch Timecutter mower.

b. Institute a recall campaign to warn their customers (like the Hillmans) and recommend equipping the mowers in the field with ROPS and seatbelts. (as Toro did with larger commercial mowers)

c. Send an updated or improved Owner's Manual with warnings about a) the lack of control and braking when a motor fails or when using the bypass pins to tow, and b) the safest way to tow the machine has to be to keep it blocked or attached with a tow strap until you can be sure you have steering and braking ability. (and you may have to take it to a Toro dealer to recover that ability if a motor has failed)

Fortunately, the recent case *Johnson v. Edward Orton, Jr. Ceramic Foundation*, 71 F. 4th, 601, (U.S. Ct of Appeals 7th Circuit 2023) contains a comprehensive discussion of the duty of a manufacturer to warn and/or take measures to alleviate the hazard of a product when it becomes aware that it has dangerous propensities which can and should be mitigated or avoided by warning and/or changing the design of the product.

A manufacturer has a nondelegable duty to design a reasonably safe product." *Jablonski v. Ford Motor Co.*, 353 Ill.Dec. 327, 955 N.E.2d 1138, 1154 (Ill. 2011) (citing *Calles v. Scripto-Tokai Corp.*, 224 Ill.2d 247, 309 Ill.Dec. 383, 864 N.E.2d 249, 264 (2007)). In a negligent-design case, the key question is "whether the manufacturer exercised reasonable care in designing the product," which comes down to "whether in the exercise of ordinary care the manufacturer should have foreseen that the design would be hazardous to someone." *Id.* (quoting *Calles*, 309 Ill.Dec. 383, 864 N.E.2d at 264). "To show that the harm was foreseeable, the plaintiff must show that 'the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture' of the product." *Id.* (quoting *Calles*, 309 Ill.Dec. 383, 864 N.E.2d at 264) (citing *Sobczak v. General Motors Corp.*, 373 Ill.App.3d 910, 312 Ill.Dec. 682, 871 N.E.2d 82, 94 (2007)) *Johnson, id*, at 610.

The district court's consideration of the degree of knowledge required of Orton may well have been impeded by the paucity of *negligence* cases. "Illinois cases considering a cause of action for defective products liability sounding in negligence rather than strict liability are rare." *Blue v. Env't Eng'g, Inc.*, 215 Ill.2d 78, 293 Ill.Dec. 630, 828 N.E.2d 1128, 1141 (2005) (plurality opinion). But this paucity of negligence cases should not be an impediment.

Illinois courts have made clear that whether a failure to warn claim is brought under a negligence or strict liability theory, the knowledge requirement is the same. *See McKinney*, 430 Ill.Dec. 940, 127 N.E.3d at 187. In both cases, the animating policy concern is to ensure that "where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm ... the

manufacturer, possessed of such knowledge," must warn of the danger. *Sollami*, 265 Ill.Dec. 177, 772 N.E.2d at 219. *Johnson, id*, at 614

Fed. R. Evid. 407 deals with subsequent remedial measures and prohibits the admission of such evidence to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. Here, Toro clearly had actual knowledge of the design flaws (lack of independent brake, lack of ROPS, inadequate warnings and instructions and dangerous bypass procedure) that were likely liability concerns and which would hurt people before the accident mower was built. This knowledge was only reinforced in 2015 when what they already knew was reinforced by actual accident data analyzed by one of their own safety executives. This is not a case of remedial measures; rather, it is a case of a lack of any measurements to address known risks.

Even with actual remedial measures, *Johnson, id*, made it clear that a manufacturer has an ongoing and continuous duty to warn and, if possible, to change the product to avoid foreseeable injury.

Even with remedial measures, a court may admit this evidence for another purpose, such as impeachment or proving ownership, control, or the feasibility of precautionary measures. As set forth in *Ross v. Black & Decker, Inc.*, there are certainly instances in which post-manufacture safety standards were relevant and found the relevant standards that were promulgated subsequent to manufacture went to the weight of the evidence and not admissibility. 977 F.2d 1178, 1184 (7th Cir. 1992)

TTC does not even bother analyzing Rule 407 to discuss whether they are discussing retrofit campaigns that would have happened prior to the accident at issue or after, as they knew about the defects prior to the accident, so it clear Rule 407 is inapplicable. This is a consistent problem with TTC's motions in *limine* where they don't state a specific evidentiary issue, but more of an idea,

or they seek enforcement of the Federal Rules of Evidence or other federal law without specificity or in any context of the evidence already in the record. A motion in *limine* is not required to enforce the rules of evidence. As set forth by Judge Vratil, a federal judge from Kansas City, who dealt with a motion in *limine* topic regarding "reptile" arguments as follows:

> "The Court has a lengthy code of evidentiary rules, civil procedures and ethical codes of conduct for counsel. If plaintiff's counsel fails to comply with those rules, defendants will make contemporaneous objections and the Court will sustain them—not because counsel's conduct is reptilian but because it violates the foregoing rules and codes of conduct."

(See attached **Exhibit 1** – Memorandum and Order of U.S. District Judge Kathryn H. Vratil, in *Kieffaber v. Ethicon, Inc. and Johnson & Johnson*) Plaintiffs agree with Judge Vratil and believe broad, vague orders in *limine* are not appropriate. As such, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #1.

**2. TTC'S PRODUCTS DEFECTIVELY MANUFACTURED:** That the mower at issue was defectively manufactured (Plaintiffs only plead claims are for design defect and failure to warn). To recover for a manufacturing defect, a plaintiff must show that a finished product contains a manufacturing defect when it departs from its intended design even though all possible care was exercised in the preparation and marketing of the product. Restatement (Third) of Torts: Products Liability § 2, at 14 (1998). Plaintiffs have not plead such a claim, have not disclosed such evidence and have not designated anyone to testify about a manufacturing defect.

Plaintiffs resist Issue #2 as it is unnecessary. Both parties in this case are governed by the Federal Rules of Civil Procedure, the Court's Scheduling Order, and the Federal Rules of Evidence. Federal Rules of Evidence 401-403 explain that relevant evidence is admissible and, generally, irrelevant evidence is not. This is no different than requesting a ruling barring Plaintiffs from alleging employment discrimination. There has been no claim for a manufacturing defect and, so far, as Plaintiffs are aware, no evidence of such. The mower was built as designed –

unreasonably dangerous. Plaintiffs have no plans of attempting to introduce evidence or make arguments of such, much as Plaintiffs have no intention of alleging breach of contract actions, etc.

Asking the Court to enter an order in *limine* to prohibit mention of non-issues is not just a gross misuse of the *limine* procedure, but such a request wastes the Court's time and resources considering matters which have place in or no bearing on the case. If such a tradition becomes the norm, the number and subject matter of future motions in *limine* threaten to increase exponentially while counsel try to "outlaw" every possible uncomfortable event during the trial by requiring a side-bar or hearing outside the presence of the jury while the proponent is forced to lay a foundation for even noncontroversial evidence, or evidence which is clearly admissible given the current state of the record.

Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #2.

3. **COMMITMENT OF RESOURCES:** The amount of money TTC has spent or incurred for attorneys' fees, expert witness fees, or expenses to defend this case or the amount of money Plaintiffs have spent or incurred for attorneys' fees, expert witness fees, or expenses to prosecute this case.

This issue borders on being frivolous. Plaintiffs resist Issue #3 in part. Plaintiffs have no idea what sums of money and have no intention to argue regarding what TTC's counsel has been paid. Similarly, TTC should be restricted from making any arguments regarding Plaintiffs' counsel being paid contingency fees, etc. This argument is improper and a *limine* order is appropriate for both parties on attorneys' fees. However, it is completely appropriate to discuss expert fees, just as TTC will undoubtedly question Plaintiffs' experts on what they have been paid. An expert's income and fees go to bias as well as credibility, and is entirely relevant pursuant to F.R.E. 401-403. Plaintiffs' counsel has never been a part of a trial in *any* state where the parties have been prohibited from questioning experts about their fees and expenses. As such, Plaintiffs request the

Court GRANT TTC's Motion in *Limine* Issue #3 as to compensation of attorneys, but DENY it in regard to the balance of Issue #3.

4. **SIZE OF LAW FIRMS:** References to the number of attorneys or legal assistants or the location of TTC's attorneys' law firms or Plaintiffs' attorneys' law firms.

Plaintiffs resist Issue #4 as it is overbroad, impractical, and unnecessary. Issue #4 does not deal with anything which is unfairly prejudicial or that would automatically be excluded under all situations, particularly *voir dire*. What is inappropriate would be to make David vs. Goliath arguments (ex. Plaintiffs' firm has 3 attorneys and they are going up against TTC which hired firms with hundreds of attorneys), which Plaintiffs have no intention on making, especially during *voir dire*. However, TTC's lawyers' firms have a presence in Chicago and, particularly, Kilpatrick Townsend advertises a global presence with hundreds of attorneys working for them.

Obviously, Plaintiffs will not list the attorneys nor reference their global presence. However, it is entirely appropriate to question generally about the firms to see if either firm (or its predecessor) is known to the jury pool and, unquestionably, whether any attorney who has worked on this case, whether withdrawn or not, is known to any members of the potential jury. As such, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #4.

5. **SIDEBAR PORTIONS OF DEPOSITIONS:** Counsel and witnesses shall not mention or attempt to read to the Jury any non-relevant exchanges between counsel for Plaintiffs and counsel for TTC during depositions or in other discovery responses.

Issue #5 is void for vagueness and lack of specificity concerning what is being restricted. Plaintiffs resist Issue #5, also, as it is unnecessary. Fed. R. Civ. P. 32 is the governing rule for use of depositions in court proceedings. Plaintiffs plan on abiding by Rule 32, which has inherent restrictions against improper use of depositions and guidelines as to proper use of depositions. If any video depositions are to be played during trial (such as treating physicians), then, much as any

other trial, the parties will designate portions of the depositions to be read to the jury and those matters will be settled prior to the depositions being played or read.

It is also unclear what TTC means by barring "exchanges between counsel" and/or "in other discovery responses". As such, this is not a proper subject for a motion in *limine*. If TTC has specific evidentiary concerns, they are to raise those for a preliminary determination of admissibility but addressing vague subjects is not appropriate for a *limine* order.  Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #5.

**6.  QUESTIONS TO DEFENSE COUNSEL:** Plaintiffs' counsel shall not pose any questions to TTC's counsel in front of the Jury.

Plaintiffs resist Issue #6 as it is unnecessary and unpractical. There is also absolutely no authority cited by TTC to support this strange request. Plaintiffs' counsel (much like TTC's counsel) are experienced trial lawyers who have tried a number of product liability cases in both state and federal courts around the country. They understand the appropriate protocol of asking witnesses questions during examinations and addressing the Court, not opposing counsel, unless the question is a practical and legitimate inquiry, such as the location of an exhibit or some other normal inquiry. During trial, as Plaintiffs' have found, questions are often asked of opposing counsel regarding borrowing demonstrative exhibits, etc. This is a trial, and Plaintiffs' counsel certainly intend on following proper protocol regarding trial proceedings and witness questioning. This is not a specific evidentiary issue and Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #6.

**7.  USE OF SUPERSEDED INTERROGATORY ANSWERS OR DISCOVERY RESPONSES:** Counsel and witnesses shall not make any reference to or use of superseded interrogatory answers or other discovery responses as direct evidence, except those that are to be used for impeachment.

Plaintiffs resist Issue #7 as it is vague, overbroad, and contrary to the law. When a party answers an interrogatory or discovery response, it is supposed to be their answer under oath at that time. It is unknown how trial will develop and the timing of discovery may very well be relevant if Defendant raises such an issue. For example, if Defendant implies that they were responsive to the rules of discovery, rather than engaging in rolling production in violation of Court orders and federal rules, this would certainly open the door. Similarly, such answers may be used for impeachment and the fact multiple answers were given does not erase earlier answers from the record. Once again, it is unknown how trial will develop and both parties will abide by the Federal Rules of Civil Procedure and the Local Rules in presenting evidence. Objections will also be appropriately made when exhibits are exchanged, etc. As such, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #7.

8. **INFLAMMATORY PHOTOGRAPHS AND VIDEOTAPES:** Plaintiffs' counsel shall not publish or inform the Jury as to the content of any inflammatory photographs or videotapes. The probative value, if any, of such photographs or videotapes is far outweighed by the prejudice, horror and sympathy-evoking effect such photographs or videotapes would have upon the Jury. FED. R. EVID. 403.

How are the Court and Plaintiffs' counsel supposed to decide, before the trial, which, if any, of Plaintiffs' proposed photographs are so horrible or sympathy invoking that they may not even be offered by the plaintiffs without making a finding under Rule 403? Apparently, TTC thinks the Court has time to review all of Plaintiffs' proposed damage, photographic exhibits before trial and make a ruling on dozens of pictures, without the context of testimony or evidence. Plaintiffs resist Issue #8 as fatally vague, impractical, overbroad, and unnecessary. The parties must exchange exhibits prior to trial. If and when the parties identify any photographs or videotapes, then TTC may certainly object based on the federal rules of evidence and the Court will make a ruling based on the applicable law when the exhibit is offered. If the exhibit has been objected to in the Pretrial

Order, counsel will need to identify the exhibit and offer the specific exhibit when TTC can renew

or withdraw the exhibit. Such a blanket vague and overbroad statement makes Issue #8 unpractical

and well beyond the scope of any appropriate *limine* issue. Simply because a photograph depicts

evidence of the severity of injury does not make it inadmissible *per se*. As set forth above, a *limine*

order should prohibit evidence that is inadmissible under *any* circumstances and this is a high

burden. Notably, TTC did not even attach any photographs nor did they point out what such

photographs might even depict. As such, Plaintiffs request the Court DENY TTC's Motion in

*Limine* Issue #8.

9. **DEFACING EXHIBITS:** Plaintiffs' counsel shall not alter, modify, add to, or write on the
   exhibits, evidence, or demonstrative aids introduced or used by TTC. The parties agree that a
   copy of an exhibit may be marked on. (Example: A copy of an exhibit may be made and
   presented to a witness to mark, modify, etc., just so that the original exhibit is not marked.)

    Plaintiffs resist Issue #9 as unnecessary, overbroad, and impractical. Marking on an exhibit or

copy of an exhibit is not so unfairly prejudicial as to automatically exclude the conduct by a *limine*

order. If such an issue even comes up, it can be dealt with at trial. As read, this Issue would even

preclude Plaintiffs from marking their own exhibit, if necessary, if the exhibit is later used by TTC.

In all of Plaintiffs' counsel's trials, they do not recall ever running into an issue of "defacing

exhibits" and Plaintiffs' counsel is confident, if an exhibit needs to be marked upon by a witness,

the parties will be able to ensure the record is preserved. As TTC's Issue #9 is confusing, vague,

and wholly without legal support, Plaintiffs request the Court DENY TTC's Motion in *Limine*

Issue #9.

10. **POST-TRIAL MATTERS:** Parties and their counsel shall not mention to the Jury that the
    judge or an appellate court may have a right, duty or ability to alter or change the ultimate
    verdict of the Jury in this cause or to review the verdict in any manner.

    Plaintiffs resist Issue #10 as overbroad, impractical, and unnecessary. It is unclear what this

would even mean, as presented by TTC. Furthermore, the Illinois Pattern Jury Instructions

contemplate an instruction where, if necessary, a judge instruct a party *not* to take into account insurance or potential reductions of medical expense awards, which will be addressed by the court following the proceedings. Once again, the parties are governed by federal law in this matter and a motion *in limine* should encompass anticipated evidentiary issues applicable to this case. This is just another broad, confusing request of the Court to enforce existing rules and protocol in response to an unknown potential situation. Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #10.

11. **TTC'S SWORN DISCOVERY RESPONSES FROM OTHER CASES:** Plaintiffs' counsel may use TTC's sworn responses to written discovery from other cases only for purposes of impeachment; otherwise, they may not be used at trial. TTC' sworn responses to written discovery are irrelevant and would create a substantial danger of undue prejudice to TTC and mislead the Jury**.** FED. R. EVID. 401, 402, 403.

Plaintiffs object to Issue #11 as contrary to the law. TTC has made a number of sworn responses to discovery, both written and oral, in a number of ZRT injury cases that are just plain false. Sworn responses are appropriate as foundation for both expert testimony and impeachment of TTC. Many of TTC's sworn responses in other cases are impeached by their own documents and testimony in this case and vice versa. Similarly, when it is time to exchange exhibits, the parties may then make objections based upon Fed. R. Evid. 401-403 or other rules, and they may be addressed by the Court at the time such materials are offered.  Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #11.

12. **DEFECTIVE/DANGEROUS PRODUCT ALLEGATIONS:** Plaintiffs' counsel shall not mention, imply or suggest that any of TTC's products have been declared defective or unreasonably dangerous by any court, by any Jury, or by any governmental agency or body. FED. R. EVID. 402, 802.

Plaintiffs object to Issue #12 as it is overbroad, vague, and unnecessary. TTC's products are not governed by any official governmental agency or body. Plaintiffs are unaware of any verdict by a jury finding the subject ZRT is defective, but there has been litigation against TTC for ZRTs

before. Should such a *limine* order be entered, it is of paramount importance the Court also extend

the order to prohibit TTC from saying their products have complied with any governmental agency

or body, or that by settling litigation against them means their products have been found *not* to be

defective. Regardless, such a broad *limine* order is too confusing and Plaintiffs request the Court

DENY TTC's Motion in *Limine* Issue #12.

**13. DAMAGES BASED ON PASSION:** Plaintiffs' counsel shall not use phrases such as "send TTC a message," "set the safety standard in Illinois" or any other such language which is calculated to have the Jury assess the potential damages (punitive or otherwise) based upon an emotional response and not upon the evidence. Passion and prejudice are improper motives upon which to base an award of damages. Fed. R. Evid. 403; *See Bruce v. City of Chicago*, No. 09C4837, 2011 WL 3471074, at *6 (N.D. Ill. July 29, 2011) (granting defendant's motion in limine barring plaintiff from arguing that the jury should "send a message" to defendant).

Plaintiffs object to TTC's Issue #13 as vague, overbroad, overreaching, and clearly contrary to

law.

Conspicuously absent from TTC's motion, is an accurate and honest discussion of the holding

in *Bruce v. City of Chicago*, WL 3471074 at 6 (N.D Illinois 2011). Specifically in the context of

that suit, which sought only compensatory damages for the wrongful conduct of Chicago police

officers, the District Court differentiated the defendants when actually allowing the "send a

message" argument in the case. The Court specifically ruled that the plaintiff's use of a "send a

message" argument **could be employed against the officers who were defendants to "deter"**

**officers from future misconduct.** *Id,* at page 6.  (Emphasis mine)

> "Given that compensatory damages are limited to actual losses, this Court agrees that Plaintiff's argument that the jury should "send a message" is a punitive damages argument. Nevertheless, the Court is not persuaded that Plaintiff should not be able to argue that he is attempting to deter Defendant officers and other Chicago police officers from future misconduct."

The court only restricted the "send a message" argument against the City of Chicago because the court found, in the context of that suit, that such a message would imply "punitive damages" and none were sought against the City of Chicago.

Given the egregious conduct of TTC in ignoring their own safety data for years, while repeated loss of control/tip over injuries and deaths occurred, Plaintiffs' counsel should not be restricted from using a "send a message" type argument as long as it is presented within the confines of the evidence and jury instructions presented, and does not imply adding punitive damages to a compensatory award if none are requested at the time of closing argument. In short, based on the *Bruce, id* court finding, Plaintiffs should be allowed to argue that a full and fair compensatory award will send a message to make Toro accountable and to deter Toro's careless and dangerous conduct in the future.

Finally, TTC's description of the requested order in *limine* is yet another conclusory request that is so vague, general, and over-reaching, that it should be denied in its entirety for failing to clearly a) meet the standard of specificity required, and b) demonstrate a high likelihood of inadmissibility or unfair prejudice.

Accordingly, Plaintiffs ask the Court to DENY issue #13 in its entirety.

**14. REFERENCES TO OTHER ACCIDENTS:** Counsel and witnesses shall not reference or mention any other accidents involving any mower manufactured by TTC or any of its divisions or subsidiaries, which are not a "substantially similar circumstance" or do not otherwise meet the requirements of admissibility. *See Wallis v. Townsend Vision, Inc.*, 648 F.Supp.2d. 1075, 1082 (7th Cir. 2009) (citing *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988)).

Plaintiffs object as this is vague, impractical, and contrary to the law. First, TTC does not bother stating what incidents or evidence they are seeking to exclude. For example, there is the Melrose Memo (attached as **Exhibit 2**) which discloses that the CEO of TTC at the time, Ken Melrose, was very concerned about the number of deaths on TTC ZRT mowers in 2002, long

before the accident ZRT was made (in 2013). While unquestionably relevant and admissible, would TTC's Issue #14 seek to improperly exclude this evidence? (Toro responded to this memo with a ROPS retrofit campaign, but only for commercial models.)

Similarly, TTC has not bothered to actually analyze OSIs under Illinois law for the Court. One of the seminal cases on OSIs in the 7th Circuit is *Ross v. Black & Decker, Inc*., 977 F.2d 1178 (7th Cir. 1992). *Ross* found that evidence of other accidents is relevant to show: (1) notice to defendant of danger; (2) the existence of the danger; and (3) to show the cause of the accident. *Id.,* at 1185. Two instances need not be "identical" to warrant admissibility. *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 3614642, at *7–8 (N.D. Ill. Aug. 21, 2012) The particular defect or danger alleged will define the degree of commonality that there must be among accidents in order for them to be considered substantially similar. *Id. Wielgus* specifically notes "substantial similarity in this context does not require an exact replica of the circumstances of Wielgus's accident, <u>nor of the product at issue.</u>" *Id.*

The 7th Circuit has also addressed that the requirement of showing substantial similarity is relaxed or "less strict when the evidence is sought to be admitted to show notice". *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1988) This runs parallel with the *Weilgus* test that discussed the admission of a national database covering injuries sustained in table saws was relevant to show notice of the danger of table saws. *Wielgus, Inc.*, 2012 WL 3614642, at *7–8. TTC has not even bothered to state which OSIs they are trying to keep out and the basis for exclusion. Under the law this makes a considerable difference. As TTC has no basis for its request, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #14.

**15. REFERENCES TO OTHER ACCIDENTS INVOLVING OTHER MOWER BRANDS OR MODELS:** Counsel and witnesses shall not reference or mention any other accidents involving other unrelated mower brands or models. Such references will confuse the issues for the jury. Fed. R. Evid. 403.

Plaintiffs resist Issue #15 and ask the Court to DENY the motion in its entirety for a variety of factual and legal reasons discussed herein.

Again, the Court is faced with a request that is vague, conclusory, and ill-defined. This is enough to deny the motion out of hand. However, Plaintiffs will explore other compelling reasons why this motion by Toro is without merit.

With respect to all models of Toro ZRTs without an independent brake and no ROPS, under the applicable law (see discussion of Issue #14, above) substantial similarity for notice purposes in this case is any accident in which a ZRT made by Toro lost control and ended up rolling or tipping over in any direction, as the loss of control provides notice of the need for an independent brake and the lack of ROPS, coupled with injury, provides notice of the need for ROPS.

Notably, Toro fails to identify any design characteristics of its different ZRT models which would support the conclusion that each model has different propensity to injure when, during a loss of control, the mower rolls over, tips over or falls off a retaining wall or into a pond. Toro 30(b)(6) representative Carol Drutowski admitted that all models of Toro ZRTs shared the same design features that affect handling and stability such as layout, hydrostatic control through control levers, rear wheel power and steering, rear engine mount, and front wheels that caster and do not steer. With respect to the ROPS issue, she finally admitted that gravity affects all Toro ZRTs the same. (See Dkt. 159, p.44, quotations from Exhibit 12) They are just lawnmowers, not rocket control modules. They cut grass and they are all built, controlled, lose control and roll or tip over and injure people pretty much the same way. So, Toro cannot distinguish between the injury propensity of one model lacking an independent brake and ROPS from another similarly equipped. Perhaps a good analogy would be a firearm that accidentally discharges because of a defective safety/triggering mechanism that is used in various caliber of guns. It does not matter that the user

ends up getting shot with a smaller caliber weapon or a larger caliber bullet. Both can kill and maim and both give notice that the trigger/safety design is unreasonably dangerous.

Plaintiffs also resist this MIL #15, as Toro itself has made accidents of other mowers relevant and admissible through their retained expert, Mr. Toomey, who intends to opine and argue that Toro's Timecutter ZRT mowers are reasonably safe because Toomey has identified dozens of competitors' "consumer grade" ZRT mowers that have the same defects as the Timecutter. (Lack of an independent service brake, and lack of roll, tip and fall protection with a ROPS) (See **Exhibit 3** – Toomey Report)

Plaintiffs also resist this issue and object as this is vague and contrary to the law. Plaintiffs incorporate their response to Issue #14, above.  As set forth above, the admission of OSIs can vary greatly as to the purpose of admission and the requirements of substantial similarity as a result. Incidents involving other models, etc. are *unquestionably* relevant in certain circumstances. However, TTC hasn't bothered stating what exactly they are attempting to keep out, etc. Such a shotgun approach to a motion in *limine* is not appropriate and Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #15.

**16. PRETRIAL MATTERS:** Counsel and witnesses shall not mention any action by the Court in ruling upon any matter prior to the actual trial of this case or that the pleadings or other matters filed by either party were in a particular form or of a particular nature.

Plaintiffs object to Issue #16 as unnecessary, overbroad and confusing. It is not even clear what TTC is requesting. As stated above, an overbroad or vague *limine* order is the same as having no *limine* order at all. What evidence or argument is TTC is seeking to keep out here?  Does this mean Plaintiffs are unable to argue TTC denied the claims against them and has taken a certain position during litigation? It simply isn't clear and, once again, is a shotgun approach at a motion in *limine.* Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #16.

17. **JURY VERDICTS, COURT AWARDS, OR SETTLEMENT IN ANY OTHER LAWSUIT:** Counsel and witnesses shall not mention any jury verdicts, court awards, or settlements in any other lawsuit. Such references will confuse the issues for the jury and are substantially more prejudicial than probative. Fed. R. Evid. 403.

Plaintiffs resist Issue #17 with regard to other lawsuits, but does not resist the issues of jury verdicts, or court awards, without further order of the Court, after discussion out of the presence of the jury.

The credibility of Toro's retained expert, Lisa Gwin DO, is at issue in this case, as Dr. Gwin testifies very frequently, and virtually exclusively, for defendants in product liability suits nationwide. Although she claims to be a biomechanics expert, she bases her opinions on working in the emergency rooms of hospitals as a visiting doctor (locum tenens).

Dr. Gwin is a partner or shareholder in BRC and makes more money the more money she bills. (Although she claims not to know what share of her $550/hour she gets in her paycheck, or the basis for her check.) Toro hired the same defense engineering firm, Biodynamics Research Corporation, in *McCall v. Toro* and other cases of injury due to overturn without a ROPS. Lisa Gwin, DO provided Toro with the same exact defense testimony in *McCall*, as in this case, that a ROPS would not have saved Mr. McCall from serious injury, and would have resulted in more serious injuries. She has never done any biomechanical testing with ROPS, but uses exemplars and illustrations as a basis for her opinion.

Moreover, Toro is expected (unless the Court orders otherwise) to claim that this incident was so unusual as to be a one-in- a-million, completely unpredictable injury. Plaintiffs are entitled to cross examine Dr. Gwin on how much Toro has paid BRC for Gwin's work in this and other litigation, in which she testified to demonstrate potential bias and lack of objectivity when forming opinions. Depending upon what TTC asks Plaintiffs' experts and Toro's experts, Plaintiffs should

be free to ask about other cases with similar injuries, which may have been avoided by a ROPS or a brake that worked full-time, independent of the bypass pins.

**18. PRIVILEGE:** Counsel and witnesses shall not mention any parties' asserted claims of privilege during discovery or a party's communications with their respective attorneys. Fed. R. Evid. 503.

Plaintiffs resist this MIL in its entirety, and object as overbroad, vague, and contrary to the law. Toro has placed its credibility and the credibility of its employees, and retained experts, at issue in this case. Toro has abused the Protective Order and the attorney-client privilege by claiming the privilege when it should know none existed. (As demonstrated by the record in this case.) Toro has consistently tried to hide the truth about its ZRT mowers, what it knew and when it became aware of some very damning evidence. With proper foundation and questions, the jury is entitled to know how TTC wanted nobody to view the documents which prove liability on the part of the mower manufacturer.

Plaintiffs do not object to a *limine* order regarding the propriety of asking witnesses about questions with TTC's lawyers, Mr. Florence and Mr. Grace. However, TTC has placed their evasive and abusive claims of privilege front and center in this lawsuit and chose to stamp over 100,000 documents, including their retained experts' documents, with "confidential", and all their Safety Committee Notes with Confidential-Attorney Client privilege. It is impossible to question witnesses in this case with Toro documents without showing the jury that Toro wants everything under wraps, even if the document has no commercial or pecuniary value, except to avoid embarrassment for ignoring the lack of safety of its ZRTs.

Finally, there is no Fed. R. Evid. 503. Fed. R. Evid. 502 deals with attorney-client privilege and work product. There is nothing in Rule 502 that even remotely suggests TTC is entitled to a

broad *limine* order prohibiting Plaintiffs from mentioning asserted claims of privilege. Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #18.

19. **CRITICISM OF OPPOSING COUNSEL:** Plaintiffs' counsel shall refrain from any personal criticisms of opposing counsel.

    Note: Toro's counsel wants an order covering <u>only</u> Plaintiffs' counsel. (emphasis mine)

Plaintiffs resist TTC's MIL #19 because, again, the requested order/statement is too vague and broad to know for sure what is prohibited. More importantly, there is an existing body of law in this jurisdiction which governs appropriate argument, comment and criticism of evidence, and Plaintiffs believe the Court will certainly enforce its own rules of behavior in the courtroom.

Plaintiffs' counsel has never been sanctioned, nor had a decision reversed, due to inappropriate remarks towards opposing counsel during trial and does not intend to incur the wrath of the trial court or an appellate court by starting now.

20. **PAST CRIMINAL CONVICTIONS:** Counsel and witnesses shall not mention any witness's past criminal records or convictions.

Plaintiffs do not resist Issue #20 provided it is reciprocal and there is an exception for retained experts. Plaintiffs agree that no witness should be questioned about prior criminal convictions, except for retained experts.

21. **INSURANCE:** That TTC is or is not protected, in whole or in part, by liability insurance, or all or any part of the costs of defense, or of any resulting judgment, are or will be paid by an insurance company, or any other matter suggesting an involvement of any insurance company with the defense of the case.

Plaintiffs do not resist Issue #21. Such an issue is redundant for a *limine* ruling, as it is not admissible regardless under F.R.E. 411, but Plaintiffs do not object to a *limine* ruling on the subject.

22. **SETTLEMENT NEGOTIATIONS OR MEDIATION:** Any negotiations, offers, or demands with respect to any attempted settlement or mediation.

Plaintiffs do not resist Issue #22. Such an issue is redundant for a *limine* ruling, as it is already covered by Fed. R. Evid. 408, but Plaintiffs do not object regardless.

23. **DISCOVERY DISPUTES:** Any reference to discovery disputes that arose during the preparation of this case, or any case, for trial, any position taken by any party on such a dispute, or to the Court's rulings on any discovery dispute. Such disputes or rulings are irrelevant and confusing, and would create a substantial danger of undue prejudice to the parties and mislead the Jury. FED. R. EVID. 401, 402, 403.

Plaintiffs' do not resist Issue #23.

24. **PRIOR SUITS OR CLAIMS:** That any party has been a party to any prior lawsuit, or has asserted any prior claim or defense, or that any prior claim or defense has been asserted by or against a party; provided that this clause does not prohibit inquiry about a prior injury that may have been the subject of a claim, as distinguished from the claim, suit, or settlement, if the nature of injuries claimed in the present suit make prior injuries relevant.

Plaintiffs object to Issue #24 as it is prolix, confusing, and unintelligible as presented. It is also vague, unworkable, and contrary to the law. First, it is confusing as to what exactly TTC is referring to, as they ask for blanket prohibition (regarding any lawsuit and any claim or defense), and then carve out confusing exceptions based on some relevancy standard, etc. The opinions given by experts in past and current cases are certainly admissible and, in order to discuss those opinions, some degree of testimony regarding that case must be discussed in order to lay foundation. (Like the previous cases where TTC was sued for ZRT rollovers, tip overs or falls and BRC provided defense testimony) This is a hybrid *limine* order that in part seeks to restrict OSIs from a different angle. This is wholly inappropriate and doesn't specify which prior suits and claims are sought to be kept our, or what that exactly looks like as it pertains to the Melrose Memo, etc. This *limine* topic has no legal authority to support it. The Court should overrule it in its entirety and wait for the actual issue to arise in the context of testimony at trial.

Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #24.

**25. TESTIMONY OF ABSENT WITNESS:** Any statement or suggestion as to the probable testimony of any witness or alleged witness who is unavailable to testify, or whom the party suggesting such testimony does not, in good faith, expect to testify in the trial. If the party is expected to testify by deposition, this provision does not apply to testimony contained in the deposition expected to be offered.

Plaintiffs object to Issue #25 as it is prolix, confusing, unnecessary and contrary to law. Toro, again, appears to attempt to micromanage and "script" the testimony and argument as it sees fit – not as allowed by the rules of litigation in this court. This is not a proper scope or purpose of a motion in *limine*.

Plaintiffs have struggled for almost three years to get someone, anyone, from Toro to explain why the Timecutter has no independent brake, and why none of the plaintiffs' experts suggested, alternative designs were either not considered or rejected. Plaintiffs asked "Who made these decisions and why?".  Nobody provided a straight answer – not in answers to interrogatories, or in 30(b)(6) depositions. Instead, Toro sent half prepared, ill-informed, low-level corporate employees to give the same, evasive, false narrative concocted by in house and retained defense counsel. Only when Toro was finally forced to produce documents reflecting some, but certainly not all, of its inner workings, did the truth even begin to appear.

Plaintiffs are entitled to argue that nobody with real corporate knowledge and authority will testify in this case, nobody will take any responsibility for the injuries and deaths which have occurred to date, which Toro knew were coming in 2002, 2010 and 2015, and which continue today.

In the event that Plaintiffs' counsel or defense counsel would be so foolish to try and tell the jury what someone would say if they had appeared to testify, then Plaintiffs' counsel is pretty certain such argument would draw an immediate objection which would be sustained by the Court, and the Court would direct the jury to ignore the remark. However, that is far from the legitimate

inference a jury could make if a fundamental piece of the litigant's case were not supported by competent witnesses who worked for Toro and took responsibility for what it has done in the past 23 years manufacturing and selling ZRT mowers.

Plaintiffs' counsel has every right to ask why the CEO of Toro, or a vice president in charge of the Timecutter program, has not testified about the justifications for no independent brake, no useful instructions on safe towing or movement of the machine and no ROPS, despite almost a hundred known loss of control incidents with ZRTs (including Timecutters) that ended in serious injury or death.

Obviously, hearsay is not admissible unless there are certain exceptions as set forth in Fed. R. Evid. 801-807. However, Plaintiffs have no idea what TTC is referring to here, as to whether this has happened in a deposition they are concerned about, etc.  Any *limine* order on this subject would undoubtedly be vague and confusing and, as such, would be inappropriate. Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #25.

**26. FAILURE TO CALL WITNESS:** Any reference to the failure of an opposing party to call any witness.

Plaintiffs object to Issue #26 as it is overbroad and seeks to micromanage the trial. Similar to Issue #25, it is unclear as to what exactly is being sought here. At this point, Plaintiffs have no idea on what grounds any possible argument or strategy would involve arguing or stating that TTC failed to call any certain witness. However, it is unclear how trial will develop. This seems to be an issue that is better dealt with in trial as the evidence develops. Once again, TTC has the burden here of showing any such evidence or argument would be inadmissible for any purpose and TTC has not shown that, as it is unclear what situation is even being referred to. Instead, TTC simply asks for an order that is conclusory without any context or specificity. Therefore, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #26.

**27. HARDSHIP OR PRIVATION:** Any argument or suggestion that a failure to award damages will cause a plaintiff privation or financial hardship**.**

Plaintiffs resist Motion in *limine* # 27 because it is premature without an evidentiary context, vague, unworkable, and, as stated, contrary to the evidence disclosed and the truth. Plaintiffs have a right to argue the effect of all potential economic and human damages proven by the evidence in the record. For example, right now, Rebekah Hillman is working as a heavy equipment operator. She clambers up into huge machines and earth movers, despite a prosthesis on the right leg and partially impaired left leg. But what will happen if she falls in the wintertime or cannot drive a semi anymore due to CDL medical restrictions?

If Plaintiff cannot continue to operate heavy equipment despite her prosthesis, she will lose her job, including her healthcare insurance for her family. She will be faced with future costs of care for the prosthesis of approximately one million dollars in her lifetime. She will lose a job that provides approximately $80/hour in wages and benefits. Plaintiffs' counsel has every right to argue these points (assuming the evidence is in) and to honestly point out the bleak, financial picture that could be the Hillmans' future if they suffer the slightest hic up in Rebekah's employment.

What is clear from this case, is the injuries caused by the defective ZRT mower are life altering and should be judged accordingly. The very purpose of civil justice is to right a wrong with compensation. With many cases, part of the wrong that was done is financial harm and that is the purpose of past and future economic and related human (emotional stress) such worries create.

Once again, Toro is not trying to avoid mention of evidence, testimony or argument that is clearly inadmissible for any purpose. Rather, TTC is trying to "script" Plaintiffs' arguments and micromanage the narrative at trial with *limine* orders that pre-judge the evidence and testimony before it is even presented, and this is not the focus or purpose of an appropriate motion in *limine*.

Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #27.

**28. GOLDEN RULE:** Any argument or suggestion that the jurors should put themselves in the position of a party.

Plaintiffs do not resist a *limine* order on Issue #28.

**29. EVIDENCE NOT PRODUCED IN RESPONSE TO A PROPER DISCOVERY REQUEST:** Calling any witness, or offering any document in evidence, if the identity of the witness or the document has not been disclosed in response to a proper discovery request or not disclosed as required by Fed .R. Civ. P. 26(a)(1). If a party has a good faith basis to urge that a witness or document should be received either because (a) no discovery request properly called for its disclosure, or (b) good cause existed for failure timely to disclose, that party shall first approach the bench and secure a ruling. Counsel are advised that to the extent possible or predictable, such matters should be addressed and a ruling sought at pretrial once the case is assigned for trial.

Plaintiffs object to Issue #29 as it is overbroad, impractical, and unworkable. Once again, TTC has requested a conclusory, drastically overbroad and confusing *limine* issue for this Court that doesn't actually deal with any specific evidence or anticipated issues, but simply takes the same shotgun/claymore mine approach at broad concepts. Exhibit and witness lists will be exchanged prior to trial. If TTC has an objection based on nondisclosure at that time, they may certainly make it and the Court will address it. If at any time, any evidence is mentioned or any witness questioned and TTC's counsel believes that a) it was inquired into and has not been fairly disclosed, or b) it is prejudicial enough to warrant an objection, then by the rules of the Court, TTC's counsel must object according to the rules of the Court and wait for the Court's decision.

Instead, Toro wants to delay the trial by adding endless sidebars, while Toro argues that the testimony or item of evidence just identified was not disclosed as Toro thinks it should have been and moves for a mistrial due to some innocuous issue. This is but another installment of Toro trying to create appealable issues if things go badly and the jury awards damages commensurate with the harm in this matter.

If a party tried to introduce a document not produced in discovery or not disclosed at all, then it would certainly draw an objection, unless it is used for impeachment, etc. Obviously, Plaintiffs will not call a surprise witness that is not on their witness list without some extremely good reason, as it would draw the ire of the Court and draw an objection by TTC. There is simply no need for such a broadly phrased, impractical and unworkable *limine* order. As such, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #29.

30. **NET WORTH OR FINANCIAL POSITION**: Any reference to any party or witnesses' net worth or financial position.

While this is unnecessary, Plaintiffs do not resist a *limine* order on Issue #30 provided it applies to all parties as requested. References or arguments such as Plaintiffs are receiving a "windfall" or that a large verdict would be "jackpot justice" are similarly inappropriate and should be specifically barred if the Corut grants any version of this issue.

31. **ATTORNEY COMMENTS ON WITNESS CREDIBILITY**: Any argument or suggestion by the parties' attorneys regarding their personal opinion about the credibility of any witnesses.

Plaintiffs do not resist a *limine* order on TTC's Motion in *Limine* Issue #31.

32. **PREJUDICIAL EVIDENCE**: Any reference, argument, or suggestion related to evidence whose probative value, if any, is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" under Fed. R. Evid. 403, including but not limited to:
   - Other rollover or tipover incidents which are not substantially similar to the incident at issue;
   - Thomas Berry's late-disclosed supplemental videos and opinions; and
   - Plaintiffs' late-disclosed photograph of the accident site relied upon by David Bilek.

Plaintiffs resist Toro's MIL Issue #32 in its entirety, and ask that the Court DENY the issue.

Based on the law and facts of this case already argued in this resistance, it would be difficult to imagine a request for an order in *limine* more inappropriate, overbroad, vague, and utterly useless, as one entitled "Prejudicial Evidence". But that is what TTC has requested in Issue #32. All the MIL does is parrot back Fed. R. Evid. 403 without specificity or context. However, without

any proof or information, Toro does mention three broad issues, but misrepresents all three, and, of course, as the issue is phrased and presented to the Court, TTC's MIL #32 would go far beyond the three issues mentioned and is thus useless.

Nevertheless, since Toro has raised, without proof, three separate issues or facts it apparently claims are prejudicial, Plaintiffs will respond to those three.

There is a wide gap between simply saying something is prejudicial and proving actual, unfair prejudice under the controlling law.

**Bullet point one.** With respect to bullet point one, rather than rehash the same law and arguments already made in other issues, Plaintiffs would incorporate their previous arguments and law regarding substantial similarity of OSIs for notice purposes, especially their response to Issue #15, which sets out the correct "substantial similarity". What description Toro is apparently making is simply incorrect and unsupported by any law or facts presented.

**Bullet Points two and three.**  Without facts, law, or background from the record, Toro merely labels Thomas Berry's slope testing and rolling resistance testing as "late disclosed", which is simply untrue. Likewise, Toro labels photographs which impeach Mr. Bonugli's expert testimony and provided to Plaintiffs' accident reconstruction expert as "late disclosed" as if this is all that is required to establish a violation of the scheduling mechanism and prejudice.

The original Scheduling Order in this case gave Plaintiffs from just short of 60 days from the time the retained defense expert had to disclose their opinions via reports before Plaintiffs had to provide "rebuttal testimony reports".  (From 5/8/23 until 7/3/23.)  Because of scheduling problems (See Dkt. 100), Plaintiffs' counsel was not able to depose Mr. Bonugli (Toro's reconstruction expert) until July 20, 2023. In fact, due to scheduling issues and other complications, the deadline for completion for discovery was eventually extended to 8/18/2023.

Mr. Berry's slope testing and roll resistance testing was done to rebut TTC's expert Enrique Bonugli's calculated "roll resistance" of the accident mower on the date of Rebekah's injuries and specifically how it affected the mowers behavior immediately before it started downhill. (See **Exhibit 4** and **Exhibit 5** – Mr. Berry's documentation and videos of his slope testing and rolling resistance testing) Mr. Berry' testing also responds to Bonugli's rolling resistance calculation/opinion, which was only disclosed during his deposition on July 20, 2023, which was the first time Plaintiffs learned, the affect he (Bonugli) claims it had on the Toro mower during the accident was not disclosed in his expert report, but only admitted in response to counsel's specific questions in his deposition of July 20, 2023. (See **Exhibit 6** – Excerpts of Bonugli Deposition – p.120, L.8 – p.121, L.10) See also, **Exhibit 6**, p.123, L.10-17, where Bonugli says,

> "*Q. And actually, your entire analysis assumes that that mower was sitting on a nine and a half degree slope with the bypass pins engaged so that the hydrostatic motors were disconnected, and the parking brake was off and it didn't move without a push.*
> *A. That's right. That is what the slope is.*"

Berry's slope testing (7/24/23) and roll resistance testing (08/10/23), were done specifically to rebut Bonugli's opinion that the rolling resistance of the accident mower was as high as .165 gs, when actual testing shows Bonugli's calculation has an error rate of up to 100%. Thus, Plaintiffs were obliged to provide it to Toro within 30 days of disclosure of Bonugli's opinion on July 20, 2023. Fed. R. Civ. P. 26(a)(2)(D)(ii)

David Bilek (armed only with Bonugli's report) provided a timely rebuttal report dated July 3, 2023 (**Exhibit 7**), which responded to Bonugli's blatant misuse of the "tests" Jennifer and her friends conducted in the west yard. Bilek addressed Bonugli's ridiculous assumptions about the rolling resistance of the mower necessary to reverse engineer his numbers to support his "outside

motive force" opinion (i.e., somebody had to push the mower). At page 2 of his rebuttal report
(**Exhibit 7**), Bilek says:

> "Bonugli's opinion, "that the rolling resistance of the mower while stationary on a
> sloped terrain was sufficient to overcome the effect of Earth's Gravity", is incorrect.
> Further, as an engineer, Bonugli should have recognized that the rolling resistance
> based on his interpretation of the "testing" was wrong. Since acceleration due to
> gravity on a 9.5 degree slope, "can be as much as 0.165 g" as reported by Bonugli,
> the rolling resistance is therefore higher. For reference, routinely employed rolling
> resistances for passenger vehicles are in the range of 0.01 to 0.02 g's. Simply
> considering the ramifications of this conclusion indicates that the mower has what
> would be an unreasonably high rolling resistance, greater than 0.165 g's as designed
> by Toro, and thus the engine will have to continually work to overcome the high
> rolling resistance, even on level ground, just to keep the mower moving. This is
> comparable to trying to drive an automobile with the brakes moderately applied all
> the time.  As an engineer, this should have alerted Benugli that there was a
> fundamental problem with his analysis. Toro would not design and produce their
> mower to be so inefficient."

All rebuttal test data and logs were produced to Toro via supplemental disclosure on August
11, 2023, less than thirty days after Bonugli disclosed his calculation opinion (without raw data).
Toro's counsel, Kirk Florence, **conducted a supplemental deposition of Tom Berry on August
16, 2023, and asked about the testing**. (emphasis mine) Hence, Plaintiffs' disclosure of Mr.
Berry's test data and supplemental deposition **was timely under Fed. R. Civ P. 26(a)(2)(D)(ii)**.
(Emphasis mine)

Mr. Berry and Mr. Bilek's Opinions have not changed their disclosed opinions including their
rebuttal opinions. Rather, the slope testing and rolling resistance testing of the actual accident
mower had to be done once Bonugli finally disclosed that his theoretical calculations and his
"outside motive force" opinion relied entirely on assumptions about a ZRT mower that defied
physics.

Conspicuously absent from Toro's Motion, is any mention of the fact that Bilek's opinion
rebutting the rolling resistance assumption by Bonugli was timely disclosed and the testing of the

actual mower that proved Bonugli was wrong was timely produced in accord with <u>Fed. R. Civ P. 26(a)(2)(D)(ii)</u>. Even if one uses the standard of Fed. R. Civ. P. 37(c)(1), the delay was substantially justified since Bonugli failed to state and explain his opinions and the basis for those opinions until he was deposed by Plaintiffs' counsel on July 20, 2023.

The photograph of the west yard, which Toro's counsel refers to, does not purport to be the accident site, was not a 9.5-degree slope, and was timely produced as rebuttal evidence. As Plaintiffs have demonstrated, the alleged basis for Toro's false and disingenuous Motion in *Limine* #32, is just plain untrue. Simply calling something untimely or unfairly prejudicial does not make it so, and certainly does not rise to the high bar required for an Order in *Limine*.

As TTC has failed to provide any legal or factual support for this subject, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #32.

**33. OTHER CASES**: Any reference to other cases filed, tried, or defended by counsel for any party.

Plaintiffs resist Issue #33, as it is nothing but a conclusory statement, with no specific reasons or facts – all of which make Issue #33 vague, unnecessary, and impractical. Once again, the guidelines in this case are Fed. R. Evid. 401-403. If those other cases are relevant and admissible in this case for OSIs or something else, then the mere fact that TTC shared the same counsel does not serve to make them inadmissible. This Issue is completely unsupported by law and, as such, Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #33.

**34. TTC EXPERT OPINIONS:** Any reference, argument, or suggestion that TTC's expert witnesses' opinions and testimony are based on any kind of faulty premise, measurement or data which is a result of the Plaintiffs' intentional and material alteration of the accident site before allowing TTC's expert witnesses to inspect the accident site, and/or because Plaintiffs' expert David Bilek did not perform a sufficient or reliable site survey before Plaintiffs' intentional and material alteration of the accident site.

Plaintiffs resist Issue #34 based on misrepresentations by Toro concerning the evidence (Mr. Bilek's digital survey of the accident area), which was preserved at Plaintiffs' cost and was produced to Toro early in this case, without request, including all raw data. Furthermore, defense expert, Bonugli, admits in his report that he used the digital survey to create his own model of the terrain and his reconstruction, and no expert has opined that use of Plaintiffs' digital survey restricted them from generating their opinions to defend Toro. Toro has not, and cannot, demonstrate any prejudice from using the extremely accurate survey of the accident site.

Notably, TTC, again, asks the Court for an Order in *Limine* based on another conclusory, vague and hypothetical situation without specificity and without any evidence that such an occurrence will develop during trial. This is not the function or proper use of a Motion in *Limine*. For example, what would a *limine* order in this regard actually look like? What sorts of evidence would it prohibit? It is simply not clear.

TTC continues to try to create mistrust and prejudice against the plaintiffs with the Court by untruthfully alleging intentional spoliation of evidence, when the opposite is true. Plaintiffs preserved a very accurate survey of the grassy slope this mower rolled down, and Toro has benefited from that evidence as it has been employed by Toro's experts without restrictions to form their opinions and accident reconstruction.

Issue #34 is completely without legal or factual support. Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #34.

**35. LOSS OR DESTRUCTION OF EVIDENCE:** TTC may reference the Plaintiffs' destruction and/or material alteration of the site of the incident. This motion is based upon the Court's authority to impose sanctions for discovery abuses on the grounds that the Plaintiffs materially altered the slope and landscaping of the hill upon which the incident occurred, failed to properly preserve evidence regarding many of the important physical characteristics of the site, and failed to notify TTC in advance of the destruction or otherwise allow TTC to take steps to sufficiently preserve this vital evidence. Fed. R. Civ. P. 37; *see American Family Ins. Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 625-30, 166 Ill. Dec. 93, 585 N.E.2d 1115

(2d Dist. 1992). Therefore, TTC is entitled to refer to this fact and allow the jurors to make reasonable inferences regarding the Plaintiffs' material alteration of the incident site.

Plaintiffs move to DENY Toro any relief based on Issue #35 and move to STRIKE the paragraph as failing to request a Motion in *Limine*. The paragraph under "**Loss or Destruction of Evidence**", is a statement and argument of Toro's intent to argue before the jury (which is exactly why Plaintiffs filed their Motion in *Limine* #5).

In order to prove spoliation of evidence, a party must prove that 1) the opposing party had a duty to preserve the evidence, because litigation was likely imminent, 2) the opposing party intentionally destroyed the evidence with the intent of hiding it from the opposing party, and 3) prejudice due to the loss or destruction of the evidence. *(*See *In Re Local TV Advertising Antitrust Litigation US Dist. Ct Illinois Eastern Division*, 2023 WL 5607997*)*

In *O Connor v. Ford*, 2023 WL 4665642, N. Dist of Illinois*,* Judge Bucklo wrote that to impose sanctions for spoliation of evidence, the Court must find 1) there was a duty to preserve the specific evidence at issue, 2) the duty was breached, 3) the other party was harmed by the breach, and 4) the breach was caused the breaching party's willfulness, bad faith or fault.

**Element 1 – No evidence was lost or destroyed.** This is a case where a ZRT mower rolled down a 9-degree slope or grassy hill – that is all. Regarding the first element, Plaintiffs checked with their counsel and asked if they could modify the slope of the hill where the accident happened. This was July-August of 2020. **In an effort to preserve the evidence**, in August of 2020, Plaintiffs retained a mechanical engineer to perform a digital 3D survey of the south yard before it was modified in any way; thus, preserving the intimate details of the area for any possible litigation. Notably, Plaintiffs did not make the final determination to sue Toro until April-May of 2021 when they finally filed suit.

After filing suit, Plaintiffs had their digital survey (including usable raw data files) provided to Toro at no cost and Mr. Bilek even had phone calls to Toro's experts to make sure they could open the files and use the data to construct their own model of the terrain in the computer. Bilek also turned over all of his photographs of the terrain before it was modified so that Toro's experts could compare the visual records to the digital model and confirm accuracy (which they apparently did).

**Element 2 – There is no evidence of intent to hide or destroy evidence.** Plaintiffs went out of their way to make sure the terrain was mapped accurately and preserved for Toro in the event of litigation.

**Element 3 – There is absolutely no evidence of any prejudice.** Toro's paragraph alleges that "many of the important physical characteristics of the site" were lost and Plaintiffs failed to preserve "this vital evidence". These statements are pure hyperbole with no factual evidence to support this hollow charge.

At no time during this litigation did Toro claim spoliation until after the close of discovery. Not one of Toro's experts disclosed any problems using Mr. Bilek's digital survey to make their own accurate computer model/diagram of the accident hill. Toro did not disclose nor offer any evidence that any "important physical characteristic" of the hill had been lost which compromised Toro's defense in any way.

Toro still has not filed any Motion with this Court to prove up its allegations of spoliation.

Spoliation is first and foremost a discovery issue since one party is claiming disadvantage from the failure to produce evidence due to destruction.  Discovery has closed with no Motion by Toro, no request for a hearing to prove up its claim, and no finding by the Court that Plaintiffs committed spoliation except lawyers unsubstantiated rhetoric. With discovery now closed, any attempt to "prove up" spoliation on the part of Toro is untimely.

Plaintiffs ask the Court to DENY any relief under Issue #35, consider striking the paragraph as unrelated to the Motion specified, and granting Plaintiffs' MIL #5.

36. **INCOMPETENT WITNESS TESTIMONY:** Any testimony from the minor Plaintiff that is beyond her competency and only after it is established that she has an understanding of her duty to tell the truth.

Plaintiffs resist Issue #36 and ask the Court to DENY any relief, as what appears to be requested is unnecessary, vague and not the proper subject for an Order in *Limine*. The anticipated testimony of a minor is hardly the subject for an Order in *Limine*. Rather, qualifying a minor to testify in Court follows a logical and legally required pattern. Plaintiffs are confident that the Court and Plaintiffs' counsel will make sure that Plaintiffs' daughter understands and appreciates the seriousness of the proceedings and the obligation of her oath to tell the truth before she commences her substantive testimony.

37. **UNQUALIFIED EXPERT OPINION**: Any reference by a treating physician or other witness not duly qualified as an expert in the particular field as to the cause of the accident at issue, the mechanism of Plaintiffs' alleged injuries, the biomechanics of the accident at issue, the extent of any alleged mental, emotional or psychological injury, or the financial impact or effect of Plaintiffs' alleged injuries.

Plaintiffs resist Issue #37, as it is vague, confusing, and impractical. It is unclear what TTC is even referring to in this case. The rules governing admissibility of expert opinions is F.R.E. 702. They are also subject to *Daubert* Motions and TTC has filed a Motion to exclude or bar the testimony of every single one of Plaintiffs' retained witnesses.

TTC also had the opportunity to attend the deposition of the treating physicians in this case. It is unclear if TTC has any particular opinions in mind they are referring to but, if that is the case, an objection to foundation or something similar would be inappropriate at this stage in litigation as the deposition has concluded and TTC waived any such objections.

Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #37.

38. **UNPAID MEDICAL BILLS**: Any reference to an unpaid medical bill or unpaid balance of any medical bill where there is no evidence that the bills reflect the usual and customary charges for the types of services rendered.

Plaintiffs resist Issue #38, as it is vague, confusing, and contrary to the law. Under Illinois law, medical bills may be admitted with appropriate foundation. *Fraser v. Jackson*, 2014 IL App (2d) 130283, 382 Ill. Dec. 62, 12 N.E.3d 62, 71–72 (App. Ct. 2d Dist. 2014) If a medical bill has been paid, the amount of the bill is prima facie reasonable. *Arthur v. Catour*, 216 Ill. 2d 72, 82, 295 Ill. Dec. 641, 833 N.E.2d 847 (2005).  If a medical bill has not been paid, a plaintiff may still establish the charges are reasonable through testimony of a person who has knowledge of the services rendered and the usual and customary charges for those services. *Arthur v. Catour*, 216 Ill. 2d 72, 82, 295 Ill. Dec. 641, 833 N.E.2d 847 (2005)

In other words, what TTC is asking the Court to do is to ensure there is sufficient foundation ahead of time. This is not the Court's position to micromanage the exhibits of the parties. In every trial Plaintiffs' counsel has ever been involved in, they have worked together with opposing counsel to either stipulate to or provide witnesses for foundation, which is a concept that crosses every state and federal court Plaintiffs' counsel has ever appeared before. Plaintiffs would certainly prefer to avoid calling record-keepers from various facilities to simply lay foundation as it will extend the length of the trial. Regardless, this is an inappropriate subject for a Motion in *Limine*. If Plaintiffs attempt to enter medical bills into the record and TTC believes there is not adequate foundation, they may object when exhibits are exchanged.

Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #38.

39. **BILLINGS FOR ANY MEDICAL TREATMENT NOT REASONABLE AND NECESSARY:** Any reference to medical treatment where Plaintiffs' experts have failed to establish in pretrial discovery that the billings were reasonable and necessary for the treatment of injuries arising from the subject incident and proper foundation cannot be established (*e.g.,* that medical testimony is not based upon a reasonable degree of medical certainty).

Plaintiffs resist Issue #39, as it is vague, confusing, and not the proper subject for a Motion in *Limine*. Similar to Issue #38, TTC apparently is asking the Court to enforce the rules of evidence by ensuring Plaintiffs have laid proper foundation for their medical bills. As set forth above, Plaintiffs hope they can come to an agreement with TTC about past medicals in order to avoid calling numerous record-keepers and witnesses simply to establish foundation.

Once again, such an evidentiary issue raised, now shows a fundamental misunderstanding of the purpose of Motions in *Limine*. In the present case, even if a *limine* order was issued granting for TTC, Plaintiffs would still have to lay foundation (as it is a basic evidentiary requirement) in order for Plaintiffs to seek to admit medical bills, documents, etc. If TTC believed adequate foundation had not been laid then they would object to foundation at that time, same as if an order had been entered on this subject.

The proper way a Motion in *Limine* would be used here is if TTC knew of specific charges, etc. where they believed Plaintiffs had not established their burden. However, even then, Plaintiffs disclosed numerous witnesses from their medical providers for foundational purposes to be called upon in the event TTC refuses to agree to foundation for medical bills.

Plaintiffs request the Court DENY TTC's Motion in *Limine* Issue #39

Respectfully submitted,

By: /s/ Steven J Crowley
Lead Counsel

REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; and JENNIFER
HILLMAN Plaintiffs
Steven J Crowley Lead Counsel ARDC#6314756
Edward J. Prill ARDC#6271392
CROWLEY & PRILL
3012 Division Street
Burlington, IA 52601
T: (319) 753-1330
F: (319) 752-3934
E: scrowley@crowleyprillattorneys.com
E: eprill@crowleyprillattorneys.com
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on *Monday, November 27, 2023*, I electronically filed the
foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being
served this day on all counsel of record identified below via transmission of Notices of Electronic
Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who
are not authorized to receive electronic Notice of Electronic Filing:

Michael Giacopelli
Thomas Grace
Jonathan R. Sichtermann
McVey & Parsky, LLC
30 North LaSalle Street, Suite 210
Chicago, Illinois 60602
Email: mng@mcveyparsky-law.com
Email: tgg@mcveyparsky-law.com
Email: jrs@mcveyparskylaw.com

Jason Schiffman
Schiffman Firm, LLC
1300 Fifth Avenue
Pittsburgh, PA 15219
P: (412) 288-9444
F: (412) 288-9455
E: jason@SchiffmanFirm.com
ATTORNEY FOR PLAINTIFFS

Kirk T. Florence
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
P: (214) 922-7100
F: (214) 279-9194
kflorence@kilpatricktownsend.com
ATTORNEYS FOR THE TORO COMPANY