UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; AND JENNIFER HILLMAN,<br><br>Plaintiffs,<br>v.<br><br>THE TORO COMPANY, a corporation,<br><br>Defendant. | No. 4:21-cv-04081-SLD-JEH |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' GENERAL MOTIONS *IN LIMINE* ISSUES 1-18 AND MEMORANDUM IN SUPPORT**

COMES NOW Defendant The Toro Company ("TTC"), by and through its undersigned counsel, and hereby files its response to Plaintiffs' General Motions *in Limine* Issues 1-18 (Dkt. 155-1) (the "General Motions") and in support states as follows:

**I.   INTRODUCTION**

1. Several of Plaintiffs' General Motions seek to presume that Plaintiffs have met their burden of proof for trial and impermissibly prevent TTC from putting on its defense in response to the claims against it. A movant on a motion *in limine* has "the burden of demonstrating that the evidence is inadmissible on any relevant ground for any purpose." *Coin-Tainer Co., LLC v. Pap-R-Prod. Co.,* No. 3:19-CV-234-DWD, 2021 WL 5998653 (S.D.Ill., Dec 20, 2021) (internal citation omitted). A motion *in limine* is not an appropriate mechanism to challenge TTC's defenses after the deadline to file a motion for summary judgment has passed. *Sellers Cap., LLC v. Wight*, No. 15 CV 7644, 2017 WL 3037802, at *5 (N.D. Ill. July 18, 2017) (noting that motions *in limine* are not to be used as substitutes for dispositive motions because they lack the necessary procedural safeguards). Many of Plaintiffs' General Motions fall far short of their burden to show that the evidence is "inadmissible on any relevant ground for any purpose." As discussed below, the

evidence that the Plaintiffs seek to exclude is not only relevant, but key to a full understanding of the material facts and issues in this case.

2. Plaintiffs' Issues 1-18 within its General Motions fall into three categories: (1) issues uncontested by TTC ("Uncontested Issues," Issues 1-4, and 15-16), (2) an issue uncontested by TTC but reciprocity requested ("Uncontested/Reciprocity," Issue 18), and (3) issues contested by TTC ("Contested Issues," Issues 5-14 and 17).

3. Plaintiffs open their General Motions with more than eight pages of "Factual Background." General Motions, p. 2-9. Those pages are neither factual nor an appropriate background to the General Motions. TTC directs the Court to its Motion for Summary Judgment (Dkt. 113) and the Introduction (p. 1-3) and Undisputed Material Facts (p. 3-26) for a proper "factual background" and summary of the record in this case relevant to the issues raised by the Plaintiffs' General Motions.[1]

4. Some of the Plaintiffs' statements require a brief response as they fail to accurately depict important facts of this case. In their General Motions, the Plaintiffs claim that "[t]hey decided to tow the mower out of the flower bed, using the small John Deere tractor with a loader that they had." General Motions, p. 5. In fact, Plaintiff Jennifer Hillman ("Jennifer") moved the Bypass Pins on the Subject Mower, thereby disengaging the Subject Mower's drive and brake systems and allowing it to be pushed or pulled. The Plaintiffs did so while the Subject Mower was in the flowerbed, on a significant slope and only a few feet from a significant drop-off. TTC's Motion for Summary Judgment, paras. 7.39 to 7.42, p. 18-20 (Dkt. 113). While the Plaintiffs state that the Subject Mower was towed "away from the flowerbed" and "a safe distance up the hill," they do not and cannot explain why they represent that the spot where Jennifer chose to leave the

---

[1] TTC uses herein the same defined terms used in its Motion for Summary Judgment (Dkt. 113).

**TTC'S RESPONSE TO PLAINTIFFS' GENERAL MOTIONS *IN LIMINE* ISSUES 1-18**                                          2

Subject Mower was "safe." General Motions, p. 5 and p. 6. In fact, Plaintiffs' chosen spot to leave the Subject Mower was *up the hill* from the hazard directly below with the Subject Mower pointed straight back down the hill directly towards the retaining wall. TTC's Motion for Summary Judgment, paras. 7.43-7.44, p. 20-21 (Dkt. 113). The Plaintiffs offer no explanation as to why they did not just move the Subject Mower out of the flowerbed into an area two mower-widths away into the Safe Zone, as described in the Operator's Manual, and point it *away from the drop-off* (i.e. parallel to the retaining wall, not facing it).

5.      The Plaintiffs' General Motions further state that "[w]hen they got to the top of the hill … Rebekah got back on the [Subject Mower] and, apparently forgot to put the bypass pins in the mow [or operation] position …" General Motions, pp. 6-7. The Plaintiffs also state that "the strap was unattached" (General Motions, bottom p. 6) when in fact, according to Jennifer's deposition testimony, Rebekah Hillman ("Rebekah") removed the tow strap. TTC's Motion for Summary Judgment, para. 7.45, p. 21 (Dkt. 113). There is no evidence in the record that the two Plaintiffs discussed that the Bypass Pins had to be returned to their proper position for operation, who was responsible for doing so, and that they had any plan for addressing the issue. Id. Indeed, Jennifer testified: "I mean, I didn't have a plan with that. I just – just assumed that when she [Rebekah] was unhooking it [the tow strap], she put them [the Bypass pins] in." Id. Although Jennifer had moved the Bypass Pins, she had no plan to return them to the proper position and "assumed" that Rebekah would address it.[2]

---

[2] It is important to note that Jennifer confused the movement of the pins in her deposition, testifying that she assumed that Rebekah would "put them in." Moving the Bypass Pins "in" through the keyhole and locking them in position puts the Subject Mower in push mode and disengages its steering and braking systems. TTC's Motion for Summary Judgment, para. 7.41, p. 19 (Dkt. 113). The Plaintiffs also confused the direction of the Bypass Pins in their Answers to Interrogatories which they later had to correct. Attached hereto as **Group Exhibit A** is Plaintiff Rebekah Hillman's Supplemental Answers to Defendant's Interrogatories and Plaintiff Jennifer Hillman's First Supplemental Answers to Defendant's Interrogatories, dated May 4, 2022. *See* the Plaintiffs' respective Supplemental Answer to Interrogatory No. 2 wherein they explain that their original answers mistakenly reversed the direction in which they moved the Bypass Pins, just as Jennifer did in her deposition.

6. The Plaintiffs then claim that the Subject Mower "did not appreciably slow" when Rebekah applied the parking brake and the "mower continued to gain speed as it rolled down the hill …" General Motions, p. 7-8. In support of that claim, the Plaintiffs cite Jennifer's deposition transcript. But Jennifer actually testified that Rebekah's application of the parking brake caused "skid marks" on the hill. General Motions, Ex. C, p. 298:23 – 299:5. Still further, Jennifer testified that the Subject Mower "picked up speed gradually" and "[o]nce it hit the flower bed, it – it picked up speed a lot." Id. at p. 300:18-20.

7. The Plaintiffs attempt to gloss over the important series of missteps and mistakes by the Plaintiffs which led to the Subject Mower free-rolling down a hill and nose-diving off a retaining wall. The Plaintiffs seemingly seek to excuse Jennifer's role in the events by blaming Rebekah and thereby make a significant admission:

> It was only ***Rebekah's act of forgetting to return the tow pins*** to the mow position, which might be ***characterized as fault*** and cause in fact of her injuries. Although Plaintiffs deny Rebekah was negligent, ***a jury could find*** that releasing the parking brake ***under the circumstances*** allowed the mower to roll and become a causative factor in her injuries.
>
> ***Admittedly, it was Rebekah's failure to return the tow pins to their mow position, which was one of several factors in the loss of control***.

General Motions, p. 19 (***bold/italics*** emphasis added). The Plaintiffs' admissions regarding the actions of Rebekah are revealing and significant. But so is their reference to "under the circumstances." Jennifer created those "circumstances" by (a) moving the Bypass Pins to take the Subject Mower out of normal operation mode, (b) using the John Deere to tow the Subject Mower, (c) towing the Subject Mower up the hill, and then (d) facing it down the hill toward the flowerbed and the adjacent 6-foot drop-off.

8. There was no "loss of control," as the Plaintiffs describe. Instead, Rebekah never had control of the Subject Mower because she forgot to return the Bypass Pins to the operating position, and then attempted to operate the Subject Mower with the steering and braking systems still intentionally disengaged. This is very, very different than a rollover incident, where the operator experiences a loss of control while utilizing a fully operational mower on a slope (on wet grass, for instance). That is not what occurred here.

9. The Plaintiffs' attempt to excuse Jennifer's conduct with their conclusory claim that Jennifer left "the mower in the flattest part of the south yard available" is misplaced (General Motions, p. 19.) That conclusion is neither supported by any evidence in this case nor any expert testimony. None of Plaintiffs' experts opined that Jennifer's decisions were proper under the circumstances, or that the position in which she placed the Subject Mower, and consequently placed Rebekah, was "safe." Indeed, the Plaintiffs contradict themselves by stating that Jennifer towed the Subject Mower to "the flattest spot of the south yard," but then claim that the Subject Mower immediately began to roll out of control when Rebekah released the parking brake. If Jennifer chose the "flattest part of the south yard," then why did the Subject Mower immediately start to roll when Rebekah released the parking brake?

10. Video evidence suggests that Jennifer did not choose the flattest spot in the south yard, and certainly not the safest spot for Rebekah. The Plaintiffs provided two "test videos" of the Subject Mower performed by Jennifer and her friends in the south yard. In those videos, Jennifer chose locations in Plaintiffs' yard that were safe to conduct the tests and not endanger her friends. The Plaintiffs submitted those videos as part of their other motion (Dkt. 158-9 and 158-10). In one video (Dkt. 158-10), the Subject Mower required a push to get it rolling after the release of the parking brake. Those same videos beg the question as to why Jennifer did not tow

the Subject Mower to that spot on the day of the incident. Any opportunity for TTC (or Rebekah) to evaluate or even make any investigation regarding Jennifer's claim that she chose the flattest part of the south yard was lost when the Plaintiffs destroyed the hill and the surrounding area not long after the incident. *See* TTC's Response to Plaintiffs' *Daubert* Challenges and Motions *In Limine* Issues 19-28 filed simultaneously herewith.

11. As discussed herein, the actions, and inactions, of the Plaintiffs immediately before and leading to the unfortunate incident are critical to the legal issues in this case. The Court should reject the Plaintiffs' misguided attempt to keep important information from the jury in this case and alter the facts before the trial even begins. Accordingly, the Court should deny the Plaintiffs' Contested Issues.

## II. MEMORANDUM IN SUPPORT

12. A motion *in limine* may be used to preclude a party from making an argument where the evidence proffered to support it is "insufficient as a matter of law." *U.S. v. Santiago–Godinez*, 12 F.3d 722, 727 (7th Cir. 1993). Plaintiffs' Contested Motions fail to demonstrate that TTC's proffered evidence fails to support its defenses. Further, the Plaintiffs bear the burden to demonstrate that the evidence offered by TTC is inadmissible on any relevant ground, for any purpose. *Coin-Tainer Co., LLC v. Pap-R-Prod. Co.,* No. 3:19-CV-234-DWD, 2021 WL 5998653 (S.D.Ill., Dec 20, 2021); see also *Rosenberg v. Cottrell, Inc.*, No. 05-545-MJR, 2007 WL 2028789, at *1 (S.D.Ill. July 12, 2007) ("The Court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." (Internal citations omitted.))

13.     Many of Plaintiffs' Contested Motions are vague and fail to clearly identify the evidence or testimony that they seek to preclude.  Indeed, many fail to identify specific deposition testimony or documents, or even identify the specific witness who may offer the challenged testimony.  Even if granted, TTC would be left guessing as to how to comply and the Court as to how to enforce such orders.

14.     The Plaintiffs' Contested Motions use words like "insinuation or inference by Toro" (General Motions, p. 14).  The Plaintiffs then reference basic background facts of the case, such as the Plaintiffs altering the landscape of the south yard, Rebekah mowing next to the flowerbed, the Subject Mower getting stuck in the flowerbed, or that the Subject Mower was facing downhill when Rebekah released the parking brake.  Those facts will undoubtedly be part of the presentation of this case at trial and it is therefore unclear as to what evidence the Plaintiffs seek to exclude.  A district court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity.  "The court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." Id., *see also Coin-Tainer Co.* at *2, and *Whitfield v. Atchingson*, No. 13-CV-653-SMY-RJD, 2018 WL 10419738, at *1 (S.D. Ill. Jan. 3, 2018).  Plaintiffs' Contested Issues fail for vagueness and, accordingly, the Court should deny them.

### A. Contested Issue No. 5: Plaintiffs' Destruction of the South Yard is Both Relevant and Undisputed.

15.     Plaintiffs' Issue No. 5 seeks to preclude "Any evidence, inference, argument, or claim that Plaintiffs grading the accident hill, following Rebekah's injury, was spoliation of evidence or that it created any hardship or prejudice to Toro." Dkt. 155 at 2. Plaintiffs' destruction of the scene of the accident, after engaging outside counsel and after letting their retained expert witness inspect the scene, but before allowing TTC's experts to inspect it, is (1) factually true, and

(2) spoliation on its face. *Cohn v. Guaranteed Rate, Inc.*, 318 FRD 350, 354 (N.D. Ill. 2016) (the duty to preserve is broad and encompasses any evidence that the non-preserving party knew or reasonably could foresee would be relevant to the action). The Plaintiffs cannot credibly argue that they did not know that the details of the south yard and its hill constituted critical evidence in this case when they hired an expert in a failed attempt to preserve it.

16. The Plaintiffs' mistake was two-fold. First, their retained expert, Mr. David Bilek, failed to adequately preserve the yard and the hill. Indeed, Mr. Bilek admitted that while surveying the scene of the accident, his drone crashed, and he could not complete taking the photographs of the scene at all relevant angles. *See* TTC Motion to Exclude Plaintiffs' Expert David Bilek, generally and p. 9 (Dkt. 154). Second, the Plaintiffs, knowing their intention to file suit against TTC, failed to contact TTC and give it the same opportunity to investigate, survey and document the incident site. The Plaintiffs only provided TTC that opportunity after they had filed suit, and more importantly, after they had destroyed the yard and the hill as it existed on the day of the incident.

17. Plaintiffs' denial of that opportunity and the evidence that would have resulted are significant and continue to touch many issues in this case. To illustrate, Plaintiffs argue that "there was no other option other than to tow the mower from the flowerbed evident or available to Jennifer and Rebekah Hillman on the day of the injury" and that Jennifer towed the mower to the "flattest part of the yard". General Motions, p. 18 and 19. However, because Plaintiffs destroyed the scene of the accident, TTC never had the opportunity to inspect the scene and evaluate or confirm these claims.

18. Additionally, Plaintiffs criticize TTC's expert witness Enrique Bonugli on the basis that he failed to test at the accident site even though *Plaintiffs* intentionally destroyed the accident site before allowing TTC or its retained expert, Mr. Bonugli, a chance to conduct its own inspection. Dkt. 158-1 at 21 ("Plaintiffs would point out certain significant points regarding the 'tests', which are the sole basis for Bonugli's opinions… The tests were done on a completely different part of the yard with a different slope and different turn than the accident site."), 22 ("…Bonugli did no tests of his own…"). Thus, it is critical that the jury understand and consider Plaintiffs' actions as spoliation that has prejudiced TTC. Accordingly, the Court should deny Plaintiffs Contested Issue No. 5.

### B. Contested Issues Nos. 6 thru 11: Plaintiffs' Actions, and Failure to Act, in the Moments Leading to the Incident are Both Relevant and Undisputed.

19. Plaintiffs' Issue Nos. 6-8 seek to preclude TTC from presenting evidence and arguments on its properly plead contributory negligence, comparative fault, and produce misuse defenses:

- Issue No. 6 seeks to preclude "Any questioning, evidence, inference, argument or comments alleging that Rebekah Hillman's mowing adjacent to the flowerbed was negligence, fault or a cause of her injuries to her legs." Dkt. 155 at 3.

- Issue No. 7 seeks to preclude "Any questioning, evidence, inference, argument, or comments alleging that Rebekah Hillman's getting stuck in the flowerbed was negligent, fault or a cause of her injuries to her legs." Dkt. 155 at 3.

- Issue No. 8 seeks to preclude "Any evidence, inference, argument, or claim that Plaintiffs were negligent, or at fault, for leaving the Toro ZRT facing downhill after towing it from the flowerbed where it got stuck to the top of the hill." Dkt. 155 at 3-4.

In this case, Plaintiffs assert a negligence claim against TTC. *See* Dkt. 17, First Amended and Substituted Complaint ("Complaint") at ¶¶ 32-39. In its Answer to the Complaint, TTC properly asserted defenses of contributory negligence, comparative fault, and product misuse. Dkt. 18 at 20-23 (Affirmative Defense Nos. 1-4 and 10). Plaintiffs did not file any motion for summary

judgment on TTC's affirmative defenses. Notably, Plaintiffs admit that Rebekah caused her own injuries: "Admittedly, it was Rebekah's failure to return the tow pins to their mow position, which was one of several causal factors in the loss of control." Dkt. 155-1 at 19. TTC is unaware of any rule or other authority that would prevent TTC from advancing its properly plead defenses at trial and this motion *in limine* should be denied. *Narsimhan v. Lowe's Home Centers, LLC*, No. 19CV1255, 2022 WL 580800, at *7 (N.D. Ill. Feb. 25, 2022) (denying Plaintiff's motion *in limine* on Defendant's contributory negligence defense); *see Sellers Cap., LLC v. Wight*, No. 15 CV 7644, 2017 WL 3037802, at *5 (N.D. Ill. July 18, 2017) (noting that motions *in limine* are not to be used as substitutes for dispositive motions because they lack the necessary procedural safeguards).

20.  For Issue No. 7 specifically, Plaintiffs claim that Rebekah getting the Subject Mower stuck in the flowerbed "was not a factual cause of the injury," but also argue that getting stuck was foreseeable (an element of proximate cause) and would lead to an incident like Plaintiffs' involving the Bypass Pins—Plaintiffs cannot have it both ways.  Dkt. 155-1 at 17; Dkt. 159 at 53, ¶ 17, 81 fn. 7. Plaintiffs also admit that Rebekah caused her own injuries: "Admittedly, it was Rebekah's failure to return the tow pins to their mow position, which was one of several causal factors in the loss of control." Dkt. 155-1 at 19.

21.  Plaintiffs' Issue No. 9 seeks to preclude "Any evidence, inference, argument, or claim that Plaintiff Jennifer Hillman knew that the bypass pins of the Toro ZRT were still in the tow position when Rebekah tried to resume mowing, after towing the mower up the hill and removing the tow strap."  Dkt. 155 at 4. TTC is unaware of any rule or other authority that would prevent TTC (or any party) from introducing or discussing the facts surrounding the Accident. In fact, Jennifer Hillman testified under oath that she knew she had to disengage the Bypass Pins before operating the Subject Mower again and that the Subject Mower was in "bypass mode" in

the moments before the Accident. Jennifer Day 1 Dep. at 284:10-17 ("Q. Okay. And what was your plan for disengaging the bypass pins? A. I mean, it didn't cross my mind at the time. Q. You -- you knew that you had to disengage those before the mower would start using its operating mode again, though, right? A. Yes."), 297:15-297:18 ("Q. And you Realized that was because it was still in bypass mode? A. I realized at that moment that it was still in bypass mode."). Plaintiffs' motion *in limine* Issue No. 9 has no basis in fact or law and this motion *in limine* should be denied.

22.    Plaintiffs' Issue No. 10 seeks to preclude "Any argument, or claim that Plaintiff Jennifer Hillman had a legal or moral duty to warn Rebekah that the tow pins (bypass pins) were still in the "tow" position when Rebekah got back on the mower and tried to resume mowing after she and Rebekah towed it out of the flowerbed." Dkt. 155 at 4. Because Jennifer had moved the Bypass Pins putting the Subject Mower in a free-roll mode, and then positioned the Subject Mower on a sloped hill facing a 6-foot drop-off, it only seems reasonable that Jennifer would have communicated with Rebekah to be sure that mower was returned to operation mode before re-commencing operation.  In that sense, and under the circumstances, Jennifer indeed had duty to communicate with Rebekah about the position of the Bypass Pins.  Part of TTC's defense is that Plaintiffs' accident and injuries were caused by Plaintiffs' contributory negligence, comparative fault, and product misuse.  An essential element of negligence is duty—each Plaintiff had a duty to act reasonably under the circumstances and TTC is entitled to present facts that the Plaintiffs failed to do so. TTC contests Issue No. 10 because it seeks an order *in limine* with regard to TTC's defenses that Plaintiffs acted contributorily negligent, with comparative fault, or with misuse.

23. Plaintiffs' Issue No. 11 seeks to preclude "Any evidence, inference, argument, or claim of alleged "bad acts" on the part of Plaintiffs." Dkt. 155 at 5. Again, Plaintiffs assert a negligence claim against TTC. *See* Dkt. 17, Complaint at ¶¶ 32-39. This issue, in particular, is too vague and should be denied for that reason alone. Like Issue No. 10, Issue No. 11 should be denied because the Plaintiffs did not challenge TTC's affirmative defenses by summary judgment and then admitted that Rebekah's failure to return the Bypass Pins to the proper position was a "causal factor" of this Accident. General Motions, p. 19. If in Issue No. 11 Plaintiffs are instead referring to "prior bad acts" under Federal Rule of Evidence 404(b), prior act evidence is admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). Rule 404(b) is the appropriate standard, not Plaintiffs' overly broad request *in limine*.

24. In support of these motions *in limine*, the Plaintiffs cite *Schultz v. St. Clair Cnty.*, 2022 IL 126856, 201 N.E.3d 1111 (Ill.Sup.Ct. April 21, 2022). In that case, the Illinois Supreme Court determined that a police dispatcher's refusal to dispatch the police to a convenience store to prevent a woman from driving under the influence of alcohol was not the proximate cause of the woman's death. The Illinois Supreme Court determined that the plaintiff could not establish that the woman's death would not have occurred absent the alleged refusal to dispatch the police. The Plaintiffs then argue that "Toro conveniently ignores … the fact that there was no other option to tow the mower from the flowerbed evident or available to Jennifer and Rebekah Hillman on the day of the injury." General Motions, p. 18. The Plaintiffs claim, without any supporting evidence, that Jennifer pulled the Subject mower "up to the flattest portion of the yard, which was essentially a hill in all directions." <u>Id</u>. Contrary to the Plaintiffs claim, the jury should be left to evaluate the evidence as to whether Jennifer's chosen spot was in fact the "flattest portion of the yard,"

especially given the test videos that showed the Subject Mower stationary even after the parking brake was released.

25.     Contrary to the Plaintiffs' position, Jennifer's decision to tow the Subject Mower up the hill and face it down towards the flowerbed and the adjacent drop over the retaining wall and Rebekah's admitted failure to return the Bypass Pins to their proper position constitutes an intervening proximate cause of the Accident.  *Bolden v. Beiersdorf, Inc.*, No. 20-CV-150-DWD, 2022 WL 867959, at *9–10 (S.D. Ill. Mar. 23, 2022) ("Plaintiff simply fails to point to any evidence, circumstantial or direct, for a reasonable jury to conclude that her injuries would not have happened 'but for' the insufficient warning on the Lotion 'as to make the conclusion of causation more probable as opposed to merely possible.'  There is also no evidence from which a reasonable jury could conclude that any failure to warn in this case was a 'material element' or 'substantial factor' in bringing about Plaintiff's injuries.  Any such conclusion would be based on conjecture; however, '[i]t is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury'") (Internal citations omitted.) This Court should consider all the related evidence in connection with Defendant's Motion for Summary Judgment and, likewise, the jury should consider that evidence, should this matter proceed to trial.  TTC's Motion for Summary Judgment, p. 26-33 (Dkt. 113).

### C. Contested Issues No. 12: TTC's Insurance Coverage Is Not Relevant.

26.     Plaintiffs' Issue No. 12 seeks to preclude "Any evidence, argument or claims that a verdict for Plaintiffs would create economic harm to Toro or cost Americans jobs." Dkt. 155 at 5. TTC does not contest this motion *in limine* as worded. However, Plaintiffs also contend in their brief that "Toro has substantial insurance coverage for this loss….," which TTC contests and

requests an order *in limine* preventing any argument or suggestion by Plaintiffs' that TTC has "substantial insurance coverage for this loss." *Id.*; *see* Fed. R. Evid. 411.

### D. Contested Issues No. 13: Plaintiffs have Not Offered a Safer Alternative Design.

27. Plaintiffs' Issue No. 13 seeks to preclude "Any evidence, inference, argument, or claim that a verdict for Plaintiffs in this case would raise the price of riding lawnmowers to a point that would be prohibitive to the average consumer." Dkt. 155 at 5. TTC does not contest this motion *in limine* as worded. However, Plaintiffs also state in their brief that "There is no credible evidence that making the safety improvements recommended by Plaintiffs would render the lawnmower too expensive to market and sell." *Id.* Plaintiffs are attempting to prevent TTC from responding or defending against Plaintiffs' claim of a safer alternative design (one element being economic feasibility). *See Winters v. Fru–Con Inc.*, 498 F.3d 734, 744 (7th Cir. 2007). TTC requests that the Court only grant Issue No. 13 as worded, and not the additional attorney commentary regarding an economically feasible safer alternative design.

### E. Contested Issues No. 14: Plaintiffs Bear the Burden of Proof as To Past Medical Expenses.

28. Plaintiffs' Issue No. 14 seeks to preclude "Any evidence, inference, argument, or claim that Plaintiff Rebekah Hillman's past medical expenses were not fair and reasonable or causally related to the injury with the Toro ZRT of June 18, 2020." Dkt. 155 at 6. In order to recover for medical expenses, the *plaintiff* must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature. *Wicks v. Cuneo–Henneberry Co.*, 319 Ill. 344, 349, 150 N.E. 276, 279 (1925). First, the Plaintiffs bear the burden to show that the claimed medical treatment resulted from injuries caused by TTC. Plaintiffs can only establish this causal connection through competent medical testimony to a

reasonable degree of medical certainty. *Cordes v. Centers for Reprod. Med. & Wellness, LLC*, No. 3:20-CV-10-MAB, 2023 WL 6362750, at *8 (S.D. Ill. Sept. 29, 2023) ("Moreover, when questioned, both of Defendants' experts could not provide opinions to a reasonable degree of medical certainty on this topic. Accordingly, these opinions, that have no factual predicate and are not made to any reasonable degree of medical or scientific certainty must be excluded.")

29.     Second, if the medical bill is unpaid, or only partially paid, then the Plaintiffs must present evidence that the medical bills were reasonable through testimony as to the usual and customary charges for those same services. Thus, if Plaintiffs fail to meet their burden, TTC is permitted to challenge the introduction of medical records and bills at trial based on a lack of foundation and cross-examine Plaintiffs' witnesses on this issue of reasonableness, if necessary. *Arthur v. Catour*, 216 Ill. 2d 72, 83, 833 N.E.2d 847, 295 Ill. Dec. 641 (2005). The Court should deny this motion and reserve its evaluation of the competency of the Plaintiffs' medical evidence at trial.

### F. Contested Issues No. 17: TTC Does not Intend to Introduce Evidence Regarding Annuities.

30.     Plaintiffs' Issue No. 17 seeks to preclude "Any evidence, inference, or argument concerning annuities or present value without proper foundation." Dkt. 155 at 6. TTC does not intend to introduce evidence regarding annuities but a motion *in limine* is unnecessary.

### G. The Court should grant Plaintiffs' Issue No. 18 reciprocally.

31.     Plaintiffs' Issue No. 18 seeks to preclude "Any derogatory remarks against Plaintiffs' counsel, or insinuation of improper conduct against Plaintiffs' counsel." Dkt. 155 at 7. TTC does not contest an order *in limine* preventing counsel for *either party* from making the as-described remarks. TTC therefore requests that the Court grant Issue No. 18 reciprocally, or

alternatively for an order *in limine* against "Any derogatory remarks against any counsel of record, or insinuation of improper conduct against any counsel of record."

### III.    CONCLUSION

32.    For the foregoing reasons, Defendant The Toro Company requests that the Court deny Plaintiffs' Motions *in limine* Issue Nos. 5-11, 13-14, and 17, grant Plaintiffs' Motion *in Limine* Issue No. 18 reciprocally, and for such other and further relief to which it may show itself justly entitled.

Dated: November 27, 2023                    Respectfully submitted,

/s/ Kirk T. Florence
Kirk T. Florence
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, TX  75201
Tel:    (214) 922-7100
Fax:    (214) 279-9194
Email: kflorence@kilpatricktownsend.com

/s/ Thomas G. Grace
Thomas G. Grace
Parsky & Galloway, LLC
120 North LaSalle St., Suite 3200
Chicago, Illinois 60602
Tel:    312-551-2130
Fax:    312-551-2131
Email: TGG@pg-lawoffice.com

Attorneys for Defendant
The Toro Company

## CERTIFICATE OF SERVICE

    I, Thomas Grace, an attorney, hereby certify that on November 27, 2023, I served Defendant's Response to Plaintiffs' General Motions *in Limine* Issues 1-18 to the following counsel of record via the Court's electronic filing system.

| | |
|---|---|
| Steven J. Crowley<br>Edward J Prill<br>CROWLEY & PRILL<br>3012 Division Street<br>Burlington, IA 52601<br>Tel: (319) 753-1330<br>Fax: (319) 752-3934<br>Email: scrowley@cbp-lawyers.com<br>          eprill@cbp-lawyers.com | Jason M. Schiffman<br>Schiffman Firm, LLC<br>1300 Fifth Avenue<br>Pittsburgh, PA 15219<br>Tel: (412) 288-9444<br>Fax: (412) 288-9445<br>Email: jason@schiffmanfirm.com |

                                            Kilpatrick Townsend & Stockton LLP

                                            /s/ Thomas G. Grace
                                            Thomas G. Grace