## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

|  |  |
|---|---|
| REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; AND JENNIFER HILLMAN, <br><br> Plaintiffs, <br><br> v. <br><br> THE TORO COMPANY, a corporation, <br><br> Defendant. | No. 4:21-cv-04081-SLD-JEH |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' *DAUBERT* CHALLENGES AND MOTIONS *IN LIMINE* ISSUES 19-28 AND MEMORANDUM IN SUPPORT

COMES NOW Defendant The Toro Company ("TTC"), by and through its undersigned counsel, and hereby files its response to Plaintiffs' *Daubert* Challenges and Motions in Limine Issues 19-28 (Dkt. 158 and 158-1) (collectively the "Motion 19-28") and in support states as follows:

### I.    INTRODUCTION

1.      Plaintiffs' Issue Nos. 19-26 seek to prevent TTC from discussing evidence and facts that are already in the record and from presenting some of its defense at trial.  A motion *in limine* is not an appropriate mechanism to challenge TTC's defenses after the deadline to file a motion for summary judgment has passed.  A movant on a motion *in limine* has "the burden of demonstrating that the evidence is inadmissible on any relevant ground for any purpose."  *Coin-Tainer Co., LLC v. Pap-R-Prod. Co.,* No. 3:19-CV-234-DWD, 2021 WL 5998653 (S.D.Ill., Dec 20, 2021) (internal citation omitted).  A motion *in limine* is not an appropriate mechanism to challenge TTC's defenses after the deadline to file a motion for summary judgment has passed. *Sellers Cap., LLC v. Wight*, No. 15 CV 7644, 2017 WL 3037802, at *5 (N.D. Ill. July 18, 2017) (noting that motions *in limine* are not to be used as substitutes for dispositive motions because they

lack the necessary procedural safeguards). Many of Plaintiffs' Motions fall far short of their burden that the evidence is "inadmissible on any relevant ground for any purpose." As discussed below, the evidence that the Plaintiffs seek to exclude is not only relevant but important to a full understanding of the material facts and issues in this case. Accordingly, the Court should deny Plaintiffs' Issues 19-26.

2.      Plaintiffs' Issue Nos. 27 and 28 seek to exclude certain opinions by TTC's expert witnesses Enrique Bonugli and Dr. Lisa Gwin, both on reliability and relevance grounds (hereinafter Plaintiffs' "*Daubert* Motions"). The Plaintiffs made no challenge to TTC's other liability experts, Dr. Nathan T. Dorris, Ph.D. (warnings and human factors), and Dr. Daniel E. Toomey, Ph.D., P.E. (engineering and design). As to Mr. Bonugli, the Plaintiffs destroyed the accident site and then criticized Mr. Bonugli for not performing tests on the site. Their circular logic fails to provide a basis to limit or exclude Mr. Bonugli's testimony. Regarding Dr. Gwin, the Plaintiffs devote much of their *Daubert* Motion to criticizing an illusory "opinion" that Dr. Gwin never advocated and then rely on purported "actual testing" that was neither actual nor existing in this case.

3.      For the reasons discussed below, the Court should deny Plaintiffs' *Daubert* challenges to Mr. Bonugli and Dr. Gwin.

4.      Plaintiffs begin their brief in support of Motion 19-28 with six (6) pages that attempt to explain away Plaintiffs' numerous missteps and mistakes that led to the incident and Rebekah Hillman's ("Rebekah") injuries (the "Accident"). The pages are replete with arguments from counsel and conclusions not supported by the evidence in this case. *See Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."). TTC directs the Court to its Motion for Summary

Judgment (Dkt. 113) and the Introduction (p. 1-3) and Undisputed Material Facts (p. 3-26) for a proper "factual background" and summary of the record in this case relevant to the issues raised by the Plaintiffs' Motion 19-28.

5.      Some of the Plaintiffs' statements require a brief response here as they fail to accurately depict important evidentiary issues relevant to Plaintiffs' Motion 19-28.  TTC also notes that it has filed Motions to Exclude Plaintiffs' liability experts:  Mr. Thomas E. Berry, P.E. (Dkt. 156), Mr. David J. Bilek (Dkt. 154), and Mr. Kelly B. Kennett, MS (Dkt. 153).  Plaintiffs' reliance on the opinions of Mr. Bilek, in particular, is misplaced in that TTC is also critical of the manner and method by which he photographed and attempted to preserve the scene of the incident.  *See* TTC's Motion to Exclude Plaintiffs' Expert David Bilek (Dkt. 154).  Those failures directly impacted the work of Mr. Bonugli, as discussed below.

6.      The Plaintiffs claim that Jennifer Hillman ("Jennifer") towed the Subject Mower[1] "to the flattest part of the south yard she could find."  Dkt. 158-1, p. 3.  The Plaintiffs then direct the Court to Figures 1 and 2 in its brief in support of Motion 19-28.  Those figures do not depict a flat area.  Indeed, Mr. Bilek's Report includes a side elevation of the Subject Mower's apparent path down that hill that illustrates a steady slope until the flowerbed, when the slope increases significantly.  A screen capture from Mr. Bilek's Report is included below:

---

[1] TTC uses herein the same defined terms used in its Motion for Summary Judgment (Dkt. 113).



As viewed from the side in elevation, the relative slope of the yard area is shown to be approximately 9.5°.

TTC's Motion to Exclude Plaintiffs' Expert David Bilek (Dkt. 154), Exh. D (Dkt. 154-4), p. 5. The Plaintiffs' own expert contradicts any claim that Jennifer towed the Subject Mower to a flat area, or safe area, of the south yard.

7.       The Plaintiffs also produced a copy of a video taken just weeks after the incident wherein Jennifer described the events on the day of the Accident while standing on the hill in the south yard – **before** the Plaintiffs changed the landscape ("Interview Video").  A transcript of the audio of the Interview Video is attached hereto as **Exhibit A** and the Interview Video is included as **Exhibit B**.  Jennifer states that as Rebekah "pulled the levers in, it started to roll."  Interview Video Transcript, Exh. A, 5:18-24.  In the Interview Video, Jennifer identified where she left the Subject Mower on the hill.  Interview Video, Exh. B, [3 min. / 19 secs.]



In the above image, Jennifer is standing at the spot where she positioned the Subject Mower and is holding her arms up to show the direction it faced after towing it up the hill. Contrary to the Plaintiffs' claim, she is not "approximately even with the tree" but further up the hill and away from the tree. (A red arrow is inserted into the screenshot to identify the base of the tree for reference.)



The above image is from the perspective of the flowerbed above the retaining wall, looking back up the hill in the area where Jennifer states that the Subject Mower went over the retaining wall. Interview Video, Exh. B, [6 min. / 47 secs.]   Again, a red arrow is inserted into the screenshot to identify the tree for reference.  These images refute the Plaintiffs' argument that Jennifer towed the Subject Mower to a "flat" spot on the hill in the south yard.  There is nothing flat nor safe regarding the spot Jennifer chose to release the Subject Mower.

8.      Indeed, it is counterintuitive that Jennifer towed the Subject Mower to a flat spot in the south yard.  If Jennifer towed the Subject Mower to a flat spot in the south yard, then it would not have started to roll immediately when Rebekah released the parking brake.  If resting on a flat spot, then the Subject Mower would not have begun to roll without some motive force, as TTC's expert, Mr. Enrique Bonugli opines.  *See infra,* pages 17-19 and Mr. Bonugli's report.  But the Plaintiffs seek to have it both ways—the Plaintiffs take the untenable position that Jennifer towed the Subject Mower to a safe and flat spot in the south yard ***and*** it immediately began to roll when Rebekah released the parking brake.  Neither the physical evidence nor the laws of Physics will permit the Plaintiffs to have it both ways.  It is either/or: either Jennifer towed the Subject Mower to a flat spot ***or*** the mower immediately began to roll when Rebekah released the parking brake because it was on a slope.

9.      The Plaintiffs then discuss the parking brake and the "tests" that Jennifer undertook with the help of two friends and the video of those tests.  Motions 19-28, p. 6-8.  The Plaintiffs claim that Jennifer could "not understand why the mower would not stop, despite … an electric brake on the machine."  Id. at 6.  However, Jennifer knew that the brake was a parking brake.  Indeed, the Plaintiffs explain that they "moved the control handles outboard, with the ignition on, to set the electric parking brake and make sure that it would not move when it was disconnected from the John Deere. It didn't."  Id. at p. 4.  The Plaintiffs knew that the brake deployed when moving the control handles to the center and outward position was a **parking brake** and not a service brake and they said so in their papers.

10.     The Plaintiffs then reference the tests and videos that Jennifer conducted less than 10 days after the Accident.  Dkt. 158-1, p. 8.  The Plaintiffs state that "the 'test' … was almost exactly like the incident that injured Rebekah, except done on a part of the yard (the east yard) that

went harmlessly into a flat area and not over a retaining wall." Dkt. 158-1, p. 8.  In her deposition,

Jennifer identified this safe area and marked a photograph to identify where the tests occurred with

a circle and an "X".



**Exhibit C**, Jennifer Day 2 Dep., 370:9-17, a full-page copy of Exh. 8 included therein.  Below is

an enlargement of the specific area of the exhibit marked by Jennifer in her deposition and a red

arrow is added to highlight Jennifer's mark.



11.     Jennifer's test videos and deposition testimony, including the marked exhibit above, raise the question as to why, on the day of the Accident, Jennifer did not tow the Subject Mower to the same area, "that went harmlessly into a flat area and not over a retaining wall," rather than up the hill.  Indeed, one of Jennifer's friends who participated in the test videos, Eric Wheaton, testified in his deposition that when they conducted the tests "we all just kind of agreed that I had zero risk of injury based on where it was that we were."  **Exhibit D**, Eric Wheaton Dep., 47:13-17.  He also testified that when he moved the handles in and released the parking brake, the Subject Mower did not move, and a push was required to get it rolling.  Id. at 67:16-25.

12.     The Plaintiffs argue that on the day of the Accident, Jennifer had to tow the Subject Mower up the hill "to keep the tow strap tight."  Dkt. 158-1, p. 3.  But if Jennifer's concern was to avoid possible damage to the Subject Mower or to the John Deere garden tractor, then the Plaintiffs do not make that clear.  In any event, the minimal risk of property damage that may have occurred if Jennifer towed the Subject Mower to a different spot in the yard pales in comparison to the risk of serious personal injury created by placing the Subject Mower on a hill directly facing the

flowerbed, the retaining wall, and the adjacent 6-foot drop-off.  That was a risk that Jennifer appreciated just a few days later when she conducted the test with her friends.

13.     Jennifer's decision as to where to leave the Subject Mower, combined with Rebekah forgetting to return the Bypass Pins to the proper position for mower operation, constitutes an intervening proximate cause of the Accident and cannot be excluded from the Court's review of Motion 19-28.  *Bolden v. Beiersdorf, Inc.*, No. 20-CV-150-DWD, 2022 WL 867959, at *9–10 (S.D. Ill. Mar. 23, 2022) ("Plaintiff simply fails to point to any evidence, circumstantial or direct, for a reasonable jury to conclude that her injuries would not have happened "but for" the insufficient warning on the Lotion "as to make the conclusion of causation more probable as opposed to merely possible."  Any such conclusion would be based on conjecture; however, "[i]t is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury." ") (Internal citations omitted.) *See also* TTC's Motion for Summary Judgment, p. 26-33 (Dkt. 113).

14.     The Plaintiffs' "Factual Background" does not accurately set forth the important facts and evidence in this case.  Nor does it provide support for their requests to exclude evidence. As set forth below, the Court should deny the Plaintiffs' Motion 19-28.

## II.     MEMORANDUM IN SUPPORT

15.     A motion *in limine* may be used to preclude a party from making an argument where the evidence proffered to support it is "insufficient as a matter of law." *U.S. v. Santiago–Godinez*, 12 F.3d 722, 727 (7th Cir. 1993).  Plaintiffs' Motion 19-28 fails to demonstrate that TTC's proffered evidence fails to support its defenses.  Further, the Plaintiffs bear the burden to demonstrate that the evidence offered by TTC is inadmissible on any relevant ground, for any purpose. *Coin-Tainer Co., LLC v. Pap-R-Prod. Co.,* No. 3:19-CV-234-DWD, 2021 WL 5998653 (S.D.Ill., Dec 20, 2021); see also  *Rosenberg v. Cottrell, Inc.*, No. 05-545-MJR, 2007 WL 2028789, at *1 (S.D.Ill. July 12, 2007) ("The Court should exclude evidence on a motion *in limine*

only when the evidence is clearly inadmissible on all potential grounds." (Internal citations omitted.)).

16.     Many of the issues in Plaintiffs' Motion 19-28 are vague and fail to clearly identify the evidence or testimony that they seek to preclude.  Indeed, many fail to identify specific deposition testimony or documents, or even identify the specific witness who may offer the challenged testimony.  Even if granted, TTC would be left guessing as to how to comply and the Court as to how to enforce such orders.

17.     Most of the Plaintiffs' issues fail to clearly identify the evidence or testimony that the Plaintiffs seek to exclude.  The Plaintiffs make only conclusory statements that data is lacking or is not scientific.  A district court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity.  "The court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded."  Id., *see also Coin-Tainer Co.* at *2, and *Whitfield v. Atchingson*, No. 13-CV-653-SMY-RJD, 2018 WL 10419738, at *1 (S.D. Ill. Jan. 3, 2018).  The issues listed by Plaintiffs in their Motion 19-28 fail for vagueness and, accordingly, the Court should deny them.

### A.  The Court should grant Plaintiffs' Issue No. 19 reciprocally.

18.     Plaintiffs' Issue No. 19 seeks to exclude "Undisclosed Expert Opinions and Evidence."  Dkt. 158 at 2. TTC has no objection to Issue No. 19 as stated and if applied reciprocally. However, Plaintiffs continue to request an order in limine "restricting Toro from trying to elicit or introduce any expert opinions and conclusions… of any witness, including Toro's current or former employees, that have not been timely and expressly identified under Fed. R. Civ. P. 26(a)(2)." Dkt. 158 at 2.  Such a request is entirely too vague for the Court to formulate an understandable or enforceable order for trial.  Further, TTC does not intend to introduce

previously undisclosed expert witness testimony. However, TTC has "current or former employees" that may testify with regard to their personal knowledge. To the extent that Issue No. 19 seeks to exclude any testimony of TTC's current employees regarding matters within their personal knowledge, Plaintiffs' Issue No. 19 should be denied.

**B. Plaintiffs' Issues 20 Through 26 Lack the Required Specificity and Clarity and Include Only Plaintiffs' Legal Theories Rather Than Grounds to Exclude Evidence.**

**1. Issue No. 20: Plaintiffs' Vague and Inaccurate Arguments Do Not Justify Excluding Any Evidence.**

19. Plaintiffs' Issue No. 20 seeks to exclude "Alleged Absence of Sufficient Fatalities or Serious Injuries as Proof of Reasonable Safety." Dkt. 158 at 2. Plaintiffs request "an Order in Limine restricting Toro from trying to elicit or introduce any evidence or testimony asserting that the accident mower is reasonably safe based on the alleged absence of sufficient reports to Toro of serious injuries and fatalities to indicate the mower is unsafe." *Id.* This is an improper attempt to exclude facts and evidence in the record that support TTC's defenses. These are facts relevant to the issues in this case, specifically regarding TTC's alleged knowledge and the foreseeability (or lack thereof) of an incident like Plaintiffs' occurring. *See Rivera v. Garcia*, 401 Ill.App.3d 602, 340 Ill.Dec. 224, 927 N.E.2d 1235, 1242 (2010). The absence of any similar past accidents or injuries is relevant under Fed. R. Evid. 401 because it has a tendency to make whether Plaintiffs' accident was foreseeable to TTC more or less probable.[2] Foreseeability is an element of Plaintiffs' claims that Plaintiff must prove and TTC has a right to present evidence in defense of such claims. TTC is unaware of any rule or other authority that would prevent TTC from advancing its defenses to Plaintiffs' claims at trial and this motion in limine request should be denied.

---

[2] Additionally, such an absence of records is likely admissible under Fed. R. Evid. 803(7).

### 2. Issue No. 21: The Evidence is Relevant and Directly Related to the Issues in The Case.

20.     Plaintiffs' Issue No. 21 seeks to exclude "Alleged Difference in 'Mowing Environments' and 'Use Patterns' to Justify Equipping 'Commercial' Grade ZRT Mowers with a ROPS and not 'Consumer' Level ZRT Mowers." Dkt. 158 at 2. Again, Plaintiffs improperly seek to exclude facts and evidence in the record that support TTC's defenses. Plaintiffs brought suit against TTC for design defect claims and negligence, alleging that TTC defectively designed the Subject Mower. Dkt. 17 at ¶¶ 24-32. Specifically, Plaintiffs allege that the Subject Mower should have been equipped with a ROPS. Dkt. 17 at ¶ 27. TTC is therefore permitted to rebut and defend against these allegations and claims with facts surrounding the design and characteristics Plaintiffs' mower, a residential mower, and facts surrounding the reason the Subject Mower did not come equipped with a ROPS.  TTC is unaware of any rule or other authority that would prevent TTC from advancing its defenses to Plaintiffs' claims at trial and this motion in limine should be denied.

### 3. Issue No. 22: Plaintiffs' Vague Argument Regarding Center of Gravity Does Not Justify Exclusion of Evidence.

21.     Plaintiffs' Issue No. 22 seeks to exclude "Alleged Center of Gravity Issues as Justification for Exclusion of a ROPS from Consumer ZRTs, Such as The Accident Mower Purchased by The Hillmans." Dkt. 158 at 3.  Plaintiffs' request is once again vague and fails to clearly identify the evidence that they seek to exclude.  Again, Plaintiffs seek to improperly exclude facts and evidence in the record that support TTC's defenses. Plaintiffs brought suit against TTC for design defect claims and negligence, alleging that TTC defectively designed the Subject Mower. Dkt. 17 at ¶¶ 24-32.  Specifically, Plaintiffs allege that the Subject Mower should have been equipped with a ROPS. Dkt. 17 at ¶ 27. TTC is therefore permitted to rebut and defend

against these allegations and claims with facts surrounding the design and characteristics of Plaintiffs' mower and facts surrounding the reasons why the Subject Mower did not come equipped with a ROPS. TTC is unaware of any rule or other authority that would prevent TTC from advancing its defenses to Plaintiffs' claims at trial and this motion in limine should be denied.

### 4.   Issue No. 23:  TTC Can Rebut Plaintiffs' Unsupported Claims.

22.     Plaintiffs' Issue No. 23 seeks to preclude TTC from "Attempting to Justify the Lack of An Independent Service Brake on Plaintiffs' Mower Because It Would "Conflict" With the Hydrostatic Motors, Or for Any Other Unidentified Expert Engineering/Scientific Opinion." Dkt. 158 at 3. Again, Plaintiffs improperly seek to exclude facts and evidence in the record that support TTC's defenses. Plaintiffs brought suit against TTC for design defect claims and negligence, alleging that TTC defectively designed the Subject Mower. Dkt. 17 at ¶¶ 24-32. Specifically, Plaintiffs allege that the Subject Mower should have been equipped with "an effective emergency brake or braking system that was open, obvious, and easily accessed." Dkt. 17 at ¶ 27.  The Plaintiffs's experts then failed to present an alternative design or offer any expert opinions to support the claim.  *See* TTC's Motion to Exclude Plaintiffs' Expert Thomas Berry, p. 13-14.  TTC is therefore permitted to rebut and defend against these unsupported allegations and claims with facts surrounding the design and characteristics of Plaintiffs' mower and facts surrounding the reasons why the Subject Mower did not and should not be equipped with "an effective emergency brake or braking system." TTC is unaware of any rule or other authority that would prevent TTC from advancing its defenses to Plaintiffs' claims at trial and this motion in limine should be denied.

### 5. Issue No. 24:  Compliance With Applicable Standards is Relevant.

23.     Plaintiffs' Issue No. 24 asserts  that "Toro Should Be Precluded from Arguing That the Accident Mower Conformed to The State of The Art in Safe Mower Design When It Was Manufactured In 2013, Or That It Complied with ANSI Standards." Dkt. 158 at 4. Again, Plaintiffs improperly seek to exclude facts and evidence in the record that support TTC's defenses. Plaintiffs brought suit against TTC for design defect claims and negligence, alleging that TTC defectively designed the Subject Mower. Dkt. 17 at ¶¶ 24-32. In a design-defect product liability case, "[t]o establish that a product is unreasonably dangerous, and thus defective, a plaintiff may proceed under two alternative methods of proof, known as the 'consumer-expectation test' and the 'risk-utility test.'" *Walker v. Macy's Merchandising Group Inc.*, 288 F. Supp. 3d 840, 857 (N.D. Ill. 2017). Whether the design used by TTC conformed with design standards of the industry and design guidelines provided by an authoritative voluntary association are direct considerations under the risk-utility test. *Winters v. Fru–Con Inc.*, 498 F.3d 734, 744 (7th Cir. 2007). The same are also considerations in support of TTC's defense against Plaintiffs' negligence claim (that TTC met or exceeded the applicable standard of care in designing the Subject Mower). TTC is certainly allowed to offer evidence that it met or exceeded industry standards under ANSI and that its product was state of the art.  This motion *in limine* should be denied.

### 6. Issue 25:  Expert Testimony As To The Cause of the Accident Is Appropriate.

24.     Plaintiffs' Issue No. 25 seeks to exclude "Experts Expressing Legal Opinions Regarding "The Cause" Of Injury, Or Such Legal Concepts Described in The Jury Instructions as Negligence, Fault and Proximate Cause." Dkt. 158 at 4. But expert witnesses may opine on ultimate issues in the case, such as causation of accident and injury and preventative measures. Fed. R. Evid. 704(a) and accompanying Advisory Committee Notes.  Further, Plaintiffs' argument

is belied by the opinions and testimony of the Plaintiffs' own experts on the same issues of causation.

### 7. Issue No. 26: Again, Compliance With Applicable Standards is Relevant.

25.     Plaintiffs' Issue No. 26 asserts that "Toro Should Not Be Allowed to Claim That the Accident Mower Was Reasonably Safe Because It Complied with Private, Industry Consensus Standard B.71.1." Dkt. 158 at 5. Again, as discussed in response to Issue No. 24, Plaintiffs improperly seek to exclude facts and evidence in the record that support TTC's defenses. Plaintiffs brought suit against TTC for design defect claims and negligence, alleging that TTC defectively designed the Subject Mower. Dkt. 17 at ¶¶ 24-32. In a design-defect product liability case, "[t]o establish that a product is unreasonably dangerous, and thus defective, a plaintiff may proceed under two alternative methods of proof, known as the 'consumer-expectation test' and the 'risk-utility test.'" *Walker*, 288 F. Supp. 3d at 857. Whether the design used by TTC conformed with design standards of the industry and design guidelines provided by an authoritative voluntary association are direct considerations under the risk-utility test. *Winters*, 498 F.3d at 744 (7th Cir. 2007). The same are also considerations in support of TTC's defense against Plaintiffs' negligence claim (that TTC met or exceeded the applicable standard of care in designing the Subject Mower). TTC is certainly allowed to offer evidence that it met or exceeded industry standards under ANSI. This motion in limine should be denied.

**C. The Court should deny Plaintiffs' motions to partially exclude Enrique Bonugli and Dr. Lisa Gwin (Issue Nos. 27 and 28).**

26.     Plaintiffs' Issue No. 27 and 28 seek to exclude some opinions from TTC's expert witnesses Enrique Bonugli and Dr. Lisa Gwin.  Dkt. No. 158 at 6. Plaintiffs move in limine to exclude some of the experts' opinions on purported "reliability" and "relevance" grounds under *Daubert*. Dkt. 158 at 5-6.[3]  But Plaintiffs' arguments are purely criticisms that go to the weight and credibility of the opinions, not reliability or relevance under the Federal Rules of Civil Procedure or *Daubert*. Dkt. 158-1 at 24 ("[Mr. Bonugli]… was absolutely wrong.").  Nevertheless, TTC provides the following in support of the admissibility of Mr. Bonugli and Dr. Gwin's opinions.

**1. Plaintiffs cannot use their intentional destruction of the accident site as both a sword and a shield.**

27.     Plaintiffs materially altered the slope and landscaping of the hill upon which the incident occurred, failed to properly preserve evidence regarding many of the important physical characteristics of the site, and failed to notify TTC in advance of the destruction or otherwise allow TTC to take steps to sufficiently preserve this vital evidence. Fed. R. Civ. P. 37; *see American Family Ins. Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 625-30, 166 Ill. Dec. 93, 585 N.E.2d 1115 (2d Dist. 1992) (affirming trial court's exclusion of evidence as a sanction after subject vehicle was destroyed). But before Plaintiffs destroyed the scene of the accident, Plaintiffs permitted their expert witness, Mr. David Bilek, to inspect and analyze the accident site.

28.     Plaintiffs criticize Mr. Bonugli's methods and ask the Court to exclude his opinions on the basis that he failed to test at the accident site without acknowledging that *Plaintiffs* intentionally destroyed the accident site before allowing TTC or Mr. Bonugli a chance to inspect

---

[3] Plaintiffs do not challenge Mr. Bonugli or Dr. Gwin's qualifications.

the site or conduct any testing. Dkt. 158-1 at 21 ("Plaintiffs would point out certain significant points regarding the 'tests', which are the sole basis for Bonugli's opinions… The tests were done on a completely different part of the yard with a different slope and different turn than the accident site."), 22 ("…Bonugli did no tests of his own…"). Mr. Bonugli had no choice but to use the Plaintiffs' test videos as part of his analysis because Plaintiffs destroyed the accident site and failed to preserve all the needed data.

29.     As Mr. Bonugli explains in his attached affidavit, Mr. Bilek's collection of images and data of the accident site was flawed and insufficient; he failed to collect images from appropriate angles, the images were over-exposed and he did not perform a 3D scan of the site. The Affidavit of Mr. Bonugli is attached hereto as **Exhibit E**, see paragraphs 6-8.  Mr. Bonugli's analysis of the available data from the test videos does not render his opinions unreliable, and certainly not irrelevant. *See* Bonugli Dep., 50:11-21, 84:22-85:3 ("A. No sir but you asked me earlier about any kind of testing or anything that I would have done or that I did, and I did not; however, you know, had I had access to that area, that would be something that I would have suggested, certainly, but it wasn't available to me. It was already gone.").

## 2. Mr. Bonugli's opinions are relevant to the issues in this case.

30.     Evidence is relevant if it has a tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. Mr. Bonugli is an accident reconstructionist at Biodynamic Research Corporation. *See* Exh. E, and Mr. Bonugli's CV attached thereto as Exh. E-1, and his report attached thereto as Exh. E-2.  Mr. Bonugli's 36-page report provides the details of his analysis of the evidence and his detailed opinions regarding the reconstruction of Plaintiffs' accident. Id. at 1-36.  Mr. Bonugli's analysis and opinion tend to make Plaintiffs' claims less probable, and TTC's defenses more probable. Therefore, Mr. Bonugli's opinions are relevant to the issues in this case.

### 3. Mr. Bonugli's opinions are reliable.

31.     To determine the reliability of expert testimony, Rule 702 directs courts to consider whether an expert's opinion is "based on sufficient facts or data," whether the opinion is "the product of reliable principles and methods," and whether that methodology has been "reliably applied ... to the facts of the case." Fed. R. Evid. 702(b)–(d). Instead of discussing the applicable legal standard, Plaintiffs instead argue that Mr. Bonugli's opinions are "wrong." Dkt. 158-1 at 24; *see In re Testosterone Replacement Therapy Products Liability Litigation*, No. 17C3775, 2023 WL 7183216, at *6 (N.D. Ill. Nov. 1, 2023) (slip copy) (denying motion to exclude expert causation opinions stating "[t]he flaws that Actavis highlights are more properly addressed through the 'traditional and appropriate means of attacking shaky but admissible evidence': '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'".).

32.     Here, Mr. Bonugli's opinions are based on hundreds of pages of materials (outlined in his report), which include videos and photographs of the Subject Mower, the accident site, deposition transcripts, Plaintiffs' expert David Bilek's materials (including Mr. Bilek's incomplete drone survey of the accident cite), Plaintiffs' medical records, and more.  Exh. E-2, Bonugli Report at 2-3.  Mr. Bonugli discusses at length how he applied his methodology (Reverse Camera Projection) to the facts of this case and how he reached his conclusions. Id. at 23-32.  Plaintiffs did not provide any authority in support of their contention that Mr. Bonugli's opinions are "unreliable."  Although the Plaintiffs make vague and imprecise criticisms of Mr. Bonugli's purported failure to collect data, he explains in his affidavit why testing and data collection after the Plaintiffs destroyed the accident site would not have resulted in useful data and his careful decision to analyze the test videos provided by the Plaintiffs as a reasonable substitute.  Therefore, the Court should deny Plaintiffs' Issue No. 27 to partially exclude Mr. Bonugli's opinions. *See*

*Lapsley v. Xtek, Inc.*, 689 F.3d 802 (7th Cir. 2012) (holding that district court did not abuse its discretion in concluding that expert's causation testimony was reliable in product liability case).

### 4.  Dr. Gwin's opinions are relevant to the issues in this case.

33.     Evidence is relevant if it has a tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. Dr. Gwin is licensed board-certified physician as well as a biomechanical consultant at Biodynamic Research Corporation. *See* **Exhibit F**, Affidavit of Dr. Lisa Gwin, her CV attached thereto as Exh. F-1, and her report attached thereto as Exh. F-2 *See* Gwin Report at 2. Dr. Gwin provided a 14-page report analyzing the evidence and providing opinions regarding Plaintiffs' injuries and the likely outcome if the Subject Mower had been equipped with ROPS. *Id.* at 1-14. Dr. Gwin's analysis and opinion undoubtedly have a tendency to make Plaintiffs' claims less probable, and TTC's defenses more probable. Therefore, Dr. Gwin's opinions are relevant to the issues in this case.

### 5.  Dr. Gwin's opinions are reliable.

34.     Again, instead of discussing the applicable legal standard, Plaintiffs instead argue with the merits of Dr. Gwin's opinions. Dkt. 158-1 at 29 (characterizing Dr. Gwin's Figure 1 as a "gross mischaracterization"); *see In re Testosterone Replacement Therapy Products Liability Litigation*, 2023 WL 7183216 at *6. Here, Dr. Gwin's opinions are based on hundreds of pages of materials (outlined in her report), which include videos and photographs of the Subject Mower, the accident site, deposition transcripts, Plaintiffs' expert David Bilek's materials (including Mr. Bilek's incomplete drone survey of the accident cite), Plaintiffs' medical records, and more. *See* Exh. F-1, Dr. Gwin Report, pgs. 3-4.  Again, these are some of the same materials Plaintiffs' experts relied on.

35.     Based on all of these facts, Dr. Gwin conducted her own three-dimensional model of the Accident to analyze Rebekah Hillman's injury outcome had the Subject Mower been equipped with a ROPS as proposed by Plaintiffs' expert Thomas Berry. *Id.* at 7-10. Dr. Gwin explained in detail how she applied her modeling to the facts of this case. *Id.*   Plaintiffs did not provide any authority in support of their contention that Dr. Gwin's opinions are "unreliable." Plaintiffs only claim that Dr. Gwin did not perform any testing.  As she explains in her Affidavit, it would have been unethical to perform tests with a person, a mower and a 6-foot drop-off, as was the case here.  Instead, she followed peer-reviewed procedures and methodologies to perform her modeling, without risking bodily harm to anyone.  Exh. F, para. 16.

36.     The Plaintiffs also criticize Dr. Gwin by incorrectly claiming that she believed that the mower, with Rebekah belted on it, would have flipped as it rolled over the retaining wall and landed upside down.  Dkt. 158-1, p. 29.  But Dr. Gwin holds no such opinion.  As she explained in her deposition, and again in the attached Affidavit, it is her position that the mower landed on its front near the base of the retaining wall and then tipped over.  (Exh. F, para. 8.)  This is the same dynamic that Plaintiffs allege.

37.     The Plaintiffs also claim that actual testing confirms that actual people in actual mower accidents equipped with ROPS can and do move to the side or rearward to prevent head injuries or other serious injuries.  Dkt. 158-1, p. 31-32 and figure 7.  The Plaintiffs cite Figure 7 included in their brief but no other materials, evidence or documents.  However, Figure 7 is nothing more than a person sitting on what appears to be a John Deere mower parked on a sidewalk equipped with ROPS.  Dr. Gwin states in her Affidavit that no such testing or data was provided in this case and no evidence produced, including the reports of the Plaintiffs' expert Thomas Berry,

supports a conclusion that Rebekah could have avoided serious head and/or neck injuries with the ROPS proposed by Mr. Berry. Exh. F., paras. 9-11, and 14-15, and Exh. F-3 attached thereto.

38.    Therefore, the Court should deny Plaintiffs' Issue No. 28 to exclude Dr. Gwin's opinions. *See Lapsley*, 689 F.3d 802.

### III.    CONCLUSION

39.    For the foregoing reasons, Defendant The Toro Company requests that the Court grant Issue No. 19 as stated reciprocally, deny Plaintiffs' *Daubert* challenges and Motions in Limine Issue Nos. 20-28, and for such other and further relief to which it may show itself justly entitled.

Dated: November 27, 2023                          Respectfully submitted,

/s/ Kirk T. Florence
Kirk T. Florence
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, TX  75201
Tel:    (214) 922-7100
Fax:    (214) 279-9194
Email: kflorence@kilpatricktownsend.com

/s/ Thomas G. Grace
Thomas G. Grace
Parsky & Galloway, LLC
120 North LaSalle St., Suite 3200
Chicago, Illinois 60602
Tel:    312-551-2130
Fax:    312-551-2131
Email: TGG@pg-lawoffice.com

Attorneys for Defendant
The Toro Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for that counsel or parties who are not authorized to receive electronic Notice of Electronic Filing:

STEVEN J. CROWLEY
EDWARD J PRILL
ANDREW MAHONEY
CROWLEY & PRILL
3012 Division Street
Burlington, Iowa 52601
Phone:          (319) 753-1330
Email:          SCrowley@CrowleyPrillattorneys.com
                EPrill@CrowleyPrillAttorneys.com
                AMahoney@CrowleyPrillAttorneys.com

JASON M. SCHIFFMAN
SCHIFFMAN FIRM, LLC
1300 Fifth Avenue
Pittsburgh, PA  15219
Phone:  412-288-9444
Email:          Jason@SchiffmanFirm.com

**Parsky & Galloway, LLC**

/s/ Thomas G. Grace
Thomas G. Grace,
*Attorney for Defendant, The Toro Company*

Thomas G. Grace, Esq.
Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL  60602
Tel. 312-551-2130
tgg@pg-lawoffice.com