UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, Individually and as Next Friend of P.M.., a minor, AND JENNIFER HILLMAN<br><br>Plaintiffs,<br><br>v.<br><br>THE TORO COMPANY,<br><br>Defendant. | NO. 4:21-cv-04081-SLD-JEH<br><br>(ORAL ARGUMENT REQUESTED) |

### DEFENDANT THE TORO COMPANY'S EMERGENCY MOTION TO STRIKE OR IN THE ALTERNATIVE FOR ADDITIONAL TIME TO FILE A RESPONSE

COMES NOW Defendant, The Toro Company ("Defendant" or "TTC"), by and through its attorneys, and pursuant to Local Rule 37.3 and Section X of Magistrate Judge Hawley's Standing Order and moves this Court to strike *Plaintiffs' Motion to Exclude Enrique Bonugli and All of His Work Product and Opinions At The Time Of Trial for Failure to Disclose Basis for Opinions* (Dkt. 165), *Brief in Support of Their Motion to Exclude Expert Enrique Bonugli* (Dkt. 165-1) and the *Affidavit of David J. Bilek, P.E.* (Dkt. 165-5) (hereinafter referred to as Plaintiffs' "Late Motion," "Late Brief" and "Late Bilek Affidavit" and collectively "Late Motion Papers") or in the alternative grant TTC an additional 7 days to respond. In support of this Motion to Strike or In the Alternative, for Additional Time to Respond, Defendant states as follows:

1

## PROCEDURAL HISTORY AND PLAINTIFFS'
## FAILURE TO MEET THE APPLICABLE DEADLINES

1. Plaintiffs' Late Motion Papers are untimely because they missed either the close of discovery or the deadline to file *Daubert*-related motions. Whether the Court views the Late Motion Papers as a discovery motion or a *Daubert* motion, they are late and should be stricken.

2. Discovery in this matter closed on August 18, 2023, pursuant to Mag. Judge Hawley's Text Order on July 27, 2023:

> TEXT ORDER granting 100 Joint Motion for Extension of Discovery and Dispositive Motion deadlines. **Completion of Discovery due by 8/18/2023.** Dispositive Motions due by 9/8/2023. Proposed Pretrial Order due by 12/5/2023. Final Pretrial Conference reset to 12/12/2023 at 10:00 AM before Chief Judge Sara Darrow. Jury Trial reset for 2/5/2024 at 9:00 AM before Chief Judge Sara Darrow. Status Conference set for 8/11/2023 at 10:00 AM via telephone before Magistrate Judge Jonathan E. Hawley. Counsel are to phone into conference by calling (551) 285-1373 and enter the Meeting ID: 16009516536 when prompted to do so. Entered by Magistrate Judge Jonathan E. Hawley on 7/27/23. (WG) (Entered: 07/27/2023)

(7/27/2023 Text Order, **bold** emphasis added.)

3. Section VIII of Mag. Judge Hawley's Standing Order provides that "[t]he parties may not raise a discovery dispute with the Court after the relevant discovery deadline has passed; all discovery disputes must be brought to the Court's attention before the relevant discovery deadline passes."

4. Plaintiffs' Late Motion Papers filed more than three months after the close of discovery make a new claim that the Plaintiffs and their expert did not receive documents in a particular form from TTC and its expert. "Mr. Bilek [Plaintiffs' retained liability expert] ultimately discovered that the data files, photographs and other files arising out of Bonugli's

2

work product and sent by Bonugli, had been altered from their original (native) state so that they could not be used to check the accuracy and reliability of the basis for Bonugli's Opinions." (Dkt. 165, p. 3-4). As explained below, Plaintiffs received the documents as Plaintiffs had requested them, in PDF form, and TTC had stated since July 2022 that it was prepared to produce any document in its native form if the Plaintiffs so desired.

5.      The Plaintiffs' Late Motion Papers offer the Court no explanation as to why the Plaintiffs did not raise this issue (a) before their expert produced his initial report on March 17, 2023, (b) before his rebuttal report on July 3, 2023, (c) before proceeding with the deposition of Mr. Bonugli; (d) during the deposition of Mr. Bonugli on July 20, 2023; (e) before the close of discovery on August 18, 2023; or (f) before the October 30, 2023 deadline to file *Daubert* motions (Dkt. 158 and 158-1). All the while, TTC's stood ready to produce any documents that Plaintiffs desired to receive in the form that they required. TTC made this offer in writing nearly 18 months ago. Plaintiffs' failure to make the simple request and their unreasonable delay dictate that the Court should strike their Late Motion Papers without further proceedings.

6.      Regardless, Mag. Judge Hawley's Standing Order, Section VII, subparagraph 1, provides that "[f]ailure to confer within a reasonable period of time after learning of the dispute may be deemed by the Court to constitute a waiver." The above chronology illustrates Plaintiffs' serial waivers of the issues raised in their Late Motion Papers.

7.     Indeed, Plaintiffs' expert who now supports the Late Motion Papers testified in his deposition months ago that he had all the information that he needed:

Q. And the same question, at the moment, you're not planning on doing any more work or analysis in the case; is that true?

A. That's -- yes, I would say that's true. I – **I believe I have all the information that I need**, so it depends on how this case continues to unfold.

Q. Have we discussed all of your opinions in this case?

A. I -- I think so. I'm just, obviously, thinking off the top of my head, but you've got my reports. We've been through those.· My opinions are there in my reports, so I think we have.

Selected pages from the August 14, 2023 deposition of David John Bilek are attached hereto as **Exhibit 1**, 152:25 to 153:11 (**bold** emphasis added).

8.     Mr. Bilek's deposition occurred just 4 days before the close of discovery. His testimony makes clear that either he had not looked at the documents produced regarding Mr. Bonugli's October 2022 photographing and scanning of Plaintiffs' yard or had no need to look at documents to formulate his opinions, and likely both. His deposition testimony makes clear that the Plaintiffs and their expert want to raise discovery issues now, after all applicable deadlines have passed, that could have been easily raised and readily resolved long ago.

9.     The 9/22/2023 Text Order stated as follows:

TEXT ORDER entered by Chief Judge Sara Darrow on September 22, 2023. The 112 Joint Motion to Set Deadlines for Filing Motions in Limine and Daubert Motions is GRANTED. Any motions in limine and **motions pursuant to Federal Rule of Evidence 702 and Daubert are due by October 30, 2023**. Responses are due by November 27, 2023. (AAK) (Entered: 09/22/2023)

(9/22/2023 Text Order, **bold** emphasis added.) Yet Plaintiffs filed their Late Motion Papers on November 27, 2023 – nearly a month after the agreed October 30, 2023 deadline.

10.  Plaintiffs' Late Motion Papers request "that Enrique Bonugli be excluded from testifying at trial for the reasons cited …" and seek the exclusion of Mr. Bonugli's opinions and testimony at trial.  (Dkt. 165, p. 8.)  Plaintiffs reference discovery rules Fed.R.Civ.P. 26 and 37 in the title of their Late Motion Papers in the apparent hope of avoiding the application of the October 30, 2023 deadline.  However, Plaintiffs cite *Daubert* in their Late Motion (Dkt. 165, p. 4) and the arguments relate directly to F.R.E. 702 or *Daubert*.  As explained below, Plaintiffs' Late Papers raise arguments akin to F.R.E. 702 and *Daubert* and simply seek an unjustified chance to bolster their *Daubert* challenges (Dkt. 158 and Dkt. 158-1.)

11.  Since November 2022, the Plaintiffs have filed six different discovery-related motions and Mag. Judge Hawley denied nearly all of them.  *See* Dkt. 64, Dkt. 71, Dkt. 79, Dkt. 93, Dkt. 96 and Dkt. 105.  Despite the Plaintiffs' prolific motion practice in this case, they never raised the current issue and should be precluded from doing so now.

**TTC PROVIDED BONUGLI'S DOCUMENTS IN PDF FORMAT AS REQUESTED, AND IN NATIVE FORMAT, AND HID NOTHING FROM THE PLAINTIFFS**

12.  The Plaintiffs raised the issue of the native versions of Mr. Bonugli's photos and scans in a letter dated October 11, 2023, the day before a hearing before Mag. Judge Hawley on Plaintiffs' Motion for Sanctions, which was denied.  (Dkt. 165-6.)  During that hearing, it became clear that Mag. Judge Hawley considered discovery in this matter to be closed.

13. Nevertheless, Plaintiffs' counsel contacted TTC's counsel regarding his letter weeks later, on November 1, 2023. (Dkt. 165-7.) TTC responded through correspondence on November 13, 2023. (Dkt. 165-8.) In that letter, TTC's counsel reminded Plaintiffs' counsel that he had requested that TTC produce documents in PDF form from early in the case and that TTC had long ago agreed to produce any documents in their native file format when requested.

14. Fifteen months before Plaintiffs raised their current concern, on July 6, 2022, Plaintiffs explicitly demanded that TTC produce documents in PDF format without compromise or consideration of the concerns raised by TTC in the spirit of compromise and cooperation. In his letter, Plaintiffs' counsel wrote the following in response to TTC's inquiry about Plaintiffs' preferred data format for production of electronic files:

> 5. <u>Data Format</u>. We need to confirm what format for the documents is best. If we produce some of the more specialized documents natively (CAD drawings, etc.), your team will need specialized file viewers for that material. We simply want to confirm we're providing in a format that's reviewable.
>
> Response to Issue 5.
>
> Once again, our reading of the Court's order makes it clear that the Court wants no more complications using, reading or scanning any produced materials from Toro. (See Order page 9)
>
> **So, please make the documents clear, legible PDF's that can be scanned using publicly available software** and without any markings or modifications that would impair reading, or scanning. The pages must be labeled and marked for identification so we know what documents belong together. Any reference to confidentiality must be inobtrusive. (sic)

A copy of the July 6, 2022 email and the attached letter from counsel for the Plaintiffs is attached hereto as **Exhibit 2** (**bold** emphasis added).

15. TTC then proceeded to produce documents consistent with Plaintiffs' requirements and instructions. TTC made its practice clear and unequivocal in its supplemental responses to document requests served on the Plaintiffs just a few weeks after receiving the letter from Plaintiffs' counsel. When TTC served the Defendant's Second Supplemental Responses to Plaintiffs' First and Second Requests for Production of Documents on July 21, 2022, it included the following Preliminary Statement:

> The Plaintiffs requested that Defendant produce the documents in legible PDF format and Defendant has complied with that request to the extent possible, with a few unavoidable exceptions, such as videos and other file types that are not viewable when converted to PDF. . . . *Should Plaintiffs later determine that they require those converted documents in their native format and identify such documents by Bates number, Defendant stands ready to produce the documents in their native format.* Defendant has produced some documents that could not be converted to PDF format in their native format and, for those documents, has provided a slipsheet placeholder as well.

(*Italic* emphasis supplied.) A copy of TTC's Second Supplemental Responses to Plaintiffs' First and Second Set of Requests for Production dated July 21, 2022 is attached hereto as **Exhibit 3**, see Preliminary Statement, p. 2-3.

16. Consistent with Plaintiffs' format demand and TTC's prior discovery responses, TTC's November 13, 2023 letter (Dkt. 165-8) listed the specific Bates numbers that TTC believed that the Plaintiffs sought in native file format and requested that Plaintiffs' counsel simply "confirm that this is the Bates range that you request or alternatively, if our assumption is incorrect and these are not the documents you request, then please provide us with the Bates ranges of documents that you do require." Id.

17. Counsel for the Plaintiffs responded with a letter the next day but neglected to either confirm the Bates number range previously identified as the documents needed in native file format or provide an alternative Bates range. (Dkt. 165-10.)

18.     The documents referenced in the Late Motion Papers resulted from Mr. Bonugli's inspection of the Plaintiffs' yard and adjacent property where the incident occurred. The inspection by Mr. Bonugli occurred with the permission of and in the presence of counsel for the Plaintiffs on October 27, 2022. There is no secret as to what Mr. Bonugli did while he was there – ground photographs, aerial photographs with a drone and a scan.

19.     A short time after the accident scene inspection, and a second inspection of the incident mower, TTC produced the photographs and scans collected by Mr. Bonugli. A copy of the email dated November 14, 2022 to Plaintiffs' counsel with a link to the files that included the photographs and scan – converted to PDF documents in conformity with Plaintiffs' counsel' prior request – is attached hereto as **Exhibit 4**. Plaintiffs did not respond or request any of the documents in a native file format.

20.     On July 18, 2023, before the Plaintiffs conducted the deposition of Mr. Bonugli, TTC's counsel sent an email to counsel for the Plaintiffs that provided Mr. Bonugli's documents. The email stated, "[p]lease note that his photos and other data collected during his inspection of the site and the mower have been previously produced and are not repeated in the attached folder." A copy of the July 18, 2023 email is attached hereto as **Exhibit 5**. TTC was not only completely transparent about the production of Mr. Bonugli's files, but was consistent with the terms of the parties' stipulation regarding the production of expert files. The Stipulation states that "[t]he witness may exclude production of copies of materials identified in his/her report if the materials are already in the possession of the opposing party …" Stipulation of the Parties Regarding Expert Witness Files, p. 1 (Dkt. 165-9).

21. On August 18, 2023, the close of discovery in this case according to the 7/27/2023 Text Order, TTC produced all the documents relating to its experts again, this time with Bates numbers organized by each specific expert. A copy of the transmittal letter from TTC's counsel to Plaintiffs' counsel is attached hereto as **Exhibit 6**. That production included Mr. Bonugli's files, Bates numbered to be clearly identified and separated as his files and produced as native files.

22. Once again, the Plaintiffs expressed no concern over the production of Mr. Bonugli's files. Nor did they make any request to receive the documents in any other form or format.

23. Despite the production of documents and complete transparency, Plaintiffs claim that "Bonugli's 'hiding' of the data upon which he relies, was anything but substantially justified or harmless … was intentional and required Bonugli to actually modify or alter his files so that they were useless in trying to check his work or determine if he was accurate." (Late Brief, p. 10, Dkt. 165-1.) There was no "hiding" of data or effort by Mr. Bonugli to make the data useless. The only modification of the files was to Bates label them for production.

24. Indeed, TTC stood ready – and had represented in writing – to produce the same documents in native file format upon the Plaintiffs' request. No request ever came.

25. Paradoxically, had TTC initially produced Mr. Bonugli's documents in their native file format, it would have been at risk for a separate motion by Plaintiffs accusing TTC of violating the agreement to produce the documents as readable PDF documents. Neither TTC nor its retained expert Mr. Bonugli would benefit in any way from modifying the documents, as the Plaintiffs claim. Indeed, TTC has done everything possible to avoid the

9

exact type of motion that the Plaintiffs have now filed, yet the Plaintiffs filed it anyway. Like the numerous discovery motions that preceded this one, Plaintiffs' Late Motion Papers have no merit.

### PLAINTIFFS' LATE MOTION PAPERS ARE NOTHING MORE THAN AN UNTIMELY SECOND ATTEMPT TO EXCLUDE MR. BONUGLI UNDER F.R.E. 702 and *DAUBERT*

26. Plaintiffs timely filed their "Daubert Challenges and Motions in Limine" on October 30, 2023, pursuant to the 9/22/2023 Text Order. (Dkt. 158.) In that motion, Issue No. 27 specifically sought to exclude the opinions of Mr. Bonugli regarding the "motive force" that initiated the mower to begin its roll down the hill. (Dkt. 158-1, p. 20-21.) The Plaintiffs also criticized Mr. Bonugli's reliance on an evaluation of the videos of Plaintiff Jennifer Hillman's rolling and braking tests she conducted in her yard shortly after the incident (and before the hill was forever altered). Indeed, the Plaintiffs argued:

> The tests were done on a completely different part of the yard with a different slope and different turf than the accident site. Bonugli uses an average slope over a large area of 9.5 degrees by, what he calls, photogrammetry, by laying a point cloud over the west yard where the tests were done …

Id. at p. 21. The Plaintiffs' criticism of Mr. Bonguli centered around the issues of slope, rolling resistance and braking.

27. Apparently dissatisfied with their Daubert challenge, the Plaintiffs filed their Late Motion Papers with the hope of getting a second bite of the same apple. Much of the Late Motion Papers are devoted to Mr. Bonugli's use and analysis of the same videos of the tests that Plaintiff Jennifer Hillman conducted and captured on video. The Plaintiffs make the same argument as the earlier motion arguing that "[b]oth tests were run in a completely

different portion of the yard with different slope than the accident area." (Late Brief, p. 4, Dkt. 165-1.)

28. This time, the Plaintiffs provided an affidavit of their expert, Mr. David Bilek, to support their motion. Even though Mr. Bilek previously produced a report and a rebuttal report and testified in August 2023 that he had "all the information that I need," (Exhibit 1, 152:25 to 153:11), the Plaintiffs now impermissibly attempt to supplement Mr. Bilek's opinions, further explain his opinions and add to the record in this case by submitting the Late Bilek Affidavit. The Plaintiffs should not be permitted to ignore deadlines and redo their *Daubert* motion.

29. Just like their earlier *Daubert* motion, Plaintiffs cite the tests conducted by Plaintiffs' expert Thomas Berry. Compare Plaintiffs Late Brief, p. 5 (Dkt. 165-1) to Plaintiffs earlier *Daubert* Challenges and Motions *in Limine*, p. 27-28 (Dkt. 158-1).

30. In both the Daubert Challenges and the Late Brief, the Plaintiffs argue that Mr. Bonugli did no testing. Compare Plaintiffs Late Brief, p. 6 (Dkt. 165-1) to Plaintiffs' earlier Daubert Challenges and Motions in Limine, p. 24-25 (Dkt. 158-1).

31. TTC has responded to all of these arguments in its Response to Plaintiffs' *Daubert* Challenges and Motions *in Limine* Issues 19-28. (Dkt. 175.) The Plaintiffs should not be permitted to recycle their arguments and force TTC to respond to them again.

32. The Plaintiffs' recent filing is nothing more than a new spin on their earlier motion but now filed late. Accordingly, the Court should strike the Late Motion Papers as untimely and spare the Court and TTC the burden of addressing similar arguments a second time.

**PLAINTIFFS' LATE MOTION PAPERS ARGUE THE FACTS OF THE CASE, MISSTATE THE RECORD AND UNTIMELY SUPPLEMENT THE RECORD AS TO MOTIONS THAT ARE FULLY BRIEFED AND PENDING BEFORE THE COURT**

33. As with other motions, the Plaintiffs devote many pages to reciting their version of the facts of the case (including photos and related commentary they have submitted numerous times before), make representations and interpret deposition testimony, and try to explain the incident in a way that excuses the Plaintiffs' conduct.

34. TTC has addressed this same approach by the Plaintiffs several times, including many of their earlier discovery motions. More recently, TTC addressed this tilted version of the facts and testimony in response to Plaintiffs' motions in limine and Daubert motions (Dkt. 174 and 175), as well as in its pending Motion for Summary Judgment and its reply brief thereto (Dkt. 113 and 147). TTC is now burdened to once again respond to Plaintiffs' numerous factual claims and arguments which may relate to any number of motions pending before the Court, as it has done numerous times before.

35. TTC requests that the Court strike the Plaintiffs' Late Motion Papers as untimely. Forcing TTC to respond fully to the Late Motion Papers only for the Court to strike Plaintiffs' filings as late would unfairly burden the Court and TTC and add to the long list of unnecessary and unfounded discovery and other motion practices by the Plaintiffs.

36. Alternatively, if the Court is inclined to allow the untimely Late Motion Papers, then TTC requests an additional 7 days to file a complete response that addresses all the arguments, factual assertions and supplements contained therein.

For the foregoing reasons, Defendant The Toro Company respectfully requests that the Court grant its Emergency Motion and strike Plaintiffs' Late Filed Papers (Dkt. 165) including the Late Bilek Affidavit (Dkt. 165-5), or in the alternative, grant it additional time to respond as set forth above.

                                             Respectfully submitted,

                                             **Parsky & Galloway, LLC**

                                             /s/ Thomas G. Grace
                                             Thomas G. Grace,
                                             *Attorney for Defendant, The Toro Company*

Thomas G. Grace, Esq.
Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL 60602
Tel. 312-551-2130
tgg@pg-lawoffice.com


Kirk T. Florence, Esq.
Kilpatrick Townsend & Stockton, LLP
2001 Ross Ave., Suite 4400
Dallas, TX 75201
Telephone:    214-922-7139
Email: KFlorence@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 8, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for that counsel or parties who are not authorized to receive electronic Notice of Electronic Filing and *served directly on Mag. Judge Hawley and counsel listed below pursuant to the Court's Standing Order (Version 4.0 Effective April 7, 2022), Section X*:

    HON. JONATHAN E. HAWLEY
    U.S. MAGISTRATE JUDGE
    Email:          hawley@ilcd.uscourts.gov

    STEVEN J. CROWLEY
    EDWARD J PRILL
    ANDREW MAHONEY
    CROWLEY & PRILL
    3012 Division Street
    Burlington, Iowa 52601
    Phone:          (319) 753-1330
    Email:          SCrowley@CrowleyPrillattorneys.com
                  EPrill@CrowleyPrillAttorneys.com
                  AMahoney@CrowleyPrillAttorneys.com

    JASON M. SCHIFFMAN
    SCHIFFMAN FIRM, LLC
    1300 Fifth Avenue
    Pittsburgh, PA  15219
    Phone:  412-288-9444
    Email:          Jason@SchiffmanFirm.com

    **Parsky & Galloway, LLC**

    /s/ Thomas G. Grace
    Thomas G. Grace,
    *Attorney for Defendant, The Toro Company*

Thomas G. Grace, Esq.
Parsky & Galloway, LLC
120 N. LaSalle St., Suite 3200
Chicago, IL  60602
Tel. 312-551-2130
tgg@pg-lawoffice.com