UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; AND JENNIFER HILLMAN<br><br>Plaintiffs,<br>v.<br><br>THE TORO COMPANY, a corporation,<br><br>Defendant. | No. 4:21-cv-04081-SLD-JEH |

**PLAINTIFFS REPLY TO TOROS RESPONSE/RESISTANCE TO PLAINTIFFS' MOTIONS IN LIMINE**

**(Local Court Rules 6 and 7)**

COME NOW the plaintiffs, by and through their counsel of record, and ask the Court to accept this REPLY to Toro's Response/Resistance to Plaintiffs' Motions in *Limine* (Dkt.174 and Dkt.175).

## I.   INTRODUCTION

1. On October 30, 2023, Plaintiffs filed their General Motions in *Limine* (Dkt.155), Issues 1 through 18, and Brief in Support of those "general" Motions in *Limine* (Dkt.155-1 and Exhibits A through G).

2. On November 27, 2023, Toro filed its Response to Plaintiffs' MILs 1-18 and Memorandum of Law combined in one pleading (Dkt.174).

3. Since the subject matter of Plaintiffs' *Daubert* challenges to defense opinion testimony and MIL issues overlapped on October 30, 2023, Plaintiffs filed their MIL Issues 19 through 28, inclusive, (Dkt.158) combined with Motions to Exclude certain expert testimony, under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L Ed. 2nd. 469 (1993).

Plaintiffs filed a separate Brief in Support of their MIL Issues 19-28 (Dkt.158-1 with Exhibits A through R).

4. Toro filed its combined Response/Resistance to Plaintiffs' MIL Issues 19-28 and *Daubert* challenges and Memorandum on November 27, 2023.

5. Plaintiffs have filed a total of 28 issues, requested either a Motion in *Limine* and/or exclusion under *Daubert, id*. In Dkt.174, page 2 of 17, Toro breaks down its responses as:

   a. Uncontested Issues 1-4, 15 & 16;

   b. Uncontested, but Toro asks for a reciprocal Order (Plaintiffs assume Toro means making the Order in *Limine* equally applicable to both sides), Issue 18; and,

   c. Contested Issues 5-14, and 17.

6. Toro filed its separate Response and Memorandum to Plaintiffs' *Daubert* challenges and MIL Issues 19-28, in Dkt.175.

7. Plaintiffs will only deal with those issues which Plaintiffs believe require a reply for the reasons cited.

## II.   REPLY BRIEF AND ARGUMENT

**A. Plaintiffs' MILs 6, 7, 8 and 10 – Toro has disclosed no discovery responses or expert opinions specifying those acts or failures to act on the part of Plaintiffs which they claim were a proximate cause of harm to Rebekah Hillman, except failing to replace the bypass pins and the allegation that Jennifer pushed the mower to get it rolling.**

1. TTC completely ignores that it bears the burden of proving negligence and causation to support their allegation of comparative fault on the part of Plaintiffs. As they have done so often with Court rules in this litigation, Toro's responses to many of Plaintiffs' Motions in *Limine* totally ignore controlling discovery law and facts which govern these particular issues.

2. The record shows:

   a. First, Toro had a duty to clearly disclose, before the close of discovery, all acts or failures to act on the part of the plaintiffs which they would ask the Court to submit to

   the jury as comparative fault, and that were a cause of injury (not a mere condition) and they have failed to do so. Fed. R. Civ. P. 26(a)(i) & (ii), and Fed. R. Civ P. 26(2)(C).

   b. Before the close of discovery, Toro produced no qualified expert testimony stating or implying that any act of the plaintiffs was a cause of the injuries to Rebekah Hillman, other than the failure to replace the bypass pins in the "run" position before disengaging the electric parking brake at the top of the hill.

   c. While Carol Drutowski criticized a number of alleged violations of Toro instructions in her 30(b)(6) deposition, Drutowski:

       i. Is not qualified as an accident reconstruction expert or a legal expert; and,

       ii. Has been withdrawn by Toro as a witness, except as a fact witness.

   d. Toro has provided no outlines of any proposed testimony (especially comparative fault) by Drutowski or any of its testifying employees as required by Fed. R. Civ. P. 26(2)(C).

   e. While Bonugli spends dozens of pages reciting events and deposition testimony, the only expert opinion disclosed by Toro which even approaches an opinion on comparative fault and causation is the last paragraph of Bonugli's report opinions:

   ***"Failure to disengage the bypass pins allowed the subject Toro Timecutter mower to freeroll down a sloped terrain. This was further exacerbated by moving the mower near the top of a sloped terrain during the manual movement procedure. Additionally, application of an external motive force to the rear of the mower contributed to the decreased effectiveness of the electric park brake."* (Dkt.176, Exhibit E-2, page 46 of 48, last paragraph)**

3. Allowing Toro free rein to try this case, while arguing, questioning and cresting fault out of thin air for every condition it wants to characterize as inappropriate or a technical violation of their instructions should be considered negligence <u>without having disclosed any causation testimony or expert evidence other than Bonugli's single</u> paragraph, would create incredible unfair prejudice to Plaintiffs and is prohibited by Fed. R. Civ. P. 26 and 37, as well as the Court's Scheduling Order.

4. Illinois Chapter 735 s5/2-1116 (b) provides: *"Fault" means any act or omission that (i) is negligent, willful and wanton, or reckless, is a breach of an express or implied warranty, gives rise to strict liability in tort, or gives rise to liability under the provisions of any State statute, rule,*

*or local ordinance and (ii) is a proximate cause of death, bodily injury to person, or physical damage to property for which recovery is sought."*

5. There is comparative fault where the plaintiff acts without the degree of care that a reasonably prudent person would have used for his safety under like circumstances, and that action is the proximate cause of his injuries. <u>Coole v. Central Area Recycling,</u> 384 Ill.App.3d 390, 396, 323 Ill.Dec. 289, 893 N.E.2d 303 (4th Dist.2008). … Due care is determined by reference to circumstances: whether choosing one course of action is safer than choosing another. See *Sielski v. Tioga Homes, Inc.,* 62 Ill.App.3d 340, 343, 19 Ill.Dec. 672, 379 N.E.2d 336 (2d Dist.1978); *Foster v. George J. Cyrus & Co.,* 2 Ill.App.3d 274, 277, 276 N.E.2d 38 (1st Dist.1971). (*Baez v. Target Corporation*, 80 F. Supp. 3d. 862 US Dist. Ct. N. D Illinois, Eastern Division, at 869 and 870)

**B. Plaintiffs had no ability, nor duty, to file Motions for Summary Judgment concerning all situations or conditions which Toro has merely discussed or criticized but never clearly disclosed as acts of negligence and which allegedly were a proximate cause of injury.**

6. Toro begins its opening salvo of Dkt.174 (pages 1 through 6) by claiming that Plaintiffs had to file dispositive motions regarding Toro's comparative fault defense to warrant the Motions in *Limine* requested by Plaintiffs which concern Toro's trial conduct when discussing "conditions" for which Toro has provided no disclosure of alleged negligence or proximate cause of harm. The argument fails for two concrete and irrefutable reasons. First, how does one file a Motion for Summary Judgement before this Court when the proponent of comparative fault has not disclosed all of the actions which they will allege are comparative fault to a jury? Should the plaintiffs really have filed a Motion for Summary Judgement on all the "conditions" Bonugli discusses in his 48-page report, when the only two he points to as having caused the injury are: 1) the failure to

reengage the tow pins and 2) the application of the mysterious "motive force" (which only Bonugli believes)?

7. Without conceding that Plaintiffs were negligent, Plaintiffs concede that Toro satisfied the minimum requirements of proof (if admitted at trial) to submit the issue of the wrong position of the tow (bypass) pins to the jury as comparative fault. However, the proper motion to exclude Bonugli's outside "motive force" theory, is a *Daubert* challenge (which Plaintiffs have filed), not a dispositive motion, as it deals with evidence and not the entirety of Toro's comparative fault defense.

**C. Plaintiffs are not asking to exclude all discussion of events preceding the injury on the morning of June 18, 2020, but are asking the Court to prevent Toro from trying to expand their comparative fault case far beyond anything they properly disclosed in discovery, thereby creating tremendous unfair prejudice to Plaintiffs.**

8. This entire argument is built on a false premise and false characterization of Plaintiffs' MILs 6, 7, 8 and 10. Plaintiffs are not asking to completely exclude evidence or testimony. The plain reading of the pertinent MILs, is that Plaintiffs seek an Order in *Limine* preventing Toro's counsel from arguing, questioning or mischaracterizing 6 issues identified in the MILs and Brief as if they are separate claims of comparative fault that were not disclosed and that do not qualify as comparative fault under Illinois Comparative Fault Act and pertinent caselaw. (See Dkt.155-1, pages 15 through 21)

9. Plaintiffs' counsel intends to discuss all the facts leading up to the injury, including the issues listed on Dkt.155, page 15, and Plaintiffs' relevant MILs. Defense counsel is free to ask questions about these issues, but should be precluded from trying to turn cross exam into a blatant end run around the proscription of introducing undisclosed evidence, claims and even expert opinions calling these actions or failures to act as comparative fault under Illinois law.

10. Plaintiffs have filed appropriate MILs which do not attempt to exclude evidence and testimony about what happened before the injury; rather, Plaintiffs have asked the Court for an appropriate Order directing Toro to refrain from arguing, alleging or questioning the witness concerning 6 issues which simply do not qualify as possible comparative fault under Illinois law or the circumstances in this case. (Dkt.155-1, pages 15 through 21)

11. Just because Toro claims an action or failure to act is an act of comparative fault, does not make it so. It is nothing more than a plaintiff claiming a defendant's act is negligent, but still having the same burden of proving that a) a jury has the right to determine it was unreasonably dangerous under the circumstances at the time and b) it was a proximate cause of injury.

12. Plaintiffs conceded that Toro has a right to litigate their claims of comparative fault that a jury could find were a) negligent at the time they occurred, and as defined in the Illinois Comparative Fault Act and b) were a cause of injury. Without conceding comparative fault on the part of the plaintiffs, Plaintiffs understand and admit that Toro has a right to claim that the failure to replace the tow (bypass pins) into the run position from the push position (as Toro's instruction decal shows) was comparative fault as a) negligent at the time and under those circumstances and b) a proximate cause of the loss of control and subsequent injury. But, Plaintiffs assert that it would create extreme unfair prejudice to allow Toro to claim that everything Plaintiffs did that day, which was in any way connected as a mere condition to the injury, rose to the level of comparative fault. (See Plaintiffs' Brief, Dkt.155-1, pages 15 through 17, citations to Illinois comparative fault statute and Illinois caselaw requiring an action or failure to act be both negligent and a proximate cause of injury)

13. Imagine how unfairly prejudicial it would be for Toro to be allowed to argue and spend an inordinate amount of time questioning Plaintiffs in an accusatory way about their "negligence",

with respect to things they did or failed to do, that ultimately could not be submitted to the jury as a basis for a finding of comparative fault because the conduct was a condition and not a proximate cause of the injury. (See Dkt.155-1, p.15-16, and *Thompson v. County of Cook*, 154 Ill. 2nd 374, 383 (1993))

14. Toro repeats the mantra that many of Plaintiffs' actions that day, which occurred before the injury causing event, are "relevant and admissible", as if that statement solves the dilemma Toro has with its failure of discovery and it ignoring long accepted restrictions on characterizations of negligence and proximate cause.

**D. Plaintiffs have never claimed that the top of the hill, where Plaintiffs stopped and then disconnected the tow strap on their mower, was completely flat.**

15. In the introduction of their Resistance, Defendant spends considerable time establishing that the area which the mower was towed to was not "flat." (Dkt.175, p.3-8) Once again, Toro completely mischaracterizes the evidence and Plaintiffs' position to waste more of the Court's time arguing undisputed facts by selective citations taken out of context and then misrepresented to the Court.

16. Plaintiffs agree that the mower was sitting on an 8.5-to-9.5-degree slope when it began to roll, of its own accord, down the hill when the electric parking brake was disengaged. We all know that the area the mower was towed to was not perfectly "flat" and at no point during the 2.5+ years of litigation in this case have Plaintiffs ever taken that position. Defendant repeatedly points out that Plaintiffs' witnesses, experts, and evidence all establish the area is not perfectly flat. Defendant also makes the significant misrepresentation to the Court that Plaintiffs are actually arguing the area is perfectly "flat". Plaintiffs never made that argument.  Defendant unintentionally undermines its entire argument when it cites to Plaintiffs' Brief that the mower was towed to the "flattest part of the south yard". (Dkt.175, p.3). Defendant knows full well that the word "flattest",

as used, was a *relative* term in comparison with an absolute. In other words, Plaintiffs admit the mower was towed to a sloped place, which was "flatter" than the slope beneath it. It is an odd argument to make as they manufacture a non-existent controversy to generate confusion and prejudice. This is simply a waste of time.

17. Toro spends a great deal of time claiming that Plaintiffs are now saying that the top of the hill, where they stopped their mower and disconnected the tow strap, was perfectly flat, which is simply not true. Indeed, the digital survey data which Plaintiffs' reconstruction expert, David Bilek, generated, prepared, and provided to Mr. Bonugli was so accurate (despite TTC's claim of spoliation) that Bonugli produced his cross section of the hill below.

> "The elevation profile for the travel path of the mower is shown below. The slope of the terrain from the flowerbed to the mower's static location at the top of the hill varied between 14.4 degrees and 8.8 degrees. The slope decreased closer to the top of the hill."



18. Bonugli analyzed each discrete section of Bilek's survey to indicate the slope of each section as the mower went down the hill. Bonugli says the first section (the top of the hill) was a 10-degree slope—hardly flat. But it is consistent with Mr. Bilek's cross section and Jennifer's testimony that she and Rebekah proceeded up the slope to where it was "flatter" than the rest of the slope, as confirmed by Bonugli's recreation of the slope with Bilek's data. (See Dkt.165-2, p.23)

19. One can just look at the photos and video of the area and see that the hill is not flat on top, but "flatter" than the rest of the area where the plaintiffs towed the mower. (See below, Dkt.165-2, p.16, Bonugli report with red rectangle showing where accident happened in south yard)



20. Just looking at the photo of Plaintiff Jennifer Hillman and Plaintiffs' counsel plucked from Dkt.175, page 5, shows that the top of the hill is not perfectly flat. (See below) Thus, the purpose of most of the argument in Dkt.175 is to create confusion about Jennifer's testimony and presents the evidence in the record out of context. Does it really look like these two people are standing on a flat hilltop?



**E. Issue 14 – TTC's Response to Issue 14 is contrary to all medical evidence and is simply designed to make unnecessary work for the Court and the plaintiffs while wasting hours of time on undisputed issues of causation.**

21. TTC says it will object to the reasonableness of medical costs and causation. Plaintiffs briefly respond to Defendant's Resistance to Issue #14. TTC is actually raising the issue of causation of medical services and the cost thereof as unknown in a case involving treatment for <u>a traumatic amputation caused by their mower falling over a retaining wall, without a functional brake and no ROPS</u>. The vast majority (90%) of medical bills have been paid by Plaintiffs' insurance carrier (who is subrogated) and Plaintiffs know of only two sets of bills that remain to be resolved.

22. Plaintiffs filed this *limine* request with the hopes it would speed up and streamline trial and remove the need to call custodians of records and numerous doctors, etc. to offer testimony on foundation and causation for resulting treatment of the amputation. Defendant has clearly indicated they intend to obstruct any such streamlining of trial and make the trial a march on Moscow with all the pain and wasted time such a scorched-earth strategy entails.

23. Under Illinois law, if a medical bill is paid, it is presumed reasonable. Defendant points out that if a medical bill is unpaid, Plaintiffs bear the burden of showing it is reasonable. In all the bills produced in this case, there are only two bills yet unpaid, 1) the bill for the helicopter services for life flight, approximately half of which is still unpaid and 2) it appears that some of the physical therapy bills are unpaid because Plaintiffs' counsel has not yet received updated payment records.

24. The physical therapy bills from February 2021, from Genesis Medical Center, appear to be unpaid yet because Plaintiffs have not received updated billing records reflecting the adjustment. Plaintiffs are working with the provider to get those updated bills. In other words, by the time of

trial, all the bills will either have been paid or the parties can meet and confer and agree to a stipulation about any contested bill remaining.

25. Yet, Defendant has clearly telegraphed they intend to fight the medical bills and perhaps other testimony on the issue of reasonableness and causation. In the present case, the thousands of medical records repeat over and over again the fact *Rebekah Hillman is receiving treatment for her amputated leg*. Plaintiffs' counsel has never before encountered a defendant who is intent on arguing that causation needs to be proven to show the need for prosthetics arose out of the amputation of a limb.

26. If this Court requires Plaintiffs to subpoena 30 witnesses from different medical facilities to provide testimony on the foundation of medical records and the fact that surgeries or care for an amputated limb were caused by the amputation, then, Plaintiffs are happy to oblige. However, Plaintiffs are of the opinion the medical testimony is sufficient and the records themselves contain more than enough causation opinions.

27. One example, the first page of Plaintiffs' prosthetic records from American Prosthetics & Orthotics states:

> "*The patient was seen today and consulted up on 2 RC East for a possible prosthetic option. The patient did have a traumatic injury to the lower extremities leaving her left lower extremity up to a potential amputation in the next day or two. The patient is being followed by Dr. Karam. The patient currently has an external fixator on her left lower extremity and an immobilizer on the right lower extremity. The patient is an otherwise healthy adult female who I did answer questions and inform her of the process of getting a prosthesis, as well as advantages and disadvantages. I did leave information regarding the process including postoperative care and maintenance. I left a card if she had any questions, comments or concerns and I did instruct her, as well as her significant other, on all of the information she needed.*"

**F. Issue 20 – Toro generates more confusion about other ZRT accidents which gave them notice of the need for an independent brake, and a ROPS.**

28. TTC apparently ignores Plaintiffs' argument and comments and misses the entire point of Plaintiffs' argument concerning incidents of serious injury and death from Toro's ZRT mowers due to a lack of simple design changes that would have reduced or prevented injury. (an independent brake and ROPS) Instead, TTC spends their entire argument defending the *relevancy* of the claim that there were no prior accidents, when that is demonstrably false, and Toro has no foundation to make the claim. The only way Toro can argue via this method, is by conflating the law governing OSIs offered to prove notice of a hazardous condition (like losing control of the mower and having a 600 lb. mower fall on the operator or go over a wall or into a pond).

29. Plaintiffs attack this false and highly prejudicial claim on *foundation and OSI law*. Toro keeps no organized and systematic investigation into the injury records of its mowers. They admitted, in sworn testimony, they only know about injuries they get notice of by messages from customers, claims, lawsuits or if they trip over them in news reports. They admit there could be hundreds of other injuries, but they just don't know what they don't know.

30. An example, which demonstrates the inherent lack of foundation and violation of the basic rules of foundation, can be shown if the situation is reversed. What if Plaintiffs' counsel got up and said "Ladies and Gentlemen, there are thousands of injuries with this mower like what happened to Rebekah Hillman out there. We just know there are."

31. TTC should not be allowed to argue or make the statement that it has had no similar accidents as the Hillmans had because a) Toro does not know if it is true or not and b) they have no foundation to make such a statement.

32. In addition, Toro's own, recently disclosed, documents prove the controverted statement is not true. A recent memo from Jim Fear produced in this case and dated April 17 and 29, 2015, states *"Timecutter has surpassed the Lazer Z as the most frequent accident machine."* Mr. Fear

noted that Defendant knew, out of the 38 accidents there were 10 hospitalizations, 9 customers who sustained serious broken necks, backs, or paralysis, and 3 were fatal incidents. (See Plaintiffs' Supplemental Statement of Facts, Dkt.161, page 5, paragraph 77)

**G. Issue 23 – Plaintiffs have disclosed several alternative designs – some of which were considered by Toro, as shown by their own records. (See Dkt.161, p.3-5) These would have prevented Rebekah Hillman's injury if implemented then.**

30. Toro, again, misses the point in its Resistance to Issue #23 by attacking Plaintiffs' *limine* request on the basis of relevance rather than foundation. First, Defendant offers the significant misrepresentation that Plaintiffs presented no alternative design or any expert opinions regarding the brake. Mr. Berry provided the following opinion:

> "*Toro could have provided a simple park brake similar to that provided by John Deere on the JD Z425 zero turn mower as shown below in addition to their park lock system. The JD park brake on the Z425 EZTrak uses a lever to rotate two steel pawls against the rear tires and provides braking and a park brake. It is operated by hand and would provide a simple means for the operator to use to stop the Toro zero turn mower on the slope it was on. Testing shows that the brake effectively holds the tire on slopes up to 30 degrees*."

33. Mr. Berry shows an example of this braking system and goes on to detail more sophisticated braking systems on a Scag ZRT mower and then details another disc brake created by Hydrogear, the same manufacturer of the hydrostatic braking system the Timecutter model uses. (Dkt.168-1, p. 8-9) Mr. Berry offered many alternative designs and Defendant's assertion to the contrary misrepresents the status of the record to the Court.

**H. Issues 5 and 27 – The Court should DENY all of Toro's claims and arguments concerning alleged spoliation, and GRANT Plaintiffs' Daubert challenges to the opinions of Bonugli and Gwin.**

34. Toro's Resistances to Issues 5 and 27 involve the same, baseless allegations of spoliation and untimely disclosure of information addressed in Plaintiffs' Resistance to Toro's "embedded" Rule 37 Motions (Dkt.169), that have never been disclosed, supported or litigated. The only

exception is that, in Dkt.175, Toro makes some outright misrepresentation that demands response and immediate clarification. Rather than repeat what has already been filed with the Court, Plaintiffs incorporate their Resistance and request that the Court consider Dkt.169 and DENY the Motions, and issue an Order in *Limine* preventing Toro from mentioning their claim of spoliation and untimely testing at trial to prevent TTC from benefitting from its duplicity in failing to disclose any expert opinions supporting the spoliation issue. Since it is an entirely new set of expert opinion and testimony, Plaintiffs will address Mr. Bonugli's Affidavit dated November 27, 2023 (Dkt.176, p.1-3), which Toro submits in a desperate attempt to retroactively support its previously undisclosed claims of spoliation and prejudice due to the plaintiffs' yard being graded <u>after it was surveyed to preserve the shape for litigation.</u> (Emphasis mine) But first, Plaintiffs need to address Toro's mischaracterizations regarding their MILs and *Daubert* challenge to Bonugli.

35. First, Plaintiffs' Motion to Exclude Bonugli and his opinions under the *Daubert* standard do not rely upon criticism that he did not do testing on the accident hill (south yard), and Toro is well aware of this fact. It would border on idiotic for Plaintiffs' counsel to ask Bonugli if he did any testing on the accident slope knowing that it was graded before Bonugli got his inspection of Plaintiffs' acreage in 2022. He did not need to, as he had a digital survey which he used to reconstruct the slope within a decimal point.

36. <u>Bonugli's opinions are not admissible because he did not test or investigate or even measure any of the evidence that was available to him to test his theory of the "motive force" that nobody else has seen or experienced</u>. (Emphasis mine) Plaintiffs are critical of Bonugli because, under long recognized *Daubert* standards, Bonugli (and Gwin who was also present) failed to do the most fundamental testing of the accident mower and its rolling response on level ground and on substantially similar slopes with grass on them. These two experts had full access to the accident

mower and had plenty of time to test the actual rolling resistance of the Timecutter under conditions substantially similar to the accident and they did nothing.

37. Toro's two retained experts (Bonugli and Gwin) never asked to take the accident mower to a grass slope in Wichita for the hour or so it would have taken to find a slope approximately like the accident slope (as Bonugli mapped out), release the parking brake with the motors disengaged and see what happened. (Bonugli knew precisely what would have happened-his opinion would have vaporized into thin air and Gwin's "somersault landing" theory would likewise disappear)

38. The obvious reason he and Gwin did not do any real investigation or testing of the accident mower with exemplars or similar slopes was they knew such actual testing and comparisons would impeach their opinions if they followed the scientific method and tested their hypotheses.

39. Now, Toro presents the Court with a 3-page Affidavit from Bonugli (Dkt.176) that attempts to retroactively disclose Bonugli's opinion that somehow Toro's ability to defend itself has been prejudiced because Bilek's data was of low quality and he needed to apparently touch and smell the grass on the accident slope to help defend Toro. Bonugli's report, served before the close of discovery (Dkt.176, p.13-48, Exhibit E-2), simply **does not contain any opinion or even comment alleging he had any trouble developing his opinions for Toro due to "spoliation" or "change", or even modification, of the accident hill in the south yard.** (Emphasis mine) There is no mention of any factors he could not determine from Bilek's digital survey that impaired his ability to form his opinions.

40. Toro's problem is that Bonugli still does not say anything in his Affidavit, except a general and unscientific conclusory statement, attempting to create evidence of prejudice almost four months after the close of discovery.

41. In the untimely Affidavit, Bonugli provides no data, no authority and no support in observable science for his generic claim of prejudice, except, "Well there is some other stuff relevant to rolling resistance than the machine", but he never identifies what it is, how much difference it would make, if any or any explanation of how he would have gone about testing or researching the surface of Plaintiffs' hill in the south yard, to provide new opinions or to better support his "outside motive force theory.

42. Bonugli cannot and does not say anything substantive to satisfy the *Daubert* qualifications, as all he gives are new, and previously unexpressed, conclusory opinions with no specifics, no scientific support, no references and no explanation of what potential defense Toro may have lost due to the grading of the hill.

I. **The Court should GRANT Plaintiffs'** *Daubert* **challenge of Dr. Gwin's opinions, as she may have looked at a lot of medical records, but she has no record of any review, testing or investigation to support her Timecutter somersault with ROPS reconstruction.**

43. Gwin's opinions are not admissible because she has done no testing or investigation of how the accident mower would have moved once it left the retaining wall and fallen, if Rebekah was belted and remained aboard the mower. (Emphasis mine) Yet, she purports to claim that the ROPS would be totally useless because, as shown in her cartoon, the mower would have, somehow, magically picked up enough additional speed, enough to make it flip over in the air (the somersault cartoon), and land straight down on its top instead of how both Bilek and Bonugli depict it. Gwin just cannot support her claim of catastrophic head injury when the mower uses up the vast majority of its energy falling first on the ground (and Plaintiffs' legs), and then simply tipping over. Gwin also assumes, without authority, that Rebekah would sit motionless and take no action or movements to help the ROPS protect her as she tipped over, if belted into the mower seat during the accident.

44. Gwin's Affidavit claims that all of her opinions are backed up by peer reviewed articles and studies. Really, why did she not point out the peer reviewed studies of a Toro Timecutter's motion when falling from a 5-6 foot retaining wall, at approximately 8-10 miles per hour, with a woman the size and height of Rebekah Hillman on board? The point is simple—Gwin has not one bit of relevant tests or studies of Timecutter motion during this type of factual situation that supports her opinion of the machine somersault which creates a catastrophic head injury.

45. Dr. Gwin's musings that Rebekah "may not" have worn her seatbelt, even if Toro had equipped the mower with this safety device, is not anything approaching a scientific expert opinion. It is nothing more than speculation designed to prejudice the jury on unfounded, factual assumptions about Rebekah, with no foundation whatsoever.

46. Gwin has no specific knowledge about Rebekah's personal seatbelt use when operating machinery. What peer-reviewed article or study could possibly provide support for that statement under *Daubert,* or even normal foundational requirements? (Some people do not wear their seatbelts, so the plaintiff would not have either.)

47. Dr. Gwin's deposition demonstrates why she is unqualified to change the motion of the mower in this fall, as we find that she has never seen any crash testing of a Timecutter mower to determine movement in a crash. She is not a ROPS design expert; she received no technical information from Toro on the ROPS design or CG of the mower or anything relevant to how it would move in a slow speed fall/accident substantially similar to this accident. Her experience with ROPS and injuries on mowers equipped with ROPS is all from litigation at BRC. (See **Exhibit A** attached hereto, Lisa Gwin Deposition Excerpts)

48. Dr. Gwin knows nothing about the crash motion or falling motion of Toro lawnmowers, much less with a belted operator on board. She adopted the reconstruction of Bonugli who does not include her somersault, upside down fall opinion, so it is not admissible.

49. Dr. Gwin has no real background or training in the effectiveness of ROPS and so her testimony lacks the fundamental experience and foundation necessary for her to present her opinion that a ROPS would not have prevented or even mitigated Rebekah's injuries are just not reliable and so, not relevant, and will not help the jury understand the evidence in this case.

### III.   CONCLUSIONS

The Court should GRANT Plaintiffs' Motions in *Limine*, which are contested by Toro and it should also GRANT Plaintiffs' *Daubert* challenges to the opinions of Enrique Bonugli, as well as Dr. Lisa Gwin.

Respectfully submitted,

By: /s/ Steven J Crowley
Lead Counsel

REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor; and JENNIFER HILLMAN Plaintiffs
Steven J Crowley Lead Counsel ARDC#6314756
Edward J. Prill ARDC#6271392
CROWLEY & PRILL
3012 Division Street
Burlington, IA 52601
T: (319) 753-1330
F: (319) 752-3934
E: scrowley@crowleyprillattorneys.com
E: eprill@crowleyprillattorneys.com
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on *Wednesday, December 13, 2023*, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing:

Michael Giacopelli
Thomas Grace
Jonathan R. Sichtermann
McVey & Parsky, LLC
30 North LaSalle Street, Suite 210
Chicago, Illinois 60602
Email: mng@mcveyparsky-law.com
Email: tgg@mcveyparsky-law.com
Email: jrs@mcveyparskylaw.com

Jason Schiffman
Schiffman Firm, LLC
1300 Fifth Avenue
Pittsburgh, PA 15219
P: (412) 288-9444
F: (412) 288-9455
E: jason@SchiffmanFirm.com
ATTORNEY FOR PLAINTIFFS

Kirk T. Florence
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
P: (214) 922-7100
F: (214) 279-9194
kflorence@kilpatricktownsend.com
ATTORNEYS FOR THE TORO COMPANY

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This document complies with Local Rule 7.1(B)(4) because, excluding the parts of the document which are exempt, this document contains 5,466 words.

(s) *Steven J. Crowley*
ATTORNEY FOR PLAINTIFFS
Dated: 12/12/2023