Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT
 2         FOR THE CENTRAL DISTRICT OF ILLINOIS DISTRICT OF IOWA
 3                         ROCK ISLAND DIVISION
 4                      Case No. 4:21-cv-04081-SLD-JEH
 5
 6   REBEKAH HILLMAN, JENNIFER HILLMAN,
 7   AND P.J.H.,
 8              Plaintiffs,
 9   v.
10   THE TORO COMPANY,
11              Defendant.
12
13   *** CONTAINS CONFIDENTIAL INFORMATION ***
14       Video-Recorded Rule 30(b)(6) Deposition of
15           The Toro Company through the testimony of
16                        Carol Drutowski
17                  Wednesday January 18, 2023
18                  commencing at 9:11 a.m. CST
19
20   REPORTER:  Sandra D. Burch, RPR, CRR
21   Integrity Court Reporting, Inc.
22   7900 International Drive, Ste. 300
23   Minneapolis, Minnesota 55425
24   Office: 952.440.3886 * www.IntegrityCR.com
```

**CONDENSED COPY**

Page 2

```
 1   APPEARANCES:
 2   For the Plaintiffs:
 3       Mr. Steven J. Crowley, Esquire
 4       Crowley & Prill
 5       3012 Division Street
 6       Burlington, Iowa 52601
 7       Scrowley@cbp-lawyers.com
 8   and
 9       Appearing via videoconference:
10       Mr. Jason Schiffman, Esquire
11       Jason@schiffmanfirm.com
12
13   For the Defendant:
14       Mr. Kirk T. Florence, Esquire
15       Kilpatrick Townsend & Stockton LLP
16       2001 Ross Avenue, Suite 4400
17       Dallas, Texas 75201
18       Kflorence@kilpatricktownsend.com
19
     Also present:  Vanessa Mason, Sr. Paralegal
20                  Greg Eklund, Videographer
21
22                       * * * * *
23   The Electronic Original will be in the possession of:
24                    Crowley & Prill
25                       * * * * *
```

Page 3

```
 1                        I N D E X
 2   EXAMINATION
 3   By                                      Page
 4   Mr. Crowley ................ 7
 5
 6   EXHIBITS REFERENCED:
 7   Number                   Description
 8   1  - Photos
 9   25 - Corporate Rollover Protective Structure Guideline
10   31 - E-mail, 7-23-02
11   34 - ZTR Rollover Concerns
12   40 - E-mail 9-13-11
13   43 - Risk Assessment - TimeCutter Z
14   47 - E-mails, 6-1-09 and 5-6-09
15   49 - E-mails, 8-2-07 and 8-15-07
16   50 - Letter, 5-3-04, with attachments
17   52 - Confidential Exhibit A to TTC's Supplemental
18        Answers to Interrogatories and Requests
19        for Production
20   61 - OPEI ISO/ANSI Meeting, 12/8-10/09
21   62 - "Exmark makes ROPS standard" website page
22   63 - Comparison of Consumer Standard ANSI B71.1 and
23        Commercial Standard ANSI B71.4
24   A  - First Amended Notice of Corporate Representative
25        Deposition to Toro FRCP 30(b)(6)
```

Page 4

```
 1            Video-Recorded Rule 30(b)(6) deposition of
 2   The Toro Company, through the testimony of Carol
 3   Drutowski, taken pursuant to Notice of Taking
 4   Deposition, before Sandra D. Burch, RPR, CRR, a
 5   Notary Public in and for the County of Scott, State
 6   of Minnesota, at Integrity Court Reporting, Inc.,
 7   7900 International Drive, Suite 300, Minneapolis,
 8   Minnesota.
 9            WHEREUPON, the following proceedings were duly had:
10            (Exhibit Numbers 61 and 62 marked by the
11   court reporter for identification.)
12            THE VIDEOGRAPHER:  We are on the
13   record.  This is the 30(b)(6) deposition of
14   Carol Drutowski.  Today's date is
15   January 18th, 2023, and the time is 9:11 a.m.
16            This is the case of Rebekah
17   Hillman, et al., versus The Toro Company.
18   The case number is 4:21-cv-04081, pending in
19   the U.S. District Court for the Central
20   District of Illinois, District of Iowa, Rock
21   Island Division.
22            This deposition is being held at
23   7900 International Drive in Bloomington,
24   Minnesota.
25            My name is Greg Eklund, the
```

EXHIBIT 2

Page 13

BY MR. CROWLEY:
Q  Yeah.
A  -- the whole --
Q  I asked you to explain how it happened.
        MR. FLORENCE: Objection.
  Overbroad.
BY MR. CROWLEY:
Q  Your underst- -- you've been in the yard;
  right?
A  So I was in the yard.
Q  And you saw --
A  And I know it has changed.  I know it -- I
  have not seen it, how it was on the day of the
  accident.  I know that that had been flattened
  out.
        So my understanding of what happened is
  Rebekah was mowing in -- outside of the safe
  zone right next to landscaping with a drop-off
  into the landscaping.
        And originally -- something happened,
  like a tire went -- fell off the edge and went
  into the landscaping and something happened
  that she turned around.
        So then the -- Rebekah and Jennifer
  decided that, per our directions in the

Page 14

operator's manual, if you're going to hand
push, you release and disable the hydros, so
the hydros became -- they released them but
decided it was dangerous to be able to push up
over the first berm, which is kind of a
drop-off onto the steep hill.
        So they decided to grab the tractor,
and the trac- -- they lifted the machine.
They put it onto a tow strap.  They lifted the
machine so the tires -- the rear tires would
not drag on the ground, because they couldn't
push it by hand.
        So they had to lift it up out of the
first berm, which was what I believe she
called -- they had a specific name for what
was on the edge of the landscaping; and at
this moment, I can't remember, but to me, it
was described as too steep and it was like a
bump you had to get over out of the
landscaping to get onto this steep hill.
        The tractor pulled the lawn mower with
the rear tires off the ground out of the
landscaping and up the hill and they were --
they stopped pulling it, because they were
concerned if they kept pulling it, the lawn

Page 15

mower would roll back into the tractor.  So
they had to stop it before it would be able to
get to a flat surface.
        Then they stopped.  And I don't know
exactly what happened right there.  It's a
little bit vague, but they were -- got the
tractor to stop, whether they turned off from
the run position, so they had put it in run,
because that's the way you disengage the
parking brake.  They had to -- I should step
back.  They had to disengage the hydros, put
the machine in run, and bring the sticks in.
        So there's a three- or four-step
process because you have to disengage both
hydros.  You need to put the machine in run,
and then you have to move in both sticks, or
both levers, for steering.  And they had
disabled those.
        So they pulled it up.  They stopped
with it facing directly downhill back into the
landscaping to the steep drop-off for the wall
and they somehow got the machine on a surface,
a slope, to stop the lawn mower, and then they
engaged the parking brake.  So they put the
handles out and -- I don't know if they turned

Page 16

it off or not.  They don't really say.  Then
it was -- the strap was released from the
mower.
        And so now it's released in the mower.
The parking brake's engaged.  The machine is
holding on a slope.
        And then Rebekah gets back on the
machine -- and, again, the hydros and the
traction and our hydro braking is all disabled
by them on both sides.  The parking brake is
engaged.  With the parking brake engaged, she
turns on the engine and disengages the parking
brake and then starts to roll down the hill.
        My understanding is she tried to engage
the parking brake.  So what -- my
understanding of what they talked about was it
went, engage the parking brake, disengage,
engage, disengage, engage, disengage, and then
she went down into the flower bed first with
the landscaping, so over that berm, and then
she continued on and over that landscape wall.
        And I might add that originally, my
unders- -- from the testimony that Rebekah was
a bit shook up by the near miss she had when
her wheel went into the landscape and she

EXHIBIT 2