```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF ILLINOIS
 2

 3   REBEKAH HILLMAN, Individually and  )
     as next friend of P.J.H., a minor; )
 4   AND JENNIFER HILLMAN,              )
                                        )
 5                 PLAINTIFFS,          )
                                        ) CIVIL ACTION
 6        VS.                           ) 4:21-CV-04081
                                        )
 7                                      )
     THE TORO COMPANY, a Corporation,   ) TRANSCRIPT OF
 8                                      ) RECORDED
                                        ) PROCEEDINGS
 9                 DEFENDANT.           )
     _____        )
10

11

12         BEFORE THE HONORABLE JONATHAN E. HAWLEY

13                    MOTION HEARING

14                  October 12, 2023

15                   Peoria, Illinois

16

17

18

19

20

21        DEBRA M. THORNBURG, CSR, RPR, CRR
             FEDERAL OFFICIAL COURT REPORTER
22             UNITED STATES COURTHOUSE
                 100 NE Monroe Street
23             PEORIA, ILLINOIS 61602

24

25   PROCEEDINGS RECORDED BY ELECTRIC SOUND RECORDING;
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY FROM
     SAID RECORDING; TRANSCRIPT PRODUCED BY COMPUTER
```

APPEARANCES:

For the plaintiff:

                    ATTORNEY STEVEN J. CROWLEY
                    Crowley & Prill
                    3012 Division Street
                    Burlington, IA 52601

                    ATTORNEY ANDREW L. MAHONEY
                    Crowley & Prill
                    3012 Division Street
                    Burlington, IA 52601


For the defendant:

                    ATTORNEY KIRK T. FLORENCE
                    KILPATRICK TOWNSEND & STOCKTON
                    2001 Ross Avenue, Suite 4400
                    Dallas, TX 75201

                    ATTORNEY THOMAS G. GRACE
                    Parsky & Galloway
                    120 N. LaSalle Street, Ste. 3200
                    Chicago, IL 60602

1             P R O C E E D I N G S

2                  COURTROOM DEPUTY:  Calling the case of

3     Hillman, et al. v. The Toro Company, Civil Case

4     21-4081.

5                  Counsel, please enter your appearance.

6                  MR. CROWLEY:  Steven Crowley for the

7     Hillman family.

8                  MR. MAHONEY:  Andrew Mahoney for the

9     Hillman family.

10                  MR. FLORENCE:  Kirk Florence for The Toro

11     Company.

12                  MR. GRACE:  And Tom Grace for The Toro

13     Company.

14                  THE COURT:  This is Magistrate Judge

15     Jonathan Hawley.  I note for the record everyone is

16     present here in open court.  The matter is set for

17     hearing today on three separate motions, Docket No.

18     105 filed by the plaintiff, motion for sanctions,

19     Docket No. 117 filed by the defendants to amend or

20     correct the answer and to add a counterclaim for

21     contribution, and Docket No. 121, which is a motion

22     to strike an affidavit, which is related to Docket

23     No. 105.

24                  Mr. Crowley, do you want to start with 105?

25                  MR. CROWLEY:  Yes, your Honor.  With the

1    Court's permission, I'd like to hand you -- and we

2    have two copies for counsel.  I made a flow sheet in

3    hopes that I would be shorter, sweeter and to the

4    point.

5              THE COURT:  Okay.

6              MR. CROWLEY:  I've attached the relevant

7    exhibits so you can take a look at them.  The first

8    couple sheets are just the flow sheet for the

9    argument to keep it moving in the right direction.

10   The dispute now before the Court, at least the key to

11   it, deals with the redactions of names and addresses

12   from the chart made by Toro's legal department, and

13   that's Document 00229239.  I'm just gonna call it 239

14   from now on.

15             There are 73 incidents listed.  We only

16   have 21 names and addresses, and this dispute or at

17   least what started this dispute was the absence of

18   the redactions from that chart, which was produced on

19   or about July 21, 2022, a month after your order

20   compelling discovery.

21             On July 21, 2022, Toro served their third

22   supplemental answer after your order compelling, and

23   it's listed on the third page, set out third

24   supplement answer, and as you can see, there was no

25   objection to the interrogatory.

1          Of course, the Court had already overruled
2     all specific and general objections to the
3     interrogatory, and, of course, in the answer there's
4     no objection pursuant to -- as required by Federal
5     Rule 33 if you hold anything back from an
6     interrogatory answer.  There's no privilege notation
7     or list or any notice of the redaction of the names
8     from 239.
9          The sister request for production regarding
10    other similar incidents was request No. 10, and the
11    Court overruled all general and specific objections
12    to requests for production and ordered No. 10, along
13    with others, answered by July 21, 2022.
14         Their second supplemental response is set
15    out there in both, I quote, relevant, responsive
16    documents are identified in Attachment 10 hereto.
17    Again, under Rule 34 no listing of any objection to
18    any of the information withheld, no privilege
19    notation or list or any notice of redaction of any
20    documents, so the answer to Interrogatory No. 9
21    referred the plaintiffs to Exhibit J.
22         Exhibit J is essentially this big black
23    notebook that Mr. Mahoney's holding up, which
24    included a chart of documents, Bates numbers and a
25    number of documents that we had to search through

1   several times to identify the 21 names we can

2   identify on Document 239, so Exhibit J refers to 239

3   with no explanation but just see Exhibit J, which

4   also lists a Bates number to the 229239.

5            Response to request for production 10

6   referred the plaintiffs to another table created by

7   Toro called Attachment 10.  A copy of that is

8   attached for the Court's convenience.  So the

9   plaintiffs reviewed Exhibit J and Document 239 as

10   well as Attachment 10, including the documents listed

11   on that chart, in an attempt to find the identities

12   of all of the victims of the incidents listed on --

13            THE COURT:  When did you perform this

14   review of all this?

15            MR. CROWLEY:  Well, we've done it many

16   times.  We did this between approximately

17   September -- no.  Probably August or September of

18   2022 on forward as we were also going through it to

19   get other information, answers to other

20   interrogatories, tests, test data and so forth.

21            THE COURT:  So you knew at least in August

22   of 2022 that these names had been redacted?

23            MR. CROWLEY:  I knew that 239 had

24   redactions, and what happened when we went through

25   Exhibit J is we were able to use the documents in

1       Exhibit J to match up the identities of the persons

2       listed in 239 that are highlighted, so we found

3       identical dates and so forth and said okay, this must

4       be this guy.

5               THE COURT:  So what did you do with -- the

6       people whose names you were able to identify then,

7       what did you do with that information?

8               MR. CROWLEY:  Well, we began to look

9       through those documents with respect to the facts of

10      the case and kind of when it happened, how it

11      happened and that type of thing.

12              THE COURT:  I guess I'm wondering why does

13      the name matter?

14              MR. CROWLEY:  Well, the name matters to get

15      additional details of exactly how it happened and

16      what was going on.  This is literally all we have.

17      We asked in Exhibit -- excuse me.  What you ordered

18      them to produce in response to RFP 10 was all of the

19      documents they had regarding these incidents.  They

20      did not produce those.  What they ended up doing was

21      producing a chart and summarizing the information.

22              THE COURT:  I guess what I'm getting at is

23      we -- your motion comes right before discovery was

24      set to close.

25              MR. CROWLEY:  I understand, your Honor.

1              THE COURT:  So you had this information for

2     a year, and if I were to say okay, give them the

3     names, what does that accomplish at this point?

4              MR. CROWLEY:  It allows us to contact those

5     people and find out --

6              THE COURT:  But you're not going to be able

7     to introduce any of that as evidence.  Discovery is

8     closed.

9              MR. CROWLEY:  I'm sorry, your Honor?

10             THE COURT:  So that's what I thought you

11    were going to say, but the answer is how are you

12    gonna get into -- any of that into evidence?

13    Discovery is closed.

14             MR. CROWLEY:  But we can contact those

15    people and --

16             THE COURT:  You can't present their

17    testimony.  You can't present -- none of that's been

18    disclosed during discovery.  If it hasn't been

19    disclosed through discovery, you're not gonna be able

20    to use it at trial.

21             MR. CROWLEY:  Well, your Honor, with all

22    due respect, I -- Toro knows about this, but we

23    don't.  That's --

24             THE COURT:  Well, they're not gonna be able

25    to introduce anything that they haven't produced in

1    discovery either.

2                    MR. CROWLEY:  Your Honor, I --

3                    THE COURT:  So I guess my point is at this

4    point in the game, even if I told them give them a

5    list of names, you're not gonna be able to introduce

6    anything related to any of that at trial, nor are

7    they, so I don't see what the point of any of this

8    is.

9                    MR. CROWLEY:  The point of it was to keep

10   it from us for this long because to deny the fact --

11                   THE COURT:  You've had a year -- you had a

12   year to bring this to my attention and say, look, we

13   don't know the name -- they've redacted the names of

14   these people.  We don't know who they are, and we

15   want to get additional discovery from these people

16   and we need their names, and there would have been

17   time to do that, but we've got Motion for Summary

18   Judgment that's been filed.

19                   We've got -- discovery is closed, and -- so

20   the most relief I can give you at this point would be

21   to tell them to give you the names, but there's no

22   additional discovery you're gonna be entitled to

23   based on that --

24                   MR. CROWLEY:  Your Honor --

25                   THE COURT:  -- so I can't see what the

1    point is.

2              MR. CROWLEY:  The point is we'll get the

3    name and the address and order them to produce the

4    documents for RFP 10 for these incidents, which would

5    have given us the names and addresses.  Had they

6    complied with RFP 10, we would have had that

7    information and we wouldn't have been in this ongoing

8    campaign of disinformation of, well --

9              THE COURT:  Where's your argument that they

10   didn't comply with RFP 10?

11             MR. CROWLEY:  Because the --

12             THE COURT:  I thought this was all about

13   the failure to -- the redaction of the names to

14   Interrogatory 9.

15             MR. CROWLEY:  Because, as I put out in my

16   affidavit and in e-mails, I kept asking, we need

17   these names and addresses.  I didn't just think of

18   this in August.  I asked about it in our conversation

19   in March in front of you.  I said, we still need the

20   names and addresses of those people that are missing,

21   and that's when Mr. Florence cut in and said oh,

22   that's all been produced earlier.

23             Well, it hasn't.  It's not here, and I was

24   under the impression -- maybe I was naive, but I

25   didn't think that they would go ahead and redact

1     information from documents and from interrogatory

2     answers that you ordered them to answer.

3              THE COURT:  Well, but you knew a year ago

4     that they had done that.

5              MR. CROWLEY:  Yes.

6              THE COURT:  So why didn't you come to me?

7              MR. CROWLEY:  And I kept asking them where

8     the information was, and they kept saying, just look

9     at the documents we sent you.  That's what I was

10    told, and as you can see from the e-mails attached to

11    the pleadings, as we got closer to the close of

12    discovery, starting in March, actually, I mentioned

13    it first in September of 2022, I said, look, where

14    are the documents that I'm supposed to find this

15    information in?  And all they kept doing is referring

16    me back to the information that they had produced.

17             Well, they didn't produce the information.

18    They produced a chart with summary information, and

19    we're entitled to at least investigate other similar

20    incidents to the point where we may be able to use

21    that to prove notice, and I'm sure we'll have a big

22    argument about this, but this information is quite

23    important to most juries and to most courts.

24             THE COURT:  I'm sure it would have been,

25    but discovery is closed.  That's my point.  Like,

1          discovery is closed, right, so what your specific

2          motion is asking me to order them to disclose the

3          names that have been redacted.  That's the motion

4          that you filed, right?  It's the sanctions motion,

5          but you're really filing a discovery motion to compel

6          them --

7                  MR. CROWLEY:  No.

8                  THE COURT:  -- to file --

9                  MR. CROWLEY:  I disagree, your Honor.

10                 THE COURT:  Well, you're --

11                 MR. CROWLEY:  I'm asking them to produce

12          immediately and to rule that this --

13                 THE COURT:  Right.  That's a request for

14          discovery.

15                 MR. CROWLEY:  And to rule that this chart

16          is admissible for purposes of notice of hazard.

17                 THE COURT:  I don't know that --

18                 MR. CROWLEY:  Because we've been denied the

19          opportunity to find those people and to do more

20          discovery.

21                 THE COURT:  Yeah, but ultimately are you --

22          you're -- what you're wanting me to do is to not only

23          tell them to disclose the names that have been

24          redacted but then to give you additional discovery

25          period to perform discovery related to the people

1          that are on this list, right?  That's what you --

2                 MR. CROWLEY:  We can go do an

3          investigation, but you're right.  We couldn't do

4          discovery of people we didn't know about, and we

5          didn't know that they had been redacted and they

6          weren't in the rest of the documents --

7                 THE COURT:  Well, you did know they were

8          redacted in July of 20 --

9                 MR. CROWLEY:   -- because no objections

10         were filed.

11               THE COURT:  In July of 2022 you knew they

12         were redacted.

13               MR. CROWLEY:  No, no.

14               THE COURT:  You got the documents in July

15         of 2022.

16               MR. CROWLEY:  I got 160,000 documents.

17               THE COURT:  Fair, but you had a year,

18         right?

19               MR. CROWLEY:  Right.

20               THE COURT:  And this is what?  Nine days

21         before the close of discovery that you say hey,

22         they've redacted these names.

23              MR. CROWLEY:  There is -- there's a letter

24         attached to this on August 10 of 2023, just like I

25         showed in the brief.  I said, look I can't find it in

1   any of these documents.  Just give me the names and

2   addresses, and in response I got a letter from Mr.

3   Grace that said, why don't you just keep looking in

4   the documents.

5            No mention of any objection based on, well,

6   we don't want to give out the identities of

7   nonparties.  I've never heard that objection in 12

8   months.  I mean, Judge, I think you've seen me enough

9   in this courtroom -- whether you wanted to or not is

10  another issue.  I mean, we've been doing our

11  discovery.

12           We haven't been sitting on this, but I kept

13  thinking -- I didn't want to come in here and bother

14  you with a hearing over materials that were somewhere

15  in this morass of documents, and they had a duty

16  under Rule 33 and 34 that if they were withholding

17  information under a claim of, well, it's privileged

18  because it's identities of nonparties, they had a

19  duty -- and if they'd have done that, I'd have been

20  in here in August of 2022 or September.

21           THE COURT:  What do you make of their

22  argument, they say, look, the interrogatory says

23  please identify and list by name or source, date,

24  location and form of every notice, lawsuit and they

25  say, look, it's either/or.  It's name or source, and

1      we did source?

2              MR. CROWLEY:  If you read it name or if you

3      don't have the name, tell us the source.  If you just

4      kind of --

5              THE COURT:  That's not what it says.  What

6      it says is -- you know, it's the language that

7      matters.  Please identify and list by name or source,

8      date, location and form of every notice lawsuit

9      complaint about a report, electronic message.  That's

10     what the interrogatory says.

11             MR. CROWLEY:  But the request --

12             THE COURT:  It doesn't say name and source.

13     It says name or source.  It doesn't say name or if

14     unavailable source date.  It says name or source.

15             MR. CROWLEY:  I understand, your Honor, but

16     it also says in Request No. 10, give us the documents

17     that you have about this incident, which would have

18     given us more information about its location, the

19     date, the time, people involved, the police report.

20     I mean, these are not privileged documents, and they

21     were withheld despite your order.  I didn't -- you

22     know, forgive me, Judge.  Maybe I'm naive, but I

23     really didn't think that someone would intentionally

24     just redact information from documents or

25     interrogatory answers.

1           If they'd have made the arguments they made
2      in their brief to me in my several inquiries about
3      this, including one in front of the Court on March
4      16, yeah, I'd have been all over it.  I'd have said,
5      well, I didn't know you were withholding it without
6      objecting but you were withholding it because you
7      think they're privileged as documents showing the
8      identities of nonparties.
9           I mean, that just came up after the motion
10     for sanctions was filed, and I think it's clear that
11     we being the victims of, again, Toro just does it by
12     their own rules.  They didn't object.  They didn't
13     clearly say to anybody, well, it's not in the morass,
14     but don't look in this bunch of documents because
15     we've kept it --
16           THE COURT:  I guess I -- the part I'm
17     struggling with is if this is me in July and I get
18     this and I'm like, the names were redacted --
19           MR. CROWLEY:  Yeah.
20           THE COURT:  And I say, you've redacted the
21     names.  You were supposed to give me the names and
22     they say, no, you said name or source.  We gave you
23     what you're entitled to.  You said, well, that's not
24     what I meant.  They're like, well, take it to the
25     judge.  Why didn't that happen?

1              That's the part I've been struggling with

2     because at that point a year ago or 11 months or even

3     10 months, then I could have looked and said oh,

4     yeah, I think you should have the names.  I interpret

5     the interrogatory differently.  Give them the names.

6     Give them some discovery on that if you want it,

7     et cetera.  But at this point, nine days before

8     discovery closes and you file the information, I

9     don't know what good that information is gonna do you

10    anyway.

11             I mean, you had it -- you had notice that

12    this was an issue over a year ago.

13             MR. CROWLEY:  Yes.  I would say that I

14    probably saw this document no later than September,

15    which is one of the reasons I sent the e-mail and

16    said, hey, we're trying to find this information.  My

17    answer to you is this, Judge, because when I inquired

18    and I inquired because that's the first step in

19    meeting and conferring and I understand that, but if

20    you don't know what you're meeting and conferring

21    about, I got the same answer when I asked as was

22    given to this Court on March 16 when I mentioned it

23    again.

24             Oh, all that stuff's been produced.  They

25    didn't say oh, we're withholding it.  It's -- the

1    impression is you'll find the redacted names if you
2    just go look hard enough, and I don't want to be in
3    front of this Court and drag everybody in here and
4    then have them say, well, if you look at Bates No.
5    yada, yada, yada, which we've got hundreds of tens of
6    thousands there, it's there buried deep.
7            And that's a real problem with these
8    productions, and -- so I was given that same -- I was
9    not given an honest answer in 14 months, and if the
10   Court doesn't believe that, I'm sorry.  I tried to
11   meet and confer.  I tried to comply with your order
12   as best I could, and if you'll notice on August 10
13   Mr. Grace said oh, it's still too early to meet and
14   confer over this because you need to go back and look
15   at these other documents.
16           That's the last letter in here.  That's one
17   of the last letters in here.  On August 10, 2023 he
18   said if you'll look at this and this and go back and
19   look at this, you know, just do all that -- they
20   haven't produced one e-mail, one letter or anything,
21   including an official discovery response which says
22   the redaction names aren't there.
23           You're not gonna find it anywhere because
24   we kept them out because of our objection, which we
25   neglected to tell you under Rule 33 or 34.  We

1    believe we don't have to produce these despite the

2    judge's order because it's the identity of

3    nonparties.  Given the fact of all the controversial

4    discovery issues we've had in this case, I hope the

5    Court doesn't believe that I would have sat on my

6    hands if I didn't believe, No. 1, that when I was

7    told to just keep looking, okay, all right, if

8    they're really in here, we'll keep looking.  And

9    we've wasted an enormous amount of time, and I'm sure

10   it was funny to somebody.  It wasn't to me.  I spent

11   a lot of time.  I spent a lot of my staff's time

12   looking for a needle in a haystack that wasn't there.

13        I was -- I was mislead.  They

14   misrepresented it, and they did not comply with their

15   duty to just say they're not there, Mr. Crowley.

16   They're not gonna be there because you know what?  We

17   think we have a right to withhold them under this

18   privilege that we're claiming.  I didn't get a

19   privilege log.  I didn't get an objection.

20        I didn't get an explanation, and they --

21   the first time I realized that this information was

22   not in the materials I already had was August 14,

23   2023, when Mr. Grace sent me a second letter four

24   days before discovery closed saying not only is this

25   not ripe for meet and confer and you can't talk to

1     the judge about it yet, but neither Judge Hawley's

2     order nor the -- neither Judge Hawley's order nor

3     anyone has ever brought up the privilege of not

4     producing the identity of nonparties, and I thought

5     that objection was overruled in July -- in June of

6     2022.

7               THE COURT:  Well, I ruled they needed to

8     comply with Interrogatory No. 9, but I was very

9     specific that I wasn't saying what specifically

10    beyond that they needed to comply with Interrogatory

11    No. 9, but I didn't say -- make any ruling as to

12    whether or not what they would produce would be

13    appropriate or not, that that would be an issue for a

14    later day, right?

15              MR. CROWLEY:  Yes.

16              THE COURT:  And so they produced what they

17    believed to be their -- according to their

18    interpretation of the way the interrogatory was

19    written as a disjunctive, and then nothing happened

20    for a year.

21              MR. CROWLEY:  Why does the disjunctive

22    allow them to ignore the other part of the orders

23    that said produce the documents, not a chart made by

24    the legal department but the original --

25              THE COURT:  Well, your motion is focused on

1    Interrogatory No. 9 that's in front of me now.

2              MR. CROWLEY:  Yeah, well --

3              THE COURT:  It is.  That's the issue I've

4    got in front of me, right?  You're raising something

5    entirely different than what you've briefed here.

6              MR. CROWLEY:  Your Honor, I'm raising the

7    failure to comply with your order and how it's

8    prejudiced us under Rule 37, and it has.  I'm sorry.

9    I don't know -- I don't know what more I could have

10   done because nobody apprised me of the fact that it

11   was being withheld under some claim of privilege, not

12   a mention of it.

13             THE COURT:  I don't -- they've never said

14   it's privileged.  At least the argument I see is that

15   they don't think they're required to provide it based

16   on how the interrogatory was worded.

17             MR. CROWLEY:  And it's a coincidence they

18   didn't produce the original documents to these

19   redacted situations from Exhibit -- excuse me, from

20   their response to Request for Production No. 10?  If

21   I had a police report for No. 1, I would know who the

22   person was, and that's what I was looking for because

23   I trusted them, and I trusted that they would have

24   followed your order to the letter or at least asked

25   permission -- they never asked you, well, is it okay

1    if we redact some of this stuff?

2              They did the same things with the other

3    documents that you ordered them to produce, and low

4    and behold, the redactions were serious admissions

5    against interest.  You know, I --

6              THE COURT:  Well, let me hear from

7    Mr. Florence and Mr. Grace and then kind of pick up

8    where we're at and then we'll see where to go from

9    there.

10             I guess, Mr. Florence --

11             MR. FLORENCE:  Would you like me at the

12   lectern?

13             THE COURT:  It's up to you.  I guess my

14   first question is related to the claim he's making

15   related to the documents.  I mean, I didn't

16   understand from reading the motions that there were

17   any documents being withheld.  It was just a matter

18   of the redactions of the names.  Are there documents

19   related to these particular people who were involved

20   in these incidents that you've not produced or

21   withheld?

22             MR. FLORENCE:  I'm not aware of any

23   documents that have been withheld or not produced,

24   your Honor.  I believe that binder that they held up

25   over there were the documents that we produced that

1      are relevant to notices of claims as called for in

2      Interrogatory No. 9.

3              THE COURT:  So you're not -- as you sit

4      here today, you are unaware of any documents that

5      you've withheld in response to RFP No. 10?

6              MR. FLORENCE:  I'm not aware of a single

7      one.

8              THE COURT:  Okay.

9              MR. FLORENCE:  Well, and you said RFP 10.

10     I haven't looked at RFP 10 or focused on it for this

11     motion, but, again, I certainly don't recollect that.

12     I don't recollect any discussion or thought about we

13     need to withhold this document or that, that the

14     discussion and the thought process was we've got a

15     30-day window.  We've gotta comply with this order.

16     We've gotta find these documents and get them

17     produced.

18             THE COURT:  And what -- why did you

19     withhold the names?  Why did you not produce the

20     names?

21             MR. FLORENCE:  Well, one of them is, as you

22     have already laid out, the interrogatory has an

23     either/or disjunctive or conjunctive --

24             THE COURT:  Disjunctive.

25             MR. FLORENCE:  Disjunctive language in it.

1          We could have just taken that entire column out where

2     it says redacted person, identified information and

3     just not even included it there, but it was in there,

4     and to be honest, your Honor, this is an exercise in

5     making a mountain out of a molehill because it is

6     just the practice of Toro, and I think it is of other

7     companies that are also involved in this type of

8     litigation, to be very careful about producing in the

9     courts personally identifying information,

10    particularly when someone comes forward and says we

11    got a problem with a machine.

12          We don't ever want to put a chilling effect

13    on all of that type of reporting.  This could have

14    been resolved at any time for over a year if

15    plaintiffs had simply complied with Section 7 of the

16    standing order and have a real meet and confer to

17    talk about this where we would have known for the

18    first time that his concern was related to redaction.

19          If you go back and you look at the

20    transcript that we provided you from July, you will

21    not see the word redaction.  You will not see

22    anything that suggests that that was a concern.  Had

23    that come to my attention, I would have addressed it.

24    To suggest that I was diabolical enough or quick

25    enough to just change the -- change the subject real

1        quickly is beyond my abilities.  I don't have that --

2        those type of abilities anyway.

3                But if that was their concern, they needed

4        to state it in a way that raising the issue, and then

5        we would have addressed that as well by saying, well,

6        that's not what you asked for or, you know, we have

7        real concerns about handing that over.  We could have

8        had an informal discovery conference with you, and if

9        you said, okay, to remove the redactions, we would

10       have had the comfort of an order that specifically

11       says that so that when someone of these people comes

12       back to us and says why did you provide this, why am

13       I getting a phone call from this guy or whatever the

14       case may be, we have an order that says, okay, the

15       judge said to hand it over.

16                THE COURT:  So if I look at, say, redacted

17       No. 1 here, how, if I'm Mr. Crowley, would I find --

18       so I assume that you produced documents in a separate

19       production in response to the RFP that are related to

20       we'll call Person No. 1.  Is that correct?

21                MR. FLORENCE:  That's fair.  True.

22                THE COURT:  And how would I find documents

23       related to Person No. 1?

24                MR. FLORENCE:  To the extent that we had

25       those documents, they will be in our production that

1    would -- and then you would -- you can look at that

2    information we provided and it says a lot of

3    information, the type of machine, the description of

4    the accident, varying degrees of --

5              THE COURT:  Date of the incident would

6    be -- you have date of the incident.  They list all

7    the dates.  I'm just trying to -- I've got -- you

8    know, Mr. Crowley says, look, I've got all this

9    discovery.  We're wading through this.  We're trying

10   to figure out which document is related to which

11   incident, and all I see is, say, take No. 29.

12             The incident was on July 5, 2011.  The

13   model was unknown.  The deck is No. 60 inch.  It's a

14   Z Master 60 inch.  The tire slipped off into the

15   ditch, so that they can look through the discovery

16   and look for anything related to an incident on July

17   5, 2011?  Is that how they would identify the

18   documents that are related to this incident?

19             MR. FLORENCE:  Or they could just contact

20   us and say, look, you redacted the personal

21   identifying information.  We want you to remove that

22   so we can get this information.  That was not raised

23   with us until August 8, 2023.  I believe that's nine

24   days before the close of discovery.

25             I got an e-mail from -- well, we had a

1      discussion while we were waiting on his witness who

2      was running a little bit late for a deposition, and

3      he raised it.  He followed up with an e-mail, and in

4      the subject line it says redacted information and

5      raises this issue in a way that actually gives me

6      notice of what his concern is.

7              That was on August the 8, 2023.  I never

8      had any inkling that he was concerned about that

9      before then because he has all this information that

10     you've been going through and documents like in that

11     binder right over there, but we could resolve this

12     with an informal discovery conference, and if you

13     would have said do it, we would have done it.

14             THE COURT:  Okay.  Mr. Crowley, anything

15     else you want to say on this?  I know I wanted to

16     hear from Mr. Florence on a couple of those issues,

17     but I don't mean to cut you off.

18             MR. CROWLEY:  Yes, your Honor.  I'll just

19     speak from here.  I have a couple of questions.  If

20     they didn't have the documents responsive to Request

21     for Production No. 10, how did they make up

22     document --

23             THE COURT:  He just said they've given you

24     everything that they believe they have that's

25     responsive to No. 10, they've given you.

1          MR. CROWLEY:  I know, but my question is

2     how did they create the chart that they did if they

3     didn't have some document that had the information

4     about the incident in it?  They created this chart.

5     Obviously they had to have something, and I can tell

6     you, Judge, we've gone through this thing three,

7     four, maybe five times, and contrary to what was

8     represented to the Court, there are no documents that

9     we've been able to find going through thousands of

10    documents that give us the information that we lack.

11          And I can tell you the reason we're so

12    thorough is because they were insisting, oh, what you

13    want to know is in these documents, and it's just

14    not.  For example, Exhibit -- at page 4 of 28,

15    operator alleges unit unexpected turn to the left

16    causing operator to lose control and roll over into a

17    spring.

18          My legal assistant, our senior legal

19    assistant put no name, no info after searching the

20    documents thoroughly for over a day, for two days,

21    that were referred to in their responses.  There's

22    just nothing there.  There's not a police report, not

23    an ambulance report, not a newspaper clipping,

24    nothing, and so for them to say to this Court oh, we

25    produced all that, if they have, I don't know where

1    it is because I've looked at what they've produced.

2         As you know, in our work of going through

3    all these documents, we found almost 10,000 that were

4    missing or nonexistent, and that lead to a

5    three-month wait while Mr. Grace and the IT guy for

6    Toro created this explanatory letter saying oh, well,

7    yeah, you know, those are just Bates numbers.  We're

8    sorry they were blank pages.  They don't really mean

9    anything.  They're really not documents.

10        Well, we had to go through those 9700-plus

11   documents, as we did these, and -- anyway, I'll

12   finish up here.  So without identifying the objection

13   to either the request or the interrogatory, I sent --

14   which is attached to our motion, I sent an e-mail to

15   defense counsel in September of 2022, and one of the

16   issues, Issue No. 3, was I'm very concerned about

17   missing information and documents we can't seem to

18   find.

19        We're looking -- and included the names and

20   addresses of victims.  And I didn't get an, oh,

21   they're not there.  When I brought it up in front of

22   the Court in March of this year --

23        THE COURT:  I don't know what you're

24   referring to.  This issue has never come up before me

25   about names being redacted from the response to

1    Interrogatory No. 9.

2              MR. CROWLEY:  In the transcript, your

3    Honor, that -- at that meeting you said is there

4    anything else -- do you have any other discovery

5    issues.  This was the informal meeting.  Do you have

6    any discovery issues, Mr. Crowley?  And I said yes,

7    your Honor.  There are some other issues concerning

8    the names and addresses that we can't seem to find

9    or -- it's in the transcript, and that's when Mr.

10   Florence assured the Court and me, we produced all

11   that.  That's water under the bridge or under the

12   dam, whatever he said.

13             THE COURT:  Right, but the issue wasn't

14   that these names had been redacted.  They were people

15   that you couldn't find in the discovery.

16             MR. CROWLEY:  Exactly.  We couldn't find in

17   the documents that were -- that he just told you were

18   produced.  If they produced them, they're not in the

19   tens of thousands we looked at, and we looked very,

20   very hard.  And so I submit, your Honor, because they

21   violated Rule 33 and Rule 34 and they didn't -- when

22   we tried to make -- this is what's so frustrating.

23             This is what I call the weaponization of

24   the meet and confer.  If you're not forthcoming and

25   you don't follow the rule of good faith responses to

1    discovery and you know the other side can't find
2    something or they're asking you about it and you
3    don't come right out and say, well, we didn't give it
4    to you because we feel these documents are redacted
5    properly under a claim of privilege law.  I didn't
6    know there was a claim of privilege
7             THE COURT:  There is no claim of privilege.
8    They've never claimed this information was
9    privileged.  You keep saying that.
10            MR. CROWLEY:  That's what the letter says
11   because they believed that they had a right to redact
12   it because this information was the identity of
13   non-parties, which was an objection they made before
14   your Honor and you overruled it in your order.
15   Whether you knew it or not, you said all general and
16   specific objections are gone.
17            That was another reason it was confusing to
18   me.  It was like, well, the judge overruled this
19   objection.  It can't be that, and I looked.  I mean,
20   we looked how you're looking at me, and I don't blame
21   you.  I mean --
22            THE COURT:  Well, Mr. Crowley, let me ask
23   you this, just to wrap up.  Let's say I said I'm
24   gonna give you everything you want.  What is it that
25   then you would want?  Sitting here today, what is it

1       you precisely are asking me to do?

2              MR. CROWLEY:  I'm asking you to order them

3       to produce that information, for one thing.

4              THE COURT:  What is that information?

5              MR. CROWLEY:  The names and addresses of

6       the OSI victims that have not been identified, which

7       raises another question.

8              THE COURT:  So the names and addresses on

9       this chart?

10             MR. CROWLEY:  Yes.

11             THE COURT:  Okay.

12             MR. CROWLEY:  And the documents that they

13      still have.

14             THE COURT:  They've already said that they

15      produced everything that they have.

16             MR. CROWLEY:  Well, then, if you order them

17      to produce everything else they have arising out of

18      these incidents, it would be real easy to comply.

19      They can then write another response and say here

20      they are.  Here's the Bates numbers.

21             THE COURT:  And that's -- you're asking --

22      that would be to provide all the names that have been

23      redacted and contact information that they have in

24      their possession on this chart and all responsive

25      documents to RFP 10.

1              MR. CROWLEY:  Right.

2              THE COURT:  And what else?

3              MR. CROWLEY:  And that since we have been

4      so prejudiced and unable to actually talk to these

5      people in the last 14 months, to give us the

6      opportunity to use this information without Toro's

7      objection because that's one of the specific --

8              THE COURT:  What do you mean by use this

9      information?

10             MR. CROWLEY:  OSIs are an important aspect

11     of any product liabilities case because they

12     demonstrate the knowledge of the manufacturer that

13     there's particular hazard and it's repetitive.  It

14     happens again and --

15             THE COURT:  What I'm asking is let's just

16     assume that they have produced everything in response

17     to RFP 10, okay?

18             MR. CROWLEY:  Okay.

19             THE COURT:  So -- and I order them to give

20     you all the names and addresses on this list.  Is

21     that -- that's everything -- what I'm asking is then

22     what?  That's all you want, is the names and

23     addresses?

24             MR. CROWLEY:  No.  I want a sanction under

25     Rule 37 that says Toro will not be allowed to object

1          to any offer of evidence out of this material on the

2          basis of foundation or lack of discovery.

3                    THE COURT:  I don't -- so you're not asking

4          for any additional discovery?

5                    MR. CROWLEY:  Nope.  I'm just asking for

6          compliance with your order, I think.

7                    THE COURT:  So all you want is the list of

8          these names and addresses to fill this chart in with

9          the names and addresses?

10                   MR. CROWLEY:  Yes.

11                   THE COURT:  You're not asking to contact

12         those people?

13                   MR. CROWLEY:  Well, I presume we will if we

14         need more detailed information because the argument

15         in every --

16                   THE COURT:  How are you gonna present that

17         in court?

18                   MR. CROWLEY:  Affidavits.  OSIs are --

19                   THE COURT:  You can't use an affidavit as

20         evidence at trial.

21                   MR. CROWLEY:  Pardon me?

22                   THE COURT:  You can't use an affidavit as

23         evidence at trial.

24                   MR. CROWLEY:  No, but the point is, your

25         Honor, OSIs are admissible for purposes of notice,

1     and the objection that always comes is foundation and

2     they're not substantially similar because it happened

3     on a Thursday by a blond operator instead of on a

4     Friday by a brunette operator.  I've been through

5     those arguments dozens of times, and the foundation

6     you have to lay for an OSI for notice is not the same

7     that you have to do for a witness.

8             This is information -- the Court may be

9     overlooking the fact --

10            THE COURT:  So you have --

11            MR. CROWLEY:  The Court is overlooking

12     information that --

13            THE COURT:  So here's what you have.  You

14     have, okay, there was an incident that occurred on

15     July 8, 2005 where an operator rolled the unit and

16     there was a call to request a ROPS, okay?

17            MR. CROWLEY:  Yes.

18            THE COURT:  Now, if I gave you what you

19     wanted, you would have James Jones who lives at, I

20     don't know, 404 Main Street in anywhere, Illinois.

21     How does that help you in any way?

22            MR. CROWLEY:  It impeaches their corporate

23     employees and their experts.  They say this is a

24     reasonably safe --

25            THE COURT:  No.  I mean, what's the

```
1        difference between --
2                    MR. CROWLEY:  And you may remember --
3                    THE COURT:  What's the difference between
4        saying this happened to James Jones versus it
5        happened on July 8?  You have all the other
6        information here.  Supposedly you have all the
7        documents that they have in their possession related
8        to it.  How does having the name help you at this
9        point?
10                   MR. CROWLEY:  It puts a name and a face to
11       somebody who died or was paralyzed.  I think that's
12       pretty important to most jurors.
13                   THE COURT:  So that that's why you want
14       those names?
15                   MR. CROWLEY:  Yes, your Honor.  That's one
16       of the reasons, but that's a big one.  I mean, these
17       people were injured.
18                   THE COURT:  What are the other reasons?
19                   MR. CROWLEY:  The other reasons are to
20       provide --
21                   THE COURT:  I guess I'll be blunt with you.
22       I don't know how this, you know -- this information
23       at this stage in the game helps you in any way unless
24       you were gonna ask me for more discovery.
25                   MR. CROWLEY:  That's the whole point of the
```

1      Rule 37 sanction, your Honor, when a defendant denies

2      information to a plaintiff and covers it up or

3      doesn't disclose it carefully under Rule 33 or 34.

4                THE COURT:  There's no coverup here.  You

5      had this document a year ago.

6                MR. CROWLEY:  I disagree, your Honor.  I

7      respectfully disagree.

8                THE COURT:  It's not a secret that a year

9      ago these names were redacted, right?

10               MR. CROWLEY:  I understand.  I've

11     stipulated to that.  There's no question about it,

12     but the question was when I asked them where was it,

13     they indicated keep looking at the documents we sent

14     you.  Keep looking at the documents we sent you.

15     They said it as late as August 10.  Nobody told me

16     they were being withheld intentionally.

17               And if you look at the chart, if they're so

18     concerned about the identity of nonparties, why did

19     they give us 21 names without redaction?  They're not

20     consistent.  This whole thing is intended to confuse

21     the whole issue and to prevent us from being able to

22     go forward because I took your order very seriously.

23     I thought, well, I can't go in front of the judge if

24     I don't -- how do I -- how do I meet and confer about

25     an objection or a claim of privilege that I don't

1     even know about?

2                    THE COURT:  Well, I guess the answer to

3     that is, you sent me a response to Interrogatory No.

4     9 that has all the names redacted.  I'm entitled to

5     those names.  They say no, you're not for X, Y, and Z

6     and you say, well, I disagree with you.  We need the

7     judge to rule on this.  That's how you do it.

8                    MR. CROWLEY:  I wasn't told that.  I was

9     told go look in the documents.  It's there.  You just

10    haven't found it yet.

11                   THE COURT:  Okay.

12                   MR. CROWLEY:  And, Judge, I think you know

13    me well enough at this part of the case, I'm not

14    hesitant to raise a discovery issue with you if we

15    don't make any progress at meet and confer.  I mean,

16    this isn't something I sat on.  This is one of the

17    most frustrating things I had.  We spent a lot of

18    time looking for something that wasn't there, and,

19    you know, just common courtesy between lawyers should

20    be, look, we didn't give it to you because we think

21    we can't do that.

22                   I even asked Mr. Florence one day fairly

23    late in the game, probably a couple months before

24    discovery closed about, oh, I remember -- he may be

25    thinking about -- he may be remembering the date of

1    that deposition.  I said oh, what about those names

2    on the chart?  And his response was, well, I'll go

3    check but, you know, a lot of those people don't like

4    their names let out.

5              And I thought, well, that's odd at the

6    time.  The documents are there and their names are in

7    it, but that was it, and then on August 14 I know

8    it's been kept all this time, the information was not

9    in the documents produced because finally Mr. Grace

10   said oh, those have been withheld under claim that

11   we're not gonna give out the identities of

12   nonparties.

13             That -- and, Judge, this is -- I mean,

14   maybe you think it's all coincident and accident.

15   This is information that we were denied.  It's caused

16   us great prejudice because, as you point out, what do

17   we do with it now after discovery closes?  And the

18   answer is, we put a name and a face to these

19   incidents.  No. 2, we can use them to impeach

20   statements by Toro employees, Toro safety managers

21   and their experts, who -- I mean, Ms. Drutowski

22   claimed the reason that this particular time cutter

23   was so safe was because they didn't even know they

24   had a death on a time cutter until after ours was

25   made.

1             THE COURT:  Well, that -- adding a name to

2      this list is not gonna change whether or not they --

3      I mean, all that information is either on this list

4      or it's not.  All the other information is here,

5      right?  So that the name isn't gonna change -- I

6      don't know how having names is gonna give you any

7      ability to impeach the witness.  You're just adding a

8      name to the list.

9             MR. CROWLEY:  I don't know if the Court's

10     gone through the Motion for Summary Judgment filed by

11     Toro just yet, but one of the things they say --

12            THE COURT:  Actually, that's not my motion.

13     It's before Judge Darrow.

14            MR. CROWLEY:  I understand that, Judge, but

15     I'm just saying one of the points that Toro tries to

16     make, your Honor, is that we couldn't foresee this

17     accident.  And for example, you say what could we

18     find out?  We could find out how many of these

19     incidents were caused by a hydrostatic motor failure,

20     how many of these incidents were caused by the lack

21     of a brake, an independent brake, which we now know

22     was actually considered by Toro and just deleted from

23     safety improvements.

24            THE COURT:  But that's what all the

25     discovery was for, right?  That's why we had the

1    discovery period, for you to get the information, and

2    until I got this motion, I had no reason to believe

3    at this point that you hadn't gotten everything that

4    you thought you were entitled to.

5              MR. CROWLEY:  I don't know what else I can

6    say, Judge, other than I believed -- I'm embarrassed

7    to say it, but I actually believe when the Court

8    orders a party to produce something, if they deviate

9    at all from the letter or spirit, they either get the

10   other side's agreement or they go to the Court and

11   say Judge, we need some information from you.

12             Are we allowed to do this?  Because they

13   gave us 21 names.  They didn't give us the other 52,

14   which lead me to believe, well, okay, they gave us a

15   third of them or roughly a third of them.  We'll just

16   have to go through the needle in the haystack routine

17   and try to find it.

18             And you're right.  This could have been

19   solved by a single phone call and say Steve, we

20   redacted that information because we don't think we

21   have to give it to you and here's why.  To me,

22   whether you call it a privilege or objection,

23   whatever, I --

24             THE COURT:  So when they gave you this

25   document, they should have also called you and told

1       you, hey, we redacted the names here?

2               MR. CROWLEY:  No.  When they gave me that

3       document, they had a legal duty to put an objection

4       on their interrogatory answer and their request for

5       production explaining what they had withheld --

6               THE COURT:  When should they have called

7       you and told you that they redacted the names from

8       the documents that --

9               MR. CROWLEY:  Well, if they'd have put the

10      objection in there like they were supposed to, they

11      wouldn't have had to call me.  I would have known

12      instantly that, okay, this isn't coming.  This isn't

13      anywhere in these thousands and thousands of

14      documents.  It's not coming.  I have to bring it up

15      to Judge Hawley.

16              I either have to resolve it with them or

17      bring it up to Judge Hawley, and Judge, I appreciate

18      your confidence in me, but I tell you, I've been

19      looking for this stuff for a long time and it's

20      frustrating and it's embarrassing to have it come out

21      like this, but I can tell you this.  It just didn't

22      occur to me that they would just blatantly redact

23      things that were ordered produced and then not

24      justify it with an objection or a privilege or an

25      explanation, and when I did ask them verbally about

1        it, they didn't tell me until August of this year.

2                 So if you want to blame somebody for 14

3        months of delay, you might want to spread some over

4        at the other table because you know what?  I've been

5        willing to resolve this in September of 2022.  I'd

6        have loved to.

7                 THE COURT:  When did you first discover, in

8        reviewing the discovery, that this information had

9        been redacted?

10                MR. CROWLEY:  Well, the first time I looked

11       at the chart.  Obviously you can look at the --

12                THE COURT:  Well, I'm asking, when was

13       that?

14                MR. CROWLEY:  I would estimate -- I've

15       looked at so many documents.  I would say I looked at

16       that chart no later than September of 2022, maybe

17       October.  I'd have to look at my calendar, Judge, but

18       I'm sure that --

19                THE COURT:  But it wasn't recently.  You

20       didn't look at it recently and realize that that

21       information had been redacted?

22                MR. CROWLEY:  No, no.  That's why I asked

23       in March, why isn't it here?  And I couldn't

24       understand what the big deal was since they gave us

25       the other 21.

1           THE COURT:  Okay.  Mr. Florence, any final

2       thoughts on that?

3           MR. FLORENCE:  Just briefly, your Honor.

4       First of all, what the plaintiffs are essentially

5       asking you to do is rewrite their Interrogatory No.

6       9.

7           THE COURT:  Let me ask you a more specific

8       question.

9           MR. FLORENCE:  Sure.

10          THE COURT:  Why did you redact some and not

11      others?

12          MR. FLORENCE:  I think that was just due to

13      the pressure of responding to the discovery order

14      within a 30-day time period.  I think it most likely

15      got missed, but I don't know that for a fact.  It was

16      not -- what we have out there is what we have out

17      there, but there was not, to my knowledge, a

18      conscious decision to make those --

19          THE COURT:  Well, you had on -- let's go to

20      page --

21          MR. FLORENCE:  I will tell you one thing,

22      Judge.  I know that some -- for example, some of them

23      were where there were actual lawsuits filed.  I know

24      that that's public information and so that was

25      produced without any redaction.  I know those were,

1        but, your Honor, I mean, the point is that --

2                THE COURT:  Well, I guess it would be

3        useful to understand -- I understand your argument

4        that, look, if you look at the plain language of the

5        interrogatory, it says, you know, if I accept your

6        interpretation, name or and so it would make sense to

7        me if you said, well, we're just gonna provide the

8        name or we're gonna provide this other information

9        but not the name, but some of them you provide a

10       name.  Some of them you don't.

11               There has to be a reason for that, and

12       that's the part I'm just trying to figure out if it's

13       about interpretation of the interrogatory and you do

14       do an either -- you know, you do the name or you

15       don't do the name and the other information but some

16       of them you did the name and the other information

17       and I think what you're saying is as you sit here you

18       don't know why?

19               MR. FLORENCE:  I don't have a good

20       explanation for why that is.  I think it may have

21       been just because we were dealing with a very large

22       volume of information that we had to produce in a

23       very short period of time, and I haven't, to be

24       honest with the Court, gone back and looked at the

25       distinctions to see what was given and what was not

1      to see if there was a rhyme or reason to that other

2      than the fact that I know that once where there was a

3      lawsuit filed, I know that we did not withhold any of

4      that information.

5                  But the other thing I want to make clear to

6      the judge, your Honor, is at the deposition of

7      Ms. Drutowski, which was January the 18th, 2023, Mr.

8      Crowley actually brought and attached four documents

9      to the deposition that had other incident information

10     and redactions for personal, private information in

11     there.  He asked questions about it.  It was

12     discussed.

13                 Ms. Drutowski tried to explain to him where

14     the documents were and the information was about

15     other information that he didn't question her about

16     that was in our discovery responses.  It's discussed.

17                 I've got copies of the transcript right

18     here if the Court wants them, but in one of them Mr.

19     Crowley says, okay, we're talking about one of the

20     incidents.  That name is redacted.  Yes, it is, and

21     then they moved on and asked about the substance of

22     what happened in the incident and the type of

23     information.

24          It truly is relevant to his questioning, so to

25     suggest that he didn't know that this was redacted

1    until late in the game is just not true.  I can't

2    hide something that's in plain sight, for starters,

3    and No. 2, it came up on two occasions during Ms.

4    Drutowski's deposition, and Mr. Crowley didn't say

5    anything about it at that point in time either.

6         So to suggest that he kept asking for this

7    and we kept telling him something different is just

8    not accurate, your Honor.  If he had said why is this

9    redacted, that raises the question in a way that I

10   could respond to it.  That's never the way this was

11   phrased until August the 8th of 2023.  The

12   conversation that he just talked about, I can tell

13   you the date of it.  It was August the 8th, 2023.

14        THE COURT:  Okay.  Let's move to your

15   motion related to adding the counterclaim.  That

16   question, I guess I have a similar timing question.

17   It seems from your motion that you at least implied

18   that the reason why the timing of this motion is

19   related to your expert's opinion, but all of the

20   underlying facts that at least as late as when the

21   plaintiffs were deposed, all of the underlying facts

22   that would be necessary to put you on notice that

23   this was a potential counterclaim or amendment of

24   your answer and affirmative defenses were at least in

25   the record in November of 2022.

1          That's correct, isn't it?

2          MR. FLORENCE:  Mr. Grace is gonna handle

3     this, your Honor.

4          MR. GRACE:  Yes, your Honor.  I'll address

5     the Court on the motion.  Yes.  In other words, up

6     until that point, the answers to interrogatories that

7     we received and the other information that we

8     received certainly led us to believe that our

9     affirmative defenses were sufficient.  Then in the

10    depositions we received a different explanation, a

11    different description of what occurred from the only

12    two people that witnessed it, the only two people

13    that had that information.

14         THE COURT:  And was that -- were those

15    depositions taken before or after the settlement

16    conference we had in this case?

17         MR. GRACE:  Those depositions were taken

18    before, so the depositions were taken in November, I

19    believe mid-November, and the settlement conference

20    was in -- I believe it was on April 25, 2023.

21         THE COURT:  Right.  So why didn't you file

22    this motion after those depositions?

23         MR. GRACE:  Your Honor, in large part

24    because there was a lot going on in the case.  We

25    were getting ready for the -- their disclosures of

1    their experts.  Actually in January following the

2    depositions we were preparing for disclosure of our

3    corporate witnesses in January.  Then in March we

4    received their expert disclosures.  Then in April we

5    had the mediation.

6              It was really, I guess, kind of at that

7    point in the mediation we were starting to realize

8    what these facts really meant.  We continued in May

9    with our expert disclosures, and then in July and

10   August we had the expert depositions.  Then on August

11   10 of 2023 we received the plaintiff's reply to our

12   affirmative defenses.

13             THE COURT:  I guess my question is, look,

14   at least as soon as the depositions were done, you

15   were on notice that this was a potential issue in the

16   case, and really there was no additional facts that

17   have been entered in the record that would have

18   changed that other than you said the expert, you

19   know, you quote me a line from his report, but the

20   reality is, you know, you didn't file it in April.

21             You didn't file it in May.  You didn't file

22   it in June.  Didn't file it in July.  Didn't file it,

23   you know, until we're at a point where same situation

24   that Mr. Crowley is in, right?  Which I've been

25   criticizing him here saying, you know, you filed this

1      motion.  Discovery is over.  What's the point at this
2      time?
3               Well, the flip side is, you know, Mr.
4      Crowley's had, you know, no -- at this point the
5      deadline for amending pleadings is long past.  The
6      depositions of the plaintiffs have long since
7      occurred.
8               All the facts that you would need in order
9      to file this counterclaim have been in your
10     possession, in your knowledge for months and months
11     and months, and then at the 11th hour after he's
12     gonna be entitled to virtually no discovery on a
13     counterclaim you want to add when you could have
14     added it at least a year ago at the latest, maybe,
15     you know, May and now you expect to add that
16     counterclaim and he's not entitled to any
17     discovery.
18               MR. GRACE:  Well, our position, your Honor,
19     is that basically in August when we received his
20     reply to our affirmative defenses and discovery was
21     coming to a close, that's when we began to realize we
22     needed to clean up the pleadings.
23               THE COURT:  That's more than just cleaning
24     up the pleadings, right?  This is adding a
25     counterclaim.  It's gonna affect his ability to

1      represent both of his clients because now they may be

2      in opposite positions, and I just want to remind you,

3      I have a good memory, all right, so I remember

4      everything we talked about at the settlement

5      conference.

6              MR. GRACE:  I understand.

7              THE COURT:  And so to me it looks

8      strategic.  Well, we waited until the last minute to

9      file this motion knowing that the Court is really not

10      inclined to reopen discovery in any way and yet if I

11      allow you to -- I don't know what discovery he might

12      be entitled to, but it would seem awfully unfair to

13      allow you to enter a counterclaim against one of his

14      clients after discovery is completely closed and say

15      you don't get any discovery and you can't ask for any

16      discovery related to it and, by the way, summary

17      judgment motion has already been filed.

18              MR. GRACE:  The timing of the motion was

19      not strategic.  The timing of the motion was simply

20      to try to clean up the pleadings and have the

21      pleadings mirror the facts of the case.  Amendment to

22      pleadings, as we've put in both our motion and our

23      reply, which I won't review for the Court, I'm sure

24      you read them, we believe that there's nothing really

25      new here added.

1           We've been litigating the issue of
2     proximate cause.  We've been litigating these issues
3     in connection with our affirmative defenses and in
4     connection with the issue of proximate cause.
5           THE COURT:  Right.  But you're -- you know,
6     the deadline is past, so you're not under Rule 15.
7     You're under Rule 16.  You gotta demonstrate good
8     cause to amend the pleadings.
9           MR. GRACE:  And even though --
10          THE COURT:  And one of them is undue or
11    unjust delay.
12          MR. GRACE:  I understand.
13          THE COURT:  One of the factors.
14          MR. GRACE:  I understand, your Honor, but,
15    again, our position is there really isn't any
16    discovery to be done.  We've done all of this.  We've
17    reviewed all of these issues.  We've deposed the
18    plaintiffs.  They've deposed our people.  This issue
19    isn't anything new.  It merely is what happened on
20    that day, which has been litigated under a number of
21    different legal issues.
22          This really doesn't change, in our
23    position, change the dynamic of the case.  It doesn't
24    raise any real new legal issues.  Under our
25    affirmative defenses, the jury is going to have to

1     decide and apportion fault, so that issue is already

2     there.  There's no additional discovery that would

3     need to be done.  The courts, and I've cited some --

4              THE COURT:  So if I deny your motion,

5     what's your prejudice?

6              MR. GRACE:  The only prejudice, Judge, is

7     where -- where the apportionment of, you know -- on

8     one of the jury instructions, right, whether she can

9     be assigned an actual amount, but as far as -- as far

10    as litigating the issue of proximate cause and what

11    caused this accident, that has been litigated

12    thoroughly.

13             And, in fact, in their response to our

14    motion for summary judgment, the plaintiffs point to

15    the fact that proximate cause is -- their position is

16    proximate cause is a question of fact that will be

17    dealt with on the issue apportionment.  They cite

18    that in their brief.  There's nothing new here.

19             It really is like their filing of a reply

20    to our affirmative defenses in mid-August.  This is

21    clearly cleaning up the pleadings.  This is really an

22    issue of making sure that these issues are

23    adjudicated on the merits.  There's nothing new here,

24    but it was not a strategy decision.

25             The reason I gave you the itinerary here,

1    as you know, we've been in your courtroom a number of
2    times.  Going back and connecting the dots as to what
3    we learned in the plaintiffs' depositions and going
4    back and connecting the dots to what our answers say
5    and how that might affect the jury instructions
6    really became -- came to our attention as we were
7    doing our motion for summary judgment, so this was
8    not in any way strategic to try to preclude anything,
9    and, in fact, it's our position that it doesn't.
10                 THE COURT:  Mr. Crowley?
11                 MR. MAHONEY:  Your Honor, I'll be arguing
12   this one.  I wanted to address something they brought
13   up in reply brief, which was the statute of
14   limitations.  They said, we're still within the
15   statute of limitations because we learned about this
16   on November 16, 2022 when we deposed Jennifer
17   Hillman.  Well, bringing that statute forward, they
18   make the claim within their own motion, they say
19   indeed, the proposed counterclaim for contribution
20   mirrors the amended complaint rather than adds
21   anything new.
22                 They answered our complaint and our amended
23   complaint with comparative fault.  They alleged from
24   the very beginning that both Rebekah and Jennifer
25   Hillman are at fault, and we haven't filed a motion

1          for summary judgment on that, and there will be a

2          blank on the jury form to apportion fault between the

3          plaintiffs and the defendant, and what they're asking

4          for essentially is another blank after that for the

5          separate counterclaim for contribution.

6                    So that also brings up an interesting

7          question as far as the statute of limitations go.

8          They say, listen, we're not adding anything new.

9          It's been here since the time of filing the amended

10         complaint, which that was filed over two years ago or

11         over two years from the time that this motion was

12         filed.

13                   So technically their claim is time barred,

14         and there's really no way they can file at this

15         point, and this would be something we would be

16         entitled to bring up on a Motion for Summary

17         Judgment, which we would be precluded from at this

18         point because the dispositive motion deadline has

19         passed, so we can't even file that at this point to

20         bring up the fact that it is untimely and barred by

21         the statute of limitations.

22                   Now, the statute of limitations says new or

23         reasonably should have known.  I'm not aware of any

24         case where I have seen, well, we might have had an

25         idea of it but really, the facts weren't waved in

1    front of our face until this time.  Therefore, the

2    statute of limitations should not apply.  I mean,

3    they were pretty strict, I think, every state I've

4    practiced in, every federal court I've practiced in,

5    the statute of limitations is a pretty strict motion,

6    so knew or should have known at that time and, you

7    know, as a plaintiff's lawyer, I wish the statute of

8    limitations is a little bit spongier, but it's not.

9            It's pretty firm here, and they had notice

10   and they admitted they had notice from the time they

11   filed their answer in May to these affirmative

12   defenses alleging comparative fault, alleging

13   Jennifer Hillman is at fault, so they knew from that

14   point on, so really it's time barred.

15           And I won't reiterate a lot of the things

16   your Honor has stated, but I will point out that they

17   bring up that this is a permissive counterclaim under

18   Federal Rule of Civil Procedure 13B, and they spent a

19   great deal of time arguing about how similar this is

20   under the facts and circumstances.

21           Well, permissive counterclaims under 13B

22   are counterclaims that have roots in a separate

23   transaction.  Burlington Northern, RI.Co v. Strong,

24   907 F 2d(B) 707 and 711, and the Court of Appeals

25   states that permissive counterclaims are

1      counterclaims that arise out of separate series of

2      transactions, so what they're bringing this up under,

3      what rule they're bringing this under is antithetical

4      to the actual argument they're making.  It's just

5      procedurally defective.

6              They do bring up some case law that says,

7      well counterclaims should be allowed virtually any

8      time and, according to them, you know, they could

9      file a motion for counterclaim or to amend the

10     complaint the day before trial.  If they're going to

11     at this point, why not the day before trial?  But the

12     case law that they cite deals with case law under

13     13B.

14              That is the case law they cite, so it's

15     just procedural defective, and -- so the claim

16     mirrors the complaint, then it cannot be a permissive

17     counterclaim.  It would also fail because presumably

18     with the compulsory counterclaim under 13A, so unless

19     your Honor has any questions, I just think that this

20     fails from virtually every legal and factual angle

21     that they presented.

22              Thank you, your Honor.

23              THE COURT:  Okay.  Any reply to that?

24              MR. GRACE:  Sure.  The issue of Jennifer

25     contributing to her own injuries and her own claims,

1      her own damages, and Rebekah contributing to her own

2      injuries and damages, claim damages, is different

3      than Jennifer contributing to Rebecca's injuries.

4              Up until the time that we took the

5      depositions, as your Honor noted, it was our

6      understanding that Rebekah moved the pins, that

7      Rebekah had control of the situation and Rebekah

8      contributed to her own injuries.  The concern here is

9      that at trial there's going to be a shift, and that

10     shift is going to be towards the conduct of Jennifer.

11             That shift occurred and we realized it in

12     the depositions, but there was not an attempt here to

13     strategically preclude them from doing anything.

14     This is when we put it together, and this is when we

15     filed.

16             MR. MAHONEY:  Your Honor, could I briefly

17     respond?

18             THE COURT:  Sure.

19             MR. MAHONEY:  I just want to point out that

20     they didn't send discovery until November 8, 2021,

21     which is 22 days before the deadline to amend

22     pleadings, and the way we phrase it in our complaint

23     is that Jennifer and Rebekah towed the mower, that

24     they were mowing the lawn, that this was a joint

25     activity.

1            Now, the way we phrased that is the same

2     way that I were to phrase that my wife and I drove up

3     to Omaha for the weekend.  I don't literally mean

4     that my wife and I both sat in the front seat and

5     each had one hand on the steering wheel and drove

6     down the road, and if Toro is confused about who did

7     what, they clearly didn't bother to send discovery

8     until right before the pleading deadline passed.

9            We weren't hiding at all, and we didn't do

10    anything to represent that Rebekah had done this.  It

11    was simply they were both mowing the lawn as we

12    described that activity.  So I mean, if this was a

13    big deal to them, they were on notice that there's

14    potential comparative fault from, I mean, the time

15    that the complaint was filed, and they could have

16    moved to extend the pleading deadline, said listen,

17    we have some concerns there might be a contributory

18    negligence issue or there might be a contribution

19    claim, so let's keep that open.  Let's get some

20    discovery done, and we'll work that out at a future

21    date.  That was never done until after discovery

22    deadline.

23            THE COURT:  If I were to allow your motion,

24    then they would be entitled to file whatever motions

25    they would be entitled to file under the rules

1    related to whether it be a motion to dismiss the

2    counterclaim or a motion for summary judgment on the

3    counterclaim.  There could be a whole separate

4    briefing possibilities that we open up as it relates

5    to that counterclaim just like any other claim,

6    right?

7             MR. MAHONEY:  They would have to answer the

8    counterclaim, but to respond to what Mr. Honey just

9    said, we did have a discovery interrogatory and we

10   got an answer to interrogatory that I've laid out in

11   my reply that turned out to be very different than

12   what we received --

13            THE COURT:  Right.  In November of 2022, a

14   year ago.

15            MR. MAHONEY:  That is correct, your

16   Honor.

17            THE COURT:  Okay.

18            MR. GRACE:  Your Honor, can I make one

19   really brief comment?

20            THE COURT:  Sure.

21            MR. FLORENCE:  It was my understanding

22   under the scheduling order -- that the time to clean

23   up the pleadings was the deadline for amendment of

24   the pleadings, and under this scenario, we would be

25   entitled to say, your Honor, we'd like to clean up

1        the pleadings and can we add a claim for punitive

2        damages.

3                THE COURT:  So the amendment of pleadings

4        deadline that goes into discovery schedule serves a

5        very specific purpose, so I cannot preclude a party

6        from seeking to amend the pleadings.  You could file

7        a motion to amend the pleadings and add a punitive

8        damages claim at any time.

9                What that deadline does is it changes the

10       burden, so on Rule 15A it's any just reason or

11       justice required, very, very, very low burden to

12       amend the pleadings.  The rules are clear once the

13       Court sets a deadline, if you want to amend the

14       pleading, then you have to establish good cause and

15       so that's where I can consider factors that are

16       different than the 15A standard.

17               It doesn't preclude a party from seeking to

18       amend.  It just puts a higher burden.  It's still a

19       relatively low burden in the whole scheme of burdens,

20       but delay, is it gonna require me to reopen the

21       discovery schedule, all the factors that I consider

22       about where we are in the case, when you could have

23       filed it, should you have filed it earlier, is it

24       gonna require more discovery?

25               Does it require -- all those factors are

1           under a good cause standard I can consider and so I

2           have more -- under the rules I have more ability to

3           deny a motion to amend than I do under the 15A

4           standard, which is very little, even during trial.

5                       You know, if you don't set the schedule,

6           then -- if you do not set a deadline for amending the

7           pleadings, you're under 15 rather than Rule 16, so

8           that's my understanding of how that rule works.

9           Okay.  Let's take a five-minute break.  I'll come

10          back and give you my ruling.

11                      I feel like the motion to strike the

12          affidavit is really related to the merits of the

13          other motion, so I don't think I need any additional

14          argument on that unless somebody's dying to give me

15          argument on the motion to strike affidavit.

16                      MR. MAHONEY:  No, your Honor.

17                      THE COURT:  Okay.

18                      (Break taken, and the following proceedings

19          were held)

20                      THE COURT:  You can be seated, Mr. Crowley.

21          Okay.  So starting first with Docket No. 105, which

22          is plaintiff's motion related to the redaction of

23          names, and it's filed as a motion for sanctions, I'm

24          denying that motion for the following reasons.  First

25          of all, the motion on its face seeks to sanction the

1    defendants for failing to comply with my previous

2    order which ordered them to respond to Interrogatory

3    No. 9.

4            The -- and it's undisputed that the

5    defendants provided a response to Interrogatory No. 9

6    that is the document that Mr. Crowley's been

7    referring to as 239.  In their response they redacted

8    the names of the individuals, but, you know, in

9    looking at the question of whether or not they failed

10   to comply with my order, I generally ordered them and

11   overruled their objections to Interrogatory No. 9.

12           But for good or for ill, as the

13   interrogatory is worded, it is worded in the

14   disjunctive, and when I am ruling on an objection,

15   especially a motion to sanction a party for failure

16   to comply with my order, I have to look at the plain

17   language of the interrogatory, and the plain language

18   of the interrogatory says name or the other

19   identifying information.

20           So in a very strict sense, the defendants

21   complied with the order to respond to the

22   interrogatory.  Now, as a practical matter, I

23   understand that the names would have been useful and

24   had this been brought to my attention as a motion to

25   compel the plaintiffs to provide those names -- the

1          defendants to provide those names, that would be a

2          different question as to whether or not those names

3          should have been provided or not, and maybe the

4          interrogatory could be reworded.

5                    I would say look, it says disjunctive, but

6          are you really looking for, you know, the names in

7          addition to the other information and I might very

8          well have said, you know, you should turn over the

9          names as well, but that's not the question before me

10         at this point, and it makes a difference because if

11         it was brought to me a year ago when this response

12         was provided and we had a discussion about whether or

13         not the names should be included, there would have

14         been plenty of time to vet the discovery, provide the

15         names, perhaps provide additional discovery.

16                   And I'm not faulting plaintiff's counsel.

17         There's a lot of documents in this case.  There's a

18         lot going on, but the reality is this document

19         technically complies with my order as they've

20         interpreted, which is not an unreasonable

21         interpretation of the interrogatory.

22                   And the question of whether or not the

23         names should have been produced pursuant to a

24         differently-worded interrogatory, it's just too late

25         to go down that road and, frankly, even if I were to

1     grant the motion and as a sanction required the

2     defendants to produce the names, I don't see at this

3     point what use it would be because the reality is I'm

4     not -- the ship has sailed on discovery in this case.

5           We are -- discovery is closed.  This case

6     has, you know, already gone on longer than it should

7     have, and we need to get this case to the merits, and

8     the discovery that the parties have is the discovery

9     they have at this point, so -- but for the most basic

10    reason, the reality is that I'm denying the motion

11    because I don't find that the defendants have failed

12    to answer Interrogatory No. 9 as it's worded.

13          I'm also denying the defendant's motion to

14    add a counterclaim and amend their answers.  I think

15    it comes too late.  The reality is that at least at

16    the point at which the plaintiff's were deposed, they

17    were on notice that this counterclaim could have been

18    filed, and it wasn't.

19          I'm not gonna reveal what we discussed

20    about at the settlement conference other than to say

21    I left the settlement conference with the distinct

22    impression that the motion that was filed in August

23    was going to be filed, you know, in relatively short

24    order after the settlement conference.  I have been

25    looking for that motion, and it was never filed, and

1      I didn't quite understand why, but, you know, it

2      could have at least as late as the settlement

3      conference been filed without question.

4              The defendants were aware that this was an

5      issue, and I'm not assigning any sort of nefarious

6      purpose to the defendant's counsel, but the reality

7      is, again, when we're looking at the stage of the

8      case we're in where we're at the summary judgment

9      stage to allow an amendment to the answer or to allow

10     adding a claim at this stage in the case when at

11     least they had at least a year to file it, they were

12     on notice of all the operative facts that there's

13     just an undue delay here.

14              And even if it wasn't, it's an honest delay

15     and there was no purpose in the delay and I accept

16     the representation that there wasn't, the reality is

17     it puts the plaintiff in a position where -- where

18     they should be focusing on summary judgment, now they

19     have to be deciding how they're gonna respond to

20     that.  Are they gonna file a motion to dismiss as it

21     relates to the statute of limitations?  Are there any

22     other legal basis to moving to dismiss the

23     counterclaim.  They have to perhaps file a moment for

24     summary judgment on that.

25              All of that on top of the fact that we're

1      at the summary judgment stage of the case has a lot
2      of potential to add additional delay in the case.  I
3      don't know, I suspect defense counsel's
4      representation that there shouldn't really need to be
5      additional discovery on that counterclaim is probably
6      correct, but I can't say that for certain as I sit
7      here, and it would be unfair to the plaintiff to just
8      say yes, I'm gonna allow you to add a counterclaim
9      but no, we're not reopening discovery.
10             I don't know.  They may look -- I don't
11     know.  They may look at it and say no, we do need
12     some discovery.  This does change things, and that
13     could then, you know, completely change the
14     complexion of the case, the timeline we're on.
15             We're already well beyond where we should
16     be in length of this case, and I think that that ship
17     has sailed as well, that we need to get this case
18     resolved with the information that everybody has as
19     we sit here today on the merits, get through summary
20     judgment, get the case to trial if it survives
21     summary judgment and move forward.  So I don't think
22     there's good cause to allow the counterclaim to be
23     added or -- from affirmative defense or the answers
24     to be amended at this stage of the case.
25             It should have come sooner, and I think

1    that the motion to strike the affidavit is, you

2    know -- I mean, the affidavit has problems, but at

3    the end of the day it doesn't change my ruling one

4    way or the other.  The affidavit was filed, so I'm

5    going to deny the motion to strike the affidavit to

6    the extent that I've already read it and looked at it

7    in reaching my conclusions, so those are my rulings.

8              The Minute will indicate that all motions

9    are denied for the reasons stated on the record.

10             Anything further, Mr. Crowley?

11             MR. CROWLEY:  Not that I can think of, your

12   Honor.  No.

13             THE COURT:  Okay.  Mr. Florence?

14             MR. FLORENCE:  Not that I can think of,

15   your Honor.

16             THE COURT:  All right.  We'll be in recess.

17             MR. CROWLEY:  Thank you, your Honor.

18             (Wherein the hearing adjourned)

19

20

21

22

23

24

25

1                   REPORTER'S CERTIFICATION

2

3          I, Debra Thornburg, a Certified Shorthand

4     Reporter of the State of Iowa and Federal Official

5     Realtime Court Reporter in and for the United States

6     District Court for the Southern District of Iowa, do

7     hereby certify, pursuant to Title 28, United States

8     Code, Section 753, that the foregoing is a true and

9     correct transcript to the best of my abilities of the

10    recorded proceedings held in the above-entitled

11    matter and that the transcript page format is in

12    conformity with the regulations of the Judicial

13    Conference of the United States.

14

15                         /s/ Debra M. Thornburg

16                         Debra M. Thornburg
                           Official Court Reporter
17                         United States District Court
                           Southern District of Iowa
18

19                         Date:  December 29, 2023

20

21

22

23

24

25