E-FILED
Tuesday, 13 October, 2026 10:05:44 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| REBEKAH HILLMAN, individually and as next friend of P.J.H., a minor, and JENNIFER HILLMAN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:21-cv-04081-SLD-RLH |
| THE TORO COMPANY, | ) | |
| Defendant. | ) | |

<u>ORDER</u>

Before the Court are Plaintiffs Rebekah and Jennifer Hillman's motion to strike Defendant The Toro Company's ("Toro") second motion for summary judgment, ECF No. 213, and the Hillmans' motion for leave to file a reply, ECF No. 216. For the reasons that follow, the motion for leave to file a reply is DENIED and the motion to strike is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

### I. Factual Background[1]

Rebekah Hillman was operating a 2013 Toro TimeCutter SS 5000 model 74361 ZRT Mower (the "subject mower" or "the Timecutter") when it rolled down a slope, fell over a six-foot retaining wall, and landed upside down on top of her legs. She suffered severe leg injuries and required an amputation of her left leg. The subject mower is a zero-radius turn ("ZRT") mower, which makes the mower highly maneuverable and able to effectively pivot in place and

[1] Unless otherwise noted, this section is a summary of the facts detailed more thoroughly in the Court's summary judgment order, Sep. 30, 2024 Order, ECF No. 187, which drew on the parties' statements of undisputed fact contained within their summary judgment briefing, *id.* at 2–12. A more thorough summary of the underlying facts of this case can be found there. *Id.*

perform sharp 180-degree turns. The subject mower included hydrostatic transmission, which functions, among other things, as the mower's service brake, slowing or stopping the rear wheels when the motion control levers are pulled into the center position. Unlike traditional riding mowers, most ZRT mowers—including the subject mower—do not have a foot-operated service brake. Instead, like many ZRT mowers, the subject mower is equipped with a parking brake to keep it stationary, especially on an incline. The parking brake can be engaged by moving the motion control levers outward from the center position.

When manually pushing or towing the subject mower, the operator must engage bypass pins on either side of the engine at the back of the mower. The bypass pins, also referred to as bypass valves, tow valves, or bypass levers, are so named because they allow the operator to bypass the hydrostatic transmission circuits. When the bypass pins are pushed in, the hydrostatic transmissions disengage, meaning that the motion control levers cannot steer or brake the rear drive wheels. With the bypass pins pushed in, the rear drive wheels can turn freely, similar to an automobile in neutral gear. To return to normal operation, the operator had to move the bypass levers rearward through the key hold and down to lock them into place.

On June 18, 2020, Rebekah Hillman was mowing a sloped portion of her property that sat above a six-foot-high retaining wall. When the subject mower got stuck in a flower bed, Jennifer Hillman used a tractor to tow the subject mower out of a position in which it was stuck. She disengaged the subject mower's rear drive wheels by pushing in the bypass pins on the back of the mower. Then, she towed the subject mower and lowered it down onto all four wheels, pointing down a slope in the Hillmans' yard toward the flower bed and retaining wall with the parking brake engaged. Rebekah forgot to pull the bypass pins back out to re-engage the rear drive wheels, so the motion control levers could not be used to steer or brake the subject mower.

Rebekah resumed mowing and pulled the motion control levers inward and pushed them forward. This released the parking brake but did not engage the rear drive wheels because they were still in bypass mode. The subject mower began to roll down the slope toward the retaining wall, gradually picking up speed. Rebekah pulled the motion control levers back to try to reverse the subject mower's direction and pushed the levers outward to try to engage the brake. Neither of these actions were effective at stopping the mower from rolling down the slope. When Rebekah realized the subject mower was not stopping and was certain to go over the retaining wall, she attempted to jump clear of the machine. She landed on the ground below the flower bed and six-foot retaining wall. The subject mower rolled off the retaining wall, landed front first—perpendicular to the ground and parallel to the retaining wall—and then tipped over, landing upside down on Rebekah's legs. She suffered severe injuries to both legs and her left leg required amputation.

**II. Procedural History**

The Hillmans filed suit on May 4, 2021, *see generally* Compl., ECF No. 1, and amended their complaint on August 12, 2021, *see generally* Am. Compl., ECF No. 17. They bring claims of strict product liability and negligence against Toro, alleging that the subject mower was unreasonably dangerous and that Toro was negligent because the subject mower (1) was not equipped with an independent service brake or braking system, (2) was not equipped with a separate interlock system to prevent starting or moving the mower when the hydrostatic braking system was disengaged, (3) lacked a Roll-Over Protective Structure ("ROPS"), and (4) lacked sufficient warnings or instructions. Am. Compl. ¶¶ 27, 35.

Toro moved for summary judgment on September 8, 2023. Mot. Summ. J., ECF No. 113. Extensive summary judgment and evidentiary briefing proceeded. *See*, Sep. 30, 2024

Order 1–2 (identifying fifteen motions pending before it, the first of which being the motion for summary judgment). The Court granted summary judgment to Toro on all counts because it excluded each of the Hillmans' experts. *See generally id.* As a result, several other pending motions were moot. *Id.* The Hillmans appealed, Not. Appeal, ECF No. 190, and the Seventh Circuit reversed and remanded "for further proceedings consistent with" its opinion, *see Hillman v. Toro Co.*, 164 F.4th 971, 984 (7th Cir. 2026), ECF No. 196. Toro petitioned the Seventh Circuit for a rehearing, *see generally* Pet. Reh'g, Mot. Strike Ex. 2, ECF No. 213-2, which the Seventh Circuit denied, *Hillman v. Toro Co.*, No. 24-2865, 2026 WL 494124 (7th Cir. Feb. 20, 2026).

In accordance with the Seventh Circuit's mandate, the Court set a pretrial and trial schedule. *See* Mar. 18, 2026 Text Order, ECF No. 197. At the final pretrial conference, based on issues raised by the parties, the Court set a summary judgment deadline. June 1, 2026 Min. Entry, ECF No. 206. Toro timely filed a renewed motion for summary judgment. Renewed Mot. Summ. J., ECF No. 211. The Hillmans filed a motion to strike the renewed motion for summary judgment, arguing that all issues raised by Toro's motion have been "explicitly or implicitly" considered and rejected by the Seventh Circuit. Mot. Strike 2. Toro timely responded. *See* Resp. Mot. Strike, ECF No. 215. The Hillmans timely filed a motion for leave to file a reply, ECF No. 216, which Toro opposed, Resp. Mot. Leave File Reply, ECF No. 217.

## DISCUSSION

### I. Motion for Leave to File Reply

"A reply to the response is only permitted with leave of Court." Civil LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in [its] response to the motion, and the Court finds that a reply from the

moving party would be helpful to its disposition of the motion . . . ." *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). Here, the Hillmans request leave to file a reply to (1) challenge Toro's characterization of its motion for summary judgment's desired relief; (2) discuss "the general-remand doctrine, which the Response raises for the first time"; (3) highlight "the effect of a summary denial of a rehearing" and *Moore v. Anderson*, 222 F.3d 280 (7th Cir. 2000); and (4) consider the appellee-waiver rule and *Bradley v. Village of University Park*, 59 F.4th 887 (7th Cir. 2023). Mot. File Reply 1. They also highlight the case *Johnson v. Ridge Tool Manufacturing Company*, No. 25-2604, 2026 WL 2279906 (7th Cir. Aug. 7, 2026), asserting that it was decided after Plaintiffs filed the pending motion to strike. Mot. File Reply 1–2. However, none of the arguments raised by Toro in its response should have been unexpected, *see generally* Resp. Mot. Strike, and Toro's response already brings *Johnson* to the Court's attention, *see id.* at 11–12, and, even if it did not, *Johnson* was entered several days prior to the Hillmans' motion to strike, *compare Johnson*, 2026 WL 2279906 (entered August 7, 2026), *with* Mot. Strike (entered August 10, 2026). As such, Plaintiffs' motion for leave to file a reply is DENIED.[2]

## II. Scope of the Seventh Circuit's Ruling

### a. Legal Standard

At the crux of the Hillmans' motion to strike is a dispute over the scope of the Seventh Circuit's mandate. Although the Court intended to determine the scope as part of its renewed summary judgment proceedings, it will instead do so now, as Plaintiffs' motion to strike has put it directly at issue.

---

[2] The Court also notes that the motion for leave to file a reply does not comply with Civil Local Rule 11 and reminds counsel that the filing attorney must be the same as the signing attorney. The Court declines to strike the motion for this noncompliance because the motion fails on its merits.

"Under the mandate rule, when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court." *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1137 (7th Cir. 2023) (quotation marks omitted). The scope of a remand does not include two major categories: (1) issues that could have been raised on appeal but were not and (2) issues conclusively decided by the appellate court. *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002). "The scope of the remand is determined not by formula, but by inference from the opinion as a whole." *Sullivan*, 63 F.4th at 1138 (quotation marks and alteration omitted).

"Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993) (quotation marks omitted). The law of the case doctrine "protects parties from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action." *Moore*, 222 F.3d at 283 (quotation marks omitted). At its most basic level, "when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court." *Id.* (quotation marks omitted). In order "[t]o determine what issues were actually decided by the mandate, [the Seventh Circuit] require[s] a careful reading of the reviewing court's opinion" because "observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations." *Id.* (quotation marks omitted).

**b. Analysis**

The Seventh Circuit "reverse[d] judgment for Toro to the extent it was based on rejection of the Hillmans' independent brake theory" and remanded the case "for further proceedings

consistent with this opinion."[3] *Hillman v. Toro Co.*, 164 F.4th 971, 984 (7th Cir. 2026). It also noted that "[t]o the extent the precise mechanism of Rebekah's injury is relevant on remand to the independent brake theory (which it may not be), we reverse the exclusion of that portion of [Kennett's] report," *id.* at 980 n.3, and "[t]o the extent that the accident reconstruction is relevant to the independent brake claims—which it may be if Toro contests whether Rebekah would have had the time and distance to use an independent brake if one had been present—the Hillmans are entitled to rely on that portion of Bilek's report," *id.* at 980 n.4. The Seventh Circuit also rejected four alternative grounds for affirmance because of the existence of genuine disputes of material fact: (1) "that the primary cause of Rebekah's injuries was Jennifer's failure to pull out the bypass pins, not a failure of the hydrostatic system"; (2) "that the Hillmans' experts conducted no tests establishing that an independent brake would have prevented the accident"; (3) "that Jennifer's failure to disengage the bypass pins distinguishes this accident from every other loss-of-control incident involving the Timecutter going back to at least 2005, the time limit for discovery in this case"; and (4) "that the Timecutter's hydrostatic braking system complies with the applicable standard for zero-radius-turn mowers set by the American National Standards Institute." *Id.* at 982–84.

The Hillmans raise a myriad of bases for the motion to strike, several of which can be disposed of quickly. First, the Hillmans suggest, without support, that the absence of newly discovered evidence should preclude Toro's bringing a renewed motion for summary judgment. Mot. Strike 16. However, the Hillmans do not point to, nor is the Court aware of, any

[3] The Hillmans make much of the mandate's language elsewhere that the Seventh Circuit "remand[ed] for trial." *Hillman*, 164 F.4th at 976; *see* Mot. Strike 2 (arguing that "this Court is . . . without authority to deviate from th[e] mandate, which directs that this case proceed to trial without further consideration of any Second Motion for Summary Judgment"). However, because the final judgment also contains the language that the remand is "for further proceedings consistent with this opinion," *Hillman*, 164 F.4th at 984, the Court reads the mandate as authorizing any proceedings this Court deems necessary for efficient litigation of this case.

*requirement* of newly discovered evidence. Whether to permit successive summary judgment motions falls squarely within a court's discretion, *see Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("[T]he district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist."); *see also Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009), and the Court clearly outlined its reasons for exercising such discretion at the pretrial conference on June 1, 2026, *see* June 1, 2026 Tr. 17:1–13, ECF No. 210. As such, this argument fails.

Second, the Hillmans argue that they are prejudiced by the timing. Mot. Strike 17–18. They assert that "[d]iscovery ended years ago" and "[r]equiring [them] to relitigate the same issues they have already prevailed upon twice before the 7th Circuit imposes precisely the waste of time and burden on the court and the opposing litigants the mandate rule exists to prevent." *Id.* At the outset, the Court notes that this argument presumes that all arguments have already been ruled on multiple times by the Seventh Circuit, but the mandate's scope is an ongoing dispute which the Court has not yet addressed. Even disregarding that the argument is prematurely made, it is unavailing on its merits. That discovery ended "years ago" does not support their argument that the timing prejudices the Hillmans. This Court timely resolved pending motions, the Hillmans appealed the Court's order granting Toro summary judgment on all counts, and upon receiving the Seventh Circuit's remand, this Court promptly set a trial schedule.

Moreover, the outstanding issues could have been addressed sooner if the parties communicated effectively with one another. The Court recognizes that the Hillmans say that they were unaware of Toro's intentions to file another summary judgment motion until the pretrial conference, *id.* at 7, but does not find this persuasive. The parties were directed to

consult with one another while preparing for this conference and compiling a joint proposed pretrial order; however, no cooperation transpired. Despite being aware of the proposed pretrial order deadline for months, the parties requested an extension of time, which the Court granted. *See* May 29, 2026 Text Order, ECF No. 205. Even with this extension of time, the parties filed separate proposed pretrial orders which revealed "fundamental disagreements about what issues remain live," and both parties identified several previously-mooted motions they now viewed as pending. *Id.*; *see* Pls. Status Rep., ECF No. 202; Pls. Proposed Pretrial Order, ECF No. 203; Def. Proposed Pretrial Order, ECF No. 204. That Toro happened to believe one of those pending motions was portions of its original summary judgment briefing is not substantially different from the Hillmans' belief that the other mooted motions were now pending. Additionally, within the status report filed by the Hillmans along with their initial proposed pretrial order, counsel acknowledges that they did not attempt to contact Toro's counsel until May 4, 2026, months after receiving the Seventh Circuit's mandate and over a month after becoming aware of this Court's trial schedule. *See* Pls. Status Rep. 1. If the Hillmans had such concern about the timeline of this case, they could have attempted to initiate conversations with Toro far sooner than they did and they could have brought the motions they considered pending to the Court's attention before filing the final pretrial order. Ultimately, efficient and accurate resolution of this case requires the Court and the parties to have a clear, shared understanding of the mandate's scope. The time spent now resolving as many questions of law as possible and narrowing the grounds for trial will only benefit the parties should this case proceed to trial. The Court is unconvinced that the timing is prejudicial.

Third, the Hillmans encourage the Court to view the Seventh Circuit's summary denial of Toro's petition for rehearing as another binding decision on the merits. *See, e.g.*, Mot. Strike 11–

12, 14. This would prevent the Court from considering arguments contained in the petition at summary judgment. Toro argues that "[t]he law is clear that an appellate court's summary denial of a petition for rehearing does not create any law of the case nor does it impact the appellate court's remand," Resp. Mot. Strike 7, and the Court agrees. "[B]ecause a summary denial of a petition for rehearing does not explain the bases for the denial, it is insufficient to confer any implication or inference regarding a court's opinion relative to the merits of a case"; therefore, a "summary denial of [a party's] petition for rehearing d[oes] not create law of the case nor d[oes] it expand the compass of [the] original mandate." *Moore*, 222 F.3d at 284 (quotation marks omitted). This is consistent across the circuits that have explicitly addressed this question. *See, e.g.*, *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995); *Boldrini v. Wilson*, 609 F. App'x 721, 724 n.2 (3d Cir. 2015); *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 281 (5th Cir. 2001). Because the Seventh Circuit summarily denied Toro's petition for rehearing and provided no reasoning for its decision, the denial is not considered a decision on the merits. As such, to the extent Toro's petition for rehearing contained arguments that were not decided by the mandate, this Court may hear those arguments at summary judgment.

The Hillmans are, however, correct that the Seventh Circuit's opinion limits the potential scope of a future summary judgment ruling. Specifically, the Hillmans argue that the Seventh Circuit's rejection of the four alternative grounds for affirmance is a binding decision on the merits and therefore that Toro cannot prevail on these grounds through a renewed summary judgment motion. Mot. Strike 12–14. Toro moves for summary judgment as to the Hillmans' design defect claim based on lack of an independent brake on various bases, including that they cannot establish legal causation and the subject mower was not unreasonably dangerous. Renewed Mot. Summ. J. 10. It seems to acknowledge that the four alternative grounds on which

the Seventh Circuit declined to affirm the Court's ruling have relevance to its arguments; however, Toro argues that the Seventh Circuit's rejection of the four alternative grounds for affirmance is dicta and therefore not binding upon this Court. *See id.* at 46–48. Toro places significant emphasis on the fact that these alternative grounds were neither briefed on appeal nor decided by this Court prior to the appeal. The Hillmans argue that Toro's reading of this portion of the Seventh Circuit's decision fails because appeals can be defended on alternative grounds and so the Seventh Circuit necessarily needed to decide the merits of these alternative reasons, which its opinion explicitly rejected. Mot. Strike 12–14.

The Court agrees with the Hillmans that this section of the Seventh Circuit's decision is not dictum, but instead a binding holding. The Seventh Circuit "define[s] dictum as a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding." *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (quotation marks omitted). In essence, "[a] dictum is any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication." *Id.* (quotation marks omitted). When ascertaining whether a statement is dictum, courts "can ask what reasons there are against a court's giving weight to a passage found in a previous opinion." *Id.*

The Mandate states that "[t]he district court did not reach these other arguments, but *they do not persuade us to affirm on alternate grounds*." *Hillman*, 164 F.4th at 983 (emphasis added). This is not dicta—although it is not the crux of the Seventh Circuit's decision, it was grounded in the facts of the case and necessary to decide in order to justify the reversal and remand. Had the Seventh Circuit found one of these other grounds of affirmance convincing, it would not have

remanded the case for further proceedings. And the issues were still "refined by the fires of adversary presentation," *Crawley*, 837 F.2d at 293, because they were briefed by both sides at the summary judgment stage, which the Seventh Circuit had the opportunity to review. Thus, it was a binding ruling on the merits rather than mere dictum. The Court will now review the arguments raised by Toro's renewed motion for summary judgment and determine whether they fall within the scope of the Seventh Circuit's binding rulings.

The Hillmans bring strict product liability and negligence claims. To recover on a strict products liability claim, a plaintiff must prove that she suffered an injury that was proximately caused by a condition of the product, that the condition was unreasonably dangerous, and that the unreasonably dangerous condition existed at the time the product left the defendant's control. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008). Any of the following may constitute an unreasonably dangerous condition: a manufacturing defect, a design defect, or a failure of the manufacturer to adequately warn of the product's danger or instruct on its proper use. *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 855 (N.D. Ill. 2017) (quoting *Mikolajczyk*, 901 N.E.2d at 355). The Hillmans argue that there is a design defect. To succeed on a negligence claim in a product liability action, "a plaintiff must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1153–54 (Ill. 2011).

The four arguments which the Seventh Circuit found unable to justify a favorable summary judgment ruling are: the Hillmans' comparative fault; factual causation; the cost-justification of an independent brake; and compliance with industry standards. *Hillman*, 164 F.4th at 982–84. Toro's renewed motion for summary judgment raises three primary substantive arguments: (1) "Plaintiffs cannot establish proximate cause for either their strict product liability

or negligence claims"; (2) "the subject mower was not unreasonably dangerous"; and (3) "notwithstanding that Plaintiffs' claims fail for lack of proximate cause, Plaintiffs also have no evidence that [Toro's] conduct was negligent." Renewed Mot. Summ. J. i–ii (capitalization altered). The Court will now consider each of Toro's summary judgment arguments and whether the Seventh Circuit's opinion includes a binding ruling on the issue.

**i. Proximate Cause**

The principles of proximate cause are the same for negligence and strict liability. *Kleen v. Homak Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001). "Under both strict liability and negligence, a proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." *Id.* Though proximate cause is commonly a question of fact, "it becomes a question of law where there is no material issue of fact regarding the matter or only one conclusion is clearly evident." *Id.*

Toro asserts that the Hillmans cannot establish proximate cause for either their product liability or negligence claims, arguing that legal causation does not exist "because the incident was not foreseeable." Renewed Mot. Summ. J. 30–37 (capitalization altered). The Hillmans argue that the Seventh Circuit already decided that this must go to the jury. Mot. Strike 14–15. The Seventh Circuit mentions proximate cause four times: twice when stating what the Hillmans must prove to prevail on their claims and twice when rejecting Toro's argument "that the primary cause of Rebekah's injuries was Jennifer's failure to pull out the bypass pins, not a failure of the hydrostatic system." *Hillman*, 164 F.4th at 983.

Toro asserts that it "does not renew a sole proximate cause defense, which relates to the issue of *factual cause*," but instead that the Hillmans "cannot show that this specific, multi-step chain of events—Plaintiffs' own creation of the hazard, Jennifer's intervening decision to tow

the disabled [s]ubject [m]ower onto a slope, and the failure of either Jennifer or Rebekah to re-engage the Bypass Pins—was an objectively foreseeable consequence of the absence of a third brake." Renewed Mot. Summ. J. 33 n.6 (emphasis in original). The Hillmans argue that this is still precluded by the mandate because (a) Toro is merely "[r]elabeling" its prior proximate cause argument, which the Seventh Circuit rejected, and (b) Toro raised legal causation and foreseeability arguments in its first motion for summary judgment; therefore, "obviously this was among the 'other arguments' available to Toro as alternative grounds for affirmance, and the panel resolved the substance when it defined the relevant risk as the loss of hydrostatic breaking capacity 'for any reason, not just an operator's error in failing to reset the bypass pins.'" Mot. Strike 15 (quoting *Hillman*, 164 F.4th at 983).

"'[T]he term "proximate cause" describes two distinct requirements: cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm.'" *Dux v. United States*, 69 F. Supp. 3d 781, 786–87 (N.D. Ill. 2014) (quoting *Lee v. Chi. Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992)). Determination of whether an injury is reasonably foreseeable is an objective inquiry. *Murillo v. United States*, 504 F. Supp. 3d 875, 890–91 (N.D. Ill. 2020). When the Seventh Circuit mentions proximate cause, it focuses entirely on factual causation and comparative fault, *Hillman*, 164 F.4th at 983—which is also a fact-intensive inquiry aimed at determining how culpable each party is for the incident, *see, e.g.*, *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 313 (7th Cir. 2010) ("Under Illinois law, whether a claim is based on negligence or strict products liability, an injured party is barred from recovering only if the trier of fact finds that his conduct was more than 50% of the proximate cause of the injury for which recovery is caught."). The decision makes no mention of legal cause or foreseeability.

The Hillmans argue that Toro's reliance on *Schultz v. St. Clair Cnty.*, 201 N.E.3d 1111 (Ill. 2022), demonstrates that its renewed proximate cause argument is actually about factual causation rather than legal causation. Mot. Strike 15. Toro cites *Schultz* in its renewed motion for summary judgment for the principle that "Illinois courts . . . distinguish between a condition and causation," meaning that "[i]f the actions of a defendant do nothing more than furnish a condition by which the injury is made possible, then that action is not the proximate cause of the ultimate injury." Renewed Mot. Summ. J. 33 (footnote omitted). This argument, however, is unavailing—the Seventh Circuit clearly stated that condition versus causation language goes towards comparative fault, not factual or legal causation. *See Hillman*, 164 F.4th at 983. Moreover, this explicit discussion of two fact-based causation inquiries (factual causation and comparative fault) emphasizes the absence of legal causation within the decision. Ultimately, the Court is satisfied that the upshot of Toro's argument lies in the foreseeability of the incident rather than its factual cause.

The Hillmans also argue that Toro asserted that there was no foreseeability in its first motion for summary judgment, so the Seventh Circuit rejected that argument when it "defined the relevant risk as the loss of hydrostatic braking capacity for any reason, not just an operator's error in failing to reset the bypass pins." Mot. Strike 15 (quotation marks omitted). However, these are separate inquiries—the Seventh Circuit defined the relevant risk in a cost-justification analysis, not the relevant risk for proximate cause. Even if the relevant risk remains the same between cost-justification and proximate, defining a risk does not inherently mean that this risk was a foreseeable one. And just because an argument was available within the briefing before the district court does not mean that the Seventh Circuit ruled on its merits when the decision makes no mention of the argument. *Cf. Moore*, 222 F.3d at 284 (declining to "confer any

implication or inference regarding a court's opinion relative to the merits of a case" when denying without explaining the basis for such denial). As such, Toro's legal causation argument may be considered at the summary judgment stage.

**ii. Reasonable Danger of the Subject Mower**

"When the plaintiff's [strict liability] claim is based on an alleged design defect, the 'unreasonably dangerous' element can be proved in one of two ways"—the consumer expectation test and the risk-utility test. *Suarez v. W.M. Barr & Co.*, 842 F.3d 513, 520 (7th Cir. 2016). The consumer expectation test establishes liability "if the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* (quotation marks omitted). The risk-utility test considers whether "on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Id.* (quotation marks omitted).

Toro asserts that the subject mower was not unreasonably dangerous, arguing that (1) the Hillmans' "claims fail the consumer-expectation test because their use of the subject mower with the brakes disengaged is not intended or reasonably foreseeable" and (2) the risk-utility factors weigh in Toro's favor—"there is no evidence of a feasible safer alternative design at the time of the subject mower's manufacture" and "the design of the subject mower complied with applicable industry standards." Renewed Mot. Summ. J. 37–43 (capitalization altered). However, the Seventh Circuit made a binding ruling on the merits of these arguments and Toro thus may not raise them in summary judgment briefing.[4]

[4] The Hillmans argue that Toro raised the consumer-expectation and risk-utility arguments in its first motion for summary judgment and that "[a] party may not use a successive motion to refine arguments it already made and lost, or to add arguments it could have made." Mot. Strike 17. The Hillmans' assertion that Toro already lost this argument because it was raised but not addressed during initial summary judgment briefing is, again, misplaced. *Cf. Moore*, 222 F.3d at 284 (declining to "confer any implication or inference regarding a court's opinion relative to the merits of a case" when denying without explaining the basis for such denial).

The Seventh Circuit determined that whether the subject mower was unreasonably dangerous remained a genuine dispute of material fact. *See Hillman*, 164 F.4th at 981–84 (noting that Berry's opinion discusses the subject mower's lack of an independent brake and whether it was unreasonably dangerous, and later noting that Berry's discussion of the cost-justification of an independent brake constitutes a genuine dispute of material fact). And each of Toro's risk-utility arguments are squarely addressed by the Seventh Circuit. Toro first argues that the Hillmans present no evidence that the proposed alternative design was feasible, safer, or cost-effective. Renewed Mot. Summ. J. 40–42 ("Even accepting [Berry's independent brake] opinion as admissible, however, the undisputed record establishes that Mr. Berry's proposed design is not a feasible, safer alternative for purposes of the risk-utility test."). However, the Seventh Circuit found that Berry opined that there were alternative designs and that he relied on other companies' inclusion of independent brakes in supporting that opinion. *Hillman*, 164 F.4th at 981–82. It further held that a genuine dispute existed as to the cost-justification of an independent brake, *id.* at 983–84, which is a factor in the risk-utility test, *see, e.g.*, *Walker*, 288 F. Supp. 3d at 862–63 (including cost-justification in its analysis of the feasibility of alternative designs under Illinois law).

Second, Toro argues that the subject mower's design complied with applicable industry standards. Renewed Mot. Summ. J. 42–43. However, the Seventh Circuit explicitly states that "Toro may make this point to a jury, but it does not establish the absence of a genuine dispute of material fact as to whether the lack of an independent brake was a defect." As such, the Seventh Circuit opinion prevents consideration of this argument at summary judgment.

### iii. Evidence of Toro's Negligent Conduct

Toro asserts that "notwithstanding that Plaintiffs' claims fail for lack of proximate cause, Plaintiffs also have no evidence that [Toro's] conduct was negligent" because the mower's design "did not deviate from the standard of care" and Toro "did not owe Plaintiffs a duty of care to prevent this incident." Renewed Mot. Summ. J. 43–46 (capitalization altered). The Seventh Circuit explicitly addressed Toro's argument that the subject mower did not deviate from industry standards: "[u]nder Illinois tort law, compliance with industry standards is a factor to be considered in the balance in a negligent design case, not an automatic defense to liability. Toro may make this point to a jury, but it does not establish the absence of a genuine dispute of material fact as to whether the lack of an independent brake was a defect." *Hillman*, 164 F.4th at 983 (quotation marks and internal citations omitted). True, Toro's motion includes more than just a discussion of industry standards—such as Dr. Toomey's opinion—but the reliance upon it supports the idea that the subject mower's brakes were consistent with all comparable mowers. Dr. Toomey states that "the subject mower as designed, when functioned in a manner with its intended use, is safe," Renewed Mot. Summ. J. 44 (quotation marks omitted). It would be incorrect, however, to find that the Seventh Circuit did not at least impliedly rule on the safety of the subject mower's design when it deemed Berry's opinions relevant to the breach element of a negligence analysis. *Hillman*, 164 F.4th at 981–82; *see Sullivan*, 63 F.4th at 1137 (requiring a district court to comply with both express and implied rulings). In fact, the Seventh Circuit included several quotes from Berry discussing the safety of the subject mower's design. *Hillman*, 164 F.4th at 981–82. And the argument that Toro did not owe a duty of care to the Hillmans[5] was likewise impliedly addressed by the Seventh Circuit when it found that Berry's

[5] The Hillmans argue that Toro forfeited this because it is based on facts available in 2023 and not originally raised. Mot. Strike 17. They do not cite any authority to support this assertion and "perfunctory and undeveloped

opinion constitutes evidence relevant to whether Toro breached its duty of care to the Hillmans, seemingly finding a duty of care existed. *See Hillman*, 164 F.4th at 981; *see Sullivan*, 63 F.4th at 1137. As such, the Seventh Circuit's opinion includes a binding finding that the Hillmans presented evidence relevant to their negligence claim such that Toro cannot bring this argument at the summary judgment stage.

**c. Certification for Appeal**

The Hillmans request that, if the Court finds that Toro's motion does not exceed the scope of the Seventh Circuit mandate, the Court include language of 28 U.S.C. § 1292(b) to certify this order for an interlocutory appeal. Mot. Strike 18–19. In order for the district court to certify an order for immediate appeal, it must "be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Toro opposes the request because neither of the mandatory elements are present. Resp. Mot. Strike 15.

The Hillmans argue that "Toro itself asserts that a substantial ground for difference of opinion exists," referencing that Toro's renewed motion for summary judgment treats the mandate's discussion of genuine disputes of material fact as dicta rather than binding. Mot. Strike 19 (discussing Renewed Mot. Summ. J. 46–48). However, that a difference of opinion exists, as one clearly does here, does not automatically mean that "the case present[s] a controlling question of law, tricky enough to leave substantial ground for difference of opinion." *Martin v. Goodrich Corp.*, 95 F.4th 475, 478 (7th Cir. 2024) (quotation marks omitted). The questions of law presented here, namely the scope and applicability of the Seventh Circuit's

---

arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). As such, the Hillmans have waived their forfeiture argument.

mandate to Toro's renewed motion for summary judgment, are not so "tricky" that there is a substantial ground for disagreement. They are traditional questions of interpreting and applying case law. As such, the Court declines to certify this order for an interlocutory appeal under 28 U.S.C. § 1292(b).

**CONCLUSION**

Accordingly, Plaintiffs Rebekah and Jennifer Hillman's motion for leave to file a reply, ECF No. 216, is DENIED and their motion to strike Defendant The Toro Company's ("Toro") second motion for summary judgment, ECF No. 213, is GRANTED IN PART and DENIED IN PART. The Court may consider Toro's argument about legal causation at the summary judgment stage, but each of Toro's other arguments are subject to binding rulings from the Seventh Circuit that a genuine dispute of material fact exists. The Hillmans may respond to Toro's renewed motion for summary judgment on the issue of legal causation only by October 27, 2026, and Toro may file its reply by November 3, 2026.

The final pretrial conference date of November 2, 2026, is VACATED and RESET for 11:00 a.m. on December 9, 2026, and the jury trial remains set for January 25, 2027, at 9:00 a.m. Both will be held in Courtroom A in the Rock Island Federal Courthouse at 1701 4th Ave. Rock Island, Illinois 61201. The proposed final pretrial order is due on December 2, 2026.

Entered this 13th day of October, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE