E-FILED
Wednesday, 25 November, 2026 11:40:13 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| REBEKAH HILLMAN, JENNIFER HILLMAN, and P.J.H., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:21-cv-04081-SLD-RLH |
| THE TORO COMPANY, | ) | |
| Defendant. | ) | |

ORDER

Before the Court are Defendant The Toro Company's ("Toro") renewed motion for summary judgment, ECF No. 211, motion for leave to file excess pages, ECF No. 223, and motion to seal a previously filed document, ECF No. 224. For the reasons that follow, the motion for summary judgment is DENIED, the motion for leave to file is excess pages is GRANTED, and the motion to seal is GRANTED IN PART and MOOT IN PART.

## BACKGROUND[1]

### I. The Subject Mower

Toro manufactured the subject mower, a TimeCutter SS 5000, Model 74621 (Serial Number 313015934) in 2013 and Plaintiffs Jennifer and Rebekah Hillman[2] purchased it in new

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are, unless otherwise noted, taken from Toro's statement of undisputed material facts, Renewed Mot. Summ. J. 11–29; Plaintiffs' response thereto and statement of additional material facts, Resp. Renewed Mot. Summ. J. 6–23, ECF No. 221; Toro's reply to Plaintiffs' additional material facts, Reply 6–14, Mot. Leave File Excess Pages Ex. 1, ECF No. 223-1; and the exhibits to the motions, responses, and replies. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[2] Toro also argues that P.J.H. should be dismissed from the case because "it is well-established in Illinois that a minor does not have a cause of action for loss of parental consortium resulting from nonfatal injuries." Renewed Mot. Summ. J. 48. The Hillmans previously stated that they do not oppose dismissal of P.J.H's claims. Mot. Strike

condition in May 2014 from a Toro dealer in Geneseo, Illinois. The subject mower was equipped with combined lever steer and brake controls and was designed to stop when the operator moved the motion control levers to the neutral position, then outward to the park position.

When the subject mower needed to be manually pushed or towed—to be loaded onto a trailer or pulled out of a stuck position, for example—the operator had to engage bypass pins located on the back of the mower on either side of the engine. The bypass pins, also referred to as bypass valves, tow valves, or bypass levers, are so named because they allow the operator to bypass the hydrostatic transmission circuits. When the bypass pins are pushed in, the hydrostatic transmissions disengage, meaning that the motion control levers cannot steer or brake the rear drive wheels. With the bypass pins pushed in, the rear drive wheels can turn freely, similar to an automobile in neutral gear.

The subject mower did not have any warnings on the machine itself indicating that when the bypass pins were engaged, the motion control levers could not steer or brake the machine. The subject mower also did not have an interlock system to prevent the engine from starting when the bypass pins were engaged.

## II. The Incident

On June 18, 2020, Rebekah was mowing the lawn with the subject mower while Jennifer worked in other areas of the yard. Rebekah was mowing a sloped grassy area parallel to a retaining wall near the edge of the flower bed when the subject mower's front left caster wheel dipped into the flower bed and the subject mower became stuck. As Rebekah attempted to back out of the flower bed using the motion control levers, the subject mower slid further into the

Renewed Mot. Summ. J. 18, ECF No. 213. Therefore, the Court DISMISSES P.J.H.'s claims and DISMISSES P.J.H. as a Plaintiff in this lawsuit.

flower bed, coming to a stop about "a foot" from the retaining wall with all four wheels stuck in the flower bed. Rebekah Dep. 100:18–21, Renewed Mot. Summ. J. Ex. L, ECF No. 211-12. Rebekah was shaken up by the experience.

Jennifer drove their John Deere utility tractor onto the slope above the flower bed and retaining wall to tow the subject mower out of its stuck position. Jennifer then disengaged the subject mower's rear drive wheels by pushing in the bypass pins on the back of the mower. Jennifer was familiar with pushing in the bypass pins to disengage the rear drive wheels because she had followed this procedure on the subject mower almost every spring when she needed to jump the battery after the subject mower had been sitting all winter. *See* Jennifer Dep. 155:16–18, Renewed Mot. Summ. J. Ex. E, ECF No. 211-5 ("If I needed to jump [the subject mower], it was in the shed, I kept it in the shed, so I would put in the [bypass] pins and push [the subject mower] out [of the shed] . . . ."). After pushing in the bypass pins, Jennifer attached a tow strap to the back of the subject mower and attached the other end to the John Deere tractor's front loader. Jennifer then towed the subject mower about forty feet up the slope above the flower bed. When Jennifer lowered the subject mower down onto all four wheels, the mower was pointing down the slope, toward the flower bed and retaining wall, and the parking brake was engaged.

Rebekah then removed the tow strap from the subject mower but forgot to pull the bypass pins back out to re-engage the rear drive wheels, which meant that the motion control levers could not be used to steer or brake the subject mower. With the parking brake activated and the subject mower remaining stationary on the slope, Rebekah got back on the subject mower and started the engine to resume mowing. She then pulled the motion control levers inward and pushed them forward. This action released the parking brake but did not engage the rear drive

wheels because they were still in bypass mode. The subject mower began to roll down the slope toward the retaining wall, gradually picking up speed. Rebekah pulled the motion control levers back to try to reverse the subject mower's direction and pushed the levers outward to try to engage the brake. Neither of these actions was effective at stopping the subject mower from continuing to roll down the slope. When the subject mower rolled into the flower bed, "it picked up speed a lot" "[b]ecause [the flower bed] was a little steeper." *Id.* at 300:16–22.

When Rebekah realized the subject mower was not stopping and was certain to go over the retaining wall, she attempted to jump clear of the machine. She landed on the ground below the flower bed and six-foot retaining wall. The subject mower rolled off the retaining wall, landed front first—perpendicular to the ground and parallel to the retaining wall—and then tipped over, landing upside down on Rebekah's legs. Rebekah suffered severe injuries to both legs, necessitating amputation of her left leg.

## III. Procedural History

The Hillmans filed suit on May 4, 2021, *see generally* Compl., ECF No. 1, and amended their complaint on August 12, 2021, *see generally* Am. Compl., ECF No. 17. They bring claims of strict product liability and negligence against Toro, alleging that the subject mower was unreasonably dangerous and that Toro was negligent because the subject mower (1) was not equipped with an independent service brake or braking system, (2) was not equipped with a separate interlock system to prevent starting or moving the mower when the hydrostatic braking system was disengaged, (3) lacked a Roll-Over Protective Structure ("ROPS"), and (4) lacked sufficient warnings or instructions. Am. Compl. ¶¶ 27, 35.

Toro moved for summary judgment on September 8, 2023. Mot. Summ. J., ECF No. 113. Extensive summary judgment and evidentiary briefing proceeded. *See* Sep. 30, 2024 Order

1–2, ECF No. 187 (identifying fifteen motions pending before the Court, the first of which being the motion for summary judgment). The Court granted summary judgment to Toro on all counts because it excluded each of the Hillmans' experts. *See generally id.* As a result, several other pending motions were moot. *Id.* The Hillmans appealed, Not. Appeal, ECF No. 190, and the Seventh Circuit "reverse[d] judgment for Toro to the extent it was based on rejection of the Hillmans' independent brake theory" and remanded the case "for further proceedings consistent with" its opinion, *see Hillman v. Toro Co.*, 164 F.4th 971, 984 (7th Cir. 2026). It also noted that "[t]o the extent the precise mechanism of Rebekah's injury is relevant on remand to the independent brake theory (which it may not be), we reverse the exclusion of that portion of [Kelly Kennett's] report," *id.* at 980 n.3, and "[t]o the extent that the accident reconstruction is relevant to the independent brake claims—which it may be if Toro contests whether Rebekah would have had the time and distance to use an independent brake if one had been present—the Hillmans are entitled to rely on that portion of [David] Bilek's report," *id.* at 980 n.4. The Seventh Circuit also found that genuine disputes of material fact remained on four grounds: (1) whether "the primary cause of Rebekah's injuries was Jennifer's failure to pull out the bypass pins, not a failure of the hydrostatic system"; (2) factual causation; (3) "the cost-justification of an independent brake"; and (4) whether "Timecutter's hydrostatic braking system complies with the applicable standard for zero-radius-turn mowers set by the American National Standards Institute" means there was no defect. *Id.* at 982–84.

In accordance with the Seventh Circuit's mandate, the Court set a pretrial and trial schedule. *See* Mar. 18, 2026 Text Order, ECF No. 197. At the final pretrial conference, based on issues raised by the parties, the Court set a summary judgment deadline. June 1, 2026 Min. Entry, ECF No. 206. Toro timely filed a renewed motion for summary judgment, in which Toro

raises three primary substantive arguments: (1) "Plaintiffs cannot establish proximate cause for either their strict product liability or negligence claims" because there is no legal causation; (2) "the subject mower was not unreasonably dangerous"; and (3) "notwithstanding that Plaintiffs' claims fail for lack of proximate cause, Plaintiffs also have no evidence that [Toro's] conduct was negligent." Renewed Mot. Summ. J. i–ii (capitalization altered). The Hillmans filed a motion to strike the renewed motion for summary judgment, arguing that all issues raised by Toro's motion have been "explicitly or implicitly" considered and rejected by the Seventh Circuit. Mot. Strike, ECF No. 213. The Court found that the Seventh Circuit's mandate included binding rulings on each of Toro's arguments except for legal causation. Oct. 13, 2026 Order 20, ECF No. 218. As such, it directed the Hillmans to respond only to Toro's renewed motion on the issue of legal causation. *Id.*

The Hillmans timely filed a response, Resp. Renewed Mot. Summ. J., ECF No. 221, as well as a motion to seal fourteen of the exhibits upon which the response relies, *see generally* Mot. Leave File Under Seal, ECF No. 219. The Court struck the Hillmans' motion to seal "for noncompliance with Civil Local Rule 5.10(A)(2)" and gave them until November 10, 2026, to file a new motion to seal. Nov. 3, 2026 Text Order, ECF No. 222. The Hillmans did not file a new motion to seal; however, on November 10, 2026, Toro filed a motion to seal previously filed documents, requesting the Court seal six of the Hillmans' exhibits. Toro also filed a motion for leave to file excess pages, requesting permission for an overlength reply.

## DISCUSSION

### I. Motion for Leave to File Excess Pages

Toro seeks leave to file two excess pages—seven total—in the argument section of its reply supporting its renewed motion for summary judgment. Mot. Leave File Excess Pages 2.

The argument section of such a reply is normally limited to five double-spaced pages. Civil LR 7.1(D)(5). Toro requests the extra pages "[d]ue to the nature of the legal issue and the number of items raised by Plaintiffs in their response." Mot. Leave File Excess Pages 1–2. Toro indicates that the Hillmans' counsel does not oppose the motion. *Id.* at 2. The Court finds that the Hillmans will not be prejudiced by Toro's extra pages of argument. *Jones v. BNSF Ry. Co.*, 306 F. Supp. 3d 1060, 1064 (C.D. Ill. 2017). As such, Toro's motion for leave to file excess pages is GRANTED.

**II. Motion for Leave to Seal**

Toro requests six documents be sealed:

1. 2009 Risk Assessment, ECF No. 220-1.
2. Safety Meeting Agenda, ECF No. 220-3.
3. Electric Brake Actuator FMEA Excerpts, ECF No. 220-9.
4. Product Safety Presentation, ECF No. 220-10.
5. ZRT Initiative Team Design Concept Recommendations, ECF No. 220-12.
6. T295 Slides, ECF No. 220-8.

*See generally* Mot. Seal Docs. Previously Filed.

A party who seeks leave to file a document under seal must file a motion explaining "how the document meets the legal standards for filing sealed documents." Civil LR 5.10(A)(2). "The Court does not approve of the filing of documents under seal as a general matter." *Id.*; *see also Jessup v. Luther*, 277 F.3d 926, 927 (7th Cir. 2002) ("The general rule is that the record of a judicial proceeding is public."). "[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). "These considerations, however, support

a strong presumption rather than an absolute rule. When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children," portions of the record may be sealed. *Jessup*, 277 F.3d at 928 (collecting cases). The Seventh Circuit has recognized that "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record," but the documents "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002). Courts must weigh the interest in secrecy against the competing interests of the public in each particular case. *Jessup*, 277 F.3d at 928.

As Toro points out, the Court previously entered an order sealing documents one through five upon a finding that good cause existed to seal these exhibits due to trade secrets. *See* Sep. 30, 2024 Order 36–43. Because good cause remains, the Court will again seal documents one through five. Toro asks for one new document, the T295 Slides, to be sealed because it too contains trade secrets. Mot. Seal Docs. Previously Filed 3–5. The Court need not decide this matter, however, because it does not rely on this document at all in its decision. As such, the request is moot and the document may remain under seal.

## III. Renewed Motion for Summary Judgment

### a. Legal Standard

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the movant has properly moved for summary judgment, the nonmovant

must "respond . . . by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The nonmovant "waives any arguments that were not raised in its response to the moving party's motion for summary judgment," *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014), and should the nonmovant fail to respond to any fact listed by the movant, this "will be deemed an admission of the fact," Civil LR 7.1(D)(2)(b)(6). At summary judgment, the evidence is viewed in a light most favorable to the nonmovant and all reasonable inferences are drawn in favor of the party opposing the motion. *Bowyer v. U.S. Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986).

The moving party is "entitled to a judgment as a matter of law" when the nonmovant has failed to put forth sufficient evidence to satisfy the essential elements of her case as to which she has the burden of proof. *Celotex*, 477 U.S. at 323 (quotation marks omitted). In other words, if the nonmovant fails to make a showing of fact sufficient to establish an essential element of her case, summary judgment will be issued against her. *Id.* at 322–23. Where the nonmoving party bears the ultimate burden of proof, she must "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute," Fed. R. Civ. P. 56(c)(1).[3] An issue is suited for trial when the factual dispute would require a jury to resolve the parties' differing versions of the truth. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).

---

[3] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**b. Analysis**

The Hillmans bring strict product liability and negligence claims. To recover on a strict product liability claim, a plaintiff must prove that she suffered an injury that was proximately caused by a condition of the product, that the condition was unreasonably dangerous, and that the unreasonably dangerous condition existed at the time the product left the defendant's control. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 335 (Ill. 2008). Any of the following may constitute an unreasonably dangerous condition: a manufacturing defect, a design defect, or a failure of the manufacturer to adequately warn of the product's danger or instruct on its proper use. *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 855 (N.D. Ill. 2017) (citing *Mikolajczyk*, 91 N.E.2d at 355). The Hillmans argue that there is a design defect. To succeed on a negligence claim in a product liability action, "a plaintiff must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1153–54 (Ill. 2011).

The principles of proximate cause are the same for negligence and strict liability. *Kleen v. Homak Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001). "Under both strict liability and negligence, a proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." *Id.* Though proximate cause is commonly a question of fact, "it becomes a question of law where there is no material issue of fact regarding the matter or only one conclusion is clearly evident." *Id.*

"[T]he term 'proximate cause' describes two distinct requirements: cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Dux v. United States*, 69 F. Supp. 3d 781, 786–87 (N.D. Ill. 2014) (quoting *Lee v. Chi. Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992)).

"Legal cause is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Id.* at 787 (quoting *Lee*, 605 N.E.2d at 503). Determination of whether an injury is reasonably foreseeable is an objective inquiry. *Murillo v. United States*, 504 F. Supp. 3d 875, 890–91 (N.D. Ill. 2020).

Factual causation is not at issue in this motion. *See Hillman*, 164 F.4th at 983; Oct. 3, 2026 Order 14–15. Instead, Toro argues that the incident was not foreseeable and, thus, "the lack of the independent service brake was not the proximate cause of Rebekah's injuries." Renewed Mot. Summ. J. 31–37. As such, Toro requests dismissal of both of the Hillmans' counts with prejudice. *Id.* The Hillmans respond that "[t]he record shows this type of harm was foreseeable and Toro documented it as a possibility." Resp. Renewed Mot. Summ. J. 26–38. The parties also disagree as to what the relevant harm is in this case. *See, e.g.*, *id.* at 25–26; Reply 16–19, Mot. Leave File Excess Pages Ex. 1, ECF No. 223-1.

Legal cause is not established "where the causal connection is contingent, speculative or merely possible." *Mengelson v. Ingalls Health Ventures*, 751 N.E.2d 91, 96 (Ill. App. Ct. 2001) (quotation marks omitted). Instead, "[l]egal cause is established if the defendant's conduct is so closely tied to the plaintiff's injury that the defendant should be held legally responsible." *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 309–10 (7th Cir. 2010) (citing *Simmons v. Garces*, 763 N.E.2d 720, 732 (Ill. 2002)). An injury may have several legal causes. *Rivera v. Garcia*, 927 N.E.2d 1235, 1242 (Ill. App. Ct. 2010).

When viewing the case in a light most favorable to the Hillmans, as the Court must, a reasonable jury could conclude that legal causation exists, thus rendering summary judgment inappropriate. *Cf. Mengelson*, 751 N.E.2d at 96 ("It is well established that issues involving

proximate cause are fact specific and therefore uniquely for the jury's determination, unless there is no material issue regarding the matter or where only one conclusion is clearly evident." (citations omitted)); *Jarosz v. Buona Cos.*, 206 N.E.3d 189, 204 (Ill. App. Ct. 2022) ("Generally, the issue of proximate causation is a question of fact for the trier of fact, but it may become a question of law when the facts alleged indicate that a party would never be entitled to recover." (quotation marks omitted)). Toro argues that it was not foreseeable that Jennifer would disable the service brakes, use different equipment to tow the subject mower despite knowing it was dangerous, tow the subject mower up a hill, and not reengage the bypass pins prior to using the subject mower on a steep slope. Renewed Mot. Summ. J. 31–37. The Hillmans argue that it was foreseeable that "a loss-of-control incident, when presented with no independent brake . . . [would] cause[] a crash." Resp. Renewed Mot. Summ. J. 25–26. The Court takes issue with the scope of each party's definition of the incident—Toro's is too specific and the Hillmans' is too broad. Thus, the Court instead considers whether it was reasonably foreseeable that someone would disengage the bypass pins, use the mower without reengaging the bypass pins, and that a serious injury could result. *See, e.g.*, *Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004) (analyzing foreseeability of an injury to include intervening acts which may have also lead to the harm); *Exner v. Ebel*, No. 24-cv-3136, 2026 WL 2410204, at *6 (N.D. Ill. Aug. 18, 2026) (considering whether it was reasonably foreseeable that "driving too fast could limit the space available for another reckless driver").

Enough evidence exists for a reasonable jury to conclude that it was reasonably foreseeable that someone would disengage the bypass pins, use the subject mower without reengaging the bypass pins, and that a serious injury could result. First and foremost, because the mower can only be moved if the bypass pins are disengaged, Toro officials acknowledged

that people would need to disengage the bypass pins. Fear Dep. 211:18–212:6, Resp. Renewed Mot. Summ. J. Ex. 1, ECF No. 221-1. And Toro was aware that people do not always perfectly follow directions. 2009 Risk Assessment 2, Resp. Renewed Mot. Summ. J. Ex. 3, ECF No. 220-1 (outlining foreseeable misuses).[4] Thus, if people are occasionally required to disengage these pins and operator error is a known possibility, it is reasonably foreseeable that people would subsequently forget to reengage the bypass pins before using the mower.

It is known that using bypass pins in transaxles like those used in the subject mower creates a risk of injury. A patent for another model of transaxle made by the same company that manufactured the transaxle used in the subject mower indicates that "a completely open hydraulic circuit can lead to uncontrolled free-wheeling of the vehicle and create significant safety risks." Hydraulic Device Patent 2, Resp. Renewed Mot. Summ. J. Ex. 5, ECF No. 221-3. Indeed, Toro's safety personnel identified the absence of braking as a source of future product liability claims. Toro Corp. Prod. Safety 2, Resp. Renewed Mot. Summ. J. Ex. 15, ECF No. 220-10. Moreover, Toro's manual warns about the danger of drop-offs, Operator's Manual 4–5, Porter Aff. Ex. D-4, Renewed Mot. Summ. J. Ex. D, ECF No. 211-4 at 129–79, and Toro's records establish that it knew, prior to manufacturing the subject mower, there was risk of losing control on slopes, Slope Test Rep., Resp. Renewed Mot. Summ. J. Ex. 6, ECF No. 221-4; May 3, 2004 Letter, Resp. Renewed Mot. Summ. J. Ex. 7, ECF No. 220-2 (describing prior safety incidents with Toro mowers, including at least one incident involving a drop-off); Drutowski Dep. 258:9–261:8, Renewed Mot. Summ. J. Ex. G, ECF No. 211-7 (discussing same). This evidence is sufficient to support a jury's finding that the incident was reasonably foreseeable.

---

[4] Toro frequently disputes facts such as this one; however, where Toro's disputes pertain to characterization or legal application of the facts rather than their existence and veracity, the Court treats them as undisputed. *See, e.g.*, Reply 10, 12.

When considering legal cause, Illinois courts also apply the crashworthiness doctrine. *Malen*, 628 F.3d at 311–12 (extending the crashworthiness doctrine to riding mowers). The crashworthiness doctrine recognizes that "accidents are natural, foreseeable consequences of using certain products," and applies to both strict liability and negligence. *Id.* at 311. "[S]ome products, although not made for certain purposes—such as accidents—should nevertheless be reasonably designed to minimize the injury-producing effect of an accident. A defect is not merely the conclusion that the product failed and caused injury, but that the product failed to provide the consumer with reasonable protection under the circumstances surrounding a particular accident." *Id.* (collecting Illinois cases).

Seventh Circuit case *Malen v. MTD Products*, *Inc.*, 628 F.3d 296, is particularly instructive to the Court's analysis of legal causation. In *Malen*, the plaintiff suffered serious injury to his foot while using a riding mower. *Id.* at 299. The *Malen* mower had a safety interlock system, including a device which kills the engine if the operator gets up without disengaging the blade and setting the parking brake, as well as a "no cut in reverse" switch, which kills the engine if the mower moves into reverse without disengaging the blade. *Id.* at 298. Malen was using the mower when he "wedged the right front tire over a curb." *Id.* at 299. He tried to get the mower out by rocking his weight and shifting gears. *Id.* When that did not work, he "raised the cutting deck, removed his foot from the pedal which engages the blade, and started to dismount." *Id.* Malen dismounted without turning off the engine or confirming that the blade had stopped spinning. *Id.* As a result, when he stepped off the mower, his foot slipped "under the cutting deck and was struck by the rotating blade." *Id.* Similarly, Jennifer disengaged the safety bypass pins to tow the subject mower away from the place in which it got stuck. Jennifer Dep. 275:23–277:5. She moved it elsewhere and Rebekah began to use it

without reengaging the safety bypass pins. *Id.* at 286:20–287:24. Then, when Rebekah was using the subject mower for its intended purpose, she could not brake as needed because the pins were not reengaged and she suffered a serious injury.

The crashworthiness doctrine bolsters both this and the *Malen* courts' rulings that a jury could find the parties' injuries were reasonably foreseeable because "the defendants [a]re required to foresee certain accidents in the use of the mower . . . and to provide consumers with reasonable protections under the circumstances surrounding particular accidents." *Malen*, 628 F.3d at 311. While Malen was operating his mower, he realized it was stuck, and so he rocked the mower back and forth. *Id.* at 298–99. When the mower remained stuck, Malen dismounted without turning the mower off or disengaging the blade. *Id.* When reviewing this incident, the court found that "[w]hether or not Malen initiated a chain of events that ended with him being injured—by wedging the mower on the curb, attempting to rock it loose, and dismounting without cutting the engine—the crashworthiness doctrine obligated the defendants to foresee the potential for this type of accident" and summary judgment was therefore inappropriate. *Id.* at 313. Likewise, whether or not the Hillmans initiated the chain of events—by failing to reengage the bypass pins or operating the mower on a slope—the crashworthiness doctrine obligated Toro to foresee the potential for this type of incident.

Toro attempts to distinguish this case from *Malen* because the safety device being challenged was present "but not connected and aimed at the precise circumstance that occurred," whereas "this case involves a separate recovery sequence in which Jennifer put the mower in bypass, towed it uphill with a tractor, positioned it facing the flower bed and retaining-wall drop-off, and neither plaintiff restored the bypass levers before operation resumed." Reply 20. While true that the cases are not factually identical, Toro's distinction is unpersuasive—the

crashworthiness doctrine principles articulated in *Malen* are, as discussed above, relevant and applicable to this case. Despite Toro's characterization of *Malen* as involving only a designed safety feature that was not working, *see id.* at 20–21 (stating in its argument that *Malen* does not control this case that "the Hillmans must instead prove that the absence of a feature, not the disablement of an existing one, rendered the mower unreasonably dangerous"), the Seventh Circuit also found a genuine issue of fact as to whether the mower's design was defective based on the absence of a feature that made the mower inoperable if the existing safety feature failed, *Malen*, 628 F.3d at 308. The Seventh Circuit's holding as to proximate cause based on the crashworthiness doctrine was broad enough to cover proximate cause based on the absence of that additional safety feature and applies to the facts of this case as well. *See id.* at 313 (holding that "[a] jury could still conclude that the mower was unreasonably dangerous and that the *absence of functional safety mechanisms* was the proximate cause of [the plaintiff's] injury" (emphasis added)).

As such, when viewing the case in a light most favorable to the Hillmans, a reasonable juror could find that Rebekah's injury was a foreseeable consequence of Toro's decision to not include an independent brake. For this reason, the Court DENIES Toro's renewed motion for summary judgment as to legal causation.

**CONCLUSION**

Accordingly, Defendant The Toro Company's ("Toro") renewed motion for summary judgment, ECF No. 211, is DENIED. Its motion for leave to file excess pages, ECF No. 223, is GRANTED. The Clerk is directed to file the Reply, ECF No. 223-1, on the docket. Toro's motion to seal a previously filed document, ECF No. 224, is GRANTED IN PART and MOOT IN PART. The Clerk is directed to unseal all exhibits to docket entry 220 except for the

following documents, which are to remain under seal: (1) 2009 Risk Assessment, ECF No. 220-1, (2) Safety Meeting Agenda, ECF No. 220-3, (3) Electric Brake Actuator FMEA Excerpts, ECF No. 220-9, (4) Product Safety Presentation, ECF No. 220-10, (5) ZRT Initiative Team Design Concept Recommendations, ECF No. 220-12, and (6) T295 Slides, ECF No. 220-8.

The final pretrial conference remains set for 11:00 a.m. on December 9, 2026, and the jury trial remains set for January 25, 2027, at 9:00 a.m. Both will be held in Courtroom A in the Rock Island Federal Courthouse at 1701 4th Ave. Rock Island, Illinois 61201. The proposed final pretrial order is due on December 2, 2026.

Entered this 25th day of November, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE